IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BARRACK RODOS & BACINE, | : | Civil Action No. 08 CV 02152 (PKL) |
| Plaintiff, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| BALLON STOLL BADER AND NADLER, P.C., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT...................................................................................................................................6

    A.    BR&B Will Be Irreparably Harmed if Forced to
          Arbitrate Ballon Stoll's Claims....................................................................................6

    B.    BR&B Is Likely to Succeed on the Merits ...............................................................7

         1.    The Court and Not the Arbitrator Has the Authority to Determine
              Whether Ballon Stoll's Claims Against BR&B Are Arbitrable ....................7

         2.    BR&B Is Not Bound by the Arbitration Clause of the Agreement ...............9

    C.    The Balance of Hardships Weighs In Favor or BR&B..........................................13

CONCLUSION..............................................................................................................................14

i

Plaintiff, Barrack Rodos & Bacine ("BR&B"), submits this memorandum in support of its motion for a preliminary injunction to stay as against BR&B an arbitration proceeding before the American Arbitration Association ("AAA") styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* AAA Claims No. 13 194 01780 07, and to enjoin Ballon Stoll Bader and Nadler, P.C. ("Ballon Stoll") from proceeding with that arbitration.

## INTRODUCTION

BR&B seeks a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to stay an arbitration proceeding against BR&B pending a judgment declaring whether BR&B is required to arbitrate the claims asserted by Ballon Stoll against BR&B. This action relates to a dispute over attorneys' fees awarded to BR&B by the United States District Court for the District of Delaware in the matter styled *Seinfeld v. Barrett, et al.*, No. 05-298 (JJF) (D. Del. May 16, 2005) ("*Intel*"), a derivative lawsuit that settled in 2007. Ballon Stoll claims to have an interest in those fees, contending that it is entitled to fees that were earned under an agreement ("Ballon Stoll-Gershon Agreement" or "Agreement") with A. Arnold Gershon, Esquire ("Gershon"), who left Ballon Stoll and joined BR&B on December 1, 2006.

Absent an injunction, BR&B will be irreparably harmed by being forced to choose between participating in the arbitration or allowing the arbitration to proceed without its participation and then, if there is an adverse award, challenging the arbitrator's jurisdiction in confirmation proceedings. Money damages cannot remedy BR&B's dilemma. There is no adequate remedy at law. Accordingly, this Court should grant BR&B's motion and should order that the arbitration proceedings as against BR&B by stayed.

## BACKGROUND

BR&B is a law firm that has extensive experience nationally in complex class and derivative litigation. For over thirty years, BR&B has concentrated its practice on litigation, particularly class action litigation under the federal securities laws, shareholder derivative litigation and class action litigation under the antitrust laws, and has substantial experience in litigating large and complex cases with extensive discovery programs that involve millions of pages of documents and many depositions. Declaration of Daniel E. Bacine ("Bacine Declaration") Exhibit 1 at ¶ 9.

In November 2006, Gershon contacted BR&B to inquire about his joining the firm. Gershon was aware of BR&B's extensive experience and ability to handle complex class and derivative litigation. *Id.* at ¶ 4. Gershon explained that he had become increasingly unhappy with his employment at Ballon Stoll because of Ballon Stoll's inability or unwillingness to provide the support and resources Gershon needed to properly litigate the kinds of complex and discovery intensive cases in which he was involved. *Id.* at ¶ 5.

Gershon's particular area of expertise is in shareholder derivative actions, an area in which BR&B thought it advantageous to add an experienced lawyer. *Id.* at ¶ 8. In his discussions with BR&B, Gershon suggested that, in addition to himself, BR&B should also hire the associate he had been working with, who he said was also unhappy at Ballon Stoll. *Id.* at ¶ 5. And because BR&B had no secretarial support in its New York office (BR&B had one lawyer there half time), Gershon proposed that BR&B also hire a secretary who had left Ballon Stoll several weeks earlier. *Id.* at ¶ 8.

Because of the uncertainty that the arrangement between Gershon and BR&B would be successful and the substantial financial commitment BR&B would be making for salaries and

2

expansion of its sublease to add the needed space, BR&B proposed to Gershon that he could join the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B. *Id.* at ¶ 9.  BR&B and Gershon agreed that Gershon's employment would begin on December 1, 2006. *Id.* at ¶ 12.  Gershon has no proprietary interest in BR&B and no financial interest in any cases he brought to or has worked on at BR&B. *Id.* at ¶ 9.

Sometime in November, 2006, Gershon notified Ballon Stoll that he was terminating the Agreement as of December 1, 2006.  In his conversation with BR&B leading to his employment, Gershon said that he would work out an arrangement with Ballon Stoll to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and bringing some.  *Id*. at ¶ 10.  Gershon did not, however, share with BR&B the particulars of his arrangement with Ballon Stoll.  *Id.*  BR&B was not aware of the existence of the Agreement that forms the basis for Ballon Stoll's claims.  *Id.*

Among the cases Gershon brought to BR&B was the *Intel* case.  Upon Gershon's arrival, BR&B promptly assembled a group of lawyers and a paralegal to begin the task of organizing and reviewing the documents produced, in preparation for the extensive deposition program anticipated. *Id.* at 12.  BR&B was well-acquainted with the defense firm in the *Intel* case from a number of cases over the years, and they were well-acquainted with BR&B. *Id.* at ¶ 7.  Shortly after Gershon joined BR&B, the parties in the *Intel* case commenced settlement discussions. *Id.* at 13.  These discussions ultimately led to a settlement agreement dated March 7, 2007. *Id*. at ¶ 13.

The last term of the settlement negotiated was the counsel fee that defendants in that case agreed to pay plaintiff, subject to the court's approval. *Id*. at ¶ 14.  The fee was negotiated at arm's length with defense counsel. *Id.*  When BR&B filed its motion for approval of the

settlement, it sought fees and expenses in the agreed amount of approximately $862,500. Bacine Declaration at ¶ 15.

On May 18, 2007, BR&B received a letter from Ballon Stoll purporting to assert a charging lien against the *Intel* fee (which at that time had not yet been awarded, let alone paid). Bacine Declaration Exhibit 1 at ¶ 11. It was at that time that Gershon shared with BR&B a copy of the Agreement with Ballon Stoll, as well as the documents showing his agreement with Ballon Stoll following his departure to divide the cases that Gershon had been working on at that firm. *Id.* In those documents, Ballon Stoll agreed to the division of cases, but claimed a continuing financial interest in the *Intel* case and fee that might be awarded. *Id.*

A settlement hearing in the *Intel* case was scheduled for May 23, 2007, of which Ballon Stoll was aware. *Id.* at ¶ 16. Despite claiming an interest in the proposed fee, Ballon Stoll did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition. *Id*. By order dated May 23, 2007, the Court awarded BR&B a fee in the *Intel* case in the amount of $862,500 as per the settlement agreement. The fee was paid to BR&B on June 29, 2007. Bacine Declaration at ¶ 5.

In June 2007, Ballon Stoll initiated a proceeding in the New York Supreme Court styled *In the Matter of the Application of Ballon Stoll Bader & Nadler, P.C., against A. Arnold Gershon, P.C., et al.*, Index No. 602108/07. *See* Bacine Declaration Exhibit 1 at ¶ 17. In its application, Ballon Stoll sought to enjoin BR&B from distributing the *Intel* fee pending resolution of Ballon Stoll's entitlement to fees from that case. *Id.* On June 29, 2007, Justice Lowe heard and denied Ballon Stoll's application. *Id.*

On August 17, 2007, Ballon Stoll filed with the AAA a demand for arbitration against Gershon, Gershon's professional corporation, and BR&B. A copy of the arbitration demand is

4

attached to the Bacine Declaration as Exhibit 7. Ballon Stoll's only substantive claim against BR&B is in its First Claim for Relief, for *quantum meruit*. (Ballon Stoll also asserted non-substantive claims against BR&B for a charging lien, to require BR&B to retain funds in escrow, and for fees and expenses relating to the arbitration.) *Id.*

From the outset and continuing to the present, BR&B has consistently maintained and expressed its position that it is not a party to the Ballon Stoll-Gershon Agreement and is, therefore, not required to arbitrate Ballon Stoll's claims. By letters dated September 6, October 16, and November 16, 2007, Daniel E. Bacine, a BR&B partner, sent letters to the AAA, each time reiterating the firm's position that BR&B is not a proper party to the arbitration proceedings. Bacine Declaration Exhibits. 4-6. BR&B did not participate in the process of appointment of the arbitrator. Bacine Declaration at ¶ 3.

During a telephonic conference on December 3, 2007, among the AAA administrator, the arbitrator, a representative of Ballon Stoll and Gershon, in which BR&B participated as a matter of courtesy, BR&B again raised the issue that BR&B, as a nonsignatory, was not bound by the arbitration clause in the Agreement. Bacine Declaration Exhibit 3 at 7. In response, and at the request of the arbitrator, on December 27, 2007, Ballon Stoll submitted to the arbitrator a memorandum in support of his retention of jurisdiction over BR&B. Bacine Declaration at ¶ 4.

On January 22, 2008, BR&B, again as a matter of courtesy, submitted a memorandum in response, explaining that it was not a party to the Agreement and should not be bound to arbitrate Ballon Stoll's claims. BR&B also asserted that only a court, not the arbitrator, has the authority to determine whether Ballon Stoll's claim against BR&B is arbitrable. On February 19, 2008, the arbitrator issued a ruling, incorrectly determining that he (and not a court) had the authority to rule on the arbitrability of Ballon Stoll's claim against BR&B. Bacine Declaration Exhibit 3.

The arbitrator also ruled that BR&B was bound by the arbitration clause of the Agreement. Bacine Declaration Exhibit 8. The arbitrator also ordered BR&B to serve and file a response to Ballon Stoll's claim no later than March 5, 2008. *Id.* at Exhibit 3. The arbitration hearing has been set for April 2, 2008. Bacine Declaration Exhibit 9.

## ARGUMENT

"In order to obtain a preliminary injunction, the moving party must show (1) the likelihood of irreparable injury, and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor." *Tellium, Inc. v. Corning Inc.,* No. 03 Civ. 8487(NRB), 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004). *See also Masefield AG v. Colonial Oil Indus., Inc.,* No. 05 Civ. 2231(PKL), 2005 WL 911770, at *6 (S.D.N.Y. Apr. 18, 2005). Here, as will be demonstrated, BR&B meets all of the requirements necessary to obtain a preliminary injunction.

### A.  BR&B Will Be Irreparably Harmed if Forced to Arbitrate Ballon Stoll's Claims

Irreparable harm "is an injury for which monetary award cannot be adequate compensation." *Masefield,* 2005 WL 911770, at *6 (internal quotations omitted). "The Second Circuit has held that irreparable harm results from arbitrating a dispute involving a party who is not covered by the arbitration agreement." *Id.*, at *7. *See also Tellium, Inc.,* 2004 WL 307238, at *3 (internal quotations omitted) ("Compelling arbitration of a matter not properly subject to arbitration constitutes per se 'irreparable harm'"); *Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union Local 365, S.E.I.U.-A.F.L.-C.I.O.*, 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997) (party could be assumed to have suffered irreparable harm if forced to arbitrate a "dispute it did not intend to be subject to arbitration.").

6

Irreparable harm must also be "imminent" and "not remote and speculative." *Masefield,* 2005 WL 911770, at *6. Because the arbitrator has ordered BR&B to serve and file a response to Ballon Stoll's claim by March 5, 2008, and has scheduled the arbitration hearing for April 2, 2008, the harm to BR&B will be realized immediately. If BR&B is improperly forced to arbitrate Ballon Stoll's claims, it would therefore suffer immediate irreparable harm.

### B. BR&B Is Likely to Succeed on the Merits

BR&B is likely to succeed on the merits of this case. As demonstrated below, this Court and not the arbitrator has the authority to determine whether BR&B is a proper party to the arbitration. Moreover, there is no theory under which Ballon Stoll can properly force BR&B, a nonsignatory to the Agreement, to arbitrate Ballon Stoll's claims.

#### 1. The Court and Not the Arbitrator Has the Authority to Determine Whether Ballon Stoll's Claims Against BR&B Are Arbitrable

The law is well settled that the court, not the arbitrator, has jurisdiction to determine whether a party is required to arbitrate. *See*, *e.g., Larrison v. Scarola Reavis & Parent LLP,* 812 N.Y.S.2d 243, 246-247 (Sup. Ct. 2005) ("Generally, it is for the courts to make the initial determination as to whether the dispute is arbitrable"). Courts within New York have held time and again that the "threshold issue of whether a valid agreement to arbitrate exists is for the court and not an arbitrator to decide." *In the Matter of James D. O'Donnell v. Arrow Elec., Inc.,* 742 N.Y.S.2d 579, 579 (App. Div. 2002); *Ben-Reuven v. Kidder Peabody & Co., Inc.*, 526 N.Y.S.2d 752, 753 (Sup. Ct. 1988) (same).[1] In this instance, the arbitrator lacks jurisdiction to determine

---

[1] Gershon's Agreement with Ballon Stoll states that any controversy or claim arising out of "this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association." The AAA rules confer jurisdiction on arbitrators to determine whether a *claim* is arbitrable. The issue here is not whether a particular *claim* is arbitrable under the parties' agreement to arbitrate, i.e., whether the scope of the arbitration clause covers the claim in dispute. Rather, the issue is whether BR&B is required to arbitrate *any* claims brought by Ballon Stoll, something only a court can decide. In any event, because BR&B did not sign the Agreement and has not otherwise agreed to be bound by the AAA rules, "[i]t would not be appropriate to enforce the choice of law provision against [plaintiff] before it has been determined that [plaintiff] is

7

whether BR&B, a nonsignatory to the agreement containing the arbitration clause, should be compelled to arbitrate Ballon Stoll's claims.

From the outset, BR&B has made clear that it is not willing to submit to arbitration. Where, as here, parties do not agree to submit the arbitrability question to arbitration, "then the court should decide that question." *First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938, 943 (1995). Ballon Stoll will be unable to show that BR&B agreed to have the arbitrator decide the question of arbitrability. At most, Ballon Stoll can point to correspondence BR&B submitted to the AAA and to the arbitrator questioning their jurisdiction over BR&B. But that correspondence does not demonstrate an agreement to allow the arbitrator to decide his jurisdiction over BR&B. "The case law in this Circuit is clear that 'to the extent that [a party] participate[s] in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver.'" *Penrod,* 2008 WL 463720, at *3 (staying arbitration pending the resolution of whether plaintiff was required to arbitrate defendant's claims). In *Penrod,* the Court held that the plaintiff did not waive its ability to object to the jurisdiction of the arbitrator by filing a motion to dismiss for lack of subject matter jurisdiction, participating in the case management conferences, consenting to venue in New York City, producing discovery and serving its pre-hearing witness list, activities far beyond BR&B's activities here. *Id.*, at *3-4.

In *First Options, supra*, the defendants actually participated in the arbitration through an award. On proceedings to confirm the award, the defendants, who had submitted a written objection to the arbitrators challenging their jurisdiction, renewed that challenge in court. The plaintiff, in seeking to have the award confirmed, made the identical arguments Ballon Stoll

---

in fact bound by the Agreement." *See Penrod Mgmt. Group v. Stewart's Mobile Concepts. Ltd.*, No. 07 Civ. 10649(JGK), 2008 WL 463720, at *2 (S.D.N.Y. Feb. 19, 2008).

8

made to the arbitrator here. On appeal, the Supreme Court soundly rejected those arguments. As the Supreme Court stated:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. …[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectually bound by the arbitrator's decision on that point.

*First Options, supra*, 514 U.S. at 945-946.

BR&B's forceful objection to the arbitrator's jurisdiction demonstrates that BR&B did not consent to the arbitrator's authority or jurisdiction. *Id. See also Masefield*, 2005 WL 911770, at * 2 (deciding that the court should determine the arbitrability issue where the party did not enter "into any contract with defendant containing an arbitration" clause and did not demonstrate "any intention to give the [arbitrator] the power to determine" whether the arbitrator should decide the issue of arbitrability). Because BR&B "did not clearly agree to submit the question of arbitrability to arbitration," only the Court and not the arbitrator has the authority to decide this issue. *First Options,* 514 U.S. at 947.

### 2. <u>BR&B Is Not Bound by the Arbitration Clause of the Agreement</u>

There is no basis for determining that BR&B is bound under the Ballon Stoll-Gershon Agreement to arbitrate Ballon Stoll's claim. It is a fundamental principle of New York law that, with few exceptions, in the absence of an agreement to arbitrate, a party cannot be forced to do so. "An agreement to arbitrate requires a clear and unequivocal manifestation of an intention to arbitrate because it involves the surrender [of] the right to resort to the courts." *Mionis v. Bank Julius Baer & Co., Ltd.,* 749 N.Y.S.2d 497, 501-502 (App. Div. 2002) (internal citations and

9

quotations omitted). Absent limited exceptions, the general principle is that "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir 1995). Under New York law, the recognized exceptions to the general rule are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Masefield,* 2005 WL 911770, at *3.[2] None of the exceptions applies in this instance.

Ballon Stoll will likely contend that BR&B is required to participate in the arbitration because its agreement with Gershon amounts to a de facto merger with BR&B. The de facto merger doctrine is one created as "an exception to the general principle that an acquiring corporation does not become responsible thereby for the pre-existing liabilities of the acquired corporation." *Micro Bio- Medics, Inc. v. Westchester Med. Ctr.,* 800 N.Y.S.2d 350, at *4 (N.Y. Sup. 2004) (internal quotations and citations omitted).

Under New York law, where there is a transaction structured as an asset purchase, courts will look to the substance of the transaction to determine whether in substance, it should be treated as "a consolidation or merger of seller and purchaser." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (internal quotation omitted). As the Second Circuit held, "the purpose of the doctrine of de facto merger is to avoid [the] patent injustice which might

---

[2] Ballon Stoll argued before the arbitrator that BR&B was bound to arbitrate based on the theory of estoppel. Under the estoppel theory, "a party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing *Thomson-CSF*, 64 F.3d at 778-79). Under these principles, for Ballon Stoll "[t]o prevail [it] must show that BR&B 'knowingly exploited the … contract and thereby received a direct benefit from the contract.'" *MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (quoting *Thomson-CSF*, 64 F.3d at 778). It is not enough if "the benefit derived from [the] agreement is indirect where the nonsignatory exploits the contractual relation of the parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Id. Republic of Ecuador v. Chevrontexaco Corp.*, 499 F. Supp. 2d 452, 458 (S.D.N.Y. 2007). Here, Ballon Stoll is unable to show that BR&B received any benefit as a result of the Agreement, let alone a direct benefit. The fees the Court awarded BR&B in the *Intel* case were unrelated to the Ballon Stoll-Gershon Agreement and thus BR&B received no benefit from the Agreement.

befall a party simply because a merger has been called something else." *Id.* at 46 (citing *In re Penn Cen. Sec. Litig.*, 367 F. Supp. 1158, 1170 (E. D. Pa. 1973).

> To find that a de facto merger exists, New York law requires a finding that there was:
>
> [1] a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; [3] a dissolution of the selling corporation [;] and [4] the assumption of liabilities by the purchaser.

*Id.* at 46 (internal quotations and citations omitted) "Continuity of ownership describes a situation where the parties to the transaction 'become owners together of what formerly belonged to each.'" *In re New York City Asbestos Litig.,* 789 N.Y.S. 2d 484, 487 (App. Div. 2005) (quoting *Cargo Partner* 352 F.3d at 47). Indeed, while "[c]ontinuity of ownership might not alone establish a de facto merger…it *is* the substance of a merger." *Cargo Partner* 352 F.3d at 47 (emphasis in original) (internal quotations and citation omitted). Thus, where "there is no continuity of ownership… there cannot be a 'merger called… something else.'" *Id.*

Here, of course, there was no asset purchase at all. BR&B did not purchase anything from Gershon. Nor is there any continuity of ownership. Thus, the *sine qua non* of a de facto merger is absent.

Relying solely on *AT&S Transportation LLC v. Odyssey Logistics & Technology Corp.*, 803 N.Y.S.2d 118 (App. Div. 2005), the arbitrator incorrectly determined that BR&B is bound by the Agreement based on the de facto merger doctrine. In that case, the Court found four required elements to determine whether a particular transaction should be treated as a *de facto merger*:

> The hallmarks of a de facto merger are the "continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinary necessary for the uninterrupted continuation of the business of the acquired corporation; and, a

11

continuity of management, personnel, physical location, assets, and general business operation" (*Fitzgerald v. Fahnestock & Co.*, 286 A.D. 2d 573, 574 [2001]).  These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor (*see Nettis v. Levitt*, 241 F.3d 186 [2001]; *City of New York v. Pfizer & Co.*, 260 A.D. 2d 174 [1999]).

As already demonstrated, there is no continuity of ownership.  Moreover, Gershon has no equity interest in BR&B.  Bacine Declaration Exhibit 1 at ¶ 9.   Nor does he "own" or have a financial interest in any case.  *Id.*  And there is no "evidence of any continuity of management, physical location, assets and general business operations."  *See Kretzmer v. Firesafe Prod. Corp.,* 24 A.D.3d 158, 159 (App. Div. 2005).  The fact that BR&B, at Gershon's suggestion, hired an attorney and an administrative assistant who had worked at Ballon Stoll, does not mean that Gershon and BR&B entered into a de facto merger.  *Id.*  ("The mere hiring of some of the predecessor's employees is insufficient to raise a triable issue as to continuity of management."). *See also Subramani v. Bruno Mach. Corp.,* 736 N.Y.S.2d 315, 316 (App. Div. 2001).

In addition, there has been no "cessation of ordinary business and dissolution of the predecessor."  That concept simply does not apply where a lawyer leaves one firm and joins another.   Finally, BR&B did not assume any of Gershon's liabilities.  *See Sands Bros. & Co. Ltd., v. Alba Perez TTEE Catalina Garcia Revocable Trust U/A DTD 9/04/01,* No. 04 Civ. 0005(JFK), 2004 WL 2186574 (S.D.N.Y. Sept. 28, 2004) (non-signatory not bound to arbitrate under the de facto merger theory because, *inter alia,* plaintiff did not acquire the non-signatories liabilities).

In short, there is simply no basis for determining that Gershon and BR&B entered into a de facto merger. Thus, the general rule refusing to require non-signatories to arbitrate claims applies here.

12

Significantly, Ballon Stoll has not even asserted a contract claim against BR&B based on the Ballon Stoll-Gershon Agreement. While Ballon Stoll has, in the arbitration, asserted a contract claim against Gershon, the only substantive claim Ballon Stoll has asserted against BR&B is for *quantum meruit*, the *sine qua non* of which is that there is no contract. *See Aviv Constr., Inc. v. Antiquarium, Ltd.,* 687 N.Y.S.2d 344, 345 (App. Div. 1999). If Ballon Stoll concedes that BR&B has no *contractual* liability under the Ballon Stoll-Gershon Agreement, its claim that BR&B is bound by the arbitration clause in that same Agreement is an anomaly. For this reason as well, BR&B cannot be held bound by the arbitration clause in the Agreement.

### C.     The Balance of Hardships Weighs In Favor or BR&B

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Tradescape.com v. Shivaram,* 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999). In this case, the balance of hardship weighs in favor of BR&B. At this point, a preliminary injunction would merely maintain the status quo until this Court has had the opportunity to declare the rights of the parties. *Tellium,* 2004 WL 307238, at *8. If BR&B were eventually found by this Court to be bound to the arbitration clause, the only hardship to Ballon Stoll would be a delay in the arbitration proceedings. The preliminary injunction would not harm Ballon Stoll, who "seeks money damages only." *Id.* Moreover, any "prediction of harm resulting from such a delay would be speculative." *Tradescape.com,* 77 F. Supp. 2d at 411.

If this motion for preliminary injunction is denied, by contrast, BR&B would be forced to "expend its time and resources to defend itself in an [a]rbitration to which it may ultimately be determined not to have been an improper party, and any award would accordingly be unenforceable." *Tellium,* 2004 WL 307238, at *8. *See also, Masefield*, 2005 WL 911770, at *7

13

(court determined that "the balance of hardships tips decidedly in plaintiffs' favor here, as defendant should not be permitted to compel two [non-signatories] to arbitrate under the Contract without a clear basis in the law," reasoning that defendant is not left without a remedy as it may continue to pursue its claim in arbitration against another party).  Here, Ballon Stoll can pursue its arbitration claims against Gershon and Gershon's professional corporation without BR&B.  Thus, the balance of hardship tilts decidedly in BR&B's favor.

## CONCLUSION

BR&B has demonstrated the requisite criteria entitling it to a preliminary injunction staying the arbitration proceedings as against BR&B until the Court has declared the rights of the parties.   BR&B never agreed to arbitrate Ballon Stoll's claims and never agreed to grant the arbitrator power to decide whether BR&B is required to arbitrate Ballon Stoll's claims.

For all of these reasons, this Court should grant BR&B's preliminary injunction staying the arbitration pending the declaration of the parties' rights.

Dated: February 29, 2008                     **BARRACK, RODOS & BACINE**

By:   s/
   William J. Ban (WB0382)
   1350 Broadway
   Suite 1001
   New York, NY 10018
   (212) 688–0782

   and

Daniel E. Bacine
BARRACK RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

*Attorneys for Plaintiff*

14