IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BARRACK RODOS & BACINE, | : | Civil Action No. 08 CV 02152 (PKL) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **DECLARATION OF DANIEL** |
|  | : | **E. BACINE IN SUPPORT OF** |
| BALLON STOLL BADER AND NADLER, P.C., | : | **MOTION FOR PRELIMINARY** |
|  | : | **INJUNCTION** |
| Defendant. | : |  |
|  | : |  |

I, Daniel E. Bacine, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a partner with the law firm of Barrack, Rodos & Bacine ("BR&B") located at 3300 Two Commerce Square, 2001 Market Street, Philadelphia, Pennsylvania 19103, and I submit this declaration in support of BR&B's motion for preliminary injunction.  The statements in this declaration are based on my personal knowledge, and I am competent to testify as to the matters set forth herein.

2.      On January 22, 2008, I submitted to the American Arbitration Association an affidavit in connection with the matter styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* AAA Claims No. 13 194 01780 07, in opposition to the jurisdiction over BR&B by the arbitrator in that matter.  A true and correct copy of that affidavit is annexed hereto as Exhibit 1.  This declaration supplements that affidavit.

3.      BR&B did not participate in the process of appointment of the arbitrator in that matter.

4.      On December 3, 2007, during a telephonic conference with the AAA administrator, the arbitrator, a representative of Ballon Stoll and Gershon, BR&B reiterated its position that it was not bound by the arbitration clause in the Agreement.  In response, and at the

request of the arbitrator, on December 27, 2007, Ballon Stoll submitted to the arbitrator a memorandum in support of his retention of jurisdiction over BR&B.

5.    By order dated May 23, 2007, the United States District Court for the District of Delaware in *Seinfeld v. Barrett, et al.*, No. 05-298 (JJF) (D. Del., May 16, 2005), awarded BR&B a fee in the amount of $862,500 as per the *Intel* settlement agreement. The fee was paid to BR&B on June 29, 2007.

6.    True and correct copies of the following documents are annexed to this declaration:

| | |
|---|---|
| Exhibit 2 | Memorandum in Opposition to the Retention of Jurisdiction Over Barrack Rodos & Bacine in this Arbitration, dated January 22, 2008; |
| Exhibit 3 | Ruling and Partial Final Award Regarding Arbitrability of Claims Alleged Against Respondent Barrack Rodos & Bacine, dated February 19, 2008; |
| Exhibit 4 | Letter from Daniel E. Bacine to Jennifer Metz, dated September 6, 2007; |
| Exhibit 5 | Letter from Daniel E. Bacine to Jennifer Metz, dated October 16, 2007; |
| Exhibit 6 | Letter from Daniel E. Bacine to Jennifer Metz, dated November 16, 2007; |
| Exhibit 7 | Demand for Arbitration and Claim in Arbitration, dated August 17, 2007; |
| Exhibit 8 | Of Counsel Agreement between Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, P.C., dated June 28, 2001, amended June 26, 2006; and |
| Exhibit 9 | Stipulation and Order, dated February 11, 2008. |

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed in Philadelphia, Pennsylvania, on February 29, 2008.

Daniel E. Bacine

# EXHIBIT 1

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES

| | | |
|---|---|---|
| In the Matter of the Arbitration Among<br>BALLON STOLL BADER & NADLER, P.C., | : | AAA Claim No. 13 194 01780 07 |
| Claimant, | : | |
| and | : | |
| A. ARNOLD GERSHON and<br>A. ARNOLD GERSHON, P.C., | : | **AFFIDAVIT OF DANIEL E.**<br>**BACINE IN OPPOSITION TO THE**<br>**RETENTION OF JURISDICTION** |
| Respondents, | : | **OVER BARRACK, RODOS &**<br>**BACINE BY THE ARBITRATOR** |
| and | : | |
| BARRACK, RODOS & BACINE, | : | |
| Respondent/Stakeholder. | : | |

I, Daniel E. Bacine, being duly sworn according to law, depose and say as follows:

1.      I am a partner of Barrack, Rodos & Bacine ("BR&B") and am authorized to make this affidavit on its behalf, without waiving BR&B's position that it is not required to participate in this proceeding.

2.      I have personal knowledge of the matters referred to herein except as noted.

3.      For the past 30 years, BR&B has concentrated its practice on litigation, particularly class action litigation under the federal securities laws, shareholder derivative litigation and class action litigation under the antitrust laws. Over the years, we have achieved notable results, most recently a settlement of over $6 billion in the *WorldCom* case; over $3 billion in the *Cendant* case; and over $1 billion in the *McKesson* case (settlement pending). We have substantial experience in litigating large and complex cases with extensive discovery

programs that involve millions of pages of documents and many depositions. Almost all of our cases require the retention of experts in various fields. Attached as Exhibit A is a copy of the firm's resume.

4.       A. Arnold Gershon ("Gershon"), who practices in our field, approached our firm in approximately November 2006 to inquire whether we had an interest in his joining us in our New York satellite office. Some lawyers in our firm who either knew or knew of Gershon thought favorably of him.

5.       I met with Gershon to discuss the possibility of his joining our firm. He explained that he had been unhappy with his then-current firm, Ballon Stoll Bader & Nadler, P.C. ("Ballon Stoll"), because of Ballon Stoll's inability or unwillingness to provide the support and resources he needed to properly litigate the kinds of complex and discovery intensive cases in which he was involved.

6.       He mentioned that one such case, among several, was *Seinfeld v. Barrett, et al.*, Case No. 05-298 (JJF) ("*Intel*"), which was pending in the District of Delaware. In that derivative litigation involving Intel Corp., Gershon explained to me that the Court, on May 31, 2006, had entered a scheduling order under Rule 16 of the Federal Rules of Civil Procedure that provided, among other things, that the plaintiff could take up to 80 depositions, most of which would involve west coast travel, commencing not earlier than October 1, 2006, and that the discovery deadline was less than a year away. Attached as Exhibit B is a copy of that order. He informed me that the defendants had recently produced 25,000 pages of electronically generated and stored documents, and that Ballon Stoll was both unable to commit appropriate personnel and unwilling to commit the financial resources necessary to review and analyze the documents

2

and then prepare for and execute the extensive discovery program in the *Intel* matter. Gershon said that there were other cases that were suffering for lack of Ballon Stoll's support.

7.      Our firm was well-acquainted with the defense counsel in the *Intel* case. We have been adverse to that firm in a number of cases over the years and have litigated (and continue to litigate) cases against the lawyers in that firm who were defending the case.

8.      Gershon's particular area of expertise is in shareholder derivative actions, an area in which we thought adding an experienced lawyer would be beneficial to our firm. In that regard, Gershon asked us to hire as well the associate he had been working with, who he said was also unhappy at Ballon Stoll. And because we had no secretarial support in our New York office (we had one lawyer there half time), Gershon proposed that we hire a secretary who had left Ballon Stoll several weeks earlier.

9.      Because of the uncertainty that the arrangement would be successful and the substantial financial commitment we would be making for salaries and expansion of our sublease to add the needed space, we proposed to Gershon that he could come with the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B. Gershon agreed, and that is the understanding that remains today. Gershon has no proprietary interest in BR&B and has no financial interest in any cases he brought to or works on at BR&B.

10.      In our conversation, Gershon said that he would work out an arrangement to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some. He did not at the time share with me the particulars of his arrangement with Ballon Stoll. Nor was I aware of the existence of the agreement that forms the basis for the

claims in this proceeding, pursuant to which Ballon Stoll contends BR&B is obligated to participate in this arbitration.

11.    Sometime in late April or early May 2007, Gershon informed me that while he and Ballon Stoll had agreed to divide the cases, Ballon Stoll claimed to retain a financial interest in one of the cases he brought with him, specifically *Intel*. But it was not until after I received Ballon Stoll's May 18, 2007, letter purporting to assert a charging lien against the *Intel* fee (which at that time had not yet been awarded, let alone paid), that Gershon shared with me the documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm. Attached as Exhibit C is an e-mail exchange that I received from Gershon in May 2007, reflecting a meeting of the minds on the division of cases and, except for *Intel* (about which there was no meeting of the minds), on the fees from those cases: Ballon Stoll and Gershon agreed that each would keep the fees if and when paid in the cases they each took in the division. I also saw for the first time a copy of the agreement that Gershon signed that contained the arbitration clause.

12.    By the time Gershon joined the firm on December 1, 2006, the defendants in *Intel* had produced the 25,000 pages of documents to review. We immediately assembled a group of lawyers and a paralegal to begin the task of organizing and reviewing the documents produced, in preparation for the extensive deposition program anticipated.

13.    Sometime in December 2006, the defendants inquired whether the plaintiff would be willing to entertain settlement discussions. Discussions then began that ultimately led to the settlement agreement filed with the Court on March 7, 2007. The settlement called for Intel to terminate the incentive compensation plan that was the subject of the lawsuit.

4

14.     The last term of the settlement negotiated was the counsel fee that defendants agreed to pay plaintiff, subject to the court's approval. The fee was negotiated at arm's length with defense counsel. The principal issue involved in the negotiations was the value of the settlement to Intel, i.e., how much Intel saved by terminating its incentive compensation plan. We valued the benefit high; defendants valued it low. We then negotiated and reached an agreement as to fees, as set forth in the settlement stipulation.

15.     Our brief in support of plaintiff's request that the Court award the fee as agreed emphasized the benefit of the settlement to Intel. The brief (without the expert's declaration) is attached as Exhibit D. The amount of time devoted to the case is mentioned in just one paragraph on page 23 and is the subject just one paragraph on page 24. In Gershon's declaration that accompanied the brief (attached as Exhibit E), Gershon, as required, presented plaintiff's "lodestar" information.[1] But plaintiff presented no argument that the requested fee had any relation to the lodestar. (Court's sometimes use the lodestar as a "cross-check" to see if the requested fee might result in a windfall to plaintiff's counsel. *See In re Cendant Corp. Derivative Actions*, 232 F. Supp. 2d 327, 340-41 (D.N.J. 2002).)

16.     Although Ballon Stoll was aware of the May 23, 2007, settlement hearing in *Intel* in advance and claimed an interest in the fee that might be awarded, Ballon Stoll did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition.

17.     Because the proceeding before Justice Lowe in *In the Matter of the Application of Ballon Stoll Bader & Nadler, P.C. v. A. Arnold Gershon, P.C., et al.*, Index No. 602108/07 (N.Y. Sup. Ct., June 29, 2007), has been raised as an issue, attached as Exhibit F is a copy of the transcript and order.

---

[1] "Lodestar" is the hours times the hourly rate.

18.     The facts set forth above are true and correct to the best of my knowledge.

Daniel E. Bacine

Sworn to and Subscribed

Before Me this 22nd day

of January, 2008.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Marianna Bonaiara, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Apr. 26, 2009
Member, Pennsylvania Association of Notaries

# EXHIBIT 1-A

## BIOGRAPHY OF BARRACK, RODOS & BACINE

*Barrack, Rodos & Bacine* is extensively involved in complex class action litigation, including securities, antitrust and RICO matters, representing both plaintiffs and defendants.  The Firm has significant leadership positions in complex litigation, having been appointed by courts as lead counsel in numerous class actions throughout the United States, including those brought pursuant to the provisions of the Private Securities Litigation Reform Act.

Among the many securities law, derivative and fiduciary duty cases where the Firm has been appointed lead counsel are the following:

*In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York;

*In re Cendant Corporation Litigation*, Master File No. 98-1664 (WHW), before the Honorable William H. Walls in the District of New Jersey;

*In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, before the Honorable Ronald M. Whyte in the Northern District of California;

*Waldrep v. ValueClick, Inc., et al.*, Case No. 07-05411 DDP (AJWx), before the Honorable Dean D. Pregerson in the Central District of California;

*In re The Mills Corporation Securities Litigation*, Civil Action No. 1:06-77 (GBL), before the Honorable Liam O'Grady in the Eastern District of Virginia;

*In re R & G Financial Corp. Securities Litigation*, No. 05 cv 4186, before the Honorable John E. Sprizzo in the Southern District of New York;

*In re Bridgestone Securities Litigation*, Master File No. 3:01-0017, before the Honorable Robert L. Echols in the Middle District of Tennessee;

*In re Daimler Chrysler  Securities Litigation*, No. 00-0993, before the Honorable Joseph J. Farnan, Jr. in the District of Delaware;

*In re Schering-Plough Securities Litigation*, Master File No. 01-CV-0829 (KSH/RJH), before the Honorable Katherine Hayden in the District of New Jersey;

*In re Apollo Group, Inc. Securities Litigation*, Master File No. CV 04-2147-PHX-JAT, before the Honorable James A. Teilborg in the District of Arizona;

*In re Chiron Corporation Derivative Litigation*, Case No. RG04180801, before the Honorable Ronald M. Sabraw in the California Superior Court for Alameda County;

*In re AOL Time Warner Shareholder Derivative Litigation*, Master File No. 02-CV-6302 (SWK), before the Honorable Shirley Wohl Kram in the Southern District of New York;

*In re Apple Computer, Inc., Derivative Litigation*, Lead Case No. 1:06CV066692, before the Honorable Joseph H. Huber in the Superior Court of the State of California, County of Santa Clara;

*In re Computer Sciences Corporation Derivative Litigation*, Lead Case No.: 06-CV-5288 MRP (Ex), before the Honorable Mariana R. Pfaelzer in the Central District of California;

*Dennis Rice v. Lafarge North America, Inc., et al.*, Civil No. 268974-V, before the Honorable Michael D. Mason in the Circuit Court for Montgomery County, Maryland;

*In re Monster Worldwide, Inc.*, Master Docket No. 1:06-cv-04622, before the Honorable Naomi Reice Buchwald in the Southern District of New York;

*In re Quest Software, Inc. Derivative Litigation*, Lead Case No. 06-cv-751 Doc(Rnbx), before the Honorable David O. Carter in the Central District Of California, Southern Division;

*In re Verisign, Inc. Derivative Litigation*, Master File No.: C-06-4165-PJH, before the Honorable Phyllis J. Hamilton in the Northern District of California;

*In re Seibel Systems, Inc. Securities Litigation*, Master File No. 3:04-cv-00983-CRB, before the Honorable Charles R. Breyer in the Northern District of California;

*In re Sunbeam Securities Litigation*, No. 98-8258-CIV-MIDDLEBROOKS, before the Honorable Donald M. Middlebrooks in the Southern District of Florida;

*In re Applied Micro Circuits Corp. Securities Litigation*, No. 01-CV-0649-K (AJB), before the Honorable Judith N. Keep in the Southern District of California;

*Jason Stanley, et al. v. Safeskin Corporation, et al.*, Lead Case No.: 99cv0454-BTM (LSP), before the Honorable Barry Ted Moskowitz in the Southern District of California;

*In re Hi/Fn, Inc. Securities Litigation*, Master File No. C-99-4531-SI , before the Honorable Susan Illston in the Northern District of California;

*In re Theragenics Corp. Securities Litigation*, No. 1:99-CV-0141 (TWT), before the Honorable Thomas W. Thrash in the Northern District of Georgia, Atlanta Division;

*Bell, et al. v. Fore Systems, Inc., et al.*, Civil Action No. 97-1265, before the Honorable Robert J. Cindrich in the Western District of Pennsylvania;

*In re Envoy Corp. Securities Litigation*, Civil Action No. 3-98-00760, before the Honorable John T. Nixon in the Middle District of Tennessee, Nashville Division;

*In re Paradyne Networks, Inc. Securities Litigation*, Case No. 8:00-CV-2057-T-17E, before the Honorable Elizabeth A. Kovachevich in the Middle District of Florida, Tampa Division;

*In re Ford Motor Co. Securities Litigation*, No. 00-74233, before the Honorable Avern Cohn in the Eastern District of Michigan, Southern Division;

*Smith v. Harmonic, Inc., et al.*, No. C-00-2287 PJH, before the Honorable Phyllis J. Hamilton in the Northern District of California;

*Smith, et al. v. Electronics For Imaging, Inc., et al.*, No. C-97-4739-CAL, before the Honorable Charles A. Legge in the Northern District of California; and

*Allan Zishka, et al. vs. American Pad & Paper Company, et al.*, Civil Action No. 3:98-CV-0660-D, before the Honorable Sidney A. Fitzwater in the Northern District of Texas, Dallas Division.

The firm has also been appointed lead counsel or to the leadership group in many antitrust law class action cases including:

*In re Automotive Paint Refinishing Antitrust Litigation*, MDL No. 1426, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania;

*In re Publication Paper Antitrust Litigation*, Docket No. 3:04 MD 1631 (SRU), before the Honorable Stefan R. Underhill in the District of Connecticut;

*In re Flat Glass Antitrust Litigation*, Master Docket Misc. No. 970550, MDL No. 1200, before the Honorable Donald E. Ziegler in the Western District of Pennsylvania;

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc., et al.*, No. CV-99-07796-GHK(Ctx), before the Honorable Florence Marie Cooper in the Central District of California, Western Division;

*Brookshire Brothers, Ltd., et al. v. Chiquita Brands International, Inc., et al.*, Lead Case No. 05-21962-Cooke/Brown, before the Honorable Marcia G. Cooke in the Southern District of Florida, Miami Division;

*In re Citric Acid Antitrust Litigation*, Master File No. 95-2963, before the Honorable Charles A. Legge in the Northern District of California;

*In re Graphite Electrodes Antitrust Litigation*, Master File No. 97-CV-4182 (CRW), before the Honorable Charles R. Weiner in the Eastern District of Pennsylvania;

*In re Sorbates Antitrust Litigation*, Master File No. C 98-4886 MCC, before the Honorable William H. Orrick, Jr. in the Northern District of California;

The Firm has extensive experience in trying to a jury nationwide class actions: *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC) (Southern District of New York) (2005 jury trial against accounting firm Arthur Andersen); *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147-PHX-JAT (District of Arizona) (jury trial began in November 2007); *Gutierrez v. Charles J. Givens Organization, et al.*, Case No. 667169 (Superior Court of California, County of San Diego), (jury verdict in excess of $14 million for plaintiff consumer class); *In re Control Data Corporation Securities Litigation*, 933 F.2d 616 (8th Cir. 1991); *Gould v. Marlon*, CV-86-968-LDG (D. Nev.) (jury verdict for plaintiff class); *Herskowitz v. Nutri/System, et al.*, 857 F.2d 179 (3rd Cir. 1988); and *Betanzos v. Huntsinger*, CV-82-5383 RMT (C.D. Cal.) (jury verdict for plaintiff class).

*Leonard Barrack*, senior partner in Barrack, Rodos & Bacine, is a graduate of Temple University Law School (J.D. 1968) where he was Editor in Chief of the Temple Law Reporter.  Mr. Barrack has been practicing in the area of securities class

4

and derivative actions, and corporate litigation generally, for 35 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees. He was admitted to the bar of the Supreme Court of Pennsylvania in 1969, and is also a member of the bars of the U.S. Supreme Court, the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Eastern District of Pennsylvania, and other federal circuit courts.

Mr. Barrack was appointed co-lead counsel in *In re WorldCom, Inc. Securities Litigation,* before the Honorable Denise L. Cote in the Southern District of New York. As counsel in *WorldCom,* Mr. Barrack was responsible for guiding both the vigorously prosecuted litigation – including the four-week trial against Arthur Andersen – as well as negotiating the ground-breaking settlements totaling more than $6.13 billion with WorldCom's underwriters, its outside directors, and Arthur Andersen, in the midst of trial. He was also co-lead counsel in *In re Cendant Corporation Litigation,* before the Honorable William H. Walls in the District of New Jersey, at $3.1 billion, the third largest securities class action settlement in history; *In re McKesson HBOC, Inc. Securities Litigation,* pending before the Honorable Ronald M. Whyte in the Northern District of California, which settled for $1.0425 billion; *In re Sunbeam Securities Litigation,* before the Honorable Donald M. Middlebrooks in the Southern District of Florida, among many others.

Mr. Barrack has had extensive trial and deposition experience in complex actions including the successful trial of derivative lawsuits under Section 14(a) of the Securities Exchange Act of 1934; *Gladwin v. Medfield,* CCH Fed. Sec. L. Rep. ¶95,012 (M.D. Fla. 1975), *aff'd,* 540 F.2d 1266 (5th Cir. 1976); *Rafal v. Geneen,* CCH Fed. Sec. L. Rep. ¶93,505 (E.D. Pa. 1972). In addition, Mr. Barrack has lectured on class actions to sections of the American and Pennsylvania Bar Association and is the author of Developments in Class Actions, The Review of Securities Regulations, Volume 10, No. 1 (January 6, 1977); Securities Litigation, Public Interest Practice and Fee Awards, Practicing Law Institute (March, 1980).

*Gerald J. Rodos*, partner in Barrack, Rodos & Bacine, is a graduate of Boston University (B.A. 1967) and an honor graduate of the University of Michigan Law School (J.D. Cum Laude 1970).  Mr. Rodos has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 33 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees.  He was admitted to the bar of the Supreme Court of Pennsylvania in 1971, and is also a member of the bars of the Supreme Court of the United States, the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Eastern District of Pennsylvania, and other federal circuit courts.

Mr. Rodos has been appointed lead counsel, *inter alia*, in *Payne, et al. v. MicroWarehouse, Inc., et al.*, before the Honorable Dominic J. Squatrito in the District of Connecticut; *In re Sunbeam Securities Litigation,* pending before the Honorable Donald M. Middlebrooks in the Southern District of Florida; *In re Regal Communications Securities Litigation*, before the Honorable James T. Giles in the Eastern District of Pennsylvania; *In re Midlantic Corp. Shareholders Securities Litigation*, before the Honorable Dickinson R. Debevoise in the District of New Jersey; and *In re Craftmatic Securities Litigation*, before the Honorable Joseph L. McGlynn, Jr. in the Eastern District of Pennsylvania, among many others.  Mr. Rodos also represents lead plaintiff in the *WorldCom* litigation.

Mr. Rodos is the co-author of <u>Standing To Sue Of Subsequent Purchasers For Antitrust Violations -- The Pass-On Issue Re-Evaluated</u>, 20 S.D.L. Rev. 107 (1975), and <u>Judicial Implication of Private Causes of Action</u>; <u>Reappraisal and Retrenchment</u>, 80 Dick. L. Rev. 167 (1976).

*Daniel E. Bacine*, partner in Barrack, Rodos & Bacine, is a graduate of Temple University (B.S. 1967) and of Villanova University School of Law (J.D. 1971), where he was an Associate Editor of the Law Review and a member of the Order of the Coif.  Mr. Bacine has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 31 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of

trustees.  He was admitted to the bar of the Supreme Court of Pennsylvania in 1971, and is also a member of the bars of the U.S. Court of Appeals for the Third Circuit and the U.S. District Court for the Eastern District of Pennsylvania.

Mr. Bacine is an experienced civil litigator in both the federal and state courts, having tried jury and non-jury securities and other commercial cases, including cases involving disputes between securities brokerage firms and their customers.  He has been lead or co-lead counsel in various class actions, including, *inter alia*, *In re American Travellers Corp. Securities Litigation*, in the Eastern District of Pennsylvania; *Kirschner v. CableTel Corp.*, in the Eastern District of Pennsylvania; *Lewis v. Goldsmith*, in the District of New Jersey; *Crandall v. Alderfer* (Old Guard Demutualization Litigation), in the Eastern District of Pennsylvania; and Rieff v. Evans (Allied Mutual Demutualization Litigation) in the District Court of Polk County, Iowa.

*William J. Ban*, partner in Barrack, Rodos & Bacine, is a graduate of Brooklyn Law School (J.D. 1982) and Lehman College of the City University of New York (A.B. 1977).  Over the past twenty-five years, Mr. Ban's practice of law has focused on securities, antitrust and consumer class action litigation on behalf of plaintiffs and he has participated as lead or co-lead counsel, on executive committees and in significant defined roles in scores of major class action litigations in federal and state courts throughout the country, including, more recently, *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York, and *In re Automotive Refinishing Paint Antitrust Litigation*, MDL Docket No. 1426, before the Honorable  R. Barclay Surrick in the Eastern District of Pennsylvania.  Mr. Ban is admitted in New York and Pennsylvania and is a member of the New York City Bar Association and the New York State Bar Association.

*Jeffrey A. Barrack*, partner in Barrack, Rodos & Bacine, is a graduate of Clark University (B.A. 1990), Boston College (M.A. 1992) and Temple University School of Law (J.D. 1996).  Mr. Barrack has served under the Philadelphia District Attorney and the United States Attorney assisting in the prosecution of complex white-collar crime in

the Eastern District of Pennsylvania. In addition to representing plaintiffs in securities fraud, antitrust and other class actions, Mr. Barrack has represented both plaintiff and defendant individual and corporate clients in environmental, consumer and business tort litigation in both state and federal courts.

Mr. Barrack was a principal member of the litigation team in *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote, a prosecution that yielded a record-breaking recovering of more than $6.13 billion for defrauded investors. Mr. Barrack served as the lead attorney on auditing and accounting issues in the case and participated in the four week trial in the District Court for the Southern District of New York of the only non-settling defendant, WorldCom's former auditor Arthur Andersen LLP. Mr. Barrack is also part of the trial team in *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147 PHX-JAT (District of Arizona). The trial began in November 2007, and is expected to continue through February 2008.

Mr. Barrack has successfully litigated other high-profile cases which received nationwide recognition, including *In re DaimlerChrysler AG Securities Litigation*, Master Docket No. 00-0993 (JJF), before the Honorable Joseph J. Farnan, Jr. in the District of Delaware; *In re Sunbeam Securities Litigation*, No. 98-8258-CIV-MIDDLEBROOKS, before the Honorable Donald M. Middlebrooks in the Southern District of Florida; *In re Citric Acid Antitrust Litigation*, Master File No. 95-2963, before the Honorable Charles A. Legge in the Northern District of California; and is currently litigating cases such as *In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, pending before the Honorable Ronald M. Whyte in the Northern District of California; and *In re: R & G Financial Corporation Securities Litigation*, Master File No. 05-Civ-4186 (JES), pending before the Honorable John E. Sprizzo in the Southern District of New York; and *In re Bridgestone Securities Litigation*, Master File No. 3:01-0017, pending before the Honorable Robert L. Echols in the Middle District of Tennessee.

Mr. Barrack also serves as a member of the Whitemarsh Township Public Employees' Retirement Committee in Montgomery County, Pennsylvania.

*Stephen R. Basser*, partner in Barrack, Rodos & Bacine, is a graduate of the American University, Washington D.C. (1973, B.A., English Literature with Honors) and Temple University School of Law, Philadelphia, Pennsylvania (1976, J.D., *cum laude*), where he was awarded the honor of "Highest Grade and Distinguished Class Performance" by its nationally renowned clinical trial litigation program.  Mr. Basser, the head of our San Diego, California, office, has been practicing in the area of securities class and derivative actions, and corporate litigation generally, over 24 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees.  He was admitted to the bars of the Supreme Court of Pennsylvania in 1976, and the Supreme Court of California in 1985.  He is also a member of the bars of a number of federal circuit courts of appeal and district courts.

Mr. Basser is an experienced civil litigator in federal and state courts and has successfully tried numerous civil jury and non-jury cases to verdict.  In addition to litigating product liability, medical malpractice, catastrophic injury, mass toxic tort and complex business disputes, Mr. Basser has extensive experience prosecuting securities class actions, including actions against Pfizer, Inc., Procyte Corp., Wall Data Corp., Louisiana-Pacific Corp., Samsonite Corp., TriTeal Corp., Sybase, Inc., Silicon Graphics, Inc., Orthologic Corp., Adobe, PeopleSoft, Inc., Safeskin Corp., and Informix Corporation.  Mr. Basser represented lead plaintiff the Florida State Board of Administration in *In re Applied Micro Circuits Corp. Securities Litigation*, Lead Case No. 01-cv-0649-K (AJB), which settled for $60 million, one of the largest recoveries in a securities class action in the Southern District of California since passage of the PSLRA. He is also serving as counsel for the NYSCRF, lead plaintiff in *In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, which has thus far achieved over $1 billion in settlements – the largest recovery in a securities class action in the Northern District of California.  Mr. Basser also is leading the trial team in *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147 PHX-JAT (District of Arizona).  The trial began in November 2007, and is expected to continue through February 2008.

9

*Regina M. Calcaterra*, partner in Barrack, Rodos & Bacine, is a graduate of Seton Hall University School of Law (J.D. 1996) and State University of New York at New Paltz (B.A. Political Science 1988). While at BR&B, Ms. Calcaterra served on the *WorldCom* litigation team, including the trial team that took Arthur Andersen, the only non-settling defendant to trial in the Spring of 2005. She came to the firm after serving as Deputy General Counsel of the New York City Employees' Retirement System (NYCERS), which is one of the largest public pension systems in the nation. Ms. Calcaterra has extensive experience in both law and government. She has also served as the Chief Lobbyist and Director of Intergovernmental Relations to the New York City Comptroller. In 1999, she was appointed to and served on New York Governor Pataki's Commission on Electronic Signatures and Records while serving as Technology Counsel at Prudential Securities. In addition, Ms. Calcaterra has served as an adjunct professor of public administration at the City University of New York's Baruch College. She represents BR&B at the National Association of Public Pension Attorneys; National Association of Pension Funds (UK); Council for Institutional Investors; International Corporate Governance Network and the Information Management Institute. She also lectures on securities-related matters to public pension fund counsel and trustees. Ms. Calcaterra is currently litigating federal securities cases such as *In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, pending before the Honorable Ronald M. Whyte in the Northern District of California and *In re R & G Financial Corp. Securities Litigation*, No. 05 cv 4186, pending before the Honorable John E. Sprizzo in the Southern District of New York.

*Chad A. Carder* is a 1999 honors graduate of The Ohio State University (B.A. Political Science) and a 2002 graduate of the College of William and Mary, Marshall-Wythe School of Law, where he was awarded a Graduate Research Fellowship and served as a Justice on the William and Mary Moot Court Board. Before joining the firm's Philadelphia office, Mr. Carder served as the law clerk to the Honorable Michael J. Hogan of the New Jersey Superior Court.

Since joining Barrack, Rodos & Bacine, Mr. Carder has litigated major securities class actions across the country, including his service as a member of the highly successful litigation team in *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York. He is currently a member of the litigation team in *In re The Mills Corporation Securities Litigation*, Civil Action No. 1:06-cv-00077 (GBL/TRJ), before the Honorable Liam O'Grady in the Eastern District of Virginia. Mr. Carder's complex civil litigation practice also includes the litigation of several antitrust class actions, shareholder derivative actions in various state and federal courts, including those arising out of instances of improper stock option backdating, and policyholder actions against insurance companies.

*Alexander Arnold Gershon,* partner in Barrack, Rodos & Bacine, is a graduate of the Georgia Institute of Technology (B.S. 1962), Emory University School of Law (L.L.B. 1964) and New York University (L.L.M. 1964). For more than 35 years, Mr. Gershon's practice has focused on representing plaintiffs in cases arising under the federal securities laws, state corporations laws, and similar kinds of matters in class actions, individual actions, and stockholders' derivative actions in the state and federal courts.

Mr. Gershon is an experienced civil litigator in federal and state courts and has contributed to the jurisprudence of class action settlements in cases such as *National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9 (2d Cir. 1981); has helped to establish important standards in shareholder derivative actions: *Seinfeld v. Barrett,* 2006 WL 890909 (D. Del. 2006), and *Vides v. Amelio,* 265 F.Supp.2d 273 (S.D.N.Y. 2003) (exceptions to the demand requirement in stockholders' derivative actions); *Lewis v. Vogelstein,* 699 A.2d 327 (Del.Ch. 1997), and *Kaufman v. Beal,* 1983 WL 20295 (Del.Ch. 1983) (standards for executive compensation); and contributed to the establishment of the standards of required disclosure under the federal securities laws when corporate stockholders are solicited to approve executive bonus plans seeking tax benefits under the Internal Revenue Code in *Shaev v. Saper,* 320 F.3d 373 (3d Cir. 2003).

11

*Jeffrey B. Gittleman*, a partner in Barrack, Rodos & Bacine joined the firm in 1998. Jeff is an honors graduate of Tulane University (B.A. 1993) and Temple University School of Law (J.D. 1996). Recently, Jeff was recognized by *Philadelphia Magazine* and *Pennsylvania Super Lawyers* as a 2006 Pennsylvania Rising Star.

Jeff has extensive experience litigating major antitrust class actions throughout the country, and has secured multi-million dollar recoveries against the manufacturers or producers of carbon fiber, automotive refinishing paint, graphite electrodes, flat glass, sodium gluconate, sorbates, polypropylene and nylon carpet, and metal building insulation. Currently, Jeff is serving on the Executive Committee in *Brookshire Brothers v. Chiquita Brands, et al.* (banana antitrust litigation) and in *In re Publication Paper Antitrust Litigation.*

In addition to representing plaintiffs in antitrust class actions, Jeff also has an active securities practice and is part of the team prosecuting *In re Schering-Plough Securities Litigation.* In May 2004, Jeff served as the lead trial attorney in *Meikrantz v. Janney Montgomery Scott, et al.,* where he obtained a substantial award for his shareholder clients. Jeff was also part of the team that represented Iridian Technologies, Inc. and its common shareholder-elected directors in the 2003 trial of *Equity Asset Investment Trust, Inc. v. John Daugman, et al.*

*Jeffrey W. Golan*, partner in Barrack, Rodos & Bacine, is an honors graduate of Harvard College (A.B. 1976) and the Georgetown University Law Center (J.D. 1980). Mr. Golan served in 1980-1981 as the law clerk to Judge Edwin D. Steel, III, of the United States District Court in the District of Delaware. He has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 20 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees. He was admitted to the bar of the Supreme Court of Pennsylvania in 1981, and is also a member of the bars of the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Eastern District of Pennsylvania, and other federal circuit courts.

Mr. Golan is an experienced civil litigator in both the federal and state courts representing plaintiffs and defendants in, *inter alia*, securities, antitrust and class action lawsuits. Mr. Golan was one of the principal attorneys responsible for litigating *In re WorldCom, Inc. Securities Litigation*, Master File No. 02 Civ. 3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York, with hands-on responsibility for the vigorously-prosecuted litigation (resulting in the historic $6.1 billion settlement) – including the four-week trial against Arthur Andersen. Mr. Golan also took leading roles in the prosecution of *In re Cendant Corporation Litigation*, before the Honorable William H. Walls in the District of New Jersey, one of the largest securities class action settlement in history; and of *In re DaimlerChrysler Securities Litigation*, before the Honorable Joseph Farnan in the District of Delaware.

In August 2003, Mr. Golan was also the lead attorney for the firm in a trial of an action in the Delaware Chancery Court, *Equity Asset Investment Trust, et al. v. John G. Daugman, et al.*, C.A. No. 20395, in which the firm represented Iridian Technologies, Inc. (the world leader in iris recognition technologies) and its common shareholder-elected directors. The case was brought against Iridian and its common directors on June 30, 2003, and was prepared for trial within two months.

Mr. Golan further regularly advises pension fund boards and executives on securities litigation and corporate governance issues.

*John L. Haeussler* is a graduate of Hamilton College (B.A. 1998) and Temple University School of Law (J.D., *cum laude*, 2001). He graduated from Temple in the top 10% of his class and was the recipient of the Lenard Sigal award. Before joining Barrack, Rodos & Bacine, Mr. Haeussler worked as a trial attorney for the Federal Defenders of San Diego, where he was lead counsel in eight federal jury trials and argued before the United States Court of Appeals for the Ninth Circuit.

*Robert A. Hoffman*, partner in Barrack, Rodos & Bacine, is a graduate of Rutgers University (B.A. 1980) (with high distinction) and Rutgers University School of Law - Camden (J.D. 1983). Mr. Hoffman clerked for the Honorable Charles R. Weiner,

13

United States District Court for the Eastern District of Pennsylvania, during the years 1984-1985. Mr. Hoffman, who manages our New Jersey office, has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 19 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees. He was admitted to the bars of the Supreme Court of Pennsylvania and Supreme Court of New Jersey in 1983, and is also a member of the bars of several federal circuit courts of appeal and district courts.

Mr. Hoffman has broad experience in prosecuting securities class actions in federal courts around the country. He is serving as counsel for the Florida State Board of Administration in *In re Schering-Plough Securities Litigation*, before the Honorable Katherine Hayden in the District of New Jersey. He was one of the lead attorneys representing plaintiffs in *In re MicroWarehouse Securities Litigation*, (D. Conn.) which resulted in a $30 million recovery for the plaintiff class. He also has significant experience in the trial and appeal of securities class actions.

*M. Richard Komins*, partner in Barrack, Rodos & Bacine, is a graduate of Brandeis University (A.B., *cum laude*, 1969) and the Georgetown University Law Center (J.D., *cum laude*, 1980) and was an editor of the journal <u>Law and Policy in International Business</u> (LPIB). Mr. Komins was admitted to the bar of the Supreme Court of Pennsylvania in 1980, and is also a member of the bars of the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Eastern District of Pennsylvania, and other federal circuit courts.

Mr. Komins has been practicing in the area of complex commercial civil litigation, including securities class action litigation for the last 22 years. He is currently serving as counsel for the NYSCRF, lead plaintiff in *In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, pending before the Honorable Ronald M. Whyte in the Northern District of California, and served as counsel for the CWA/ITU Negotiated Pension Plan, one of the lead plaintiffs in the *In re Sunbeam Securities Litigation*, and was responsible in large part for a $110 million settlement from Arthur Andersen LLP and

14

the $15.25 million, plus insurance, settlement (total of about $30 million) with the individual defendants in the case.

Lisa M. Lamb graduated, *summa cum laude*, from Villanova University School of Law in 2003, where she was a member of the Order of the Coif and an associate editor of the *Villanova Law Review*. She received her B.A. in psychology, with honors, from Princeton University in 2000.

Ms. Lamb's practice centers on the representation of investors, including state, local and union pension funds, in class and derivative actions, with a focus on cases brought under the federal securities laws. She was a member of the highly successful trial team in *In re WorldCom, Inc. Securities Litigation* — a prosecution that yielded a record-breaking recovery of more than $6.13 billion for defrauded investors. Ms. Lamb is also currently litigating, on behalf of injured investors, *In re Bridgestone Securities Litigation, In re The Mills Corporation Securities Litigation,* and *In re R&G Financial Corporations Securities Litigation,* among other securities cases. In addition, Ms. Lamb's practice includes the representation, in class action litigation, of business and other individuals who have been injured by price-fixing conspiracies in violation of the antitrust laws.

Before joining the firm, Ms. Lamb practiced at another national law firm in Philadelphia, where her practice focused on securities regulation, public and private equity and debt offerings, merger and acquisition transactions, and the counseling of clients with respect to corporate governance issues, obligations under the securities laws, and other general corporate matters.

Ms. Lamb is admitted to practice in Pennsylvania and before the U.S. District Court for the Eastern District of Pennsylvania.

Gloria Kui Melwani is a graduate of New York University (B.M. 2000) and a graduate of the Benjamin Cardozo School of Law (J.D. 2005). While at Cardozo, she was a Notes Editor of the *Cardozo Public Law, Policy & Ethics Journal.* Before joining

15

Barrack, Rodos & Bacine's New York office, Ms. Kui's practice focused on litigating stockholder derivative cases in state and federal courts.

**Leslie B. Molder,** partner in Barrack, Rodos & Bacine, is an honors graduate from the University of Michigan (A.B. *magna cum laude* 1980) as well as from the National Law Center at the George Washington University (J.D. *cum laude* 1983). Ms. Molder practices primarily in the area of complex civil litigation, including securities class actions, antitrust class actions and policyholder actions against insurance companies and has participated in the trials of a variety of commercial cases, including cases involving disputes between securities brokerage firms and their customers. Ms. Molder oversees the Firm's portfolio monitoring services for institutional clients. She is also the firm's settlement attorney, specializing in documenting and effectuating settlements of class actions and assisting clients throughout the settlement process.

**Mark R. Rosen,** partner in Barrack, Rodos & Bacine, is an honors graduate of the University of Pennsylvania (A.B. *summa cum laude* with distinction in political science 1976), where he was elected to Phi Beta Kappa, and the Harvard Law School (J.D. *cum laude* 1979). Mr. Rosen, who served as a law clerk to Judge Stanley S. Brotman, of the United States District Court for the District of New Jersey, has handled many trials and appeals as an experienced civil litigator representing plaintiffs and defendants in federal and state courts in, *inter alia*, constitutional, securities, environmental, consumer and other class action litigation.

Mr. Rosen has successfully litigated high-profile cases which received nationwide recognition. In *Strawn v. Canuso*, 140 N.J. 43, 657 A.2d 420 (1995), the New Jersey Supreme Court ruled in favor of his clients, a group of homeowners, in establishing that builders and real estate brokers must inform prospective buyers if the property is near a landfill. In *Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders*, 48 F.3d 701 (3d Cir. 1995), *on remand*, 931 F. Supp. 341 (D.N.J. 1996), *aff'd*, 112 F.3d 652 (3d Cir.), *cert. denied*, 118 S. Ct. 412, 413 (1997), Mr. Rosen represented an out-of-state recycling facility where the court struck down the New Jersey system of waste

"flow control," holding that it violated the constitutional protection for interstate commerce. At BR&B, Mr. Rosen handles a variety of matters, including securities class actions, antitrust class actions, and individual commercial actions. Mr. Rosen was member of the successful team that litigated *In re WorldCom, Inc. Securities Litigation*, before the Honorable Denise L. Cote in the Southern District of New York, to its landmark conclusion. He is currently litigating *In re Automotive Refinishing Paint Antitrust Litigation*, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania, and *In re Publication Paper Antitrust Litigation*, before the Honorable Stefan R. Underhill in the District of Connecticut, among others.

*Beth T. Seltzer* is a graduate of the University of Michigan (B.A. 2001) with a major in History, where she was a member of the Golden Key Club National Honors Society. Ms. Targan is also a graduate of Temple University School of Law (J.D. 2004), where she was on the Dean's List and received awards for distinguished class performance. At Temple, Ms. Targan was a member of the Women's Law Caucus and the Jewish Law Students' Association. Ms. Targan's practice is concentrated in securities and antitrust class action litigation.

*Samuel M. Ward* is a graduate of the University of California, Hastings College of Law (J.D. 2001), and a 1995 honors graduate of the University of California, San Diego (B.A. 1995). Before joining BR&B, Mr. Ward worked as a political consultant, managing both Congressional and State Assembly campaigns. At the firm, Mr. Ward has litigated numerous securities cases in federal district courts throughout the country. Mr. Ward is also part of the trial team in *In re Apollo Group, Inc. Securities Litigation*, Master File No. CV-04-2147 PHX-JAT (District of Arizona). The trial began in November 2007, and is expected to continue through February 2008.

*Frances Vilella-Vélez*, of-counsel to Barrack, Rodos & Bacine, is a graduate of Syracuse University College of Law, Syracuse, New York (J.D. 1977) and Swarthmore College (B.A. 1974). Ms. Vilella-Vélez began her legal career in 1978 as a trial attorney in the Office of the Regional Solicitor, U.S. Department of Labor, where she litigated

OSHA cases before the United States district courts and the Occupational Safety and Health Review Commission (OSHRC). She then served as the first law clerk for the Honorable Nelson A. Diaz, on the Court of Common Pleas of Philadelphia County, Philadelphia, Pennsylvania. During her tenure with Judge Diaz, Ms. Vilella-Vélez also served as a staff member on the Mayor's Task Force on Minority Employment in the Police Department, in Philadelphia, where she conducted legal and policy analyses of alternative proposals to increase minority employment in the Policy Department, and assisted in drafting the report to the mayor.

In *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements in excess of $6.13 billion. After a partial settlement with one group of defendants for in excess of $2.56 billion, the Court stated that *"the settlement amount ... is so large that it is of historic proportions."* The Court found that *"Lead Counsel has performed its work at every juncture with integrity and competence. It has worked as hard as a litigation of this importance demands, which for some of the attorneys, including the senior attorneys from Lead Counsel on whose shoulders the principal responsibility for this litigation rests, has meant an onerous work schedule for over two years."* The Court further found that *"the quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions. It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance."* The Court also found that *"In sum, the quality of representation that Lead Counsel has provided to the class has been superb"*. In approving the final settlements totaling $3.5 billion, in an opinion and order dated September 20, 2005, the Court stated *"The*

*impressive extent and superior quality of Lead Counsel's efforts as of May 2004 were described in detail in the Opinion approving the Citigroup Settlement. ...  At the conclusion of this litigation, more than ever, it remains true that 'the quality of representation that Lead Counsel has provided to the class has been superb.' ... At trial against Andersen, the quality of Lead Counsel's representation remained first-rate. .. The size of the recovery achieved for the class – which has been praised even by several objectors – could not have been achieved without the unwavering commitment of Lead Counsel to this litigation."*

The Court also found that *"Despite the existence of these risks, Lead Counsel obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country;"* and *"If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class."* *"It is only the size of the Citigroup and Underwriters' Settlements that make this recovery so historic, and it is likely that less able plaintiffs' counsel would have achieved far less."*

In *In re Cendant Corporation Litigation*, No. 98-CV-1664 (WHW) (D.N.J. December 7, 1999), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements with defendants in excess of **$3.18 billion**, more than three times larger than the next highest recovery ever achieved in a securities law class action suit by that time.  The *Cendant* settlement included what was, at the time, the largest amount by far ever paid in a securities class action by an issuing company (which, nearly ten years later, remains the second largest ever paid) and what was, and remains, the largest amount ever paid in a securities class action by an auditor.  The *Cendant* settlement further included extensive corporate governance reforms, and a contingency recovery of one-half the net recovery that Cendant and certain of its affiliated individuals may recover in on-going proceedings against CUC's former auditor.  The *Cendant* Court stated that *"we have all been favored with counsel of the highest competence and integrity and fortunately savvy in the ways of the law and the*

*market."* The Court found that the *"standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposed counsel were and are high in this action."* The Court further found that the result of lead counsel's efforts were *"excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."*

In *In re Automotive Refinishing Paint Antitrust Litigation,* 2:10-md-01426-RBS (E.D. Pa.), Barrack, Rodos & Bacine, co-lead counsel for a Class of direct purchasers of automotive refinishing paint, achieved settlements with five defendants in excess of $100 million. After reaching a settlement with the last two defendants remaining in the litigation, the Court stated, *"I want to commend counsel on both sides of this litigation. I think that the representation on both sides of this litigation is as good as I've ever seen in my entire professional career. Counsel worked together in this case. They frankly made the job of this Court very easy and I commend all of you for what you've done in this litigation."*

In *Payne v. Micro Warehouse, Inc.,* No. 3:96CV1920(DJS) (D. Conn: Sept. 30, 1999), where Barrack, Rodos & Bacine was co-lead counsel for the shareholder class, the Court noted *"the exceptional results achieved by plaintiffs' counsel,"* who *"were required to develop and litigate this complex case solely through their own efforts,"* and concluded that *"the benefit conveyed to the class plaintiffs amply supports the conclusion that the plaintiffs' counsels' work was exceptional."*

# EXHIBIT 1-B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FRANK D. SEINFELD,

        Plaintiff,

    v.

CRAIG R. BARRETT,
CHARLENE BARSHEFSKY,
E. JOHN P. BROWNE, D. JAMES GUZY,
REED E. HUNDT, PAUL S. OTELLINI,
DAVID S. POTTRUCK, JANE E. SHAW,
JOHN L. THORNTON, DAVID B. YOFFIE,
ANDREW S. GROVE and
INTEL CORPORATION,

        Defendants.

Civil Action No: 05-298 (JJF)

## RULE 16 SCHEDULING ORDER

        The parties, having satisfied their obligations under Fed. R. Civ. P. 26(f),

and consistent with the Court's April 10, 2006 Order, the Court enters the following Rule

16 Scheduling Order.

IT IS ORDERED that:

1. **Pre-Discovery Disclosures.** The parties will exchange by May 19, 2006 the

information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2. **Joinder of other Parties.** All motions to join other parties shall be filed on or before

June 15, 2007.

3. **Settlement Conference.** Pursuant to 28 U.S.C. §636, this matter is referred to

Magistrate Judge Thynge for the purposes of exploring the possibility of a settlement.

The parties shall contact Magistrate Judge Thynge to schedule a settlement conference so

as to be completed no later than the Pretrial Conference.

4. **Discovery.**

(a)  Exchange and completion of interrogatories, identification of all fact witnesses and document production shall be commenced so as to be completed by six months from the date of entry of this order.  All fact discovery, including all depositions, shall be completed by October 1, 2007.  Further document requests shall be permissible after commencement of depositions, upon discovery of the existence of other documents.

(b)  Maximum of 50 interrogatories by each party to any other party.

(c)  Maximum of 50 requests for admission by each party to any other party.

(d)  Maximum of 80 depositions by plaintiff(s) and 25 by defendant(s).  Depositions shall not commence prior to October 1, 2006.

(e)  Reports from retained experts required by Fed. R. Civ. P. 26(a)(2) are due from the plaintiff(s) by October 25, 2007; from the defendant(s) by November 15, 2007.

(f)  Any party desiring to depose an expert witness shall notice and complete said deposition no later than thirty (30) days from receipt of said expert's report, and all such depositions shall be completed by December 17, 2007, unless otherwise agreed in writing by the parties.

5. **Discovery Disputes.**

(a)  A party seeking discovery which the opposing party refuses to provide shall file a motion (no brief) pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local

Rule 37.1. Said motion shall not exceed a total of four (4) pages. An Answer to the Rule 37 motion, not to exceed four (4) pages, shall be filed within five (5) days of service of the motion. No reply is permitted.

(b) All papers shall set forth in a plain and concise manner the issue(s) in dispute, the party's position on the issue(s), and the reasons for the party's position.

(c) Upon receipt of the Answer, the movant shall notify Chambers by e-mail at jjf_civil@ded.uscourts.gov that the parties have completed briefing.

(d) Upon receipt of the movant's e-mail, the Court will determine whether a conference is necessary and advise the parties accordingly.

(e) There is no limit on the number of Rule 37 motions a party may file, unless otherwise ordered by the Court.

6. **Amendment of the Pleadings.** All motions to amend the pleadings shall be filed on or before June 15, 2007.

7. **Case Dispositive Motions.** Any case dispositive motions, pursuant to the Federal Rules of Civil Procedure, shall be served and filed with an opening brief on or before January 18, 2008. Briefing shall be pursuant to D. Del. LR 7.1.2. No case dispositive motion may be filed more than ten (10) days from the above date without leave of the Court.

8. **Applications by Motion.**

(a) Any applications to the Court shall be by written motion filed with the Clerk of the

Court in compliance with the Federal Rules of Civil Procedure and the Local Rules of Civil Practice for the United States District Court for the District of Delaware (Amended Effective January 1, 1996). Any non-dispositive motion shall contain the statement required by D. Del. LR 7.1.1. Briefs shall be limited to no more than ten (10) pages. Parties may file stipulated and unopposed Orders with the Clerk of the Court for the Court's review and signing. The Court will not consider applications and requests submitted by letter or in a form other than a motion.

(b) No facsimile transmissions will be accepted.

(c) No telephone calls shall be made to Chambers.

(d) Any party with a true emergency matter requiring the assistance of the Court shall e-mail Chambers at: jjf_civil@ded.uscourts.gov. The e-mail shall provide a short statement describing the emergency.

9. **Pretrial Conference and Trial.** After reviewing the parties' Proposed Scheduling Order, the Court will schedule a Pretrial Conference.

The Court will determine whether the trial date should be scheduled when the Scheduling Order is entered or at the Pretrial Conference. If scheduling of the trial date is deferred until the Pretrial Conference, the parties and counsel shall anticipate and prepare for a trial to be held within sixty (60) to ninety (90) days of the Pretrial Conference.

10. This Rule 16 Scheduling Order is subject to future amendment or modification upon a showing of good cause.

DATE: May 31, 2006 _____

_____
UNITED STATES DISTRICT JUDGE

729359v2

# EXHIBIT 1-C

# Arnold Gershon

**From:** Arnold Gershon
**Sent:** Thursday, November 30, 2006 12:57 PM
**To:** Arnold Gershon
**Subject:** counselship

*Disb = 659223*

As of December 1, 2006, AAG shall be moved out; BSBN shall take the cases on the A List; AAG shall take the cases on the B List; BSBN shall have no interest in fees in the B List cases, and AAG shall have no interest in fees in the A List cases. The exception is Chiron, 15194-002, where we are waiting for fees to be paid, and where the fee will go half to BSBN, one third to AAG, and one sixth to IB.

| A List (BSBN) | | Lodestar | Expenses |
|---|---|---|---|
| WorldCom | 14782-002 | $679,986.75 | $33,029.67 |
| Tyco | 15194-001 | 67,875.00 | 1,608.45 |
| Apple | 16583-001 | 625,005.00 | 20,657.05 |
| Hewlett Packard | 16946-001 | 44,362.50 | 882.45 |

| B List (AAG) | | | |
|---|---|---|---|
| Honeywell | 16091-001 | 482,268.75 | 16,576.41 |
| Fannie Mae | 16126-002 | 233,428.75 | 9,404.18 |
| Intel | 16582-001 | 291,238.75 | 5,328.52 |
| Morgan Stanley | 16631-001 | 21,320.00 | *421,64* |
| Lehman | 16890-001 | 151,170.00 | 6,347.46 |
| Microsoft | 16904-001 | 12,500.00 | ·267.11 |

*E Cnalwry 6944     30,300     1524.1*

Dated: November 30, 2006

*Boeing votp*

Gershon, A. Arnold

| From: | Dwight Yellen [dyellen@ballonstoll.com] |
|---|---|
| Sent: | Wednesday, December 27, 2006 1:18 PM |
| To: | Gershon, A. Arnold |
| Cc: | David Nadler; Howard Bader; Vano Haroutunian; Marshall Bellovin |
| Subject: | cooperation |

Attachments: 20061227131335.pdf

I attach a draft of what I was thinking about. It would need to be countersigned by you. We should talk about how
) handle Intel.

The attached counsel press bill might not be included in the disbursements for Honeywell.

How much was the check that was mailed?

Regards.

_____

wight Yellen
:llon Stoll Bader & Nadler, P.C.
50 Broadway - 14th Floor
ew York, NY 10018-2268
ww.ballonstoll.com
212 575 7900 x. 222
212 764 5060
Dyellen@ballonstoll.com
M: YellenLaw

nfidentiality Statement: The information contained in this electronic message is privileged and confidential information intended only for the owner of the email address
d as the recipient of this message. If you are not the intended recipient, or the employee, or agent responsible for delivering this message to the intended recipient, you
hereby notified that any disclosure, dissemination, distribution or copying of this message is strictly prohibited.

l'd          9696-E9Þ-ZI6-I          ⅄N-ƎNIϽⱯᗺ ꞘSOᗡOꓤ 'ꓘϽⱯꓤꓤⱯᗺ          d᎗£:Þ0 80 Þⵏ uɐՐ

p.1

December 8, 2006

Arnold Gershon, Esq.
Suite 1001
1350 Broadway
New York, New York 10018

*agershon @ barrack.com*

Re: BSB&N w/Gershon

Dear Arnold:

It was a pleasure working with you over the past few years. I wanted to enter into an agreement regarding the separation and continuing cooperation in various matters.

**Work in Process Summary.** I attach a Work in Process Summary dated November 30, 2006. This is a copy of what you and I reviewed on November 30, 2006 and I have indicated on the summary who is taking which cases.

**AAG Cases – Hard Copies/Electronic Copies.** For those cases indicated by an AAG, we will cooperate with you by entering into substitution of counsel, which you shall draft. Within ten days of such substitute, we will give you hard copies of the work in process through and including your departure. We will cooperate with Barrack's IT department to give you electronic copies of the work in progress report so that they can be imported into the Barrack's billing system.

**Payment of BSBN Expenses.** We will be entitled to be paid our expenses on the AAG case as indicated on the Work in Progress Summary solely out of the proceeds of a resolution of a case or related case by Barrack, or such successor firm that you may be affiliated.

**Monthly Reports.** You will give us monthly reports on the status of the AAG cases and/or respond to inquiries from us concerning the status.

**(Intel) 16582.001.** We will not share in any fees in the AAG cases listed with AAG, but for the 16582.001 matter, which we both refer to as **Intel**. We will be entitled to _____ percent of the fee which Barrack, or such successor firm that you may be affiliated, receives to be paid within ten (10) days of such receipt.

00108992;1

Arnold Gershon, Esq.
December 8, 2006
Page 2

**BSBN Cases.** Concerning the cases that are indicated as staying with BSBN, you will not share in any fee or expense on that matter. You have agreed to make yourself available for reasonable amount of time for discussions concerning strategy on these matters.

**(Chiron) 15194.002.** We do have a separate arrangement concerning 15194.002 generally referred to as the **Chiron** matter. Whatever fee and disbursements that are received and earmarked for BSBN (and that is anticipated within the next 30 days). The first money will be used to pay our disbursements in the amount of $6,276.73. The next fee will be paid: one-half to BSBN, one-third to AAG and one-sixth to IB.

**Mutual Non-Disparagement.** [add mutual nondisparagement]

**Agreement to Forward Emails and Phone Calls.** []

Very Truly Yours,

Dwight Yellen

/zf
Enclosures

00108992;1

## Arnold Gershon

**From:** Arnold Gershon
**Sent:** Thursday, November 30, 2006 12:57 PM
**To:** Arnold Gershon
**Subject:** counselship

*[handwritten: Disb = 6597.73]*

As of December 1, 2006, AAG shall be moved out; BSBN shall take the cases on the A List; AAG shall take the cases on the B List; BSBN shall have no interest in fees in the B List cases, and AAG shall have no interest in fees in the A List cases. The exception is Chiron, 15194-002, where we are waiting for fees to be paid, and where the fee will go half to BSBN, one third to AAG, and one sixth to IB.

| A List (BSBN) | | Lodestar | Expenses |
|---|---|---|---|
| WorldCom | 14782-002 | $679,986.75 | $33,029.67 |
| Tyco | 15194-001 | 67,875.00 | 1,608.45 |
| Apple | 16583-001 | 625,005.00 | 20,657.05 |
| Hewlett Packard | 16946-001 | 44,362.50 | 882.45 |
| | | | |
| B List (AAG) | | | |
| | | | |
| Honeywell | 16091-001 | 482,268.75 | 16,576.41 |
| Fannie Mae | 16126-002 | 233,428.75 | 9,404.18 |
| Intel | 16582-001 | 291,238.75 | 5,328.52 |
| Morgan Stanley | 16631-001 | 21,320.00 | *421,64* |
| Lehman | 16890-001 | 151,170.00 | 6,347.46 |
| Microsoft | 16904-001 | 12,500.00 | 267.11 |

*[handwritten: E (nalem 16944    30,300    1524.1]*

Dated: November 30, 2006

*[handwritten: Boeing wip]*

Ballon Stoll Bader & Nadler, P.C.
Work In Process Summary

As of Date (Inception - 11/30/2008)

Report ID:   AC1050 - 12455
Thursday, November 30, 2006

Printed By   BPAG
Page          1

| Client-Matter | Client Reporting Name | | Matter Reporting Name | | Billing Timekeeper | Last Active | Last Payment |
|---|---|---|---|---|---|---|---|
| **15194-00001** | Weisberg, Joan L | | v. Tyco  $0 | | AAG   Gershon, Arnold A. | 10/31/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| IB      Bizar, Irving | | | | | | | |
| | **Hours Worked** | **Hours To Bill** | **Amount** | **Expenses** | **Bill Total** | | |
| **Totals** | 142.45 | 142.45 | $142.45 | $1,608.45 | $1,750.90 | | |
| | | | | | | | |
| **15194-00002** | Weisberg, Joan L | | v. Chiron | | AAG   Gershon, Arnold A. | 11/20/2005 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| IB      Bizar, Irving | | | | | | | |
| | **Hours Worked** | **Hours To Bill** | **Amount** | **Expenses** | **Bill Total** | | |
| **Totals** | 310.50 | 310.50 | $310.50 | $6,276.73 | $6,587.23 | | |
| | | | | | | | |
| **16004-00001** | Seinfeld, Leatrice     $0 | | Seinfeld v. Boeing | | AAG   Gershon, Arnold A. | 8/9/2005 | 11/19/2004 |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | **Hours Worked** | **Hours To Bill** | **Amount** | **Expenses** | **Bill Total** | | |
| **Totals** | 1,206.70 | 1,211.20 | $1,505.00 | $26,878.66 | $28,383.66 | | |
| | | | | | | | |
| **16070-00001** | Frank David & Leatrice Seinfeld | | Verizon | | AAG   Gershon, Arnold A. | 9/26/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| IB      Bizar, Irving | | | | | | | |
| | **Hours Worked** | **Hours To Bill** | **Amount** | **Expenses** | **Bill Total** | | |
| **Totals** | 542.97 | 542.97 | $147,975.95 | $10,064.62 | $158,040.57 | | |
| | | | | | | | |
| **16091-00001** | Seinfeld, Frank David | | Honeywell International Inc $0 | | AAG   Gershon, Arnold A. | 11/20/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | **Hours Worked** | **Hours To Bill** | **Amount** | **Expenses** | **Bill Total** | | |
| **Totals** | 911.85 | 911.85 | $911.15 | $19,576.41 | $17,487.56 | | |

Report ID: AC1050 - 12465
Thursday, November 30, 2006

# Ballon Stoll Bader & Nadler, P.C.
## Work In Process Summary

As of Date [Inception - 11/30/2006]

Printed By  BPAG
Page  2

| Client-Matter | Client Reporting Name | Matter Reporting Name | | Billing Timekeeper | | Last Active | Last Payment |
|---|---|---|---|---|---|---|---|
| **16128-00002** | Bader, Jeffrey | v. Federal National Mort | $0 | AAG | Gershon, Arnold A. | 9/30/2006 | 1/20/2005 |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | Hours Worked | Hours To Bill | Amount | Expenses | | Bill Total | |
| **Totals** | 717.90 | 717.90 | $500.50 | $9,404.18 | | $10,003.68 | |
| | | | | *A AG* | | | |
| **18410-00001** | Gershon, A. Arnold $0 | Class Action re: VIOXX | | AAG | Gershon, Arnold A. | 11/8/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | Hours Worked | Hours To Bill | Amount | Expenses | | Bill Total | |
| **Totals** | 166.40 | 166.40 | $7.15 | $2,540.01 | | $2,547.16 | |
| | | | | *BSBN* | | | |
| **16582-00001** | Seinfeld, Frank David | v.Intel | $0 | AAG | Gershon, Arnold A. | 11/21/2006 | 7/28/2005 |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | Hours Worked | Hours To Bill | Amount | Expenses | | Bill Total | |
| **Totals** | 647.45 | 647.45 | $15,551.20 | $5,328.52 | | $20,870.72 | |
| | | | | *A AG* | | | |
| **16583-0001** | Bader, Jeffrey & Lauri | Apple Computer Inc.  $0 | | AAG | Gershon, Arnold A. | 11/29/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | Hours Worked | Hours To Bill | Amount | Expenses | | Bill Total | |
| **Totals** | 1,323.60 | 1,323.60 | $1,280.25 | $20,828.65 | | $22,117.90 | |
| | | | | *BSBN* | | | |
| **16595-0001** | Seinfeld, Frank David | v. Union Pacific Corp. | | AAG | Gershon, Arnold A. | 9/30/2006 | |
| Originating Timekeeper | | | | | | | |
| AAG   Gershon, Arnold A. | | | | | | | |
| | Hours Worked | Hours To Bill | Amount | Expenses | | Bill Total | |
| **Totals** | .00 | .00 | .00 | $.58 | | $.58 | |
| | | | | *w/o* | | | |

# Ballon Stoll Bader & Nadler, P.C.
## Work In Process Summary

Report ID:  AC1050 - 12455
Thursday, November 30, 2006

As of Date (Inception - 11/30/2006)

Printed By  BPAG
Page  3

| Client-Matter | Client Reporting Name | Matter Reporting Name | Billing Timekeeper | Last Active | Last Payment |
|---|---|---|---|---|---|

**16631-00001**  Stiffler, Jean  vs. Morgan Stanley  $0
Originating Timekeeper
AAG    Gershon, Arnold A.                                        AAG    Gershon, Arnold A.                    10/24/2005

| | Hours Worked | Hours To Bill | Amount | | Expenses | Bill Total | |
|---|---|---|---|---|---|---|---|
| Totals | 38.60 | 38.60 | $38.60 | A A G | $421.64 | $460.24 | 6/7/2006 |

**16836-00001**  Minter, Thomas  v. Minter
Originating Timekeeper
AAG    Gershon, Arnold A.                                        AAG    Gershon, Arnold A.                    10/31/2005

| | Hours Worked | Hours To Bill | Amount | | Expenses | Bill Total | |
|---|---|---|---|---|---|---|---|
| Totals | .00 | .00 | .00 | W i O | $.24 | $.24 | |

**16844-00001**  Einstein Costa Rica Coffee Co.  Trademark Inquiry/License
Originating Timekeeper
AAG    Gershon, Arnold A.                                        AAG    Gershon, Arnold A.                    9/15/2006

| | Hours Worked | Hours To Bill | Amount | | Expenses | Bill Total |
|---|---|---|---|---|---|---|
| Totals | 91.00 | 91.00 | $30,300.00 | A A G | $1,524.10 | $31,824.10 |

**16890-00001**  Bader, Lauri Cohen  Lehman Brothers  $0
Originating Timekeeper
AAG    Gershon, Arnold A.                                        AAG    Gershon, Arnold A.                    11/22/2005

| | Hours Worked | Hours To Bill | Amount | | Expenses | Bill Total |
|---|---|---|---|---|---|---|
| Totals | 384.80 | 384.80 | $20,503.80 | A A G | $6,347.46 | $26,851.26 |

**16904-00001**  Rand, Claire  Rand v. Microsoft Corp.  $0
Originating Timekeeper
AAG    Gershon, Arnold A.                                        AAG    Gershon, Arnold A.                    7/7/2006

| | Hours Worked | Hours To Bill | Amount | | Expenses | Bill Total |
|---|---|---|---|---|---|---|
| Totals | 22.75 | 22.75 | $22.75 | A A G | $267.11 | $289.86 |

# Ballon Stoll Bader & Nadler, P.C.
## Work In Process Summary

Report ID:  AC1050 - 12455
Thursday, November 30, 2006

As of Date (Inception - 11/30/2006)

Printed By   BPAG
Page   4

| Client-Matter | Client Reporting Name | | Matter Reporting Name | | Billing Timekeeper | | |
|---|---|---|---|---|---|---|---|
| | Hours Worked | Hours To Bill | Amount | Expenses | Bill Total | Last Active | Last Payment |
| **Grand Total** | 6,506.97 | 6,511.47 | $219,157.30 | $108,067.35 | $327,224.66 | | |

*** End Of Report ***

# EXHIBIT 1-D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRANK D. SEINFELD,                          )
                                            )
                        Plaintiff,          )
                                            )
            v.                              )        Case No.: 05-298 (JJF)
                                            )
CRAIG R. BARRETT, CHARLENE                  )
BARSHEFSKY, E. JOHN P. BROWNE,              )
D. JAMES GUZY, REED E. HUNDT,               )
PAUL S. OTELLINI, DAVID S. POTTRUCK,        )
JANE E. SHAW, JOHN L. THORNTON,             )
DAVID B. YOFFIE, ANDREW S. GROVE, and       )
INTEL CORPORATION,                          )
                                            )
                        Defendants.         )

---

## BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES

---

**FOX ROTHSCHILD LLP**
Francis G.X. Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920

Of Counsel:

*Attorneys for Plaintiff Frank D. Seinfeld*

Alexander Arnold Gershon
Gloria Kui
**BARRACK, RODOS & BACINE**
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (212) 688-0782
Fax: (212) 688-0783

Daniel E. Bacine
M. Richard Komins
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Dated: May 16, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................ 3

STATEMENT OF THE FACTS ......................................................................................... 4

I.  THE MERITS OF THE CASE ................................................................................. 4

II.  THE TERMS OF THE PROPOSED SETTLEMENT ...................................... 6

ARGUMENT ......................................................................................................................... 8

I.  THE PROPOSED SETTLEMENT IS FAIR,
    ADEQUATE, REASONABLE AND NOT
    A PRODUCT OF FRAUD OR COLLUSION ...................................................... 8

II.  THE PROPOSED NOTICE TO THE
    INTEL STOCKHOLDERS IS ADEQUATE ........................................................ 20

III.  PLAINTIFF'S REQUEST FOR ATTORNEYS'
    FEES AND EXPENSES IS REASONABLE ........................................................ 21

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961
(Del. Ch. 2003) ...................................................................................................... 12

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ................................. 8, 13, 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................. 10

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) .................... 22

*DeJulius v New England Health Care Employees Pension*, 429 F.3d 935, 945
(10th Cir. 2005) ...................................................................................................... 20

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), ........................................... 10, 11, 15

*Gladstone v. Bennett*, 153 A.2d 577, 583 (Del. Supr. 1959) ....................................... 13

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ..................................................... 9

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169 (1st Cir. 1983) ................. 9

*In re AOL Time Warner Shareholder Derivative Litig.* 2006 WL 2572114 (S.D.N.Y. 2006) ..... 11

*In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ........................................... 13, 16

*In re Cendant Corp. Litig.*, 264 F.3d 286 (3d Cir. 2001) ...................... 9, 13, 16, 18, 24

*In re Coleman Co. Inc.Sh. Lit.*, 750 A.2d 1202, 1210 (Del. Ch. 1999) ....................... 14

*In re General Motors Corp. Pick-Up Truck Tank Product Liab. Litig.*, 55 F.3d 768
(3d Cir. 1995) ............................................................................................ 9, 11, 15

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283
(3d Cir. 1998) ...................................................................................................... 9

*In re Ravisnet Technologies, Inc. Securities Litig.*, 2005 WL 906361 (E.D.Pa. 2005) ............... 10

*In re Rite Aid Corp. Securities Litig.*, 269 F. Supp. 2d 603 (E.D.Pa. 2003) .............. 22

*In re School Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990) ..................................... 8

ii

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)................................. 18

*Jennie Lee Williams, et al. v. First National Bank of Pauls Valley*, 216 U.S. 582 (1910) ............. 8

*Kerner v. Grossman*, 211 F.Supp. 397, 398 (S.D.N.Y 1962) ....................................................14

*Maher v Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ................................................................8

*Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir.) *cert. denied*, 346 U.S. 832 (1963)...........14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................................. 10, 20

*Neponsit Investment Co. v. Abramson*, 405 A.2d 97 (Del. 1979) ....................................................8

*Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) ...................................................................12

*Seinfeld v. Barrett*, 2006 WL 890909 (D.Del. 2006)................................................................12

*St. Clair Shores General Employees Retirement Sustem v. Eibeler*, 2006 WL 2849783
(S.D.N.Y 2006)....................................................................................................................12

*Sutton v. Medical Service Ass'n of Pennsylvania*, 1994 WL 246166 *5
(E.D.Pa. Jun. 8, 1994).........................................................................................................19

*Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 388 (D. Del. 2005) ....................17

*Vides v. Amelio*, 265 F. Supp. 2d 223 (S.D.N.Y. 2003)...............................................................12

*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986)......................................................................8

**Statutes**

26 U.S.C. §162(m)...................................................................................................................4

**Other Authorities**

Alba Conte, Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002)........................8, 19

Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006).........................4

Fed.R.Civ.P. Rule 23.1 ..................................................................................................1, 3, 14

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) .......................................................9

iii

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Frank D. Seinfeld ("Plaintiff") hereby respectfully requests, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, that this Court grant final approval of the proposed settlement (the "Settlement") of this stockholder's derivative action pursuant to the terms of a Stipulation of Settlement dated March 7, 2007 (the "Stipulation"), entered between Plaintiff, derivatively on behalf of Intel Corporation, the defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove (the "Individual Defendants") and nominal defendant Intel Corporation ("Intel" or the "Company"). The Settlement is fair, reasonable and adequate, and in the best interests of the Company. As detailed in the Stipulation, the Settlement will result and has resulted in substantial, valuable benefits to the Company and its stockholders.

Plaintiff filed the complaint on May 16, 2005 and moved for summary judgment on June 7, 2005. The Defendants made a motion to dismiss the complaint for lack of ripeness, thereby arguing that there was a lack of subject matter jurisdiction, and another motion to dismiss for failure to make a pre-suit demand on the board of directors pursuant to Fed.R.Civ. P. Rule 23.1. In response, Plaintiff argued that demand would have been futile, and that the claims were ripe for review because a cause of action arose when the allegedly false or misleading statements were made in the Proxy Statement. On March 31, 2006, the Court denied all motions.

On April 14, 2006, the defendants filed an answer denying many of the material allegations of the complaint and alleging affirmative defenses.

The Court entered a Scheduling Order on May 31, 2006, and pursuant to that order, parties began the discovery process, including producing documents, and serving notices of deposition. The defendants produced approximately 25,000 pages of documents on Summation, the computer program for storing and retrieving documents. Beginning in December 2006, the parties commenced extensive settlement discussions. These discussions culminated in a stipulation of settlement that was filed with the court on March 7, 2007.

2

## SUMMARY OF ARGUMENT

1.    The Settlement of complex litigation is favored by the courts.

2.    A proposed settlement should be approved by the court where it is fair, reasonable, and adequate.

3.    The notice to stockholders of a proposed settlement of a stockholder's derivative action complies with the requirements of Fed.R.Civ.P. Rule 23.1 where it is reasonably calculated to apprise them of the settlement and afford them an opportunity to object.

4.    Plaintiff's counsel in a stockholder's derivative action may recover fees and disbursements in the discretion of the court where the settlement confers a substantial benefit upon the Company.

3

## STATEMENT OF THE FACTS

### I.    THE MERITS OF THE CASE

The complaint at bar primarily addresses disclosure issues. Improving corporate disclosure has value. Dr. Cynthia A. Glassman, who was a member of the Securities and Exchange Commission from January 28, 2002 through July 14, 2006, and its acting chairman in the summer of 2005, in a speech on April 10, 2003 at Northwestern University School of Law, reiterated that improved corporate disclosure has value. The SEC itself, in Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006) (concerning improved disclosure of stock options values in proxy statements) said:

> Although difficult to quantify, disclosure under the amendments
> will benefit investors in terms of the transparency, completeness
> and accessibility of executive compensation disclosure.

It is difficult, but not impossible.

The complaint alleges that the Proxy Statement solicits the stockholders' approval of a cash incentive plan for its executive officers, called the Intel Corporation Executive Officer Incentive Plan as Amended and Restated Effective May 18, 2005 (the "EOIP" or the "Plan"). The Plan provides for payment of annual cash bonuses to Intel's executive officers.   The complaint alleges that the Proxy Statement contains the misrepresentation that the bonuses would be tax deductible under 26 U.S.C. §162(m) if the stockholders approve the Plan and that it has other defects as well.

Among the kinds of relief sought, the complaint prays for termination of the Plan. The settlement provides for such termination. We respectfully submit that this is an outstanding result and that the settlement fully merits this Court's approval.

4

Plaintiff is now, and has been since April 14, 1999, a stockholder of Intel, a Delaware corporation. For the annual meeting of Intel's stockholders on May 18, 2005, the individual defendants, acting as the Company's board of directors, distributed a Proxy Statement that solicited the stockholders' proxies to be voted in favor of the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, and the approval of an amendment and extension of the Plan.

The complaint alleges that the Proxy Statement represents that under the proposed Plan the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders. It further alleges that the Proxy Statement states that if the stockholders fail to approve the Plan, the Company would terminate it and instead would make payments to the executive officers in amounts similar to that which would have otherwise have been paid under the EOIP, a portion of which would not be deductible. It further alleges that, since the defendants intended to pay the incentive payments even if the Company's stockholders disapprove it, no vote of the stockholders would make it deductible.

In addition, complaint alleges that the Proxy Statement omitted material facts concerning material factors in the calculation of bonuses. These omissions impeded the stockholders' ability to assess whether it will be easy or difficult for executive officers to achieve large bonuses, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments.

5

Pursuant to the Preliminary Approval Order entered March 16, 2007, notice of the proposed settlement has been timely mailed to Intel stockholders, in the manner and form set forth in the Order.

Intel reports in Item 5 of its 2006 Form 10-K that as of February 16, 2007 there were approximately 195,000 Intel stockholders of record and a substantially greater numbers of holders in street name. As the affidavit of mailing reports, Intel mailed approximately 1.9 million notices to its stockholders and provided internet access to approximately 400,000 of its stockholders who have elected to receive electronic notification. To date, only two shareholders have filed formal objections to the proposed settlement or to the request for an allowance of attorneys' fees of $862,500, inclusive of out-of-pocket disbursements incurred in prosecuting the action. Plaintiff respectfully submits that the benefits of the proposed settlement provide more than ample consideration for dismissal of the claims asserted in the litigation and that the proposed settlement and fee application merit the court's approval.

## II.    THE TERMS OF THE PROPOSED SETTLEMENT

The proposed Settlement provides for substantial benefits to Intel and its shareholders. Intel has decided to terminate the EOIP at issue in this litigation. Plaintiff's expert, Pearl Meyer, a highly regarded authority on executive compensation and a founder of the consulting firm Steven Hall & Partners, is submitting herewith her declaration that the termination of the EOIP has a present value of $47,580,352.

Plaintiff's counsel have conducted a thorough investigation of the facts and law relating to matters set forth in the complaints in the Litigation. This investigation has included: reviewing both public and non-public documents; investigation of facts independent of the

6

formal discovery process; and communicating with counsel for the Defendants to discuss the factual and legal issues surrounding the Litigation. Plaintiff's counsel had the opportunity to conduct confirmatory discovery including deposition testimony that took place on May 1-2, 2007 in San Francisco, and to review details regarding bonuses paid.

Plaintiff's Counsel believe, based upon, among other things, the discovery that has been conducted and their expert's report, that the proposed Settlement is fair, reasonable and adequate to Intel and its shareholders.

7

## ARGUMENT

### 1.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, REASONABLE AND NOT A PRODUCT OF FRAUD OR COLLUSION

#### A.    Settlements Are Favored

It is well settled that "[c]ompromises of disputed claims are favored by the courts." *Jennie Lee Williams, et al. v. First National Bank of Pauls Valley*, 216 U.S. 582, 595 (1910). *See also Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993) ("Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible.") (quoting Fed.R.Civ.P. 16(c) advisory committee's note (1983)). Particularly in complex litigation, such as the stockholder's derivative action at bar, courts have a policy of encouraging settlement of such litigation that "otherwise could linger for years." *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990). *See also* ALBA CONTE, HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("[t]he compromise of complex litigation is encouraged by the courts and favored by public policy."). Indeed, the Supreme Court of Delaware in *Neponsit Investment Co. v. Abramson*, 405 A.2d 97 (Del. 1979), expressed that the law "favors the voluntary settlement" in the context of stockholders derivative actions. *Id.* (quoting *Rome v. Archer*, 197 A.2d 49, 53-54 (Del. 1964)).

This strong public policy in support of settlement is particularly true in derivative actions because "such litigation 'is notoriously difficult and unpredictable.'" *See Maher v Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citing *Schinvrel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)). *See also Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) ("[s]ettlement here is favored for the reasons that settlements generally are favored: disputes are resolved; the

8

resources of litigants and courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself."). Reflecting this strong public interest in the settlement of any complex lawsuit, courts have held that settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits," *Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983), and that "a district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial." *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974).

Although there is a strong judicial policy in favor of settlement, it is equally well established that "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *Girsch v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)). In exercising its broad discretion, however, the trial court does not "have the right or duty to reach any ultimate conclusions on the issues of the fact and law which underlie the merits of the dispute." *In re Cendant Corp. Litig.*, 264 F.3d 286, 301 (3d Cir. 2001) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

## B.    The Proposed Settlement Is Procedurally Fair

In assessing whether a settlement is fair, adequate and reasonable, courts routinely examine two types of evidence: the negotiating process that led up to the settlement and the substantive terms of the settlement. *In re General Motors Corp. Pick-Up Truck Tank Product Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995). As to the first type of evidence -- procedural fairness -- there is a presumption of fairness where the Court finds that the settlement negotiations were

9

"conducted at arms' length by experienced counsel after adequate discovery". *Id.* at 768. *See also* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

This proposed settlement is the result of extensive, arm's-length negotiations by counsel who are experienced in complex litigation, and who possess the skills and experience to achieve a fair settlement. Additionally, pursuant to the Order directing Notice to the Shareholders entered in this present case, copies of the full printed notice were mailed to all the shareholders. Accordingly, the form of notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950).

## C.    The Proposed Settlement Is Substantively Fair

When a district court reviews a proposed settlement agreement, it must "make findings that support the conclusion that the settlement is fair, reasonable, and adequate in sufficient detail to explain to class members and the appellate courts the reasons for approving or denying the settlement." *In re Ravisnet Technologies, Inc. Securities Litig.*, 2005 WL 906361 (E.D.Pa. 2005) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 785) (internal quotations omitted). In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit provided a non-exclusive list of factors the court should take into consideration when it is analyzing the fairness of a settlement agreement, a list derived from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The relevant factors are:

     (1)     the complexity, expense and likely duration of the litigation;

     (2)     the reaction of the class to the settlement;

     (3)     the stage of the proceedings and the amount of discovery completed;

     (4)     the risks of establishing liability;

     (5)     the risks of establishing damages;

     (6)     the risks of maintaining the class action through trial;

     (7)     the ability of the defendants to withstand a greater judgment;

     (8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

     (9)     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F2d at 156 (citing *Grinnell*, 495 F.2d at 463. Although *Grinnell* involved a class action settlement agreement, these nine factors are also applicable to stockholder derivative actions, as *Girsh* is a case involving class and derivative claims. *See also In re AOL Time Warner Shareholder Derivative Litig.* 2006 WL 2572114 *4 (S.D.N.Y. 2006).

### 1.    The Complexity, Expense and Likely Duration of the Litigation

This factor captures "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp.*, 55 F.3d at 812. This litigation qualifies as complex, as to both establishing liability and proving injury, and thus the first *Girsh* factor is satisfied. As described above, the complaint alleges that Intel's proxy statements contained misrepresentations concerning the tax deductions available for bonuses under the EOIP and omissions concerning

the measurement of bonuses. These are extremely complex issues. If the litigation were to proceed, these matters would be the subject of substantial expert opinion, thereby increasing the cost and duration of the litigation. Defendants strongly deny liability and dispute many of the factual and legal predicates underlying the derivative claim.

In addition to these individual defenses, derivative litigation generally raises certain procedural hurdles and risks for shareholders not found in either class or securities litigation, including, *inter alia*, the requirement to make a demand on the board of directors before proceeding to file a complaint or face heightened pleading requirements to demonstrate why such demand should be excused. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003). Further, Plaintiff had to "overcome the powerful presumptions of the business judgment rule." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993).

In negotiating the proposed Settlement, plaintiff's counsel, while strongly believing they had powerful arguments to overcome these hurdles, was nonetheless fully aware of the material risks of continuing to litigate the derivative action, particularly when weighed against the immediate and tangible benefits conferred upon the Company and its shareholders by the settlement. *Seinfeld v. Barrett*, 2006 WL 890909 (D.Del. 2006); *Vides v. Amelio*, 265 F. Supp. 2d 223 (S.D.N.Y. 2003), *but see St. Clair Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783 (S.D.N.Y 2006).

The further prosecution of the litigation would require plaintiff to conduct substantial additional complex and time consuming discovery on a range of issues including, for example: whether the proxy statements fully and accurately described the tax deductions available for bonuses under the Plan and the standards used to determine those bonuses. Further, a trial would

force plaintiff's and defendants' counsel to spend a significant amount of attorney, as well as expert, time not only during the trial itself but also in preparation for a trial because, for example, there would be contested pre-trial motions. The resolution of these motions and the trial would consume valuable judicial resources.

Finally, even assuming that plaintiff prevailed at trial, it is likely that defendants would file post-trial motions and appeals, thereby increasing the costs and duration of this litigation and further delaying relief to the Company. In contrast, the proposed Settlement provides an immediate benefit to the Company and its shareholders without the risks, complexity, duration, and expense of continuing litigation. *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).

## 2.    Reaction of the Intel Stockholders to the Settlement

The second factor, the reaction of the class to the settlement, examines the number of objections by the stockholders. A court will generally conclude that a small number of objections weigh in favor of approving the settlement. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993).

After preliminary approval of the settlement, approximately 2.3 million individual notices of settlement were sent out to all of the Intel stockholders. Of all the Intel stockholders, only two filed formal objections to the settlement. Mr. Asis Chaterjee filed an objection on May 8, 2007 to this court. Mr. Chaterjee feels that only a trial would adequately address the stockholders' claims against the defendants. But it is unnecessary to conduct a trial to determine whether a settlement should be approved. *In re Cendant Corp. Lit.*, 264 F.3d at 299; *Gladstone v. Bennett*, 153 A.2d 577, 583 (Del. Supr. 1959). ("Such a procedure would emasculate the very purpose for

which settlements are made."). He also expressed disapproval to the amount of attorneys' fees requested, but he presented no facts to support his opinion.

We also received a letter from Alexandra Petrich, dated May 10, 2007. She does not object to the fairness of the settlement or the fee. Instead, she objects to the settlement on the grounds that the notice did not give her a reasonable time to respond and that the record did not specifically support the amount that plaintiff's attorneys would seek for fees and expenses. She has not submitted proof of ownership of Intel stock, as required by the Notice of Settlement, at p.8. She has only furnished her name and the name of Morgan Stanley on the proxy card. Proper proof requires either a copy of a stock certificate or a statement from Morgan Stanley. The reason for requiring proof of stock ownership is that the mail might be sent to those who no longer own their stock, or who might sell their stock after the Notice is mailed.

Addressing her arguments concerning the timeliness of the Notice, Fed.R.Civ.P. Rule 23.1, does not state how much notice should be given. Federal courts have approved a month, *Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir.) *cert. denied*, 346 U.S. 832 (1963), or less, *Kerner v. Grossman*, 211 F.Supp. 397, 398 (S.D.N.Y 1962). *See also In re Coleman Co. Inc. Sh. Litig.*, 750 A.2d 1202, 1210 (Del. Ch. 1999), (Court noting its practice of providing 30 to 45 days). In the present case, the court required mailing not later than March 31, 2007 for a hearing on May 23, 2007, a period of 53 days.

As to the question Ms. Petrich raises about disclosure in the Notice of the basis for attorney's fees and expenses, Fed.R.Civ.P. Rule 23.1 leaves the content of the Notice to the discretion of the court. The form of the Notice reports the amount of fees and expenses to be

14

sought by plaintiff's attorneys, and in conformity with the usual practice, provides that the basis for those fees and expenses are submitted in the brief that we are filing today.

Ms. Petrich does not argue that the settlement, the fees, and the expenses are procedurally or substantively unfair. She does not seek an adjournment of the hearing or discovery on the matter of attorneys' fees and expenses. Instead, she seeks a second notice, but she has presented no legal argument to support such relief.

We respectfully submit that the court should overrule the Petrich objection.

Finally, One Peter Biondo also wrote a letter to the court objecting to the settlement. But as Mr. Biondo did not present evidence that he is a stockholder, his letter cannot be deemed to be a formal objection.

Hence, this factor weighs in favor of approval of the proposed settlement. *Bell Atlantic Corp. v. Bolger, supra.*

### 3.    The State of the Proceedings and the Amount of Discovery Completed

The third *Girsh* factor also supports preliminary approval of the proposed settlement at this time. To approve a proposed settlement, the Court is to examine "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating. *General Motors,* 55 F.3d at 813.

The parties in this case are well aware of the strengths and weaknesses of their claims and defenses, allowing them to assess the reasonableness of the proposed settlement. Plaintiff's counsel conducted a thorough factual and legal investigation of the claims alleged in the complaint, and reviewed Intel public filings, press releases and other public documents. They

15

have also considered the opinion of Pearl Meyer, a recognized authority on corporate executive compensation. This investigation has provided plaintiff's counsel with an adequate and satisfactory basis to evaluate the proposed settlement. Both sides have made engaged in extensive motion practice, having litigated dismissal and summary judgment motions. Plaintiff's counsel have deposed two Intel employees: Jodie Hickam, an executive compensation manager at Intel, and Sharon Gray, a director of tax compliance at Intel. Plaintiff's counsel have also reviewed numerous documents produced by Intel and those available in the public record. It is evident that the parties had an appreciation of the merits of the case during the course of their settlement negotiations, and this factor weighs in favor of the proposed Settlement Agreement.

### 4.     The Risks of Establishing Liability and Damages

Consideration of the fourth and fifth *Girsh* factors also supports preliminary approval of the proposed settlement. The Court is to analyze the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial, and not required to engage in a trial on the merits. "Indeed, one of the benefits of a full settlement is the avoidance of a determination of the merits." *In re Cendant Corp. Litig.*, 264 F.3d 286, 299 (3d Cir. 2001) (citing *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971)). "[E]ven the possibility that the class might have received more if the case had been fully litigated is not a reason not to approve the settlement. *See In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) ("the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

16

The outcome of the litigation in the case at bar is not certain. Plaintiff would have to establish at trial that the Company's proxy statements contained materially false or misleading statements, and omitted material facts, that the named executive officers were paid unauthorized compensation, and that the bonuses under the Plan were not tax deductible.

Plaintiff faces several hurdles in order to establish the proxy statements were in violation of Section 14(a) of the Exchange Act. In order to state a claim under Section 14(a), "the plaintiff must prove by a preponderance of the evidence that (1) that the defendant made a material misrepresentation or omission in a proxy statement; (2) which caused the plaintiff injury and (3) the proxy solicitation was an essential link in effecting the proposed corporate action." *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 388 (D. Del. 2005) (quoting *General Electric Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)). Plaintiff would have to establish that the objective performance goals were not established before the last day required by the Treasury Regulations or that positive, not negative, discretion was imposed by the compensation committee. Plaintiff's counsel are of the opinion that plaintiff had a serious risk that he would not prevail on this issue. See ¶ 16 of the Declaration of Alexander Arnold Gershon In Support of Plaintiff's Application for Final Approval of the Proposed Settlement and For Attorneys' Fees and Expenses ("Gershon Decl.").

Even as to the underlying merits, a jury would be presented with strongly conflicting views as to the adequacy of the disclosures in the proxy statements and the proper tax treatment of the bonuses awarded to Intel named executive officers. Plaintiff also has the heavy burden of demonstrating that the defendants breached their fiduciary duties of care and loyalty, and were not disinterested and independent. At least a majority of these director defendants might be able

17

to establish to a jury's satisfaction at trial, that they had sound reasons to believe that Intel's bonuses were deductible and that its disclosures of the bonus formula was proper and that they acted in good faith. Even if plaintiff were to prevail at trial, it is doubtful that a better result could have been obtained. (Gershon Decl. ¶17.)

While the complaint does not seek monetary damages, plaintiff would nevertheless be required to demonstrate that the requested equitable and injunctive relief was necessary to redress an injury to Intel and its stockholders resulting from the alleged misrepresentations and breaches of fiduciary duty. Issues pertaining to causation and injury could easily devolve into a battle of the competing experts, a situation fraught with risks for both sides in a hotly contested litigation. "Were a jury confronted with *competing* expert opinions of corresponding complexity, there is no compelling reason to think that it would accept Lead Plaintiff's determination rather than [the defendants'], which would posit a much lower figure for the Company's damages. This risk in establishing damages means that this factor weighs in favor of approval of the Settlement." *In re Cendant Corp.*, 264 F.3d at 239 (alterations added) (emphasis in original).

The proposed Settlement avoids the significant risks in establishing liability and damages and, therefore, the fourth and fifth *Girsh* factors support its preliminary approval.

## 5.    The Reasonableness of the Benefits Achieved

For the purposes of assessing the proposed settlement for final approval, the remaining *Girsh* factors all look to the reasonableness of the benefits achieved under the circumstances. "The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin:

reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (citing *Prudential*, 148 F.3d at 322).

These measures clearly provide redress for the misconduct alleged in the complaint. Termination of the Plan was precisely the relief sought by the complaint. As such, the proposed Settlement falls within the "range of reasonableness." *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257 (D. Del. 2002). The range of reasonableness of a settlement "recognizes the uncertainties of law and fact and the risks of litigation. *Id.*

### D.    This Settlement Is Not A Product of Fraud or Collusion

"[Courts] presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." ALBA CONTE, HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS §11.51 (4th ed. 2002) overreaching.") *See also Sutton v. Medical Service Ass'n of Pennsylvania*, 1994 WL 246166 *5 (E.D.Pa. Jun. 8, 1994) ("Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citing *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F.Supp. 482, 488-89 (E.D.Pa. 1985), *aff'd*, 791 F.2d 917(3d Cir. 1986)). The terms of the proposed Settlement were negotiated at arms' length by experienced counsel. The terms of the Settlement reflect a superior result in the face of significant challenges and litigation risks.

First, Plaintiff's counsel have extensive experience in stockholder's derivation litigation and well-deserved reputations for tenaciously prosecuting claims on behalf of stockholders. Second, Plaintiff's counsel are fully informed about the facts and the law of this case, having engaged in document discovery and confirmatory depositions and retained experts on several

19

relevant subjects. Third, all settlement negotiations were conducted at arms' length, including participation in one in-person settlement meeting and countless telephone conversations and emails with counsel for the Defendants.

## II.    THE PROPOSED NOTICE TO THE INTEL STOCKHOLDERS IS ADEQUATE

The proposed Notice to Intel shareholders dictated by the terms of the Stipulation fully satisfies due process under relevant state and federal rules and legal precedent. Specifically, the Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). *See also DeJulius v New England Health Care Employees Pension*, 429 F.3d 935, 945 (10th Cir. 2005) ("the question before us today is not whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement.").

The proposed form of Notice describes in plain English the terms and operation of the proposed settlement; the facts and considerations that caused plaintiff's counsel to conclude that the proposed settlement is fair and adequate; the maximum amount of plaintiff's counsel's fees and expenses that may be sought, the procedure for objecting to the proposed settlement, and the date, place, and time of the Settlement Hearing to consider the proposed settlement. With the Court's approval, the Notice has been sent by first class mail to each Intel Shareholder of record. In turn, the notice requested record holders that acted as nominees for beneficial holders to forward the notice.

This form of notice has fairly and reasonably apprised Intel shareholders of the proposed settlement, and of their options with respect thereto, and thus, fully satisfy due process requirements.

## III.    PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

Plaintiff's counsel seeks an award of attorneys' fees of $862,500 including out-of-pocket expenses aggregating $29,835.83 for services they have expended on a fully contingent basis. Pursuant to paragraph 9.1 of the Stipulation of Settlement, the Company has agreed to pay the amount.

Plaintiff submits that his application is fair and reasonable given the legal and factual issues and litigation risks described above, the efforts expended by his counsel, and the material benefits for Intel that Plaintiff's efforts have created by the settlement of this litigation.

### A.    The Request For Fees Is Reasonable Under The Percentage of Recovery Method

In a stockholder's derivative action, plaintiff's counsel may recover attorneys' fees. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The *Mills* Court defined "substantial benefit" as "something more than technical in its consequence and ... one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.* (quoting *Bosch v. Meeker Coop. Light & Power Ass'n*, 257 Minn. 362, 366-67, 101 N.W. 423 (1960)).

The amount of the award for attorneys' fees is committed to the sound discretion of the trial court. *See Dardovitch v. Haltzman*, 190 F.3d 125, 146 (3d Cir. 1999); *In re Cendant Corp.*

21

*Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002). Further, "the District Court's discretion in deciding whether to grant attorneys' fees in an equity case is exceedingly broad." *Dardovitch* at 146.

In a "common-fund" case, a district court should apply a "percentage-of-recovery" method of computing attorneys' fees. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001). The district court should consider the following factors:

(1)    The size of the fund created and the number of persons benefited;

(2)    The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3)    The skill and efficiency of the attorneys involved;

(4)    The complexity and duration of the litigation;

(5)    The risk of nonpayment; ˘

(6)    The amount of time devoted to the case by plaintiffs' counsel;

(7)    The awards in similar cases.

*Gunter v. Ridgwood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). "These factors need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d at 337.

**I.    The size of the fund created and the number of persons benefited.**

The rule is, "as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *Id.* This case is not a "mega"-fund case, which generally require awards of at least $100 million. Hence, this factor weighs in favor of approving the requested fee.

2.    **The presence or absence of substantial objections by members of the class to the settlement terms and/fees requested by counsel.**

As noted above, only one stockholder has filed an objection to the settlement. Hence, this factor weighs in favor of approval of the requested fee.

3.    **The skill and efficiency of the attorneys involved.**

Plaintiff's counsel is highly skilled and experienced in shareholder derivative suits. The firm specializes in securities class actions and derivative actions and obtained numerous favorable results. "The single clearest factor reflecting the quality of counsel's services is the result obtained. *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).

4 .    **The complexity and duration of the litigation and the amount of time devoted by plaintiff's counsel.**

This factor overlaps with the first *Girsh* factor, and it has already been demonstrated that this factor weighs in favor of the settlement, and holds true for the requested fee. The litigation at bar, if not for the proposed settlement, "would take on Dickensian dimensions." *In re Rite Aid Corp. Securities Litig.*, 269 F. Supp. 2d 603, 608 (E.D.Pa. 2003). It cannot be disputed that this is a complex case. The case at bar has been ongoing since 2005 and has been the subject of a great deal of discovery and motion practice. Plaintiff's counsel has survived two motions to dismiss filed by the defendants, and undertook discovery that includes reviewing thousands of pages of documents produced by Intel and consultation with an authority on corporate executive compensation. Plaintiff's counsel have conducted confirmatory depositions and engaged in the negotiations resulting in the settlement agreement. The requested fee should be approved, for Plaintiff's counsel's active participation in the litigation.

23

5.      The risk of nonpayment.

This factor is present whenever there is a likelihood that a "successful verdict will go uncollected because of a defendant's potential bankruptcy, insolvency, or lack of assets." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d at 339 (citing *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72, 100 (D.N.J. 2001)).

6.      The awards in similar cases

The Third Circuit noted that most fee awards range "from nineteen percent to forty-five percent of the settlement fund." *In re Cendant PRIDES*, 243 F.3d at 736. The court in *In re Ikon*, 194 F.R.D. 166 (E.D.Pa. 2000) noted that the median is about twenty-five percent and thirty percent is not uncommon. *Id.* at 194.

Here, the settlement is worth $47,580,352. The sought after fees for Plaintiff's attorneys is $862,500 which represent less than 2 percent of that amount. Such a request is well within the range of similar securities litigation.

B.      The Request for Fees is Reasonable
        Under the Lodestar Method

After the Court has examined the above factors for the appropriateness of the fee award, the next step is to cross-check the reasonableness to Plaintiff's counsel's lodestar. *In re Cendant Corp., erivative Action Litig.*, 232 F. Supp. 2d at 340-341 (citing *Gunter*, 223 F.3d at 190). The lodestar calculation is determined by multiplying the number of hours the attorneys reasonably worked on a case by a reasonably hourly billing rate for such services "given the geographical area, the nature of the services provided, and the experience of the lawyer." *Gunter* at 195 n.1

## CONCLUSION

For the foregoing reasons, plaintiff respectfully request that the proposed settlement is fair, reasonable and adequate, and merits the approval of the court, and that plaintiff's request for an award of $862,500 in attorneys' fees and expenses should be granted.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:  /s/ Francis G.X Pileggi
Francis G.X. Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920
fpileggi@foxrothschild.com
srennie@foxrothschild.com

*Attorneys for Plaintiff Frank D. Seinfeld*

Of Counsel:

Alexander Arnold Gershon
Gloria Kui
**BARRACK, RODOS & BACINE**
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (212) 688-0782
Fax: (212) 688 0783

Daniel E. Bacine
M. Richard Komins
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Dated: May 16, 2007

WM1A 99935v1 05/17/07

# EXHIBIT 1-E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -against- | )   Case No.: 05-298 |
| | ) |
| CRAIG R. BARRETT, CHARLENE | ) |
| BARSHEFSKY, E. JOHN P. BROWNE, D. | ) |
| JAMES GUZY, REED E. HUNDT, | ) |
| PAUL S. OTELLINI, DAVID S. | ) |
| POTTRUCK, JANE E. SHAW, JOHN L. | ) |
| THORNTON, DAVID B. YOFFIE, | ) |
| ANDREW S. GROVE, and | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF ALEXANDER ARNOLD GERSHON IN SUPPORT OF PLAINTIFF'S APPLICATION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES

I, ALEXANDER ARNOLD GERSHON, hereby do declare as follows:

1.    I am a member of the bar of the State of New York, and I was admitted to the bar of this court, *pro hac vice*, by order entered June 24, 2005. I am a partner in the firm of Barrack, Rodos & Bacine. My firm and I are of counsel to Frank D. Seinfeld, the plaintiff in this action.

2.    I make this declaration in support of the proposed settlement of this stockholder's derivative action and the payment of attorneys' fees and expenses.

3.    Plaintiff commenced this action on May 16, 2005 by the filing of a verified complaint. The jurisdiction of this court is founded upon 15 U.S.C. 78aa and upon 28 U.S.C. §1367.

4.    This is a stockholder's derivative action on behalf of Intel Corporation, a Delaware corporation (the "Company" or "Intel").

5.    The complaint alleges that for the annual meeting of Intel's stockholders on May 18, 2005, the individual defendants, acting as Intel's board of directors, distributed a Proxy Statement that solicited the stockholders' proxies to be voted in favor of the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, and the approval of an amendment and extension of the Intel Corporation Executive Officer Incentive Plan as Amended and Restated Effective May 18, 2005 (the "Plan" or the "EOIP").

6.    The complaint alleges that the Proxy Statement represents that under the proposed Plan the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders. It further alleges that the Proxy Statement states that if the stockholders fail to approve the Plan, the Company would terminate it and instead would make payments to the executive officers in amounts similar to that which would have otherwise have been paid under the EOIP, a portion of which would not be deductible. It further alleges that, since the defendants intended to pay

-2-

the incentive payments even if the Company's stockholders disapprove it, no vote of the stockholders would make it deductible.

7.    In addition, complaint alleges that the Proxy Statement omitted material facts concerning material factors in the calculation of bonuses. These omissions impeded the stockholders' ability to assess whether it will be easy or difficult for executive officers to achieve large bonuses, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments.

8.    Plaintiff filed the complaint on May 16, 2005 and moved for summary judgment on June 7, 2005. The Defendants made a motion to dismiss the complaint for lack of ripeness, thereby arguing that there was a lack of subject matter jurisdiction, and another motion to dismiss for failure to make a presuit demand on the board of directors pursuant to Fed.R.Civ. P. Rule 23.1. In response, Plaintiff argued that demand would have been futile, and that the claims were ripe for review because a cause of action arose when the allegedly false or misleading statements were made in the Proxy Statement. On March 31, 2006, the Court denied all motions.

9.    On April 14, 2006, the defendants filed an answer denying many of the material allegations of the complaint and alleging affirmative defenses.

10.    The Court entered a Scheduling Order on May 31, 2006, and pursuant to that order, parties began the discovery process, including producing documents, and serving notices of deposition. The defendants produced approximately 25,000 pages of documents on Summation, the computer program for storing and retrieving documents. Beginning in

-3-

December 2006, the parties commenced extensive settlement discussions. These discussions culminated in a stipulation of settlement that was filed with the court on March 7, 2007.

11.    Pursuant to the Preliminary Approval Order entered March 16, 2007, notice of the proposed settlement has been timely mailed to Intel stockholders, in the manner and form set forth in the Order. Defendants' counsel will file an affidavit of mailing on May 16, 2007.

12.    Intel reports in Item 5 of its 2006 Form 10-K that as of February 16, 2007, there were approximately 195,000 Intel stockholders of record and a substantially greater number of holders in street name. To date, only two shareholders have filed formal objections to the proposed settlement or to the request for an allowance of attorneys' fees of $862,500, inclusive of out-of-pocket disbursements incurred in prosecuting the action. Plaintiff respectfully submits that the benefits of the proposed settlement provide more than ample consideration for dismissal of the claims asserted in the litigation and that the proposed settlement and fee application merit the court's approval.

13.    The proposed Settlement provides for substantial benefits to Intel and its shareholders. Intel has decided to terminate the EOIP at issue in this litigation. Plaintiff's expert, Pearl Meyer, herself a highly regarded authority on executive compensation and a founder of the consulting firm Steven Hall & Partners, is submitting herewith her declaration that the termination of the EOIP has a present value of $47,580,352.

14.    Plaintiff's counsel have conducted a thorough investigation of the facts and law relating to matters set forth in the complaints in the Litigation. This investigation has included: reviewing both public and non-public documents; investigation of facts independent

-4-

of the formal discovery process; and communicating with counsel for the Defendants to discuss the factual and legal issues surrounding the Litigation. Plaintiff's counsel had the opportunity to conduct confirmatory discovery including deposition testimony that took place on May 1-2, 2007 in San Francisco, and to review details regarding bonuses paid.

15.    Plaintiff's Counsel believe, based upon, among other things, the discovery that has been conducted and their expert's report, that the proposed Settlement is fair, reasonable and adequate to Intel and its shareholders.

16.    As to the allegations in the complaint concerning the description of the annual bonus, plaintiff's counsel have obtained through discovery the documentation and testimony that establishes that the performance goals were established before the last day required by the Treasury Regulations, and that negative discretion was imposed by the compensation committee of the board of directors to reduce the amounts payable. In the opinion of his attorneys, plaintiff had only a remote chance to prevail on that part of the case.

17.    A s to the underlying merits, a jury would be presented with strongly conflicting views as to the adequacy of the disclosures in the proxy statement and the proper tax trreatment of the bonuses awarded to Intel named executive officers. Plaintiff also has the heavy burden of demonstrating that the defendants breached their fiduciary duties of care and loyalty, and were not disinterested and independent. At least a majority of these director defendants might be able to establish to a jury's satisfaction at trial, that they had sound reasons to believe that Intel's bonuses were deductible and that its disclosures of the bonus

-5-

formula was proper and that they acted in good faith. Even if plaintiff were to prevail at trial, it is doubtful that a better result could have been obtained. (Gershon Decl. ¶17.)

18.    The Company has sent notice to the stockholders. See the affidavit of mailing to be filed May 16, 2007.

19.    Our computerized, contemporaneous time and expense reports are attached as Exhibit 1. The total lodestar to date is $606,284.50, and the total expenses to date are $29,835.83. They include neither the time to prepare the application for fees and expenses, nor the time to prepare for the hearing scheduled for May 23, 2007.

20.    I have been engaged in the practice of law for 41 years and have substantially limited my practice to stockholders' litigation for nearly 36 years. I was a sole practioner for most of that time, but early on I was for four years an associate of Abraham L. Pomerantz and William E. Haudek in their law firm. I have litigated significant cases that have been cited in law reviews: See *Vides v. Amelio*, 265 F.Supp.2d 273 (S.D.N.Y 2003); Treatises: see *Shaev v. Saper*, 320 F.3d 373 (3rd Cir. 2003); *The Business Lawyer*: see *Resnik v. Swartz*, 303 F.3d 147 (2nd Cir. 2002); law school case books (*Bratton*, Cases & Materials on Corporate Finance (Foundation Press, 5th ed. 2003); see *Lewis v. Vogelstein*, 699 A.2d 327 (Del.Ch. 1977), and elsewhere; see *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2nd Cir. 1981). This is an incomplete list.

21.    For the foregoing reasons, I respectfully request the court to approve the settlement and to award the fees and expenses in the amount of $862,500, as provided in the Stipulation of Settlement.

-6-

22.    I further declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
      May 16, 2007

Alexander Arnold Gershon (AG3809)

INTEL\AGGSETTLEDEC

-7-

# EXHIBIT 1

**Intel Corp. Derivative Litigation**
**Barrack, Rodos & Bacine**

Time Period:  Inception through May 2007

| | Total Hours*/ | Hourly Rates | Lodestar |
|---|---|---|---|
| **Partners:** | | | |
| Daniel E. Bacine | 64.75 | $650.00 | $42,087.50 |
| Alexander Arnold Gershon | 533.25 | $650.00 | $346,612.50 |
| M. Richard. Komins | 1.00 | $570.00 | $570.00 |
| Mark R. Rosen | 6.00 | $570.00 | $3,420.00 |
| | | | |
| **Associates:** | | | |
| Gloria Kui | 156.25 | $275.00 | $42,968.75 |
| | | | |
| **Paralegals:** | | | |
| Stephanie A. McConaghy | 52.75 | $175.00 | $9,231.25 |
| | | | |
| **Grand Totals:** | **814.00** | | **$444,890.00** |

*/ In addition, several attorneys spent time working on this case under my direction at my former firm for an aggregate lodestar of $66,724.50.

## Intel Corp. Derivative Litigation

| Description | Expenses This Report |
|---|---|
| Computer and Other Research Fee(s) | $6,612.28 |
| Courier & Overnight Delivery Services | $40.80 |
| Expert and Investigative Fee(s) and Services | $17,482.00 |
| Miscellaneous (other disbursements) | $37.44 |
| Postage | $176.84 |
| Reproduction | $965.46 |
| Telephone | $310.45 |
| Transcript | $1,496.48 |
| Travel/Meals/Meetings | $1,918.76 |
| **TOTAL EXPENSES:** | **$29,040.51** |

B/ATTY LOC: 01   PHILADELPHIA                    FOX ROTHSCHILD LLP                    Page 15
BILLING ATTORNEY: 0492   JOHN A. ROTHSCHILD      DETAILED BILLING REPORT              (RUN 05/16/07  11:07    1
                                                 PROFORMA # 1264451                   THRU 05/15/07

CLIENT  025161     GERSHON, ARNOLD (ESQUIRE)         LAST DATE BILLED                    FEES and DISBURSEMENTS
MATTER  025161.00001  SECURITIES LAW CLAIMS AS LOCAL COUNSEL IN DELANA   DATE BILLED THRU
                                                     LAST PAYMENT DATE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10947550 | 04/26/07 | RECEIVE AND FORWARD LETTER FROM SHAREHOLDER | .20 | 0029 | PILEGGI, F C. | 80.00 | 93,710.00 |
| 10947568 | 04/27/07 | RECEIVE AND REPLY TO E-MAILS AND TELEPHONE CONFERENCE WITH ARNOLD ON OPEN ISSUES | .40 | 0029 | PILEGGI, F C. | 160.00 | 93,870.00 |
| 10955276 | 04/30/07 | RECEIVE AND REPLY AND REVIEW MULTIPLE E-MAILS RE: SETTLEMENT ISSUES | .40 | 0029 | PILEGGI, F G. | 160.00 | 94,030.00 |
| 10969064 | 05/01/07 | FOLLOW-UP ON STATUS OF SETTLEMENT | .20 | 0029 | PILEGGI, F G. | 80.00 | 94,110.00 |
| 10982239 | 05/07/07 | RECEIVE AND FORWARD LETTERS AND CALL FROM INTEL SHAREHOLDER | .40 | 0029 | PILEGGI, F G. | 160.00 | 94,270.00 |
| 10990291 | 05/09/07 | DISCUSS PENDING ISSUES WITH ATTORNEY GERSHON | .40 | 0029 | PILEGGI, F G. | 160.00 | 94,430.00 |
| 10990152 | 05/11/07 | TELEPHONE CONFERENCE WITH ATTORNEY GERSHON RE: SETTLEMENT ISSUES AND E-MAILS | .60 | 0029 | PILEGGI, F G. | 240.00 | 94,670.00 |

                                                   251.70    *TIME VALUE TOTAL*    94,670.00

-------------------------------TIMEKEEPER SUMMARY-------------------------------

| TKPR | TITLE | TIMEKEEPER | BILLED RATE | BILLED HOURS | BILLED VALUE | LAST ENTRY DATE |
|---|---|---|---|---|---|---|
| 0029 | PARTNER | PILEGGI, F G. | 391.11 | 209.90 | 82,094.00 | 05/11/07 |
| 1161 | PARTNER | RENNIE, S K. | 300.86 | 41.80 | 12,576.00 | 04/24/07 |

------DISBURSEMENT SUMMARY------

| CODE | DESCRIPTION | AMOUNT |
|---|---|---|
| 101 | WESTLAW, RESEARCH | 31.14 |
| 20 | COURT FILINGS | 275.00 |
| 27 | DEPOSITION/TRANSCRIPT | .00 |
| 76 | COPIES | 14.08 |
| 77 | MESSENGER SERVICE/DELIVERY | 3.00 |
| 82 | MESSENGER SERVICE/FEDERAL EXPRESS | 41.72 |
| 84 | PHOTOCOPYING | 186.40 |
| 85 | TELEPHONE CHARGES | 218.98 |
| 98 | TELECOPYING COSTS | 25.00 |

              TOTAL DISBURSEMENTS              795.32


FEES VALUE           94,670.00        **  TOTAL FEES & DISBURSEMENTS              95,465.32

# EXHIBIT 1-F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application Of

BALLON STOLL BADER & NADLER, P.C.,                    Index No. 602108/07

                          Petitioner,

For Provisional Relief In Aid of Arbitration
Pursuant to NYCPLR §7502(c)

        - against -                                   **NOTICE OF ENTRY**

A. ARNOLD GERSHON, P.C., A. ARNOLD
GERSHON and BARRACK, RODOS & BACINE,

                    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        PLEASE TAKE NOTICE that the attached is a true and correct copy of an Order filed and

entered in the County Clerk's Office on July 10, 2007.

Dated: New York, New York            Yours, etc.
       November 29, 2007

                             A. Arnold Gershon

                        A. ARNOLD GERSHON, P.C.

                        By:
                            A. Arnold Gershon
                            1350 Broadway, Suite 1001
                            New York, New York 10018
                            212-688-0782
                            212-688-0783 (Fax)
                            agershon@barrack.com

TO:

Susan Schneiderman, Esq.
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway – 14th Floor
New York, New York 10018

Daniel E. Bacine, Esq.
Barrack Rodos & Bacine
2001 Market Street, Suite 3300
Philadelphia, PA 19103

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ HON. RICHARD B. LOWE, III _____          PART __SC__

_____ Justice

Ballon Stoll

- v -

Gershon

INDEX NO. _602108/07_

MOTION DATE _6/30/07_

MOTION SEQ. NO. _001_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits _____ | |
| Replying Affidavits _____ | |

Cross-Motion: ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

FILED

JUL 10 2007

NEW YORK
COUNTY CLERK'S OFFICE

For reasons stated on the record of June 30, 2007, the motion is denied.

Dated: _6/30/07_

HON. RICHARD B. LOWE, III

J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Check one: ☒ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST   ☐ REFERENCE

1

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: CIVIL TERM:  PART 56
---------------------------------------------------X
In the Matter of the Application of

BALLON STOLL BADER & NADLER, P.C.,

                    Petitioner,

For Provisional Relief In Aid of Arbitration Pursuant
to NYCPLR 7502(c)

            - against -


A. ARNOLD GERSHON, P.C., A. ARNOLD GERSHON and
BARRACK, RODOS & BACINE,

                    Respondent.

---------------------------------------------------X
Index No. 602108/07
                        60 Centre Street
                        New York, New York 10007
                        June 29, 2007


B E F O R E:  HONORABLE RICHARD B. LOWE III, J.S.C.


A P P E A R A N C E S :

        BALLON STOLL BADER & NADLER, ESQS.
        Attorneys for Petitioner
        1450 Broadway
        New York, New York 10018
        BY:  SUSAN SCHNEIDERMAN, ESQ.


        BARRACK, RODOS & BACINE, ESQS.
        Attorneys for Respondent
        1350 Broadway
        New York, New York 10018
        BY:  ALEXANDER ARNOLD GERSHON, ESQ.


                    MICHAEL MANISTER
                    OFFICIAL COURT REPORTER

1           - Proceedings -

2

3           THE COURT:  This is your order?

4           MS. SCHNEIDERMAN:  Yes, it is, Judge.

5           THE COURT:  I'll hear you.

6           MS. SCHNEIDERMAN:  The parties, your

7    Honor, as I'm sure you know from reading the

8    motion papers, had operated under an of-counsel

9    agreement for a period of years whereby

10   Mr. Gershon's professional corporation operated

11   by him was of counsel to our firm.

12          This dispute involves a sum of money

13   that is being paid by virtue of an attorney fee

14   award in connection with a derivative action

15   pending in the United States District Court for

16   the District of Delaware which will be paid to

17   the current firm with which Mr. Gershon is a

18   partner.  My understanding from the order is that

19   it is required to be paid within 14 business days

20   of this past Monday or Tuesday.  Whether or not

21   it will be paid within that time and when within

22   that time we don't know.

23          When Mr. Gershon left the firm, there

24   was discussion concerning the division of the

25   various matters that he was handling.  There was

26   one matter that it's clear from all the papers,

3

1          - Proceedings -

2     no matter whose side of the story you look at,

3     that was not agreed upon, and that was the matter

4     of this case that we referred to as Intel that is

5     pending in the District of Delaware.

6          The reason was very simple.  It was

7     clear when Mr. Gershon left that the Intel case,

8     which he had worked on for a period of

9     approximately a year and a half while he was with

10    our firm and which the billing statement

11    generated fees and disbursements of approximately

12    $300,000 during that period of time, was about to

13    heat up.  And it was known that this was a case

14    that was going to have what we would refer to as

15    a payoff at the end of the day.  And we had

16    invested substantial time and effort, hours,

17    including associates and support staff and all

18    the rest that goes with the office on that.

19          I think it's clear from the papers that

20    there was never an agreement as to the division

21    of Intel.  Once we learned that there was a

22    settlement agreement in Intel and a court order

23    regarding attorney's fees, we communicated with

24    Mr. Gershon concerning the payment of our share

25    of those fees.

26          Now, you will see that Mr. Gershon takes

1           - Proceedings -

2      the position that those fees were awarded to

3      Barrack, Rodos & Bacine.  That's not correct.

4      These were awarded to the plaintiff, plaintiff's

5      attorney's fees.  The Court's direction was that

6      they be paid to the Philadelphia office of

7      Barrack, Rodos & Bacine.  As far as I can tell,

8      Barrack, Rodos & Bacine is simply a stakeholder

9      that would be holding the funds and disburse them

10      to whomever is entitled to get them.

11           It's clear from the papers that

12      Mr. Gershon submitted to the Court in Delaware

13      that he included the time that was spent while at

14      our firm in his application for attorney's fees.

15      We therefore had no reason to object to it.  He

16      included the time, he included the disbursements.

17      He also included the time spent by local counsel

18      in Delaware on behalf of the plaintiff, who I

19      anticipate is not having a problem getting paid.

20           Mr. Gershon has made it very clear that

21      he does not believe that we are entitled to

22      anything other than maybe reimbursement of our

23      $5,000 plus in out-of-pocket disbursements with

24      respect to the case.

25           The agreement between the parties

26      required arbitration and arbitration has been

5

1                     - Proceedings -

2         commenced at the American Arbitration

3         Association.

4                     Based upon our firm's experience over

5         several years with Mr. Gershon, we do know that

6         Mr. Gershon has financial difficulties.  We have

7         no cause of action directly against his new firm,

8         Barrack, Rodos & Bacine.  We are concerned that

9         if the arbitration goes forward without some

10        guarantee that this corpus of money is preserved

11        for us to whatever amount there is, and I think

12        statistically about approximately 60 or so

13        percent of the work was performed while

14        Mr. Gershon was at our firm, but if this corpus

15        of funds is not preserved, it's our concern, and

16        I think rightfully so, that when the arbitration

17        is finally determined, there will not be any

18        corpus left nor will there be any assets to

19        attach belonging to either Mr. Gershon or A.

20        Arnold Gershon, P.C., to which we can satisfy

21        that portion of the attorney fee award.

22                    So all we are asking for is that that

23        corpus be kept intact, that it be paid into court

24        or a bond be posted in which case they will be

25        able to disburse the money and we would have

26        recourse against the surety bond in order to get

6

```
 1                        - Proceedings -
 2          paid, or if Barrack Rodos & Bacine is willing to
 3          put it up in an escrow account, I'm sure that
 4          would be acceptable as well.  Our goal is that
 5          the money does not disappear.
 6                    One other thing.  I was handed
 7          Mr. Gershon's opposing papers this morning about
 8          five minutes before the court opened.  First I
 9          noticed that contrary to the CPLR requirements,
10          since he is a party, he was to have made an
11          affidavit in opposition.  Instead he made an
12          affirmation.  To the extent that's meaningful to
13          your Honor, I wanted to call it to your attention
14          because it is contrary to the CPLR rules.
15                    Nowhere in his papers does he address
16          all the work that was performed while at Ballon
17          Stoll Bader & Nadler.  There is no place where he
18          addresses the content of the billing records that
19          are attached to my Order to Show Cause.
20          Essentially, the only statement I can gather from
21          his presentation is that we had an agreement, you
22          don't get Intel and, therefore, you get zero, of
23          which, of course, I don't agree.
24                    Thank you, Judge.
25                    MR. GERSHON:  Your Honor, my name is
26          Arnold Gershon.  I represent the respondents.
```

1                          - Proceedings -

2                   I have prepared papers in response to

3          the Order to Show Cause.  May I hand them up now?

4                   A party seeking an attachment under CPLR

5          7502 must satisfy the requirements that you must

6          satisfy to obtain a preliminary injunction,

7          including establishment of a likelihood of

8          success on the merits and a showing that the

9          balance of equities lies in favor of the mover.

10                  Moreover, as the First Department has

11         acknowledged and recognized, the remedy of

12         attachment is a harsh remedy, and anyone seeking

13         to obtain an attachment must overcome the

14         substantial burdens that apply when seeking an

15         attachment and all inferences are drawn in favor

16         of the respondent.

17                  At bar the movant has no claim at all to

18         the fees in Intel because there is no right that

19         exists under either the of-counselship agreement

20         or the agreement made when the parties separated.

21                  THE COURT:  Wait a second.  When you

22         first became of counsel, wasn't there an

23         agreement that if a derivative action was

24         brought, that your right would be 50 percent of

25         the attorney's fees and the firm would receive 50

26         percent of the attorney's fees?

**MICHAEL MANISTER, OFFICIAL COURT REPORTER** (646) 386-3095

8

- Proceedings -

1

2          MR. GERSHON:  Yes.

3          THE COURT:  And isn't the current action

4     that we speak of a derivative action?

5          MR. GERSHON:  Yes, it is.

6          THE COURT:  And wasn't it brought while

7     you were with that firm?

8          MR. GERSHON:  Yes, it was.

9          THE COURT:  So why do you say that there

10    is no agreement that this particular case is

11    subject to the terms of that agreement?

12         MR. GERSHON:  Because the agreement does

13    not provide a mechanism for unbundling the cases

14    in the event of a termination.

15         There are multiple ways of doing this.

16    One way would have been for Ballon Stoll to

17    simply have retained the cases that I brought,

18    work them and send me a fee if they were to

19    recover.  Another way would have been for me to

20    take all the cases and pay them the appropriate

21    share of the fee, if any, in any case that was

22    resolved favorably.

23         We chose a middle course:  Ballon Stoll

24    retained some of the cases and I took some of the

25    cases.  And the basis of the division was the

26    amount of lodestar accumulated in the cases, so

9

- Proceedings -

2  that Ballon Stoll retained cases with an

3  accumulated aggregate lodestar of approximately

4  $1,400,000, and I took cases with an aggregate

5  lodestar of approximately $1,300,000.

6      Now, everybody agreed with that and the

7  record shows that.  In fact, I received an e-mail

8  from Ballon Stoll about a month after I had left

9  reciting what we had done and said let's talk

10 about Intel.  I responded to that e-mail, giving

11 my comments on what was proposed and saying

12 let's -- I said in response, yes, let's talk

13 about Intel.  That was in January.  I heard

14 nothing from Ballon Stoll until the beginning of

15 May when they suddenly decided they wanted to

16 know what was going on in Intel.

17      Well, in fact, Intel is a public matter,

18 it's on the website of the U.S. District Court

19 for the District of Delaware.

20      THE COURT:  Mr. Gershon, you are arguing

21 that because this particular case was not

22 discussed, ergo, it goes to you.

23      MR. GERSHON:  I'm reciting the history.

24      In fact, Ballon Stoll agreed on the

25 division of cases.

26      THE COURT:  Right.  Did it include

10

1                         - Proceedings -

2           Intel?

3                     MR. GERSHON:  Yes.

4                     THE COURT:  Well, factually now I'm

5           hearing something very different.

6                     MR. GERSHON:  I was to take the Intel

7           case.  Everybody agreed with that.

8                     THE COURT:  Is that accurate?

9                     MS. SCHNEIDERMAN:  No, sir.

10                    THE COURT:  Look, this is the part that

11          is somewhat annoying to the Court.  When a lawyer

12          will get up and say, "Judge, the wall behind you

13          is white" and the other lawyer will get up and

14          say, "Judge, the wall behind you is black" --

15          this isn't a dispute of an interpretation of a

16          legal principle, this is factual.

17                        Either in the division of the cases that

18          the firm had at the time Intel was included or it

19          was not.  Which is it?

20                    MS. SCHNEIDERMAN:  Your Honor, even

21          Mr. Gershon in his papers acknowledges that in

22          his parting discussions with the senior partners

23          of our firm it was stated that we wanted a

24          percentage of the Intel fee, that we were not

25          agreeing to the lists that Mr. Gershon had given

26          us of you take these cases and I will take these

11

1          - Proceedings -

2      cases that would specifically exclude Intel from

3      that list.

4              THE COURT:  Are you parsing now; in

5      other words, you take my question to say that

6      Intel was included in terms of the cases that you

7      would take but not -- but you seem to leave out

8      there was a dispute as to whether or not you were

9      to share any of the fees.

10             MR. GERSHON:  As my papers show, we

11     agreed that I would take certain cases, Ballon

12     Stoll would retain other cases.  Among the cases

13     I would take was Intel.  And the question was

14     would Ballon Stoll retain any fee interest in

15     Intel.

16             My position is, having divided the cases

17     roughly equal according to accumulated aggregate

18     lodestar, and since I had not agreed to any

19     particular --

20             THE COURT:  Let me make this very easy.

21             This dispute is for money damages.  And

22     you are seeking injunctive relief when at the end

23     of the day what you are really seeking are money

24     damages.  That is the issue that will be decided

25     by the arbitrator.  And for you to offer as a

26     reason for this Court to enjoin the disbursement

12

- Proceedings -

1
2      of these fees or to require a bond to be posted,
3      et cetera, you are speculating that somehow
4      Mr. Gershon may be judgment-proof by the time the
5      arbitrator renders a decision.  I don't know on
6      what basis you come to that conclusion, but it is
7      speculative at best.  And so for that reason your
8      application is denied.
9              MS. SCHNEIDERMAN:  Judge, if I might,
10     while you are correct that ultimately it is money
11     damages, this is a little bit different from a
12     typical case where money damages is requested.
13             THE COURT:  And why is that?
14             MS. SCHNEIDERMAN:  Because there is a
15     specific fund, there is a specific corpus, there
16     is specific property which is this fund of money
17     that is going to flow from Intel to a bank
18     account of Barrack Rodos & Bacine.  It is not a
19     question does Mr. Gershon owe us money or do we
20     owe Mr. Gershon money, it is a question of the
21     division of a specific fund of money which will
22     be dissipated.
23             THE COURT:  Whether it is specific or
24     not, it's still money damages.  And the only
25     basis that you are arguing that the Court
26     interfere here is an assumption or a speculation

13

1         - Proceedings -

2     that in the end Mr. Gershon is not going to be

3     financially capable of paying whatever judgment

4     the arbitrator awards to you, if in fact the

5     arbitrator does award you that judgment.

6         MS. SCHNEIDERMAN:  The funds are also

7     the subject of a charging lien that we have

8     served as we have notified all parties of.  In

9     that respect, we have even a greater security

10    interest.

11        THE COURT:  That's another avenue.

12    That's not what's before the Court.

13        Your application is denied.  Thank you.

14        I'm sorry.  On reflection, I also wanted

15    to add in terms of the basis for the Court's

16    decision, in addition to this being for money

17    damages only, I also agree that I don't believe

18    you've met your burden of establishing a

19    likelihood of success on the merits, and nor do I

20    see any balancing -- the balancing of the

21    equities to me is even.  I mean whether you get

22    the money or whether he gets the money, I don't

23    see where anyone is particularly harmed one way

24    or the other.  But I really believe that the

25    likelihood of success on the merits is suspect.

26        Thank you.

14

1                          - Proceedings -

2                    (Whereupon, the proceedings were

concluded.)

* * * * * * * * * * * * * *

C E R T I F I C A T I O N

CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT
OF THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF
THIS PROCEEDING.

_____
MICHAEL MANISTER
OFFICIAL COURT REPORTER

# EXHIBIT 2

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES

---

| | |
|---|---|
| In the Matter of the Arbitration Among<br>BALLON STOLL BADER & NADLER, P.C., | : |
| | : |
| Claimant, | : |
| | : |
| and | : |
| | : |
| A. ARNOLD GERSHON and | : |
| A. ARNOLD GERSHON, P.C., | : |
| | : |
| Respondents, | : |
| | : |
| and | : |
| | : |
| BARRACK, RODOS & BACINE, | : |
| | : |
| Respondent/Stakeholder. | : |

AAA Claim No. 13 194 01780 07

**MEMORANDUM IN OPPOSITION
TO RETENTION OF
JURISDICTION OVER
BARRACK, RODOS & BACINE
IN THIS ARBITRATION**

---

## INTRODUCTION

Barrack, Rodos & Bacine ("BR&B"), named as "Respondent/Stakeholder" in this proceeding, submits this memorandum in opposition to the assertion by Ballon Stoll Bader & Nadler ("Ballon Stoll") that the American Arbitration Association has jurisdiction over BR&B in this matter. BR&B submits this memorandum without prejudice to its position that it need not participate in this proceeding.

There is no dispute that BR&B never signed any document that purports to be an agreement to arbitrate Ballon Stoll's claims. Ballon Stoll's sole contention is that BR&B's conduct compels it to arbitrate Ballon Stoll's claims under the doctrine of estoppel. As will be demonstrated, Ballon Stoll's argument is flawed. First, it is not within the jurisdiction of the

arbitrator under these circumstances to determine his own jurisdiction over BR&B. Rather, that issue is reserved for the courts to decide.

But even if the issue of the arbitrator's jurisdiction were properly before the arbitrator -- which it is not -- the undisputed facts do not support Ballon Stoll's claim that BR&B is bound to participate in this proceeding under the doctrine of estoppel.

And finally, contrary to the contention that Justice Lowe's finding against Ballon Stoll's attempt to enjoin BR&B from disbursing the *Intel* fee has no effect on this proceeding -- Ballon Stoll contends here as it did before Justice Lowe that the merits do not matter for the relief sought -- Justice Lowe's decision indeed precludes the arbitrator (assuming he otherwise were to have jurisdiction, which he does not) from deciding Ballon Stoll's Fourth Claim for Relief, which asks for an order directing BR&B to retain *Intel* fee in escrow.

## BACKGROUND

For the past 30 years, BR&B has concentrated its practice on litigation, particularly class action litigation under the federal securities laws, shareholder derivative litigation and class action litigation under the antitrust laws. Affidavit of Daniel E. Bacine ("Bacine Aff.") ¶ 3. Over the years, we have achieved notable results, most recently a settlement of over $6 billion in the *WorldCom* case; over $3 billion in the *Cendant* case; and over $1 billion in the *McKesson* case; and a jury verdict just last week, after a two-month trial, valued at $280 million. *Id.* BR&B has substantial experience in litigating large and complex cases with extensive discovery programs that involve millions of pages of documents and many depositions. *Id.* Almost all of BR&B's cases require the retention of experts in various fields. *Id.* Attached as Exhibit A to the Bacine Aff. is a copy of BR&B's firm resume.

In November 2006, A. Arnold Gershon ("Gershon"), a lawyer who practices in same field, approached BR&B about whether it had an interest in his joining the firm in its New York satellite office. Bacine Aff. ¶ 4. Several lawyers at BR&B who either knew or knew of Gershon thought favorably of him. *Id.*

Daniel E. Bacine ("Bacine"), a BR&B partner, met with Gershon to discuss the possibility of his joining the firm. Bacine Aff. ¶ 5. Gershon said that he had been unhappy with his then-current firm, Ballon Stoll Bader & Nadler, P.C. ("Ballon Stoll"), because of Ballon Stoll's inability or unwillingness to provide the support and resources he needed to properly litigate the kinds of complex and discovery intensive cases in which he was involved. *Id.*

Gershon mentioned that one such case, among several, was a derivative case involving Intel Corp., styled *Seinfeld v. Barrett, et al.*, Case No. 05-298 (JJF) ("*Intel*"), which was pending in the District of Delaware. Bacine Aff. ¶ 6. Gershon explained that on May 31, 2006, the Court in that case had entered a scheduling order under Rule 16 of the Federal Rules of Civil Procedure that, among other things, provided for the plaintiff to take up to 80 depositions, most of which would involve travel to the west coast, where Intel was located. *Id.* Under the order, the depositions could commence October 1, 2006, but the discovery deadline was less than a year away. Attached as Exhibit B to the Bacine Aff. is a copy of that order. Gershon informed Bacine that the defendants had recently produced 25,000 pages of electronically generated and stored documents, and that Ballon Stoll was both unable to commit appropriate personnel and unwilling to commit the financial resources necessary to review and analyze the documents and then prepare for and execute the extensive discovery program in the *Intel* matter. Bacine Aff. ¶ 6. Gershon said that there were other cases that were also suffering for lack of Ballon Stoll's support. *Id.*

BR&B was well-acquainted with the defense firm in the *Intel* case, and they were well-acquainted with BR&B. Bacine Aff. ¶ 7. BR&B has been adverse to that defense firm in a number of cases over the years and has litigated (and continues to litigate) cases against the lawyers in that firm who were defending the *Intel* case. *Id.* BR&B has demonstrated resources to handle complex, discovery intensive cases, and these defense counsel know that.

Gershon's particular area of expertise is in shareholder derivative actions, an area in which BR&B thought adding an experienced lawyer would be beneficial to the firm. Bacine Aff. ¶ 8. In that regard, Gershon suggested that, in addition to himself, BR&B should hire as well the associate he had been working with, who he said was also unhappy at Ballon Stoll. And because we had no secretarial support in our New York office (we had one lawyer there half time), Gershon proposed that we hire a secretary who had left Ballon Stoll several weeks earlier.

Because of the uncertainty that the arrangement would be successful and the substantial financial commitment we would be making for salaries and expansion of our sublease to add the needed space, we proposed to Gershon that he could come with the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B. Bacine Aff. ¶ 9. Gershon agreed, and that is the understanding that remains today. *Id.* Gershon has no proprietary interest in BR&B and has no financial interest in any cases he brought to or works on at BR&B. *Id.*

In his conversation with Bacine, Gershon said that he would work out an arrangement to equitably divide the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some. Bacine Aff. ¶ 10. He did not, however, share with Bacine the particulars of his arrangement with Ballon Stoll. *Id.* Nor was Bacine aware of the existence of the

agreement that forms the basis for the claims in this proceeding, pursuant to which Ballon Stoll

contends BR&B is obligated to participate in this arbitration.  *Id.*

Among the cases that Gershon brought to BR&B was the *Intel* case that Gershon had

mentioned when he met with Bacine.  As noted, by the time Gershon joined the firm, the

defendants had produced in discovery the 25,000 pages of documents.  Bacine Aff. ¶ 12.  BR&B

promptly assembled a group of lawyers and a paralegal to begin the task of organizing and

reviewing the documents produced, in preparation for the extensive deposition program

anticipated.  *Id.*

Sometime in December 2006, the defendants inquired whether the plaintiff would be

willing to entertain settlement discussions.  Bacine Aff. ¶ 13.  The resulting discussions

ultimately led to the settlement agreement filed with the Court on March 7, 2007.  *Id.*  The

settlement called for Intel to terminate the incentive compensation plan that was the subject of

the lawsuit.  *Id.*  The last term of the settlement negotiated was the counsel fee that defendants

agreed to pay plaintiff, subject to the court's approval.  Bacine Aff. ¶ 14.  The fee was negotiated

at arm's length with defense counsel.  *Id.*  The principal issue involved in the negotiations was

the value of the settlement to Intel, i.e., how much Intel saved by terminating its incentive

compensation plan.  *Id.*  BR&B valued the benefit high; defendants' counsel valued it low.  *Id.*

The parties ultimately reached an agreement as to fees, as set forth in the settlement stipulation.

*Id.*

BR&B's brief in support of plaintiff's request that the Court award the agreed-upon fee

emphasized the benefit of the settlement to Intel.  Bacine Aff. ¶ 15.  The brief (without the

expert's declaration) is attached to the Bacine Aff. as Exhibit D.  The amount of professional

time devoted to the case is mentioned in just one paragraph on page 23 and is the subject just one

5

paragraph on page 24. *Id*. In Gershon's declaration that accompanied the brief (attached to the Bacine Aff. as Exhibit E), Gershon, as required, presented plaintiff's "lodestar" information.[1] *Id*. But plaintiff presented no argument that the requested fee had any relation to the lodestar. (Court's sometimes use the lodestar as a "cross-check" to see if the requested fee might result in a windfall to plaintiff's counsel. *See In re Cendant Corp. Deriv. Actions*, 232 F. Supp. 2d 327, 340-41 (D.N.J. 2002).) *Id*.

Sometime in late April or early May 2007, Gershon informed me that while he and Ballon Stoll had agreed to divide the cases, Ballon Stoll claimed to retain a financial interest in one of the cases he brought with him, specifically *Intel*. Bacine Aff. ¶ 11. But it was not until after I received Ballon Stoll's May 18, 2007, letter purporting to assert a charging lien against the *Intel* fee (which at that time had not yet been awarded, let alone paid), that Gershon shared with me the documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm. *Id*. Attached as Exhibit C is an e-mail exchange that I received from Gershon in May 2007, reflecting a meeting of the minds on the division of cases and, except for *Intel* (about which there was no meeting of the minds), on the fees from those cases: Ballon Stoll and Gershon agreed that each would keep the fees if and when paid in the cases they each took in the division. I also saw for the first time a copy of the agreement that Gershon signed that contained the arbitration clause. *Id*.

Although Ballon Stoll was aware of the May 23, 2007, settlement hearing in *Intel* in advance and claimed an interest in the fee that might be awarded, Ballon Stoll did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition. Bacine Aff. ¶ 16.

---

[1] "Lodestar" is the hours times the hourly rate.

## ARGUMENT

**I.    THE COURT, NOT THE ARBITRATOR, HAS SOLE
JURISDICTION TO DETERMINE WHETHER BR&B
IS REQUIRED TO PARTICIPATE IN THIS ARBITRATION**

The law is well settled that the court, not the arbitrator, has jurisdiction to determine

whether a claim is arbitrable. *See, e.g., Larrison v. Scarola Reavis & Parent LLP,* 812 N.Y.S.2d

243, 246-247 (Sup. Ct. 2005) ("Generally, it is for the courts to make the initial determination as

to whether the dispute is arbitrable").[2] Courts within New York have held time and again that

the "threshold issue of whether a valid agreement to arbitrate exists is for the court and not an

arbitrator to decide." *In the Matter of James D. O'Donnell, v. Arrow Elec., Inc.,* 742 N.Y.S.2d

579, 579 (App. Div. 2002). Even a case Ballon Stoll cites for another purpose, *AT&S Transp.*

*LLC. v. Odyssey Logistics & Tech. Corp.,* 803 N.Y.S.2d 118, 119-120 (App. Div. 2005) agrees:

"The threshold issue, whether or not a valid agreement to arbitrate exists, is for the courts, and

not the arbitrator, to decide." *See also Application of Corp. Selee De Venezuela v. Selee Corp.,* 7

Misc. 3d 1013A, 2005 WL 911349 (Sup. Ct. Mar. 18, 2005) (court made the determination that

nonsignatory was not required to arbitrate under the agreement); *Ben-Reuven v. Kidder Peabody*

*& Co., Inc.,* 526 N.Y.S.2d 752, 753 (Sup. Ct. 1988) (same).[3] In this instance, the arbitrator lacks

jurisdiction to determine whether BR&B, a nonsignatory to the agreement containing the

---

[2]   Ballon Stoll's memorandum in support of the arbitrator's retention of jurisdiction over BR&B relies upon New York law, presumably because the agreement between Ballon Stoll and Gershon, which purports to form the basis for Ballon Stoll's claims, requires the application of New York law to resolve disputes. Because BR&B is not a party to that agreement, however, the choice of laws clause is not binding on BR&B. Nonetheless for purpose of this memorandum, BR&B will assume that New York law is properly applied.

[3]   Gershon's agreement with Ballon Stoll states that any controversy or claim arising out of "this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association." The American Arbitration Association Rules confer jurisdiction on arbitrators to determine whether a *claim* is arbitrable. Even assuming a nonsignatory could be bound to this rule, the issue here is not whether a particular *claim* is arbitrable under the parties' agreement to arbitrate, i.e., whether the scope of the arbitration clause covers the claim in dispute. Here the issue is whether BR&B is required to arbitrate any claims brought by Ballon Stoll, something only a court can decide.

arbitration clause, should be compelled to arbitrate Ballon Stoll's claims.  Accordingly, the

arbitrator should reject jurisdiction over Ballon Stoll's claims against BR&B.

## II.    THE DOCTRINE OF ESTOPPEL DOES NOT REQUIRE BR&B TO ARBITRATE BALLON STOLL'S CLAIMS

Even if the arbitrator could properly exercise jurisdiction to determine whether BR&B

should be bound to arbitrate -- which as demonstrated he cannot -- there is no basis for

determining that BR&B is bound under the Ballon Stoll-Gershon agreement.  It is a fundamental

principle of New York law that, with few exceptions, in the absence of an agreement to arbitrate,

a party cannot be forced to do so.  "An agreement to arbitrate requires a clear and unequivocal

manifestation of an intent to arbitrate because it involves the surrender [of] the right to resort to

the courts." *Mionis v. Bank Julius Baer & Co., LTD.,* 749 N.Y.S.2d 497, 501-502 (App. Div.

2002) (internal citations and quotations omitted).  Absent limited exceptions (only one of which

appears to be the subject of Ballon Stoll's brief), the general principle is that "[a] party cannot be

required to submit to arbitration any dispute which he has not agreed so to submit." *Thomson-

CSF, S.A. v. Am. Arbitration Assoc.,* 64 F.3d 773, 776 (2d Cir 1995).  *See also, Application of

Corp. Selee De Venezuela, supra,* 2005 WL 911349, at *3. ("[A]rbitration is a matter of contract

and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit.").

Ballon Stoll contends that BR&B is bound to participate in this arbitration under the

doctrine of estoppel, one of the exceptions to the general rule that nonsignatories cannot be

bound to arbitrate claims.  Ballon Stoll's contention lacks merit.

A nonsignatory can be bound to arbitrate claims where his conduct estops him from

arguing that he has not adopted an agreement containing an arbitration clause.  The elements of

8

this estoppel theory, one of the limited exceptions to the general rule, were most recently set

forth in *Republic of Ecuador v. Cherron-Texaco Corp.*, 499 F. Supp. 2d 452 (S.D.N.Y. 2007):

> "A party is estopped from denying its obligation to arbitrate when
> it receives a 'direct benefit' from a contract containing an
> arbitration clause." *American Bureau of Shipping v. Tencara
> Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing
> *Thomson-CSF*, 64 F.3d at 778-79). Direct benefits are those
> "flowing directly from the agreement," while "the benefit derived
> from an agreement is indirect where the nonsignatory exploits the
> contractual relation of parties to an agreement, but does not exploit
> (and thereby assume) the agreement itself." *MAG Portfolio
> Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61
> (2d Cir. 2001). "To prevail, then, [Defendants] must show that
> [PetroEcaudor] 'knowingly exploited' the ... contract and thereby
> received a direct benefit from the contract." *Id.* at 62 (quoting
> *Thomson-CSF*, 64 F.3d at 778).

499 F. Supp. at 457-58 (quoting earlier decision in same case, 376 F. Supp. 2d at 356).  Under

these principles, for Ballon Stoll "[t]o prevail [it] must show that BR&B 'knowingly exploited

the ... contract and thereby received a direct benefit from the contract.'" *Id.* (quoting from *MAG

Portfolio*, 268 F.3d at 61.  It is not enough if "the benefit derived from [the] agreement is indirect

where the nonsignatory exploits the contractual relationship of the parties but does not exploit

(and thereby assume) the agreement itself." *Id.*[4]

Applying these principles to Ballon Stoll's agreement with Gershon, BR&B, by receiving

the *Intel* fee, did not receive any benefit from that agreement, let alone a direct benefit.  To be

sure, in the settlement of the *Intel* case, BR&B did receive a fee paid by Intel, as approved by the

Court.  But that fee was not paid pursuant to Ballon Stoll's agreement with Gershon.  The fee

was paid because BR&B negotiated it with Intel as part of the settlement and because the Court

approved the fee BR&B requested in a petition it was required to submit.  The negotiated fee and

---

[4] While Ballon Stoll relies on and indeed quotes from *Republic of Ecuador v. Cherron Texaco*, it abruptly and
disingenuously ends the quote at the discussion of direct benefit, before the Court distinguished direct benefit from
indirect benefit.  Ballon Stoll Brief at 9.

the fee petition did not rely on or have any connection with Ballon Stoll's agreement with Gershon. Accordingly, BR&B cannot be said to have "exploit[ed] (and thereby assume[d]) the agreement itself." *Republic of Ecuador, supra*, 499 F. Supp. 2d at 458 (*quoting MAG Portfolio*, 268 F.3d at 61).

An examination of Ballon Stoll's arbitration claim is instructive and demonstrates that Ballon Stoll does not contend that BR&B received the *Intel* fee as a result of Ballon Stoll's agreement with Gershon. In its statement of claim in this arbitration, Ballon Stoll makes only a single claim for breach of contract, the very contract that contains the arbitration clause relied on here. But its Second Claim for Relief, in which Ballon Stoll asserts that breach of contract claim, is against Gershon alone; no relief is sought there against BR&B. And for good reason. When preparing its statement of claim, Ballon Stoll obviously recognized that BR&B was not a party to the Ballon Stoll-Gershon agreement and therefore could not be bound by it. Yet here, faced with its inability to drag BR&B into this proceeding, Ballon Stoll now contends that, under the doctrine of estoppel, BR&B is indeed bound by the agreement. Having asserted no breach of contract claim against BR&B, however, the arbitrator should see Ballon Stoll's post-hac argument for what it is.

Ballon Stoll's only substantive claim against BR&B, in its First Claim for Relief, is for *quantum meruit*. In that claim, Ballon Stoll seeks $299,043.19, but does not explain where that figure comes from. In its brief, however, Ballon Stoll contends that this is the amount carried by Ballon Stoll as a receivable, presumably based on its time records. Ballon Stoll Brief at 5.[5]

---

[5] Carrying as a receivable time spent on a contingent fee case, such as *Intel*, is somewhat of an anomaly. Fees are not earned in such cases until a result is achieved and until a court awards the fee.

Even assuming this claim were contract based -- which it is not[6] -- there is no mention in the Ballon Stoll-Gershon agreement of fees based on hours or hourly rates.

Moreover, as demonstrated in the Bacine Aff. ¶ 15, lodestar played at most a peripheral role in the fee awarded in *Intel*. At most, Ballon Stoll could argue that BR&B "exploit[ed] the contractual relations of [Ballon Stoll and Gershon], [] but d[id] not exploit and thereby assume [] the agreement itself." *MAG Portfolio, supra*, 268 F.3d at 61.

*Thomson-CSF, S.A. v. Am. Arbitration Association*, 64 F.3d 773 (2d Cir. 1995), which Ballon Stoll cites, actually bolsters BR&B's argument. There, a corporate parent that had recently purchased a subsidiary brought an action against the subsidiary's supplier seeking an injunction and a declaration that it would not be bound by an arbitration clause between the subsidiary and its supplier. The parent appealed an order denying its requested relief, as well as the lower court's determination that the supplier, which had cross-moved to compel arbitration, was entitled to arbitrate its claims with the parent. On appeal, the Second Circuit reversed, holding that the parent did not directly benefit from the agreement between the subsidiary and its supplier. Rather, the benefit to the parent was derived from the parent's purchase of the subsidiary and not from the subsidiary's supply agreement. Therefore, the court found that the nonsignatory parent could not be compelled to arbitrate claims with the supplier. Similarly, here, any benefit BR&B derived was a result of Gershon's association with BR&B and not his agreement with Ballon Stoll.

Grasping at straws, Ballon Stoll also contends that BR&B is required to participate in this arbitration because its agreement with Gershon amounts to a *de facto* merger, relying on *AT&S Transportation LLC v. Odyssey Logistice and Technology Corp.*, 803 N.Y.S.2d 118. There, as

---

[6] Indeed, the *sine qua non* of a *quantum meruit* claim is that there is no contract. If there is, the claimant must pursue a breach of contract claim, not one for *quantum meruit. See Aviv Constr., Inc. v. Antiquarium, LTD.*, 687 N.Y.S.2d 344, 345 (App. Div. 1999).

11

Ballon Stoll noted, the Court found four factors, to be analyzed in a flexible manner, to determine whether a particular transaction should be treated as a *de facto* merger:

> The hallmarks of a de facto merger are the "continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinary necessary for the uninterrupted continuation of the business of the acquired corporation; and, a continuity of management, personnel, physical location, assets and general business operation" (*Fitzgerald v. Fahnestock & Co.*, 286 A.D. 2d 573, 574 [2001]). These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor (*see Nettis v. Levitt*, 241 F.3d 186 [2001]; *City of New York v. Pfizer & Co.*, 260 A.D. 2d 174 [1999]).

Here, of course, there was no "continuity of ownership." *Id.* Gershon brought several cases to BR&B.[7] But to the extent one can be considered an "owner" of a lawsuit, he does not own any interest in those cases. Bacine Aff. ¶ 9. Nor was there "cessation of ordinary business and dissolution of the predecessor." That concept does not really apply where a lawyer leaves one firm and joins another. And BR&B did not assume any of Gershon's liabilities. Finally, there was no "continuity of management, personnel, physical location, assets, and general business operation.[8] *Id.* Accordingly, Ballon Stoll's *de facto* merger argument has no basis. Thus, the general rule refusing to require nonsignatories to arbitrate claims applies here.

---

[7] Ballon Stoll's statement that Gershon brought with him Gershon's "ongoing case load," implying all his cases, is false. *See* Bacine Aff. ¶¶ 10-11.

[8] The only "continuity" is that Gershon, and associate Gloria Kui, continued to work on the cases he brought to BR&B, along with other BR&B personnel.

### III.    JUSTICE LOWE'S DECISION DENYING BALLON STOLL'S REQUEST FOR AN INJUNCTION PRECLUDES THE ARBITRATOR FROM ENTERTAINING BALLON STOLL'S FOURTH CLAIMS FOR RELIEF

In its Fourth Claim for Relief, styled "Stakeholder Claim," Ballon Stoll seeks an order "directing and instructing [BR&B] to retain, in escrow, a sum sufficient to compensate [Ballon Stoll] for all fees and expenses which may be declared due [Ballon Stoll from *Intel*]."

The essence of this claim was presented to the Supreme Court of New York in *In the Matter of the Application of Ballon Stoll Bader & Nadler, P.C., against A. Arnold Gershon , P.C., et al.*, Index No. 602108/07. There, Ballon Stoll sought to enjoin BR&B from distributing the *Intel* fee until the issue of Ballon Stoll's entitlement to fees from the case is determined, as it attempts here. On June 29, 2007, Justice Lowe heard and rejected Ballon Stoll's application. A transcript of that hearing is attached as Exhibit F to the Bacine Aff. As Ballon Stoll concedes (Ballon Stoll Brief at 14-16), Justice Lowe denied the application because he found that the case involved "money damages only" (transcript at 11). And as Ballon Stoll also concedes (Ballon Stoll Brief at 14), the likelihood of prevailing on the merits in the matter before Justice Lowe involved whether Ballon Stoll was entitled to provisional relief, *i.e.*, its request that BR&B be enjoined from dissipating the *Intel* fee.[9] That is the very claim that Justice Lowe ruled on and rejected and the very claim that Ballon Stoll makes in its Fourth Claim for Relief here. If Ballon Stoll was unhappy with Justice Lowe's ruling, its remedy was not to sidestep that ruling by

---

[9]  Ballon Stoll actually contends that the likelihood of success on the merits of the *underlying claim* do not matter, citing (in its brief before Justice Lowe, and at pages 13 and 14 of its brief here) *H.I.G. Capital Management, Inc. v. Ligator*, 650 N.Y.S.2d 124 (App. Div. 1996), and *Matter of Arbitration Between Guarini and Severini*, 650 N.Y.S.2d 4 (App. Div. 1996). But those cases were rejected by the Second Circuit in *SG Cowen Securities Corp. v. Messih*, 224 F.3d 79, 83 (2d Cir. 2000), by the Appellate Division in *Erber v. Catalyst Trading, LLC*, 754 N.Y.S.2d 885 (App. Div. 2003), and by the Supreme Court in *American Home Assurance Co. v. Starr Technical Risks Agency Inc.*, 814 N.Y.S.2d 889, 2006 WL 304704, at *3 (Sup. Ct. Mar. 10, 2006). Because Ballon Stoll failed to cite these later cases in its brief before Justice Lowe, BR&B's brief in that matter brought them to the Court's attention. If Ballon Stoll's failure to cite these cases in the matter before Justice Lowe was the result of poor research, there is no such innocent excuse here.

13

raising the same issue in this proceeding. It is precluded from doing so under the doctrine of *res judicata*. *See Allstate Ins. Co. v. Williams*, 816 N.Y.S.2d 497, 498 (App. Div. 2006); *Eagle Insur. Co. v. Facey*, 707 N.Y.S.2d 238, 239 (App. Div. 2000). Accordingly, even if the arbitrator otherwise had jurisdiction over BR&B in this matter -- which as demonstrated he does not -- Justice Lowe's decision precludes the arbitrator here from considering Ballon Stoll's Fourth Claim for Relief.

## CONCLUSION

A court, and not the arbitrator, is charged with jurisdiction over the question whether BR&B -- which never agreed to arbitrate Ballon Stoll's claim -- is required to do so. Even if that issue were within the power of the arbitrator to decide, the estoppel doctrine, Ballon Stoll's sole argument, simply does not apply here. And as to Ballon Stoll's requested relief for a charging lien and its so-called stakeholder's claim, Justice Lowe's decision on Ballon Stoll's application in the New York Supreme Court precludes those issues from being raised here.

For all of these reasons, the arbitrator should not include BR&B in this proceeding.

Dated: January 22, 2008

BARRACK, RODOS & BACINE

By: _____
Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES
In the Matter of the Arbitration Among

BALLON STOLL BADER & NADLER, P.C.,

Claimant.

**AAA Claim No. 13 194 01780 07**

And
A. ARNOLD GERSHON and
A. ARNOLD GERSHON, P.C.,

Respondents,

And

BARRACK, RODOS & BACINE,

Respondent/Stakeholder

## RULING AND PARTIAL FINAL AWARD REGARDING ARBITRABILITY OF CLAIMS ALLEGED AGAINST RESPONDENT BARRACK, RODOS & BACINE

Before me are the questions whether (1) as the appointed Arbitrator in this case, I have

the authority to determine if the claims alleged in this case by Claimant Ballon Stoll Bader &

Nadler, P.C. ("BSBN") against Respondent Barrack, Rodos & Bacine (the "Barrack firm") are

arbitrable notwithstanding that there is no agreement to arbitrate directly between BSBN and the

Barrack firm, and (2) if so, whether such claims alleged by BSBN against the Barrack firm are

arbitrable in this case. BSBN and the Barrack firm have submitted briefs and documentary

evidence on the issue and the Barrack firm also has submitted an affidavit of its partner Daniel E.

Bacine.

I conclude for the reasons set out below that I have the authority to decide this issue, and

that the claims alleged by BSBN against the Barrack firm are arbitrable in this case, except the

Fourth Claim which is dismissed. All parties, including the Barrack firm, shall participate in a

telephone conference with me at noon EST on March 6, 2008, to discuss how we will proceed

The Barrack firm may serve and file a response (answer) to the remaining claims alleged against it by BSBN, and any counterclaims and cross-claims, for receipt by the parties and by me not later than March 5, 2008. If no response (answer) is received by the parties and by me by March 5, 2008, the Barrack firm will be deemed to have denied all of the remaining claims alleged against it.

## FACTS

Based upon the affidavit of Mr. Bacine, a partner of the Barrack firm, and documents submitted by both parties, the following facts appear to be not in dispute.

BSBN, a New York City law firm, entered into an agreement (the "Agreement") as of June 28, 200 , with A. Arnold Gershon and with A. Arnold Gershon, P.C., whereby Mr. Gershon individually and through his P.C. (collectively, "Gershon") became "Of Counsel" to BSBN. The Agreement as amended provides with respect to cases originated by Gershon during his tenure at BSBN that, following termination of the Agreement, certain fees and disbursements collected on such cases related to services performed prior to termination (or an interest in such fees and disbursements) would remain the property of BSBN. The Agreement contains a broad arbitration clause whereby the parties agreed that "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association ..."

In November 2006, Gershon gave to BSBN notice of termination of the Agreement. As of December 1, 2006 Gershon entered into an agreement with the Barrack firm, a national law firm, whereby Gershon became a "salaried partner" of the Barrack firm. The letter agreement provides that "all fees generated by [Gershon] on behalf of [Gershon's] clients and the Firm's

2

clients during [Gershon's] association with the Firm are the property of" the Barrack firm. The Barrack firm also hired at or about the same time the BSBN secretary and associate attorney with whom Gershon had worked at BSBN. And the Barrack firm has held Gershon out as a partner of the firm, on its website and otherwise.

The Barrack firm is not a party to the arbitration Agreement between BSBN and Gershon, nor is it a party to any other direct agreement with BSBN relevant to this case.

In approximately May 2005, while Gershon was Of Counsel to BSBN, Gershon originated on behalf of the plaintiff, a stockholder derivative action, *Seinfeld v. Barrett, Intel Corporation, et al.,* in the United States District Court for the District of Delaware, Case No. 05-298 (JFF) (the "Intel action"). BSBN contends in this arbitration that it retains an interest in fees generated from the Intel action insofar as the fees represent collections for services rendered and expenses incurred prior to the termination of the Of Counsel Agreement. Specifically, BSBN claims it has a receivable with respect to the Intel action amounting to $299,043.19, comprised of fees for professional services in the sum of $293,561, and disbursements in the sum of $5,562.19 for services rendered and expenses incurred before termination of the Of Counsel Agreement with Gershon.

Pursuant to the terms of a Stipulation of Settlement entered into in the Intel action in March 2007, Gershon, on behalf and as partner of the Barrack firm, submitted to the Delaware Court a fee application pursuant to which fees and expenses were sought in the amount of approximately $862,500. BSBN contends that Gershon included in the lodestar calculation of those fees and expenses submitted to the Delaware Court the fees and expenses charged to the Intel action while Gershon was Of Counsel to BSBN.

3

In response to BSBN's attempts, in early May 2007, to communicate with Gershon regarding the Intel fees, Gershon stated in an e-mail dated May 8, 2007 that he was "in no position to discuss" Intel with BSBN "until one of [his] partners [at the Barrack firm] returns." Howard Bader of BSBN transmitted the following e-mail response to Gershon:

> ... I don't understand why we have to wait for your partner's return before we discuss the [Intel] situation. The Fee Application is coming up quickly on May 23rd and we have to make a provision for same. I believe it has to be filed a week in advance. Please call [BSBN partners] Vano or David quickly to discuss the situation so we can move forward immediately. Should we make a separate Fee Application to cover all the time and expenses that we expended by BSBN? Please advise. Be well.

Gershon's May 14 reply included the following statements:

> ...With respect to Intel...*we* are prepared to reimburse your expenses of $5,328.52 upon *our* recovery of the same. *We* are not, however, prepared to pay you any part of the fee, should the court make an award.
>
> Concerning your request as to whether you should make a separate fee application, *our* answer is that it is unnecessary and improper.... (Emphasis added)

BSBN contends that, by letter dated May 18, 2007, it notified Gershon, the Barrack firm and other counsel in the Intel action that it claimed and reserved a charging lien with respect to any amounts recovered in connection with the Intel settlement and fee application.

On May 23, 2006, a Judgment of Dismissal in the Intel action was entered which provides, in relevant part, that

> Intel Corporation shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements in the amount of $862,500.00 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine.

BSBN contends that the Intel fees and disbursements specified in the quoted Judgment were, in fact, delivered to Barrack's Philadelphia office.

4

The Barrack firm is a well known law firm with substantial experience "litigating large and complex cases with extensive discovery programs that involve millions of pages of documents and many depositions." (Bacine Aff., ¶3). During Gershon's discussions leading up to his agreement to become a "salaried partner" of the Barrack firm, Gershon advised the Barrack firm "that he would work out an arrangement to divide equitably the cases that he had brought to and was working on at Ballon Stoll." (Bacine Aff. ¶10). In "late April or early May 2007," the Barrack firm learned that "Ballon Stoll claimed to retain a financial interest in one of the cases he [Gershon] brought with him, specifically Intel." Sometime following May 18, 2007, when BSBN contends that it claimed a lien on the Intel fee, and before the Delaware Court awarded any fee in the Intel action, "Gerhson shared [with the Barrack firm] the documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm" (Bacine Aff. ¶11). At that time, Gershon also shared with the Barrack firm "a copy of the agreement that Gershon signed that contained the arbitration clause." (Bacine Aff. ¶11).

In June of 2007, BSBN initiated a proceeding in New York Supreme Court against the Barrack firm asking for provisional relief in aid of arbitration pursuant to NYCPLR 7502(c) requiring the Barrack firm to keep in tact the corpus of the fees paid to it relating to the Intel action, or compelling the Barrack firm to post a bond in the amount of such fees or to pay such fees into Court or into an escrow account. The Court determined there was no basis for such relief and dismissed the petition.

On August 17, 2007, BSBN commenced this arbitration against Gershon and against the Barrack firm. BSBN's Demand for Arbitration alleges five claims, four of which are stated against the Barrack firm (either on its own or in conjunction with Gershon). In the First Claim, BSBN contends it is entitled to an award in *quantum meruit* directing "Barrack and/or Gershon"

to pay over $299,043.19 to it, or an award in such amount "against Gershon and Barrack." (The

Second Claim, for damages, is brought only against Gershon.) The Third Claim seeks an award

fixing a charging lien against the corpus of the Intel fee received or to be received by the Barrack

firm. The Fourth Claim is denominated by BSBN as a "Stakeholdeer Claim" but seeks in effect

the provisional relief against the Barrack firm denied by the New York Supreme Court. The

Fifth Claim seeks "as part of" the award an assessment of all of BSBN's fees and expenses in

this arbitration against "the Respondents," *i.e.,* Gershon and the Barrack firm.

By letter dated September 6, 2007, the Barrack firm advised the AAA that it would "not

be responding to the demand " for arbitration, because of the absence of an arbitration agreement

between it and BSBN. By letter dated September 25, 2007, the AAA Case Administrator

responded:

> ...The claimant has met the filing requirements of the rules by
> filing a demand for arbitration providing for administration by the
> American Arbitration Association under its rules.
>
> Accordingly, in the absence of an agreement by the parties or a
> court order staying this matter, the Association will proceed with
> administration pursuant to the Rules. The parties may wish to raise
> this issue, upon appointment of the arbitrator.
>
> The AAA serves as a neutral administrative agency and does not
> generally appear or participate in judicial proceedings relating to
> arbitration. The AAA should not be named as a party-defendant.
> The Rules state that the AAA is not a "necessary party." The AAA
> will abide by an order issued by the courts and the parties are
> requested to keep us informed as to the outcome.

The Barrack firm did not apply to a court for relief.

In another letter to the AAA , dated October 16, 2007, the Barrack firm again took the

position it "[is] not a party to any arbitration agreement with the Ballon Stoll firm and [does] not

intend to respond to the unauthorized and inappropriate arbitration demand." The Barrack firm

also requested in that letter that the AAA clarify whether it "intended to proceed in the

arbitration with [the Barrack firm] remaining as a party." The AAA responded November 5 by repeating its position noted above.

Again, the Barrack firm did not apply to a court for relief.

In a communication dated November 16, 2007, the Barrack firm complained to the AAA about what it said was the "unresponsive" nature of the AAA's letters. In its November 16, 2007 communication, the Barrack firm requested that the AAA "forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter."

On November 12, 2007, the parties, including the Barrack firm, were notified that I had been appointed as Arbitrator. After the appointment was confirmed, I conducted on December 3, 2007, a preliminary hearing, telephonically, among all parties, including the Barrack firm. At the outset of the hearing, the Barrack firm expressly reserved its position that it is not subject to this arbitration.

Among the items discussed during the telephonic hearing on December 3, 2007 was the question, raised by the Barrack firm, whether it could be compelled to arbitrate since it was not a signatory to the Agreement containing the arbitration clause. I framed the questions raised by the Barrack firm's position, as follows:

> [Whether] (a) the Barrack firm is properly a party in this arbitration Case, notwithstanding that it has never signed an applicable agreement to arbitrate, and (b) the decision of Justice Lowe in In re Ballon, Stoll, Bader & Nadler, P.C., Index No. 602108/07 (Sup. Ct. NY Co) does not constitute a bar to the Arbitrator ruling that the Barrack firm is a party to this arbitration Case.

BSBN was instructed to brief the foregoing issues.

The Barrack firm also participated in a subsequent telephone hearing in this case on December 17, 2007, subject to its position that it is not a party to this arbitration, and consented to my disclosure to BSBN of the material content of its letter agreement with Gershon. I

7

subsequently invited the Barrack firm to submit a brief on the two issues framed during the preliminary hearing (quoted above). The Barrack firm accepted this invitation and, in its January 22, 2008 submission, the Barrack firm argued that "the Court, not the Arbitrator, has sole jurisdiction to determine whether BR&B is required to participate in this arbitration."

No party has as of the present date advised me of any action commenced in a court raising either of the two issues ruled upon below.

## DISCUSSION

*Authority.* There is no dispute that there does exist a valid agreement to arbitrate between BSBN and Gershon that covers the claims in this case brought against Gershon. The only question is the one raised by the Barrack firm, whether it is a proper party to this arbitration and whether the existing arbitration Agreement provides a basis for arbitrating in this case the claims alleged by BSBN against the Barrack firm.

In all of the circumstances, including among others, the determination of the Barrack firm to ask the AAA in its letter dated November 16, 2007, to forward submissions on the issue to me, I conclude that I do have authority to rule on the arbitrability of the claims against the Barrack firm. This conclusion is consistent with Rule 7 of the Commercial Rules of the AAA. Rule 7 provides:

> (a)  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> * * * * *
>
> (c)  A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

The Barrack firm has cited *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995), as authority for the proposition that I do not have the authority to rule on this issue of arbitrability of claims alleged against it. However, *First Options* does not address the authority to determine arbitrability of claims in the circumstances of this case but rather addresses the standard for judicial review of an arbitrator's ruling concerning arbitrability, once such a ruling is made.

*Arbitrability.* Arbitration is a matter of contract. The Federal and New York Courts, however, have held that, subject to "ordinary principles of contract and agency;" *McAllister Bros., Inc. v. A&S Transportation Co.,* 621 F.2d 519, 524 (2d Cir. 1980), there are circumstances where a party who has not signed an arbitration agreement can be subject to a claim in arbitration with a party to the arbitration agreement.

> Under federal common law, the Second Circuit "has recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel. Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995). '[A] willing signatory ... seeking to arbitrate with a non-signatory that is unwilling ... must establish at least one of the five theories ....

*Republic of Ecuador v. Chevrontexaco Corp.,* 499 F. Supp.2d 452, 457 (S.D.N.Y. 2007). *See also CDC Capital Inc. v. Gershon.* 282 A.D.2d 217, 723 N.Y.S. 166 (1st Dept. 2001).

The burden lies here upon BSBN as a "willing signatory" to establish one of those basis in order to arbitrate with the Barrack firm as "a non-signatory that is unwilling" to arbitrate. *Republic of Ecuador, supra.* BSBN has cited the estoppel theory as a basis to arbitrate its claims against the Barrack firm.

BSBN also has asserted, in the alternative, that the Barrack firm's December 1, 2006 letter agreement with Gershon and the "salaried partner" relationship between them reflects a

9

form of "*de facto* merger," which the courts have recognized as a ground for binding an entity to an arbitration agreement made by another entity with whom it has merged. *In re AT&S Transportation, LLC v. Odyssey Logistics & Technology Corp.*, 22 A.D.3d 750, 803 N.Y.S.2d 118 (2d Dep't 2005).

I find that the estoppel theory does not apply, but that the transaction and relationship between the Barrack firm and Gershon, as it was carried out, is a "*de facto* merger" such that certain of the claims alleged by BSBN against the Barrack firm are arbitrable in this case.

**Estoppel.** "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *American Bureau of Shipping v. Tencara Shipyard, S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999).

I conclude that the benefit, if any, to the Barrack firm from the Of Counsel Agreement is "indirect." The benefit to the Barrack firm derives directly from its December 1, 2006 agreement with Gershon, and the cases originated by Gershon, and not from the 2001 Of Counsel Agreement between Gershon and BSBN. In this respect, the present case is analogous to *Thomson – CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 779 (2d Cir. 1995).

***De Facto Merger.*** I find, however, that BSBN has established that "in substance it was the intent of [the Barrack firm] to absorb and continue" the law practice of Gershon within the structure of the Barrack firm. *In re AT&S Transportation, LLC, supra*, 22 A.D.3d at 752, 803 N.Y.S.2d at 120. Gershon's joinder as "salaried partner" with the Barrack firm (and the Barrack firm's hiring of the BSBN secretary and associate attorney with whom Gershon had worked at BSBN) was a "continuation" of Gershon's legal practice and a cessation of any other law practice by Gershon other than at the Barrack firm. The Barrack firm has held Gershon out as a partner of the firm. It also both acquired ownership of fees generated by Gershon's clients and

10

"assumed liabilities" of Gershon's practice, as exemplified by its agreement to reimburse BSBN in the amount of expenses it incurred in the Intel action during Gershon's tenure at BSBN. These circumstances reflect a *de facto* merger.

The Court held in *In re AT&S Transportation, LLC, supra*, that the factors pertinent to determining if there has been a *de facto* merger which would bind the combined entity to arbitrate under a pre-merger agreement are to be ". . . analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor," 22 A.D. 3d at 752, 803 N.Y.S. 2d at 120. I reiterate that I find it was, in substance, the intent of the Barrack firm to absorb and continue the operation of Gershon's practice. As a result, the Barrack firm is bound by the arbitration clause in Gershon's Of Counsel Agreement with BSBN. *In re ATS Transportation, LLC v. Odyssey Logistics & Technology Corp., supra.*

As noted above, however, only the First, Third and Fifth Claims alleged by BSBN are arbitrable against the Barrack firm, as the Fourth Claim already has been decided against BSBN by the New York Supreme Court in the proceeding BSBN initiated for provisional relief against the Barrack firm.

Accordingly, the objection stated by the Barrack firm to the authority of the Arbitrator to decide arbitrability of claims alleged against it in this case is overruled and denied, and the objection it has stated to the arbitrability of the claims alleged against it in this case is overruled and denied as to all but the Fourth Claim. The Fourth Claim is dismissed against the Barrack firm.

Dated: New York, New York
    February 19, 2001

_____
Joseph W. Muccia, Arbitrator

NY #1239285 v1

12

**American Arbitration Association**

---

In the Matter of the Arbitration between

Re:   13 194 01780 07

    In the Matter of the Arbitration Among

    Ballon Stoll Bader & Nadler, P.C.,

                Claimant,

      And

    A. Arnold Gershon and
    A. Arnold Gershon, P.C.,

                Respondents,

      And

    Barrack, Rodos & Bacine,

                Respondent/Stakeholder

---

## PARTIAL FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been duly designated pursuant to the Agreement of the Claimant and Respondents A. Arnold Gershon and A. Arnold Gershon, P.C. dated June 28, 2001, and having been duly sworn, and having duly and considered the allegations, briefs and proofs of the parties, make a PARTIAL FINAL AWARD as follows:

1) The objection stated by Respondent Barrack, Rodos & Bacine to the authority of the Arbitrator to decide arbitrability of claims alleged against it in this case is overruled and denied.

2) The objection stated by Respondent Barrack, Rodos & Bacine to the arbitrability of the claims alleged against it in this case is overruled and denied as to all but the alleged Fourth Claim.

3) The Fourth Claim alleged in this case by Claimant against Respondent Barrack, Rodos & Bacine is dismissed.

4) This Partial Final Award is in full settlement of those matters addressed by objections stated by Respondent Barrack, Rodos & Bacine to the authority of the

Arbitrator to decide arbitrability of claims alleged against it in this case, and to the arbitrability of such claims in this case. All other matters remain in place.

_____
Joseph W. Muccia, Arbitrator

State of New York     )
                      ) ss.:
County of New York

I, Joseph W. Muccia, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Partial Final Award.

2/19/08
_____
Date

_____
Joseph W. Muccia

14

# EXHIBIT 4

*B R & B*

*Barrack, Rodos & Bacine*

*A Professional Corporation*

**Attorneys At Law**
www.barrack.com
dbacine@barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban'
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra'
Chad A. Carder**
A. Arnold Gershon††
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui†††
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targan**
Samuel M. Ward*

Of Counsel:
Frances Vilella-Vélez††††

Admitted in PA, except:
*      Admitted in CA
**    Also admitted in NJ
***  Also admitted in CA & NJ
'      Also admitted in NY
††    Admitted in NY
†††  Admitted in NY & NJ
†††† Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

September 6, 2007

<u>*Via Facsimile*</u>

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI  02914

> **Re:    13 194 01780 07**
> **Ballon, Stoll, Bader & Nadler, P.C.**
> **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

I am writing in response to your letter of August 24, 2007, with regard to the above-referenced matter.  Your letter refers to a Demand for Arbitration dated August 17, 2007, a copy of which was sent to us accompanied by a document styled Demand for Arbitration and Claim in Arbitration.  Both documents identify this firm as a respondent.  Your letter says that the "controversy [arises] out of a contract between the above-captioned parties, containing a clause providing for administration by the AAA."

Please be advised that this firm is not a party to the contract referenced in your letter.  Nor have we otherwise agreed, nor do we agree, to arbitrate claims brought by the claimant.  Accordingly, we are not bound by the rules of the AAA in this matter and therefore will not be responding to the demand.

Sincerely,

Daniel E. Bacine

DEB/mmb

cc:    Susan Schneiderman, Esquire
       A. Arnold Gershon, Esquire

# EXHIBIT 5

BRB

*Barrack, Rodos & Bacine*
A Professional Corporation
**Attorneys At Law**
www.barrack.com
dbacine@barrack.com

*Leonard Barrack*
*Gerald J. Rodos*
*Daniel E. Bacine*
*William J. Ban*[†]
*Jeffrey A. Barrack*
*Stephen R. Basser*
*Regina M. Calcaterra*[†]
*Chad A. Carder*[**]
*A. Arnold Gershon*[††]
*Jeffrey B. Gittleman*[**]
*Jeffrey W. Golan*
*John L. Hacussler*[*]
*Robert A. Hoffman*[**]
*M. Richard Komins*
*Gloria Kui*[†††]
*Lisa M. Lamb*
*Leslie Bornstein Molder*
*Mark R. Rosen*[***]
*Beth R. Targan*[**]
*Samuel M. Ward*[*]

Of Counsel:
*Frances Vilella-Velez*[††††]

Admitted in PA, except:
[*]    Admitted in CA
[**]   Also admitted in NJ
[***]  Also admitted in CA & NJ
[†]    Also admitted in NY
[††]   Admitted in NY
[†††]  Admitted in NY & NJ
[††††] Also admitted in Puerto Rico


**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax


**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax


**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax


**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

October 16, 2007

*Via E-mail*

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI  02914

> **Re:    13 194 01780 07**
> **Ballon, Stoll, Bader & Nadler, P.C.**
> **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

By letter dated September 6, 2007, with regard to the above-referenced matter, I informed you that, because this firm is not a party to any arbitration agreement with the claimant, we are not bound by the rules of the American Arbitration Association ("AAA") in this matter and will therefore not be responding to the arbitration demand.  A copy of my letter was sent to both Susan Schneiderman of Ballon, Stoll, Bader & Nadler, P.C. and A. Arnold Gershon.

By letter dated September 7, you asked Ms. Schneiderman and Mr. Gershon to provide comments with respect to my letter.  To my knowledge, neither Ms. Schneiderman nor Mr. Gershon disagreed with our firm's position.  It was therefore a surprise when I received your September 25 letter suggesting, without being clear, that the AAA intended to proceed in the arbitration with our firm remaining as a party.  If that, in fact, is the AAA's intention, please so inform me and explain the legal basis for AAA's position.

I reiterate what I said in my September 6 letter:  we are not a party to any arbitration agreement with the Ballon Stoll firm and do not intend to respond to the unauthorized and inappropriate arbitration demand.

Sincerely,

Daniel E. Bacine

DEB/mmb
cc:    Susan Schneiderman, Esquire
       A. Arnold Gershon, Esquire

# EXHIBIT 6

BRB

*Barrack, Rodos & Bacine*
A Professional Corporation
**Attorneys At Law**
**www.barrack.com**

dbacine@barrack.com

*Leonard Barrack*
*Gerald J. Rodos*
*Daniel E. Bacine*
*William J. Ban*†
*Jeffrey A. Barrack*
*Stephen R. Basser**
*Regina M. Calcaterra*†
*Chad A. Carder***
*A. Arnold Gershon*††
*Jeffrey B. Gittleman***
*Jeffrey W. Golan*
*John L. Haeussler**
*Robert A. Hoffman***
*M. Richard Komins*
*Gloria Kui*†††
*Lisa M. Lamb*
*Leslie Bornstein Molder*
*Mark R. Rosen****
*Beth R. Targan***
*Samuel M. Ward**

Of Counsel:
*Frances Vilella-Vélez*††††

Admitted in PA, except:
*      Admitted in CA
**     Also admitted in NJ
***    Also admitted in CA & NJ
†      Also admitted in NY
††     Admitted in NY
†††    Admitted in NY & NJ
††††   Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

November 16, 2007

*Via E-mail*

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI  02914

>    **Re:    13 194 01780 07**
>    **Ballon, Stoll, Bader & Nadler, P.C.**
>    **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

I am in receipt of your letter of November 5, 2007, acknowledging receipt of my October 16 letter to you with regard to the above-referenced matter.  My October 16 letter reiterated what I had said in earlier correspondence:  that my firm, Barrack, Rodos & Bacine, is not a party to any agreement that would require us to participate in this arbitration.  My letter asked that, if the AAA intended to proceed with the arbitration treating our firm as a party, you explain the legal basis for the AAA's position.

Your November 5 letter is not responsive.  Instead, it simply repeats the boiler-plate statement made in your September 25, 2007, letter:

>    The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

>    Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules.  The parties may wish to raise this issue, upon appointment of the arbitrator.

*Barrack, Rodos & Bacine*

Ms. Jennifer Metz
November 16, 2007
Page 2

Nowhere do you explain, as I had asked, the legal basis for treating my firm as a party to this arbitration. Since your filing requirements provide for inclusion of an agreement to arbitrate, and since the claimant has not included such an agreement with us, I suggest that the claimant has not met your filing requirements.

In any event, since the AAA will not answer my question, I would ask that you forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter. Please forward to me a copy of your correspondence to the arbitrator in that regard.

Thank you for your anticipated cooperation.

Sincerely,

Daniel E. Bacine

DEB/mmb

cc:     Susan Schneiderman, Esquire
        A. Arnold Gershon, Esquire

# EXHIBIT 7

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES
------------------------------------------------------------x
In the Matter of the Arbitration Among

BALLON STOLL BADER & NADLER, P.C.,

     Claimant.

    **AAA Claim No.**

  and

    **DEMAND FOR ARBITRATION**
    **AND CLAIM IN ARBITRATION**

A. ARNOLD GERSHON and
A. ARNOLD GERSHON, P.C.,

     Respondents,
  and

BARRACK, RODOS & BACINE,

     Respondent/Stakeholder.
------------------------------------------------------------x

   Claimant, Ballon Stoll Bader & Nadler, P.C. ("BSBN"), hereby demands

Arbitration and interposes the following claims against the Respondents, A. Arnold

Gershon ("Arnold") and A. Arnold Gershon, P.C. ("AAG") (Collectively, "Gershon"),

and the Stakeholder Respondent, Barrack, Rodos & Bacine ("Barrack"):

## GENERALLY WITH RESPECT TO ALL CLAIMS

  **1.**  BSBN is a New York Professional Corporation of attorneys engaged in

the practice of law with its principle offices located at 1450 Broadway, New York, New

York.

  **2.**  From on or about September 1, 2001 until on or about December 1, 2006[1],

pursuant to a written contract dated as of June 28, 2001, as amended by Agreement dated

---

[1] Although AAG "resigned" effective December 1, 2006, his resignation was not effective under the terms of the Of Counsel Agreement until on or about January 23, 2007.

as of June 26, 2006 (collectively, the "Of Counsel Agreement"), AAG was engaged in

practice as "Of Counsel" to BSBN. A copy of the Of Counsel Agreement, executed by

BSBN, on the one hand, and Gershon on the other, is annexed hereto and made a part

hereof as Exhibit 1.

    **3.**    The parties' dispute arises out of the Of Counsel Agreement, which

contains, in Article <u>ELEVENTH</u> thereof, a provision requiring arbitration thereof:

> **ELEVENTH:** The parties agree that any controversy or
> claim arising out of, or relating to, this Agreement or the breach
> thereof, shall be settled by arbitration in the City of New York, in
> accordance with the Rules of the American Arbitration Association
> then obtaining, and that judgement upon the award rendered by
> such arbitration tribunals shall be binding and entered in the
> Supreme Court of New York County upon which the parties
> expressly confer jurisdiction.

    **4.**    The Of Counsel Agreement provides, in relevant part,

> **SIXTH:** [Gershon agrees] during the term of this Agreement to:
> (a) Perform legal services for their clients, as may be reasonably
> required, with all such clients being considered clients of the Firm
> during the contract term;
> (b) Pay and satisfy their own personal debts;
> (c) Inform the Firm and the Bookkeeping Department of all legal
> services performed by them on behalf of the Firm;
> (d) Remit all fees and/or commissions earned by them during the
> term of this Agreement;
> (e) Make no loans on behalf of the Firm, nor obligate the Firm,
> without the consent of the Firm;
> (f) New matters initiated by [Gershon] shall be approved in
> advance by the Firm;
> (g) Devote their time to the business of the Firm; and shall not,
> directly or indirectly, engage in any other competitive business or
> profession, without the consent of the Firm. Nothing herein
> contained shall prohibit them from investing or trading in
> securities, bonds, commodities, real estate, or other forms of
> investment, for their own benefit.
> (h) Conduct themselves in a lawful, ethical and professional
> manner.
>                                   \* \* \* \* \*

**NINTH:** Upon the expiration or termination of this Agreement: (a) [AAG] shall be entitled to remove all of its personal effects, law books, and equipment from the Firm's premises; **(b) All collections for services rendered prior to the termination of this Agreement and received by the Firm or [Gershon], after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement. [Gershon] and the Firm shall share in said collections as set forth in Fee Schedule "A" hereof.** [emphasis supplied]

**TENTH:** This Agreement [*sic*] be for a term of one (1) year and shall continue thereafter until: (a) a written notice of termination is given by either party to the other effective sixty (60) days from the date of the notice.

\* \* \* \* \* \*

**FOURTEENTH:** This Agreement sets forth the entire understanding among the parties. The same may not be altered, modified, canceled or varied, except by a subsequent writing signed by the parties hereto.

5.      Schedule "A" to the Of Counsel Agreement provided that fees with respect to any Stockholder Derivative Actions originated by Gershon during the term of the Of Counsel Agreement were owned in equal shares by BSBN and Gershon, so that Gershon and BSBN each retained an undivided 50% ownership interest in such fees.

6.      In or around May 2005, during the term of the Of Counsel Agreement, Gershon originated a Stockholder Derivative Action, Seinfeld v. Barrett, Intel Corporation, *et al.*, in the United States District Court for the District of Delaware (Case No. 05-298 (JFF)) (the "Intel Suit"). Accordingly, BSBN and Gershon each acquired an undivided 50% interest in any fees derived from the Intel Suit (the "Intel Fees").

7.      As of on or about December 1, 2006, upon information and belief, Gershon joined Barrack as a partner in its New York Office.

8.      Gershon provided BSBN with only 7-days' verbal notice of termination of

3

the Of Counsel Agreement. As such, the Of Counsel Agreement terminated no earlier than January 23, 2007.

9.      A Stipulation of Settlement in the Intel Suit was entered into on or about March 7, 2007. On or about March 16, 2007, Gershon submitted to the District Judge in the Intel Suit a fee application pursuant to which fees and expenses were sought on behalf of the plaintiff, Seinfeld (the "Intel Plaintiff"), in the amount of $862,500.00. Included amongst those fees and expenses were the fees and expenses incurred by Seinfeld while Gershon was "of counsel" to BSBN pursuant to the terms of the Of Counsel Agreement.

10.     By letter dated May 18, 2007, BSBN notified Gershon, Barrack and all other counsel in the Intel Suit that it claimed and reserved a charging lien with respect to any sums recovered in connection with the Intel Settlement and fee application.

11.     On May 23, 2007, a Judgment of Dismissal in the Intel Suit was duly entered which provides, in relevant part, for payment of Plaintiff's attorneys' fees and expenses in the amount of $862,500.00 (the "Fee Award"):

> **12. Subject to all conditions set forth in the Stipulation of Settlement, Intel Corporation shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements in the amount of $862,500.00 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine.**

12.     Upon information and belief, Intel was required to have paid the fee award by July 16, 2007.

13.     Gershon has taken the position that the entire of the Fee Award is Gershon's property, and that BSBN is not entitled to share in any portion of the Fee Award.

14.     Upon information and belief, Gershon sold, transferred or assigned all or

4

part of the Fee Award to Barrack. Barrack is therefore denominated a Stakeholder with an Interest.

## BSBN's FIRST CLAIM FOR RELIEF
### Recovery in *Quantum Meruit*

15.     During the period beginning May 1, 2005 and ending November 30, 2006, BSBN provided professional services to the Intel Plaintiff in connection with the Intel Suit amounting to $299,043.19.

16.     The Fee Award in the amount of $862,500.00 was rendered wholly on account of attorneys' fees and expenses incurred in the representation of the Intel Plaintiff in connection with the Intel Suit.

17.     BSBN is entitled to a declaration that it is entitled to receive the sum of $299,043.19 from the Fee Award and, in furtherance thereof,

(a) an Order directing that that said amount, with interest from July 16, 2007, be paid over to BSBN by Barrack and/or Gershon; and

(b) failing payment thereof, that judgment in said amount may be entered in BSBN's favor and against Gershon and Barrack, together with interest from July 16, 2007.

## BSBN's SECOND CLAIM FOR RELIEF
### Recovery in Contract

18.     Gershon's failure and refusal to pay to BSBN any portion of the Fee Award in the Intel Suit constitutes a breach of the Of Counsel Agreement.

19.     BSBN seeks an affirmative award in this Arbitration in the minimum amount of[2] $252,488.75, consisting of fees in the amount of $246,926.56 and expenses in

---

[2] Gershon's fee application to the US District Court in Delaware did not particularize the time and charges.

the amount of $5,562.19, all with respect to its representation of the Plaintiff in the Intel

Suit, computed as follows:

| | | |
|---|---|---|
| Total Fee Award: | $ 862,500.00 | |
| | - 28,835.85 | (Total Expenses) |
| Total Award | | |
| Net of Expenses | $ 832,664.17 | |
| | x 59.31% | (BSBN's *Pro Rata* Share[3]) |
| | $ 493,853.12 | |
| | x 50% | (BSBN's Ownership Interest[4]) |
| | $ 246,926.56 | (Fees Due BSBN) |
| | + 5,562.19 | (BSBN's Reimbursable Expenses[5]) |
| **TOTAL DUE BSBN** | $ 252,488.75 | |

## BSBN'S THIRD CLAIM FOR RELIEF
### Fixing and Enforcement of Charging Lien

**20.**    Gershon and Barrack were duly notified, on or about May 18, 2007, that

BSBN asserted a charging lien against the Intel Fee Award.

**21.**    BSBN requests that the amount of its lien be fixed and that Barrack be

directed to remit to BSBN such amount as is established as BSBN's fee from the corpus

of the Intel Fees received or to be received.

---

It is therefore not possible for us to assess the amount of fees charged by Arnold with respect to the Intel Suit between December 1, 2006 and January 23, 2007.   It is estimated that fees of $25,000.00 were charged by Gershon during that period, of which BSBN would be entitled to $12,500.00.
[3] Billing records of BSBN and Barrack as submitted to the Court by Gershon reflect fees charged in the respective amounts of $293,481.00 and $201,342.50, so that BSBN's fees represent 59.31% of the aggregate.
[4] Pursuant to the Of Counsel Agreement (Article NINTH and Schedule A) BSBN is the owner of 50% of "all collections for services rendered prior to the termination of this [Of Counsel Agreement] and received by" either BSBN or Gershon "after the termination date of this [Of Counsel Agreement]."
[5] Under Article SECOND of the Of Counsel Agreement, BSBN is entitled to full reimbursement of expenses in the amount of $5,562.19.

## BSBN'S FOURTH CLAIM FOR RELIEF
### Stakeholder Claim

**22.**    The Intel Court directed that payment of the Intel Fee Award be made to Barrack's Philadelphia offices.

**23.**    Upon information and belief, the settlement funds have been delivered to Barrack or will soon be delivered to Barrack.

**24.**    So as not to dissipate the fund created for the express purpose of paying legal fees to counsel for the Intel Plaintiff in connection with the Intel Suit, including BSBN, BSBN is entitled to an Order directing and instructing Barrack to retain, in escrow, a sum sufficient to compensate BSBN for all fees and expenses which may be declared due BSBN therefrom.

## BSBN'S FIFTH CLAIM FOR RELIEF
### Arbitration Costs and Attorney Fees

**25.**    In accordance with Rule R-43(c) and (d) of the Commercial Rules of the American Arbitration Association, BSBN seeks, as part of its Award, assessment of all fees, compensation and expenses of this arbitration against the Respondents and recovery of its attorney fees.

WHEREFORE, BSBN prays for an award (a) fixing the amount of its fees due in connection with the Intel Suit in accordance with the monetary demands made herein; (b) directing that those fees be paid from the Intel Fees received or to be received by Barrack or, failing such payment, that an award in said amount be entered against the Respondents, jointly and severally; and (c) awarding BSBN recovery of all costs, compensation and expenses chargeable to BSBN in connection with these proceedings and recovery of its attorneys fees incurred in connection herewith.

7

Dated: New York, New York
      August 17, 2007

BALLON STOLL BADER & NADLER, P.C.

By: _____
        Susan Schneiderman
1450 Broadway
New York, New York  10018
212-575-7900
(fax) 212-764-5060
sschneiderman@ballonstoll.com

8

# EXHIBIT 8

**AGREEMENT** made as of this 28th day of June, 2001, by and between BALLON STOLL BADER & NADLER, P.C., a New York Professional Corporation (hereinafter referred to as "BSB&N", or "the Firm"), A. Arnold Gershon, P.C., a New York professional corporation, with offices at 875 Fifth Avenue, New York, New York 10021, (hereinafter referred to as "Arnold"), and Arnold Gershon, individually, residing at 875 Fifth Avenue, New York, New York 10021 (hereinafter referred as "Gershon").

<u>W I T N E S S E T H</u>

**WHEREAS**, The Firm wishes to offer to Arnold a Contract as "Of Counsel" to the Firm, and Arnold agrees to become such "Of Counsel" on the following terms.

**NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES OF THE PARTIES HERETO, IT IS COVENANTED AND AGREED AS FOLLOWS:**

**FIRST**: Gershon represents and warrants to the Firm that he is an attorney in good standing and admitted to practice law in the State of New York. Arnold and Gershon each represents that they have not been the subject of any disciplinary action by any Bar Association or the defendants in any malpractice litigation.

**SECOND**: Arnold agrees to become an Of Counsel to the Firm effective the 1st day of September, 2001. Arnold shall be

considered an Of Counsel to the Firm and shall appear as such on all Firm letterhead indexes and listings during the term of this Agreement. Arnold shall receive from the Firm the use of an office, secretary, and the customary use of BSBN staff including attorneys, to be mutually agreed upon between Arnold and the Firm in furtherance of assisting it in handling its cases. The Firm also agrees to pay the necessary litigation costs and expenses incurred in connection with the performance of Arnold's duties hereunder, which shall be reimbursed from any recoveries made thereon.

**THIRD**: Pursuant to The Firm's Agreement between its stockholders, Of Counsel Attorneys have no authority to bind the Firm in any manner whatsoever and receive no compensation nor share in any profits, except as set forth in this Agreement. It is understood and agreed that Arnold, as long as it is an Of Counsel Attorney, shall have no obligation to make any capital contribution to the Firm, nor shall it be liable for any obligation or debts of the Firm.

**FOURTH**: During the term of this Agreement, Arnold shall receive compensation from the Firm as follows:

(a) Reimbursement of any reasonable expenses incurred in connection with servicing its cases on an as is and where needed basis.

(b) A percent of the fees paid to the Firm from clients introduced to the Firm by Arnold or Gershon, less expenses incurred, to be paid when the fees are actually received, in

2

accordance with Fee Schedule "A" attached hereto.

(c) All calculations of fees paid to the Firm shall be net of forwarding fees, fees paid to other counsel and disbursements and expenses incurred.

**FIFTH**: (a) As is more specifically set forth in Schedule "B", all of Arnold's and Gershon's uncollected accounts receivable existing as of the effective date of this Agreement shall be the sole property of the Firm.   All of their accounts receivable billed or accrued to their clients, including disbursements, during the term of this Agreement, shall be billed under the name of BSBN and shall also be the sole property of the Firm;

(b) For the purposes of this Agreement, "Accounts Receivable" shall mean amounts actually billed and amounts accrued but unbilled to Arnold's and Gershon's clients prior to and during the effective date of this Agreement which have not been paid.

**SIXTH**:   Arnold and Gershon agree during the term of this Agreement to:

(a) Perform legal services for their clients, as may be reasonably required, with all such clients being considered clients of the Firm during the contract term;

(b) Pay and satisfy their own personal debts;

(c) Inform the Firm and the Bookkeeping Department of all legal services performed by them on behalf of the Firm;

(d) Remit all fees and/or commissions earned by them during the term of this Agreement;

3

(e)  Make no loans on behalf of the Firm, nor obligate the Firm, without the consent of the Firm;

(f) New matters initiated by Arnold or Gershon shall be approved in advance by the Firm;

(g)  Devote their time to the business of the Firm; and shall not, directly or indirectly, engage in any other competitive business or profession, without the consent of the Firm.  Nothing herein contained shall prohibit them from investing or trading in securities, bonds, commodities, real estate, or other forms of investment, for their own benefit.

(h)  Conduct themselves in a lawful, ethical and professional manner.

**SEVENTH**:  Arnold and Gershon hereby indemnify the Firm for any claim brought against the Firm based on a transaction or occurrence arising from Arnold's or Gershon's own acts or their failure to act prior to or during their association with the Firm.

**EIGHTH**:  Arnold at his sole cost agrees to carry sufficient insurance under its professional liability insurance policy in amounts to be reasonably satisfactory and at no cost to the Firm, and such other individual life insurance and medical insurance policies covering him and his family as he shall deem appropriate.

**NINTH**:  Upon the expiration or termination of this Agreement:

4

(a)   Arnold  shall  be  entitled  to  remove  all  of  its personal  effects,  law  books,  and  equipment  from  the  Firm's premises;

(b)   All  collections  for  services  rendered  prior  to  the termination of this Agreement and received by the Firm or Arnold or Gershon, after the termination date of this Agreement, shall remain the  property  of  the  Firm.   Arnold  shall  continue  to  receive  the amount  due  it  from  said  collections  as  set  forth  in  Fee  Schedule "A" hereof.

**TENTH**:    This  Agreement  be  for  a  term  of  one  (1)  year and shall continue thereafter until:

(a)  a  written  notice  of  termination  is  given  by  either party to the other effective sixty (60) days from the date of the notice.

**ELEVENTH**:    The  parties  agree  that  any  controversy  or claim arising out of, or relating to, this Agreement or the breach thereof,  shall  be  settled  by  arbitration  in  the  City  of  New  York, in   accordance   with   the   Rules   of   the   American   Arbitration Association  and  obtaining,  and  that  judgement  upon  the  award rendered by such arbitration tribunals shall be binding and entered in the Supreme  Court  of  New  York  County  upon  which  the  parties expressly confer jurisdiction.

**TWELFTH**:    If  any  provision  of  this  Agreement  shall contravene any law or be invalidated under the Laws of the United States   or   the   State   of   New   York,   it   is   agreed   that   such

5

contravention or invalidity shall not invalidate the entire Agreement, but it shall be construed as if not containing the particular provision or provisions held to be invalid or to contravene. This Agreement shall be governed by the Laws of the State of New York.

**THIRTEENTH**: This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, testamentary beneficiaries, executors, administrators and legal representatives.

**FOURTEENTH**: This Agreement sets forth the entire understanding among the parties. The same may not be altered, modified, canceled or varied, except by a subsequent writing signed by the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have hereunto sent their hands and seals this 28th day of June, 2001.

BALLON STOLL BADER & NADLER, P.C.

By: _____

A. ARNOLD GERSHON, P.C.

By: _____
       Arnold Gershon

_____
Arnold Gershon, individually

data\mak\dn\agreemen\Gershon.AGR

6

## SCHEDULE A

### FEES

1.  Existing Cases

|   |   | BSB&N | Gershon |
|---|---|---|---|
| a. | Datascope | 40% | 60% |
| b. | Palm | 30% | 70% |
| c. | 3Com | 30% | 70% |
| d. | Cisco | 30% | 70% |
| e. | Symbol Technologies | 40% | 60% |
| f. | Alcoa | 40% | 60% |
| g. | Amax Gold | 40% | 60% |
| h. | Mattel | 20% | 80% |
| i. | Health South | 0% | 100% |

2.  New Class Action Cases and stockholder derivative actions originated by Gerson    50%      50%

3.  All Other new Cases originated by Gershon    75%      25%

4.  Old class and stockholder derivative actions    40%      60%

7

AGREEMENT made as of this 26th day of June 2006, by and between

BALLON STOLL BADER & NADLER, P.C., a New York Professional

Corporation (hereinafter referred to as "BSB&N", or "the Firm"), A. ARNOLD

GERSHON, P.C., a New York professional corporation, with offices at 875 Fifth

Avenue, New York New York 10021 (hereinafter referred to as "Arnold", and

ARNOLD GERSHON, individually, residing at 875 Fifth Avenue, New York,

New York 10021 (hereinafter referred to as "Gershon").


### W I T N E S S E T H

WHEREAS, the parties wish to reform their agreement, made June 28,

2001, to state correctly their true meaning and intent on the following terms:


**NOW, THEREFORE, IN CONSIDERATION OF
THE MUTUAL PROMISES OF THE PARTIES
HERETO, IT IS COVENANTED AND AGREED
AS FOLLOWS:**

**FIRST:** In the FOURTH ARTICLE, in the second line, the word "compensation"

is deleted.

**SECOND:** In the FIFTH ARTICLE, part (a), the language "the sole property of

the firm," appearing twice therein, shall be amended to "the property of the

parties, as their interest are expressed in this Agreement."

**THIRD:** In the NINTH ARTICLE, part (b) is deleted in its entirety, and the following language, in lieu thereof, is inserted:

"(b)   All collections for services rendered prior to the termination of this Agreement and received by the Firm or Arnold or Gershon, after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement. Arnold, Gershon, and the Firm shall share in said collections as set forth in Fee Schedule "A" hereof."

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals this _____ day of June, 2006.

BALLON STOLL BADER & NADLER, P.C.

By: _____
        David Nadler

A. ARNOLD GERSHON, P.C.

By: _____
        A. Arnold Gershon

_____
A. Arnold Gershon, Individually

AAG/RSN/AGREE

# EXHIBIT 9

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES
-------------------------------------------------------------x
In the Matter of the Arbitration Among

BALLON STOLL BADER & NADLER, P.C.,

                              Claimant.

                                          **AAA Claim No.  13 194 01780 07**

              and

A. ARNOLD GERSHON and
A. ARNOLD GERSHON, P.C.,
                                          STIPULATION AND ORDER

                      Respondents,
              and

BARRACK, RODOS & BACINE,

                      Respondent/Stakeholder.
-------------------------------------------------------------x

        IT IS HEREBY STIPULATED AND AGREED, by and among A. Arnold

Gershon ("Arnold"), A. Arnold Gershon, P.C. ("AAG") (collectively "Gershon") and

Ballon Stoll Bader & Nadler, P.C. ("BSBN") as follows:

### Supplemental Responses to BSBN's Document Demand

        **1.**      In further response to Claimant's December 27, 2007 Request for

Documentary Discovery directed to Gershon, documents responsive to any of the

numbered Demands which are within the possession, custody and control of BR&B will

be produced by February 8, 2008.  Such production, and BR&B's agreement to

voluntarily undertake such production, may not be construed as an agreement to

participate in this Arbitration or as a waiver of any position taken by BR&B with respect

to the jurisdiction of the AAA or Arbitrator Muccia.

        **2.**      Documents responsive to Demand No. 15 will be produced, subject to a

1

confidentiality agreement to be entered into by the parties.

     **3.**     Gershon represents that Gershon is not in possession, custody or control of

documents responsive to Demand No. 24.

     **4.**     In further response to Demand No. 39, Gershon has produced, and BSBN

acknowledges receipt of, a copy of the May 23, 2007 transcript of proceedings held

before the Delaware District Court in the Intel suit.

     **5.**     Documents responsive to Demand No. 40, if any, will be produced.

### Supplemental Responses to Gershon's Document Demands

     **6.**     BSBN represents that the documents produced herein as BSBN 0001

through BSBN 0400 constitute the all of the documents within BSBN's possession,

custody or control which are responsive to Gershon's Request for Production of

Documents, Requests 1 through 16.

     **7.**     In full satisfaction of BSBN's obligation with respect to Requests 17

through 19, it is represented, stipulated and agreed as follows:

> The matter entitled "Grill, Harold & Libby v. Hewlett-Packard Co., BSBN
> file no. 16946-001 was opened by BSBN in September 2006. The matter
> was initiated by Irving Bizar, a BSBN Contract Partner, and Gershon. An
> action "For Inspection of Books and Records" was commenced in
> December 2006, following Gershon's separation from BSBN, in the
> Delaware Court of Chancery, New Castle County. The matter was settled
> in or around June 2007. BSBN received $15,000.00 as and for its fees.
> Gershon did not share in the settlement proceeds.

     **8.**     In full satisfaction of BSBN's obligation with respect Requests 28 through

31, it is represented, stipulated and agreed as follows:

> The lawsuit entitled "Carmen Pagan and Clarise Brown v. Merck & Co.,
> Inc." was commenced in October 2004 in NY State Supreme Court, Bronx
> County and removed to the USDC for the SDNY. Irving Bizar, Esq., was
> and remains lead counsel on behalf of BSBN. Plaintiff's moved to
> remand the case on November 29, 2004 and the remand motion was

2

stayed and transferred along with the case pursuant to the Multi District
panel order to Judge Fallon in the Eastern District of Louisiana along with
the other Merck cases. Although the personal injury cases may have been
settled, the economic loss cases, such as this one, remain pending with the
Stay in effect until March 2008. The remand motion will not be heard until
some time after the Stay is lifted.

During the pendency of this Arbitration, BSBN agrees to report to Gershon any material

changes to the status of Pagan & Brown v. Merck.

9.      BSBN objected to Requests 22 through 27 on relevancy grounds. Gershon

asserts that these requests are relevant. As set forth in paragraph 11, below, the

Arbitrator will accept written argument from Gershon on issues of waiver and relevancy.

Following his decision, the Arbitrator will rule definitively on the response, if any,

required as to Requests 22 through 27. Unless and until the Arbitrator rules otherwise, no

response to those requests is necessary.

### Additional Memoranda

10.     BSBN was given leave to submit, and did submit, in reply to the

memorandum served by BR&B, a Reply of not more than 15 double spaced pages, served

for receipt not later than February 4, 2008, addressed to the issues of (1) whether the

Arbitrator has the authority or jurisdiction to rule on the issue whether the Barrack firm is

a party to this case, including whether, among other things, the time limits of CPLR 7503

and comparable provisions of Federal law for seeking a stay of arbitration are relevant

and applicable in these circumstances where the Barrack firm is not a signatory to an

arbitration agreement, and (2) whether the nature of the substantive claim alleged by

BSBN against the BR&B arises directly from the BSBN's agreement with Gershon.

11.     In accordance with the direction of the Arbitrator, on or before February

11, 2008, Gershon may submit a memorandum of law addressing whether Gershon

3

waived their defenses of set-off or recoupment in these proceedings and the relevance of

requests 22 through 27 to Gershon's defenses of set-off or recoupment. The Arbitrator

will notify BSBN whether a responsive memorandum is requested.

### Extension of Previously Established Deadlines

12.    In accordance with the direction of the Arbitrator, all upcoming dates and

deadlines established during the December 3, 2007 Preliminary Conference are adjourned

for 3-weeks, so that: the telephone conference scheduled for February 14, 2008 will be

held on March 6, 2008; the parties will exchange witness lists and exhibit binders on

March 17, 2008; on March 20, the parties will exchange lists of rebuttal witnesses and

copies of rebuttal exhibits; all pre-hearing materials which were to have been delivered

to the Arbitrator by March 6, 2008 must instead by delivered by March 27, 2008; the

hearing will be held on April 2, 2008.


Dated: New York, New York
       February 11, 2008

BALLON STOLL BADER & NADLER, P.C.        A. ARNOLD GERSHON, P.C.


By: _____           By: _____
       Susan Schneiderman                       A. Arnold Gershon


                                         _____
                                         A. Arnold Gershon


SO ORDERED: _____
                   Joseph W. Muccia, Arbitrator


4