UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
BARRACK, RODOS & BACINE,

               Plaintiff,

                          Case No. 08 cv 02152 (PKL)

       -against-

BALLON STOLL BADER & NADLER, P.C.,

               Defendant.
---------------------------------------------------------x

DECLARATION OF
SUSAN SCHNEIDERMAN, ESQ.
IN OPPOSITION TO MOTION FOR
<u>PRELIMINARY INJUNCTION</u>

      SUSAN SCHNEIDERMAN, an attorney duly admitted to the practice of law in the State of New York and a member in good standing of the bar of this Court, affirms the following to be true under penalty of perjury:

      1.  I am a member of Ballon Stoll Bader & Nadler, P.C. ("BSBN"), the Defendant herein named.  I respectfully submit this Declaration in opposition to the application by Barrack, Rodos & Bacine ("BR&B") for an Order enjoining the continued prosecution against BR&B of an Arbitration Proceeding pending before the American Arbitration Association under Case no. 13 194 01780 07 (the "Arbitration").  I am the principle attorney appearing for BSBN in the Arbitration.

      2.  BR&B belatedly brings this application, after having expressly and purposefully submitted all of the issues raised herein for determination by the Arbitrator.  BR&B must be denied this "second bite at the apple," having already elected its remedy.  The Arbitrator's ruling must stand and BR&B must be Ordered to submit to arbitration.

**Background Facts Concerning The Dispute Between BSBN and BR&B**

3.   The Arbitration underlying BR&B's motion arises from BSBN's claim for fees pursuant to the terms of a written contract dated as of June 28, 2001, as amended by Agreement dated as of June 26, 2006 (the "Of Counsel Agreement"), among A. Arnold Gershon, P.C. ("AAG"), A. Arnold Gershon ("Arnold") (collectively, "Gershon") and BSBN.  A copy of the Of Counsel Agreement is annexed to BR&B's moving papers as Exhibit 8.

4.   Gershon's law practice was engaged primarily in prosecution of class action suits and stockholder derivative suits.  From on or about June 28, 2001 through on or about November 30, 2006, Gershon was engaged in practice as "Of Counsel" to BSBN and Gershon's law practice was conducted by and through BSBN, pursuant to the Of Counsel Agreement.

5.   Under the Of Counsel Agreement, 50% of all fees derived from stockholder derivative suits initiated by Gershon became the property of BSBN, which proprietary interest survived the termination of the Of Counsel Agreement:

NINTH: Upon the expiration or termination of this Agreement: …

(b) All collections for services rendered prior to the termination of this Agreement and received by [BSBN] or [Gershon], after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement….

6.   In or around May 2005, while AAG was "Of Counsel" to BSBN, Gershon originated a Stockholder Derivative Action, Seinfeld v. Barrett, Intel Corporation, et al., in the United States District Court for the District of Delaware, Case No. 05-298 (JFF), (the "Intel Suit").

7.  On or about November 23, 2006[1], Gershon terminated the Of Counsel Agreement, effective December 1, 2007.  Arnold simultaneously joined BR&B as a partner in BR&B's New York office.  Arnold took with him to BR&B an associate, Gloria Kui, and a secretary, Elinor Bernier, both of whom had been employees of BSBN assigned to staff Gershon's cases.  Arnold also assigned to BR&B "all fees generated by" Gershon during Arnold's association with BR&B, which fees became "the property of Barrack Rodos & Bacine."[2]  Although Gershon reached an agreement with BSBN with respect to the future fees earned in connection with most of the then pending matters introduced by Gershon, there was no meeting of the minds concerning the fees associated with the Intel Suit, a fact which BR&B concedes (Bacine Aff[3]., ¶11).

8.  By Order and Judgment rendered May 23, 2007, Hon. Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, directed as part of the settlement of the Intel Suit that:

> Intel Corporation ***shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements*** in the amount of $862,500.00 …... Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine. [emphasis added].

A copy of the Order embodying the Intel Fee Award is annexed hereto as Exhibit A. BR&B in fact received from Intel the sum of $862,500.00 (the "Intel Fees") on or about June 29, 2007.  Upon information and belief, the sum of $658,779.66 remains in BR&B's possession.  Copies of documents reflecting BR&B's receipt of the Intel Fees and partial

---

[1] BSBN and Gershon disagree concerning the date and manner of termination.  Resolution of that question is neither necessary for not relevant to the issue before the Court on this motion.
[2] The BR&B/Arnold Agreement was reviewed, *in camera*, by the Arbitrator.  The quoted provision is the only portion of that agreement which was provided to BSBN.
[3] References to the "Bacine Aff." are to the Affidavit annexed to the moving papers as Exhibit 1.

disbursement thereof are annexed hereto as Exhibit B.  BSBN claims entitlement to a

portion of the Intel Fees in accordance with the provisions of the Of Counsel Agreement.

        9.   The Of Counsel Agreement provides for the resolution of "any

controversy or claim arising out of, or relating to, this Agreement or the breach thereof"

through Arbitration before the American Arbitration Association ("AAA").  Prior to

commencing arbitration, BSBN attempted to negotiate a settlement of the Intel Fees issue

by opening a dialogue with Arnold.   Arnold reported in an e-mail dated May 8, 2007 that

he was "in no position to discuss" Intel with BSBN "until one of [Arnold's] partners

returns," on or about May 14, 2007.  The following day, attorney Howard Bader

transmitted the following e-mail message to Arnold:

> … I don't understand why we have to wait for your partner's
> return before we discuss the [Intel] situation.  The Fee Application
> is coming up quickly on May 23rd and we have to make a provision
> for same.  I believe it has to be filed a week in advance.  Please call
> [BSBN partners] Vano or David quickly to discuss the situation so
> we can move forward immediately.  ***Should we make a separate
> Fee Application to cover all the time and expenses that were
> expended by BSBN?***  Please advise. Be well. [emphasis added].

Arnold's May 14, 2007 reply, on BR&B letterhead, included the following assertions:

> …With respect to Intel…**we** are prepared to reimburse your
> expenses of $5,328.52 upon **our** recovery of the same.  **We** are not,
> however, prepared to pay you any part of the fee, should the court
> make an award.
>     Concerning your request as to whether you should make a
> separate fee application, **our** answer is that it is unnecessary and
> improper….[emphasis added].

Copies of the referenced correspondence are annexed hereto as Exhibit C.

        10.  By letter dated May 18, 2007 (Exhibit D hereto), BSBN notified

Gershon, BR&B and all other counsel in the Intel Suit that it claimed and reserved a

charging lien with respect to any amounts recovered in connection with the Intel Settlement and fee application.

11. BSBN commenced Arbitration on August 17, 2007 against Gershon and BR&B, the central issue being BSBN's entitlement to a portion of the Intel Fees. BSBN seeks from the Arbitrator, among other things, a determination of the amount of the Intel Fees to which it is entitled and an affirmative award of those fees.

12. Although BR&B is not a signatory to the Of Counsel Agreement, BSBN maintains that BR&B is subject to the agreement to arbitrate by application of one or more of the following legal theories:

(a) by reason of estoppel; and/or

(b) by reason of the "merger doctrine;" and/or

(c) as a successor to Gershon under the Of Counsel Agreement.

## BR&B Was Aware of the Of Counsel Agreement.

13. According to the movants, BR&B is a sophisticated firm of attorneys with 30 years of experience "litigating large and complex cases with extensive discovery programs that involve millions of pages of documents and many depositions." [Bacine Aff., ¶3]. According to the firm's resume, Mr. Bacine "is a graduate of Temple University (B.S. 1967) and of Villanova University School of Law (J.D. 1971), where he was an Associate Editor of the Law Review and a member of the Order of the Coif" and "has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 31 years…" During his discussions with Mr. Bacine in November 2006, Arnold told Bacine "that he would work out an arrangement to divide

equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some." [Bacine Aff. ¶10].

14. By "late April or early May 2007," **before the proposed Order requiring remittance of the Intel Fees to BR&B's account was ever drafted** and approximately two month before transmittal of the Intel Fees to BR&B, Mr. Bacine learned that "Ballon Stoll claimed to retain a financial interest in one of the cases he brought with him, specifically Intel." [Bacine Aff. ¶11].  Following receipt of BSBN's May 18, 2007 Lien Notice, "Gershon shared with [Bacine] the documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm" which "reflect[ed] a meeting of the minds on the division of cases and, except for Intel (about which there was no meeting of the minds), on the fees from those cases…" [Bacine Aff. ¶11].  At that time, Gershon also shared with Bacine "a copy of the agreement that Gershon signed that contained the arbitration clause." [Bacine Aff. ¶11].   Intel Fees were neither awarded by the Court nor received by BR&B at that time. [Bacine Aff., ¶11].

15. Accordingly, by at least May 18, 2007, BR&B knew that, pursuant tot he terms of the Of Counsel Agreement, any fees received on account of work performed during the term of the Of Counsel Agreement were received in trust for BSBN.  BR&B also knew that their right, title and interest in those fees by virtue of Arnold's assignment flowed directly from the Of Counsel Agreement.

**BR&B's Actions Vis-à-vis Arbitration.**

16.  Following commenced of arbitration on August 17, 2007, BR&B advised the AAA by letter dated September 6, 2007[4], that the firm would "not be responding to the [arbitration] demand," citing the absence of an arbitration agreement between BSBN and BR&B.  By letter dated September 25, 2007, the AAA Case Administrator, Jennifer Metz, responded to Mr. Bacine with the AAA's position:

> **…The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules. Accordingly, <u>in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules</u>. The parties may wish to raise this issue, upon appointment of the arbitrator.**
>
> **The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration. The AAA should not be named as a party-defendant. The Rules state that the AAA is not a "necessary party". <u>The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.</u> [underscoring added].**

17.  *BR&B ignored the AAA's admonition and did not apply to the Court for relief.*  Instead, BR&B persisted in its letter-writing campaign, "reiterating" to the AAA on October 16, 2007 that BR&B "[is] not a party to any arbitration agreement with the Ballon Stoll firm and [does] not intend to respond to the unauthorized and inappropriate arbitration demand." BR&B also requested in that letter that the AAA clarify whether it "intended to proceed in the arbitration with [BR&B] remaining as a party" and, if so, that the AAA "explain the legal basis for AAA's position."  Ms. Metz responded on

---

[4] The movant annexes BR&B's correspondence to the AAA as part of their moving papers but omits the responsive correspondence received in return.  A complete set of those communications is annexed hereto as Exhibit E.

November 5 by reinforcing the AAA's position noted above, again inviting Mr. Bacine to seek a judicial stay. (See Exhibit E hereto).

18. Again, ***BR&B ignored the AAA's admonition and did not apply to the Court for relief***.  Instead, on November 16, 2007, Mr. Bacine wrote <u>again</u> to Ms. Metz, protesting the "unresponsive" nature of her letters and specifically requesting that Ms. Metz **"forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter."**

19. In the meantime, on November 12, 2007, the parties, including BR&B, were notified that Joseph W. Muccia, Esq., of Thelen Reid Brown Raysman & Steiner LLP, had been appointed as Arbitrator.  Mr. Muccia's appointment was confirmed on November 21, 2007 and, on December 3, 2007, a "Preliminary Hearing" was held, telephonically, among all parties, Mr. Muccia and Ms. Metz.

20. Among the agenda items discussed on December 3, 2007 was the question, ***raised by Mr. Bacine***, of whether BR&B could be compelled to arbitrate since they were not a signatory to the agreement containing the arbitration clause.  After some discussion, Arbitrator Muccia, ***<u>with the agreement and consent of Mr. Bacine</u>***, framed the threshold question as follows[5]:

> **[Whether] the Barrack firm is properly a party in this arbitration Case, notwithstanding that it has never signed an applicable agreement to arbitrate..**

BSBN was instructed to brief the foregoing issue and Mr. Bacine agreed to the stated procedure, whereby the question, as framed, would be submitted to the Arbitrator for decision.  During a December 17, 2007 conference call, Mr. Bacine was granted to

---

[5] The substance of a second question raised by Mr. Muccia and addressed before the Arbitrator was not raised herein and therefore is not relevant to this motion.

opportunity to respond to BSBN's initial submission.  In its January 22, 2008 responsive submission, BR&B raised, ***for the very first time***, the question of whether "the Court, not the Arbitrator, has sole jurisdiction to determine whether BR&B is required to participate in this arbitration."  A copy of that memorandum is annexed to the moving papers as Exhibit 2[6].

### Concluding Remarks

21. As addressed more fully in the accompanying Memorandum of Law, BSBN maintains that jurisdiction is vested in the Arbitrator, who properly determined the issues.  BR&B waived any right it may have otherwise had to insist upon a determination by the Court.  Having done so, the Arbitrator's "Partial Final Award" (Exhibit 3 to the Moving Papers) must stand, making an injunction entirely inappropriate.

WHEREFORE, the relief requested by the Movant should be denied in all respects and the Arbitrator's "Partial Final Award" should be confirmed by this Court.

Dated: New York, New York
March 11, 2008

_____
Susan Schneiderman (SS 9840)

---

[6] BR&B attaches its own responsive submission in the arbitration but omits BSBN's initial and reply memoranda, both of which are annexed hereto as Exhibit F and G, respectively.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05-298 (JJF) |
| | ) | |
| CRAIG R. BARRETT, CHARLENE | ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, | ) | |
| D. JAMES GUZY, REED E. HUNDT, | ) | |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, | ) | |
| JANE E. SHAW, JOHN L. THORNTON, | ) | |
| DAVID B. YOFFIE, ANDREW S. GROVE, and | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**FINAL JUDGMENT AND ORDER OF DISMISSAL**

This matter came before the Court for hearing on MAY 23, 2007, on the application of the parties for approval of the settlement set forth in the Stipulation of Settlement dated as of March 7, 2007 (the "Stipulation"). The Court, having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including nominal defendant Intel Corporation ("Intel").

3.      The Court hereby approves the settlement set forth in the Stipulation and finds that said settlement is, in all respects, fair, just, reasonable and adequate to Intel Corporation and its shareholders.

4.      The Court finds that the mailing and distribution of the Notice satisfies the requirements of due process and Rule 23.1 of the Federal Rules of Civil Procedure, and shall constitute due and sufficient notice to all Persons entitled thereto.

5.      The Litigation and all derivative claims contained therein, as well as all of the Released Claims are dismissed with prejudice as to Plaintiff, Defendants and Intel Corporation's shareholders. The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

6.    The Court finds that the Stipulation and settlement contained therein is fair, just, reasonable and adequate as to each of the Settling Parties, and that the Stipulation and settlement contained therein is hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

7.    Upon the Effective Date hereof, Plaintiff, Intel Corporation and Intel Corporation's shareholders shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Released Parties.

8.    Plaintiff, Intel Corporation and Intel Corporation's shareholders are hereby forever barred and enjoined from prosecuting the Released Claims (including Unknown Claims) against the Released Parties.

9.    Upon the Effective Date hereof, Plaintiff shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released the Individual Defendants from any and all direct claims he may have against them relating to their service on the Intel Corporation Board of Directors.

10.    Upon the Effective Date hereof, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged the Plaintiff and his counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims (including Unknown Claims).

11.    Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence

of, the validity of any Released Claim, or of any wrongdoing or liability of the

Defendants and the Released Parties, or (b) is or may be deemed to be or may be used as

an admission of, or evidence of, any fault or omission of any of the Defendants and the

Released Parties in any civil, criminal or administrative proceeding in any court,

administrative agency or other tribunal. Defendants and the Released Parties may file the

Stipulation and/or the Judgment in any action that may be brought against them in order

to support a defense or counterclaim based on principles of *res judicata,* collateral

estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim

preclusion or issue preclusion or similar defense or counterclaim. Notwithstanding the

foregoing, nothing herein shall form the basis of a justification for a defense or

counterclaim based on principles *of res judicata* as between any of the Defendants.

      12.     Subject to all conditions set forth in the Stipulation of Settlement, Intel

Corporation shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket

disbursements in the amount of $ 86 2,500 within fourteen (14) business days of the

Effective Date of the settlement. Payment shall be made to the Philadelphia,

Pennsylvania offices of Barrack, Rodos & Bacine.

      13.     Without affecting the finality of this Judgment in any way, this Court

hereby retains continuing jurisdiction over: (a) implementation of this settlement; and

(b) all parties hereto for the purpose of construing, enforcing and administering the

Stipulation.

      14.     In the event that settlement does not become effective in accordance with

the terms of the Stipulation, then this Judgment shall be rendered null and void to the

extent provided by and in accordance with the Stipulation and shall be vacated and, in

such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

15.    Except as provided in Paragraph 12 above, each party shall bear its own fees and costs.

Dated:  May 23, 2007

BY ORDER OF THE COURT
United States District of Delaware

```
DEPHTI   A910507· TPX4X312 Dep Acct History Transaction Inq   BAHTD075 07/24/07
                                                              Page:   2  15:21
Org: 075 Serv: DDA Acct: 2000030360750         C/W:  Date:              Stm: H
                                                              MORE:    -
Short Name: BARRACK RODOS &                    Daily Bal:              .00

  Date   Serial    T/C        Amount    T/S Cap Rec  Sequence    Date/Desc
06/11/07           256        25.00- 076 751 751 0000000000  SERVICE CHG
                   COMMERCIAL SERVICE CHARGES FOR MAY 2007
                                             DAILY BAL:          25.00-

06/12/07           640        25.00+ 063 752 752 0000375523  SER FEE REF
                                             DAILY BAL:            .00

06/29/07           226     862,500.00+ 062 001 751 0629005240  FUNDS TR CR
                   FUNDS TRANSFER  (ADVICE 2007062900005240)
                   RCVD FROM  CITIBANK NEW YORK/INTEL CORP
                   ORG=INTEL CORPORATION
                   RFB=LCT71800096800   OBI=MPS 2860
                   REF=LCT71800096800   06/29/07  04:17AM ET
                                             DAILY BAL:      862,500.00

Command:
F1=Help  F3=Exit  F7=Bkwd  F8=Fwd
```

*Barrack, Rodos & Bacine*

A Professional Corporation

**Attorneys At Law**

**www.barrack.com**

dbacine@barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban¹
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra¹
Chad A. Carder**
A. Arnold Gershon''
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui'''
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Iargan**
Samuel M. Ward⁶

Of Counsel
Frances Vilella-Vélez''''

Admitted in PA, except:
*     Admitted in CA
**    Also admitted in NJ
***   Also admitted in CA & NJ
¹     Also admitted in NY
''    Admitted in NY
'''   Admitted in NY & NJ
''''  Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

June 5, 2007

*Via E-mail*

Michael D. Torpey, Esquire
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

Re:     **Intel Corporation Derivative Litigation**

Dear Mike:

Pursuant to the request of Amy Ross of your office, below is the wiring information:

Bank Name/Address:    Wachovia Bank, N.A.
123 South Broad Street
Philadelphia, PA 19109

ABA Number:     031201467

Account Name:     Barrack, Rodos & Bacine
A Professional Corporation
Attorney Account

Account Number:     2000030360750

BR&B Contact:     Diane Kulesa
Phone:     (215) 963-0600

Please feel free to call me if you need any additional information.

Sincerely,

Daniel E. Bacine

DEB/mmb

BARACK, RODOS & BACINE
THREE TWO COMMERCE SQUARE
2001 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19103

WACHOVIA BANK, N.A.
8-50/310

DATE 05/25/07

PAY
TO THE
ORDER
OF

*EIGHT THOUSAND THREE HUNDRED THIRTY SIX DOLLARS AND NO CENTS

AMOUNT
******8,336.00*

STEVEN HALL & PARTNERS
645 FIFTH AVENUE, 6TH FLOOR
NEW YORK
NY 10022

⑈000191185⑈ ⑆031000503⑆ ⑇1000138755010⑇

⑆000008336002⑆

19185

REF#1252234310 PAID 6/01    8336.00



REF#562805151523 PAID 8/06  111785.18



**BARRACK, RODOS & BACINE**
A PROFESSIONAL CORPORATION
ATTORNEY ACCOUNT
3300 TWO COMMERCE SQUARE
2001 MARKET ST.
PHILADELPHIA, PA 19103

1002

WACHOVIA BANK, N.A.
3-50-310

|  | DATE | AMOUNT |
|---|------|--------|

*EIGHTY THREE THOUSAND FIVE HUNDRED NINETY NINE DOLLARS AND 16 CENTS

07/31/07     ****83,599.16*

PAY
TO THE
ORDER
OF

FOX ROTHSCHILD LLP
1300 CITIZENS BANK CENTER
919 NORTH MARKET STREET
Wilmington          DE 19801

REF#0625092795  PAID 8/07     83599.16

**Gershon, A. Arnold**

| | |
|---|---|
| **From:** | Howard Bader [HBader@ballonstoll.com] |
| **Sent:** | Wednesday, May 09, 2007 2:05 PM |
| **To:** | Gershon, A. Arnold; Vano Haroutunian |
| **Cc:** | David Nadler |
| **Subject:** | RE: Intel-AG |

Glad to hear everything is going well for you. Things are great here also. I don't understand why we have to wait for your partner's return before we discuss the situation. The Fee Application is coming up quickly on May 23rd and we have to make provision for same. I believe it has to be filed a week in advance. Please call Vano or David quickly to discuss the situation so we can move forward immediately. Should we make a separate Fee Application to cover all the time and expenses that were expended by BSBN? Please advise. Be well.

---

**From:** Gershon, A. Arnold [mailto:agershon@barrack.com]
**Sent:** Tuesday, May 08, 2007 11:35 AM
**To:** Vano Haroutunian
**Cc:** David Nadler; Howard Bader
**Subject:** RE: Intel

Vano,

   Things are good. I hope all is well with you. I am in no position to discuss this with you until one of my partners returns. It will probably be Monday, May 14, 2007.

                                                  Arnold

---

**From:** Vano Haroutunian [mailto:vharoutunian@ballonstoll.com]
**Sent:** Friday, May 04, 2007 7:25 PM
**To:** Gershon, A. Arnold
**Cc:** David Nadler; Howard Bader
**Subject:** Intel

Arnold –

Hope all's been well since we last spoke … I am following up on the two voice messages that I left at your office … please call me when you get the chance so we can discuss the above matter, even if it's over the weekend … you can reach me on my cell at 917 992 6541.

Otherwise, enjoy the weekend.

Regards,

**VANO I HAROUTUNIAN**
**BALLON STOLL BADER & NADLER, P.C.**
1450 Broadway, 14th Floor
New York, NY 10018
+1 (212) 575 7900 x204
vharoutunian@ballonstoll.com

CONFIDENTIALITY NOTICE: This email message and any attachments may be confidential and may be subject to the attorney-client privilege or another privilege. If you are not the intended recipient: do not read, copy or re-send this email message or its attachment; immediately notify the sender by reply email or by collect telephone call to +1 212-575-7900; and permanently delete from your systems and database this email message and any attachments.

1/8/2008

# BR&B

*Barrack, Rodos & Bacine*

A Partnership Including Professional Corporations

**Attorneys At Law**
www.barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban'
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra'
Chad A. Carder**
A. Arnold Gershon††
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui†††
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth T. Targan**
Samuel M. Ward*

Of Counsel:
Frances Vilella-Vélez††††

Admitted in PA, except:
*    Admitted in CA
**   Also admitted in NJ
***  Also admitted in CA & NJ
†    Also admitted in NY
††   Admitted in New York
†††  Admitted in New York and New Jersey
†††† Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

May 14, 2007

Howard D. Bader, Esq.
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway – 14th Floor
New York, New York 10018

**Re:    Intel**

Dear Howard:

      In response to your email to me on May 9, 2007, upon my termination of our agreement, you retained some of my cases, and I took some of my cases. Neither of us has claims upon the other's fees. In addition, my new firm will reimburse your expenses, if we recover them.

      With respect to Intel, a case that I took, we are prepared to reimburse your expenses of $5,328.52 upon our recovery of the same. We are not, however, prepared to pay you any part of the fee, should the court make an award.

      Concerning your request as to whether you should make a separate fee application, our answer is that it is unnecessary and improper.

      Finally, Francis Pilleggi forwarded to me Vano's email to him with attached copies of the complaint and my affidavit, sworn to August 9, 2005 (transmitted Friday, May 11, 2007 at 18:45:24). While it is true that Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, P.C., and I were all associated with Fox Rothschild LLP, as required by the local rules, that is of no moment because Ballon Stoll Bader & Nadler, P.C. has not been in this case since November 30, 2006.

Yours sincerely,

Alexander Arnold Gershon

:eb

Intel\BaderLtr

*Susan Schneiderman, Esq.*
*Direct Dial: 212-575-7900*
*Extension 215*
*SSchneiderman@Ballonstoll.com*

# NOTICE OF CHARGING LIEN

May 18, 2007

**Via FedEx and Fax**
Daniel E. Bacine, Esq.
Barrack, Rodos & Bacine
2001 Market Street
Suite 3300
Philadelphia, PA  19103

**Via FedEx and Fax**
Francis G.X. Pileggi, Esq.
Fox Rothschild LLP
Citizens Bank Center
Suite 1300
919 Market Street
Wilmington, DE 19801

**Via FedEx and Fax**
A. Arnold Gershon, Esq.
Barrack, Rodos & Bacine
1350 Broadway
Suite 1001
New York, NY 10018

Re:     Seinfeld v. Barrett, Intel Corporation, *et al.*
        Our file no. 18035-034

Dear Messrs. Bacine, Pileggi and Gershon:

As you know, Ballon Stoll Bader & Nadler P.C. ("BSBN") was formerly "of counsel" to Fox Rothschild LLP in connection with the prosecution in Plaintiff's behalf of the referenced action pending in the United Stated District Court for the District of Delaware (Case No. 05-298 (JFF)) (the "Intel Suit").  In or around November 2006, Barrack, Rodos & Bacine ("BRB") was substituted for BSBN.

Daniel E. Bacine, Esq.
Francis G.X. Pileggi, Esq.
A. Arnold Gershon, Esq.
May 18, 2007
Page 2 of 2


       Pursuant to the Common Law and Judicial Authorities of the State of Delaware and N.Y. Judiciary Law §475, you are hereby notified that BSBN is the holder of a Charging Lien with respect to the Intel Suit.  BSBN asserts its Charging Lien against any and all funds recovered on behalf of the Plaintiff, including any funds paid or to be paid to BRB pursuant to paragraph 9.1 of the Stipulation of Settlement dated March 7, 2007.

       Please be guided accordingly in your actions.


       Very truly yours,



       Susan Schneiderman


Cc:   Stephen C. Norman, Esq. (Via Fax and FedEx)
      Michael D. Torpey, Esq. (Via Fax and FedEx)
      John W. Shaw, Esq. (Via Fax and FedEx)
      Joseph E. Mais, Esq. (Via Fax and FedEx)
      Howard D. Bader, Esq.
      David Nadler, Esq.



*Barrack, Rodos & Bacine*

A Professional Corporation
Attorneys At Law
www.barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban[†]
Jeffrey A. Barrack
Stephen R. Basser[*]
Regina M. Calcaterra[†]
Chad A. Carder[**]
A. Arnold Gershon[††]
Jeffrey B. Gittleman[**]
Jeffrey W. Golan
John L. Haeussler[*]
Robert A. Hoffman[**]
M. Richard Komins
Gloria Kui[†††]
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen[***]
Beth R. Targan[**]
Samuel M. Ward[*]

Of Counsel:
Frances Vilella-Vélez[††††]

Admitted in PA, except:
[*]  Admitted in CA
[**]  Also admitted in NJ
[***]  Also admitted in CA & NJ
[††]  Also admitted in NY
[†††]  Admitted in NY
[†††]  Admitted in NY & NJ
[††††]  Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

# *FACSIMILE*

| | | | |
|---|---|---|---|
| DATE: | September 6, 2007 | TOTAL PAGES: | 2 |
| TO: | *Jennifer Metz*<br>American Arbitration Association | FAX: | (401) 435-6529 |
| CC: | *Susan Schneiderman, Esquire*<br>*Arnold Gershon, Esquire* | | (212) 764-5060<br>(212) 688-0783 |
| FROM: | *Daniel E. Bacine* | BRB CASE # | 1219 |
| RE: | **Ballon Stoll v. Gershon** | | |

THIS IS THE ONLY TRANSMISSION OF THIS DOCUMENT.
Please telephone 215-963-0600 if you do not receive the entire document.

*********************

*CONFIDENTIALITY NOTE*
*The information contained in this document is confidential, may be attorney-client or*
*attorney work-product privileged, and is intended only for the use of the addressee.*
*Unauthorized use, disclosure, or copying is strictly prohibited and may be unlawful*
*If you do not receive all pages, please phone the sender.*

**BR&B**

*Barrack, Rodos & Bacine*

A Professional Corporation

**Attorneys At Law**

www.barrack.com

dbacine@barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban'
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra'
Chad A. Carder**
A. Arnold Gershon"
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui""
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targan**
Samuel M. Ward^

Of Counsel:
Frances Vilella-Vélez""

Admitted in PA, except:
*    Admitted in CA
**   Also admitted in NJ
***  Also admitted in CA & NJ
†    Also admitted in NY
††   Admitted in NY
†††  Admitted in NY & NJ
"""  Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

September 6, 2007

*Via Facsimile*

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI 02914

> **Re:   13 194 01780 07**
> **Ballon, Stoll, Bader & Nadler, P.C.**
> **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

I am writing in response to your letter of August 24, 2007, with regard to the above-referenced matter. Your letter refers to a Demand for Arbitration dated August 17, 2007, a copy of which was sent to us accompanied by a document styled Demand for Arbitration and Claim in Arbitration. Both documents identify this firm as a respondent. Your letter says that the "controversy [arises] out of a contract between the above-captioned parties, containing a clause providing for administration by the AAA."

Please be advised that this firm is not a party to the contract referenced in your letter. Nor have we otherwise agreed, nor do we agree, to arbitrate claims brought by the claimant. Accordingly, we are not bound by the rules of the AAA in this matter and therefore will not be responding to the demand.

Sincerely,

Daniel E. Bacine

DEB/mmb

cc:   Susan Schneiderman, Esquire
      A. Arnold Gershon, Esquire

**BRB**

*Barrack, Rodos & Bacine*

*A Professional Corporation*

**Attorneys At Law**
**www.barrack.com**

dbacine@barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban†
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra†
Chad A. Carder**
A. Arnold Gershon††
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui†††
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targan**
Samuel M. Ward*

Of Counsel:
Frances Vilella-Vélez††††

Admitted in PA, except:
*       Admitted in CA
**      Also admitted in NJ
***     Also admitted in CA & NJ
†       Also admitted in NY
††      Admitted in NY
†††     Admitted in NY & NJ
††††    Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

November 16, 2007

<u>*Via E-mail*</u>

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI  02914

> **Re:    13 194 01780 07**
> **Ballon, Stoll, Bader & Nadler, P.C.**
> **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

I am in receipt of your letter of November 5, 2007, acknowledging receipt of my October 16 letter to you with regard to the above-referenced matter.  My October 16 letter reiterated what I had said in earlier correspondence:  that my firm, Barrack, Rodos & Bacine, is not a party to any agreement that would require us to participate in this arbitration.  My letter asked that, if the AAA intended to proceed with the arbitration treating our firm as a party, you explain the legal basis for the AAA's position.

Your November 5 letter is not responsive.  Instead, it simply repeats the boiler-plate statement made in your September 25, 2007, letter:

> The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

> Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules.  The parties may wish to raise this issue, upon appointment of the arbitrator.

**B R & B**

*Barrack, Rodos & Bacine*

Ms. Jennifer Metz
November 16, 2007
Page 2

Nowhere do you explain, as I had asked, the legal basis for treating my firm as a party to this arbitration. Since your filing requirements provide for inclusion of an agreement to arbitrate, and since the claimant has not included such an agreement with us, I suggest that the claimant has not met your filing requirements.

In any event, since the AAA will not answer my question, I would ask that you forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter. Please forward to me a copy of your correspondence to the arbitrator in that regard.

Thank you for your anticipated cooperation.

Sincerely,

Daniel E. Bacine

DEB/mmb

cc:    Susan Schneiderman, Esquire
       A. Arnold Gershon, Esquire

**Barrack, Rodos & Bacine**

A Professional Corporation

**Attorneys At Law**

www.barrack.com

dbacine@barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban¹
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra¹
Chad A. Carder**
A. Arnold Gershon††
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui†††
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targan**
Samuel M. Ward*

Of Counsel:
Frances Vilella-Vélez††††

Admitted in PA, except:
*       Admitted in CA
**      Also admitted in NJ
***     Also admitted in CA & NJ
†       Also admitted in NY
††      Admitted in NY
†††     Admitted in NY & NJ
††††    Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

October 16, 2007

*Via E-mail*

Ms. Jennifer Metz
Case Manager
American Arbitration Association
950 Warren Ave.
East Providence, RI  02914

> **Re:    13 194 01780 07**
> **Ballon, Stoll, Bader & Nadler, P.C.**
> **and A. Arnold Gershon, et al.**

Dear Ms. Metz:

By letter dated September 6, 2007, with regard to the above-referenced matter, I informed you that, because this firm is not a party to any arbitration agreement with the claimant, we are not bound by the rules of the American Arbitration Association ("AAA") in this matter and will therefore not be responding to the arbitration demand.  A copy of my letter was sent to both Susan Schneiderman of Ballon, Stoll, Bader & Nadler, P.C. and A. Arnold Gershon.

By letter dated September 7, you asked Ms. Schneiderman and Mr. Gershon to provide comments with respect to my letter.  To my knowledge, neither Ms. Schneiderman nor Mr. Gershon disagreed with our firm's position.  It was therefore a surprise when I received your September 25 letter suggesting, without being clear, that the AAA intended to proceed in the arbitration with our firm remaining as a party.  If that, in fact, is the AAA's intention, please so inform me and explain the legal basis for AAA's position.

I reiterate what I said in my September 6 letter:  we are not a party to any arbitration agreement with the Ballon Stoll firm and do not intend to respond to the unauthorized and inappropriate arbitration demand.

Sincerely,

Daniel E. Bacine

DEB/mmb
cc:    Susan Schneiderman, Esquire
       A. Arnold Gershon, Esquire

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

November 5, 2007

VIA ELECTRONIC MAIL

Susan Schneiderman, Esq.
Ballon, Stoll, Bader & Nadler, P.C.
1450 Broadway, 14th Floor
New York, NY  10018

A. Arnold Gershon
A. Arnold Gershon, P.C.
1350 Broadway, Suite 1001
New York, NY  10001

Daniel E. Bacine
Barrack Rodos & Bacine
2001 Market Street, Suite 3300
Philadelphia, PA  19103

Re: 13 194 01780 07
    Ballon, Stoll, Bader & Nadler, P.C.
    and
    A. Arnold Gershon, A. Arnold Gershon, P.C.,
    Barrack Rodos & Bacine

Dear Parties:

This will acknowledge a letter dated October 16, 2007 from Mr. Bacine. We note a copy was exchanged with all parties.

The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules.  The parties may wish to raise this issue, upon appointment of the arbitrator.

The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration.  The AAA should not be named as a party-defendant.  The Rules state that the AAA is not a "necessary party".  The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.


Sincerely,

Jennifer Metz
Case Manager
401 431 4795
MetzJ@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

September 25, 2007

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

VIA ELECTRONIC MAIL

Susan Schneiderman, Esq.
Ballon, Stoll, Bader & Nadler, P.C.
1450 Broadway, 14th Floor
New York, NY  10018

A. Arnold Gershon
A. Arnold Gershon, P.C.
1350 Broadway, Suite 1001
New York, NY  10001

Daniel E. Bacine
Barrack Rodos & Bacine
2001 Market Street, Suite 3300
Philadelphia, PA  19103

Re: 13 194 01780 07
    Ballon, Stoll, Bader & Nadler, P.C.
    and
    A. Arnold Gershon, A. Arnold Gershon, P.C.,
    Barrack Rodos & Bacine

Dear Parties:

This will acknowledge a letter dated September 6, 2007, from Mr. Bacine, a copy of which was forwarded to all parties.

The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules.  The parties may wish to raise this issue, upon appointment of the arbitrator.

The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration.  The AAA should not be named as a party-defendant.  The Rules state that the AAA is not a "necessary party".  The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.

The list for selection of arbitrators is forthcoming.

This will also acknowledge receipt of an answering statement dated September 7, 2007, from Mr. Gershon, a copy of which has been exchanged with the other parties.

Sincerely,

Jennifer Metz
Case Manager
401 431 4795
MetzJ@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES
----------------------------------------------------------x
In the Matter of the Arbitration Among

BALLON STOLL BADER & NADLER, P.C.,

Claimant.

**AAA Claim No.  13 194 01780 07**

                    and

A. ARNOLD GERSHON and
A. ARNOLD GERSHON, P.C.,

                         Respondents,
          and

BARRACK, RODOS & BACINE,

                         Respondent/Stakeholder.
----------------------------------------------------------x

CLAIMANT'S MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF RETENTION OF
JURISDICTION BY THE ARBITATOR OVER
BARRACK, RODOS & BACINE

Preliminary Statement

Claimant, Ballon Stoll Bader & Nadler, P.C. ("BSBN"), pursuant to Arbitrator

Muccia's December 3, 2007 direction, respectfully submits this Memorandum of Points

and Authorities in support of its position that (a) the law firm Barrack, Rodos & Bacine

("Barrack") is properly a party in this arbitration case, notwithstanding that it has never

signed an applicable agreement to arbitrate, and (b) the decision of Justice Lowe in In re

Ballon, Stall, Bader & Nadler, P.C., Index No. 602108/07 (Sup. Ct. NY Co) does not

constitute a bar to the Arbitrator ruling that the Barrack firm is a party to this arbitration

case.

<u>Facts Pertinent to this Application</u>

**The Primary Parties.** BSBN is a New York Professional Corporation of attorneys engaged in the practice of law with its principle offices located at 1450 Broadway, New York, New York. Respondent A. Arnold Gershon ("Arnold") is a licensed attorney, who was duly admitted to practice law in the State of New York in 1966. Upon information and belief, Arnold formed a professional corporation, A. Arnold Gershon, P.C. ("AAG") in or around 1984, through which Arnold has, from time to time, provided his professional legal services.

**The Of Counsel Agreement.** Pursuant to a written contract dated as of June 28, 2001, as amended by Agreement dated as of June 26, 2006 (collectively, the "Of Counsel Agreement"), AAG became "Of Counsel" to BSBN[1]. During the "Of Counsel" term, AAG and Arnold, acting through AAG (collectively, "Gershon") were engaged in the practice of law as "Of Counsel" to BSBN.

Until June 26, 2006, all fees derived from clients introduced by Gershon were expressly designated as BSBN's "sole property." Under the initially agreed-upon scheme, AAG became entitled, as compensation, to a stated percentage of those fees, net of expenses advanced by BSBN. As a result of the June 26, 2006 Amendment[2], BSBN and Gershon became joint owners of those fees:

> **FOURTH:** During the term of this Agreement, [AAG] shall receive ~~compensation~~[3] from [BSBN] as follows:
> (a) Reimbursement of any reasonable expenses incurred in

---

[1] A complete copy of the Of Counsel Agreement, executed by BSBN, Arnold and AAG, is annexed to BSBN's Demand For Arbitration dated August 17, 2007 (the "Demand").

[2] The term "reform" used by the drafter, Arnold, in the June 26, 2006 Amendment is indeed a misnomer. While the Of Counsel Agreement, as amended, may reflect the revised "meaning and intent" which Gershon sought to achieve, there is no ambiguity in the plain statements contained in the 2001 Agreement. Nor was there any "mistake" which would require reformation of that agreement.

[3] Stricken provisions reflect the language stricken from the Of Counsel Agreement pursuant to the June 6, 2006 amendment.

2

connection with servicing its cases on an as is and where needed basis.

(b) A percent of the fees paid to [BSBN] from clients introduced to [BSBN] by Arnold or AAG, less expenses incurred, to be paid when the fees are actually received, in accordance with Fee Schedule "A" attached hereto.

(c) All calculations of fees paid to [BSBN] shall be net of forwarding fees, fees paid to other counsel and disbursements and expenses incurred.

**FIFTH:** (a) As is more specifically set forth in Schedule "B", all of Arnold's and [AAG]'s uncollected accounts receivable existing as of the effective date of this Agreement shall be ~~the sole property of [BSBN]~~ *the property of the parties as, as their interest [sic] are expressed in this Agreement[4]*. All of their accounts receivable billed or accrued to their clients, including disbursements, during the term of this Agreement, shall be billed under the name of BSBN and shall also be the ~~sole property of [BSBN]~~ *property of the parties as, as their interest [sic] are expressed in this Agreement*;

(b) For the purposes of this Agreement, "Accounts Receivable" shall mean amounts actually billed and amounts accrued but unbilled to [Gershon's] clients prior to and during the effective date of this Agreement which have not been paid.

**SIXTH:** [Gershon agrees] during the term of this Agreement to:

\* \* \* \* \* \* \*

(d) Remit all fees and/or commissions earned by them during the term of this Agreement;

\* \* \* \* \* \* \*

**NINTH:** Upon the expiration or termination of this Agreement:

(a) [AAG] shall be entitled to remove all of its personal effects, law books, and equipment from [BSBN's] premises;

~~(b) All collections for services rendered prior to the termination of this Agreement and received by [BSBN] or [Gershon], after the termination date of this Agreement, shall remain the property of the Firm. [AAG] shall continue to receive the amount due it from said collections as set forth in Fee Schedule "A" hereof.~~

(b) *All collections for services rendered prior to the termination of this Agreement and received by [BSBN] or [Gershon], after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement. [Gershon] and [BSBN] shall share in said*

---

[4] Italicized clauses reflect matter added as a result of the June 26, 2006 amendment.

*collections as set forth in Fee Schedule "A" hereof.*

"Schedule A" specifically apportions to BSBN a 50% interest in any fees derived from "New Class Action Cases and stockholder derivative actions originated by" Gershon.

**Gershon Resigns and Joins Barrack.**    On or about November 23, 2006, Gershon notified BSBN that AAG was terminating the Of Counsel Agreement as of December 1, 2006.  Upon information and belief, Arnold simultaneously[5] entered into an agreement with Barrack pursuant to which Arnold joined Barrack as a partner in its New York Office (the "Barrack Agreement").  Based upon documentation in BSBN's records6, we discerned that Gershon began negotiations with Barrack some time prior to September 27, 2006.   The Barrack Agreement provides that "all fees generated by you [Mr. Gershon] on behalf of your clients and [Barrack's] clients during your association with [Barrack] are the property of Barrack Rodos & Bacine."

**The Intel Fees.**  In or around May 2005, while AAG was "Of Counsel" to BSBN, Gershon originated a Stockholder Derivative Action, <u>Seinfeld v. Barrett, Intel Corporation, *et al.*</u>, in the United States District Court for the District of Delaware, Case No. 05-298 (JFF), (the "Intel Suit").  There is no dispute that the fees generated from the Intel Suit, and which are the subject matter of this Arbitration (the "Intel Fees") were derived from a "new …stockholder derivative action originated by Gershon" following commencement of the Of Counsel Agreement.  As such, absent a written agreement to

---

[5] BSBN is without information as to when Gershon actually began negotiations with Barrack or commenced preparations to resign as Of Counsel.  As of mid-March, 2006, Gershon became particularly disgruntled when an associate attorney upon whom Arnold had come to rely voluntarily left BSBN.  See Gershon's September 7, 2007  "Answering Statement to Claim in Arbitration" (the "Gershon Answer"), Exhibit 1, p.3.

[6] That documentation also suggests that Gershon's plan included retention by Barrack of BSBN's associate, Gloria Kui.  Ms. Kui was assigned by BSBN to assist Gershon beginning in or around April 2006.  Ms. Kui resigned and joined Barrack at or about the same time as did Gershon.

the contrary, BSBN and Gershon each retained a 50% interest in the Intel Fees, at least

insofar as those fees represent "collections for services rendered prior to the termination"

of the Of Counsel Agreement.

In all, BSBN's receivable with respect to the Intel Suit amounted to $299,043.19,

comprised of fees for professional services in the aggregate sum of $293,561.507 and

disbursements of $5,562.19.  Of the $293,561.50 for professional services, only

$57,218.75 of was incurred between June 26, 2006 and November 30, 2006.

Pursuant to the terms of a Stipulation of Settlement entered into on or about

March 7, 2007 in the Intel Suit, Gershon submitted to the Court, on or about March 16,

2007, a fee application pursuant to which fees and expenses were sought on behalf of the

plaintiff, Seinfeld (the "Intel Plaintiff"), in the amount of $862,500.00.  Included amongst

those fees and expenses were ***all of the fees and expenses incurred by and charged to***

***Seinfeld while AAG was "of counsel" to BSBN pursuant to the terms of the Of Counsel***

***Agreement***.

In response to BSBN's attempt, in early May 2007, to open a dialogue with

Arnold regarding the Intel Fees, Arnold stated in an e-mail dated May 8, 2007 that he was

"in no position to discuss" Intel with BSBN "until one of [Arnold's] partners returns," on

or about May 14, 2007.  The following day, Howard Bader transmitted the following e-

mail message to Arnold:

> … I don't understand why we have to wait for your partner's
> return before we discuss the [Intel] situation.  The Fee Application
> is coming up quickly on May 23rd and we have to make a provision
> for same.  I believe it has to be filed a week in advance.  Please call
> [BSBN partners] Vano or David quickly to discuss the situation so

---

7  Of that, $75,178.50 represents fees on account of services performed by associates and other personnel
employed by BSBN.

we can move forward immediately. ***Should we make a separate Fee Application to cover all the time and expenses that wee expended by BSBN?*** Please advise. Be well. [emphasis added].

Arnold's May 14, 2007 reply included the following assertions:

> …With respect to Intel…we are prepared to reimburse your expenses of $5,328.52 upon our recovery of the same. We are not, however, prepared to pay you any part of the fee, should the court make an award.
> Concerning your request as to whether you should make a separate fee application, our answer is that it is unnecessary and improper….

By letter dated May 18, 2007, BSBN notified Gershon, Barrack and all other counsel in the Intel Suit that it claimed and reserved a charging lien with respect to any amounts recovered in connection with the Intel Settlement and fee application. Shortly thereafter, on May 23, 2007, a Judgment of Dismissal in the Intel Suit was duly entered which provides, in relevant part, that

> Intel Corporation ***shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements*** in the amount of $862,500.00 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine. [emphasis added].

Upon information and belief, the Intel Fees were, in fact, delivered to Barrack's Philadelphia office.

# POINT I

## BARRACK IS SUBJECT
## TO GERSHON'S
## <u>ARBITRATION AGREEMENT</u>

New York has long held to a policy in favor of Arbitration.  The policy

considerations, aptly described by the Court of Appeals, include the following:

> The CPLR arbitration provisions (CPLR 7501 et seq.) evidence a
> legislative intent to encourage arbitration. Certainly the avoidance
> of court litigation to save the time and resources of both the courts
> and the parties involved make this a worthwhile goal. One way to
> encourage the use of the arbitration forum would be to prevent
> parties to such agreements from using the courts as a vehicle to
> protract litigation. This conduct has the effect of frustrating both
> the initial intent of the parties as well as legislative policy. In the
> case at bar, there were 21 hearings and 2,750 pages of testimony. If
> not for the arbitration, that entire burden would have been placed
> on our court system. Indeed, had the case been tried in the
> formality of the courtroom, it would have taken longer to dispose
> of than it did before the arbitrators. A broad arbitration clause
> should be given the full effect of its wording in order to implement
> the intention of the parties. Of course, where a form contract is
> involved or an arbitration provision seems to be less than broad, a
> court should give the provision and the circumstances surrounding
> its inclusion in the contract great scrutiny. As a general rule,
> however, under a broad arbitration provision the claim of fraud in
> the inducement should be determined by arbitrators.

<u>Weinrott v. Carp</u>, 32 N.Y.2d 190, 199, 298 N.E.2d 42 (1973).  Here, the Of Counsel

Agreement contains a broadly framed Arbitration Clause, as well as a successorship

clause:

> **ELEVENTH:** The parties agree that any controversy or
> claim arising out of, or relating to, this Agreement or the breach
> thereof, shall be settled by arbitration in the City of New York, in
> accordance with the Rules of the American Arbitration Association
> then obtaining, and that judgement [*sic*] upon the award rendered

by such arbitration tribunals shall be binding and entered in the Supreme Court of New York County upon which the parties expressly confer jurisdiction.

● * * * *

**THIRTEENTH:** This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, testamentary beneficiaries, executors, administrators and legal representatives.

## Nonsignatories May Be Bound

While the general rule is that non-parties to an agreement to arbitrate cannot be compelled to arbitrate, there are notable exceptions which have been recognized by the New York State appellate courts. In keeping with its "policy of consistency" between decisions under New York's Arbitration Statute and the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*, which is "almost identical to, and is derived from [New York's] arbitration statute," *Id.* at 32 N.Y.2d 198-199; *quoted in* Hoffman v. Finger Lakes Instrumentation, LLC, 7 Misc.3d 179, 789 N.Y.S.2d 410 (Sup. Ct., N.Y.Co. 2005), New York has looked to decisions construing the Federal Arbitration Act in aid of construction and enforcement of intrastate arbitration agreements. The Appellate Division, First Department, specifically relied in CDC Capital Inc. v. Gershon[8], 282 A.D.2d 217, 219 723 N.Y.S.2d 166 (1st Dep't 2001) upon the "recognized common-law grounds for enforcing an arbitration agreement against a non-signatory" as set forth in Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2nd Cir. 1995). There, the Second Circuit opined that it is "clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.' *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980)." The Court expressly

---

[8] Believed to be unrelated to the Respondents herein.

recognized five (5) theories arising under "ordinary principles of contract and agency" pursuant to which a non-signatory may be bound to arbitrate, namely:  "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."  *Id.* at 776.

In a recent decision handed down by Judge Sand in <u>Republic Of Ecuador v. Chevrontexaco Corp</u>, 04 Civ. 8378, SDNY, 06/19/07 (6/26/2007 N.Y.L.J. 26, (col. 1)), the validity of the <u>Thomson-CFS</u> criteria was expressly confirmed:

> Under federal common law, the Second Circuit 'has recognized
> five theories for binding nonsignatories to arbitration agreements:
> 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-
> piercing/alter ego; and 5) estoppel.' Thomson-CSF, S.A. v.
> American Arbitration Association, 64 F.3d 773, 776 (2d Cir.
> 1995). '[A] willing signatory (such as [TexPet]) seeking to arbitrate
> with a non-signatory that is unwilling (such as [PetroEcuador])
> must establish at least one of the five theories described in
> Thomson-CSF. ' Merrill Lynch Inv. Managers, 337 F.3d [125,] at
> 131 [(2d Cir 2003)…Of the five Thomson-CSF theories, the most
> likely to apply in this case is estoppel. 'A party is estopped from
> denying its obligation to arbitrate when it receives  a 'direct benefit'
> from a contract containing an arbitration clause.' American Bureau
> of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d
> Cir. 1999) (citing Thomson-CSF, 64 F.3d at 778-79). Direct
> benefits are those 'flowing directly from the agreement…

Here, Barrack has derived a "direct benefit" from the Of Counsel Agreement in that Barrack has succeeded to the monetary benefits of that agreement which would otherwise have inured solely to Gershon.  Since Barrack is necessarily claiming a proprietary interest in the Intel Fees by virtue of the Of Counsel Agreement and rights derived directly from Gershon, Barrack must be bound to the arbitration clause which binds the parties to that agreement.

## Application of the AT&S v. Odyssey Logistics Analysis

Applying these principles, the Appellate Division, Second Department in AT & S Transp., LLC v. Odyssey Logistics & Technology Corp., 22 A.D.3d 750, 803 N.Y.S.2d 118 (2nd Dep't 2005) found that under circumstances that evince a successorship, the non-signatory successor may be compelled to arbitrate pursuant to an arbitration agreement between the predecessor and a third party.   There, AT&S sought to compel Odyssey to arbitrate pursuant to an agreement which had been entered into between AT&S and two other parties.  The two parties to AT&S' Arbitration Agreement subsequently entered into an "asset transfer agreement" with Odyssey.  When AT&S sought to enforce its arbitration agreement as to Odyssey, Odyssey resisted, claiming it was not bound "because it was not a party, an assignee, or a successor" to the AT&S agreement.

The Appellate Division, Second Department upheld the trial court's determination that Odyssey was bound by the arbitration agreement, fining that a "*de facto* merger had resulted from the asset transfer agreement.  In doing so, the Court held as follows:

> **The hallmarks of a de facto merger are the "[c]ontinuity of ownership; cessation of ordinary business and dissolution of the predecessor as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, a continuity of management, personnel, physical location, assets, and general business operation" (Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 574, 730 N.Y.S.2d 70).** <u>**These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor**</u> **(see Nettis v. Levitt, 241 F.3d 186;City of New York v. Pfizer & Co., 260 A.D.2d 174, 688 N.Y.S.2d 23). [emphasis added].**

<u>Id.</u> at 22 A.D.3d 752.

Discussing the factors considered in reaching its determination, the Court opined:

> …AT & S presented sufficient evidence to establish all four factors needed to demonstrate the existence of a de facto merger.  Pursuant to the transfer agreement between Odyssey, Rely, and Acquisition Corp., in consideration for the transfer of shares of Odyssey stock, substantially all of the assets of Rely and Acquisition Corp. were purchased or licensed by Odyssey. The real property of the predecessor corporation was transferred or assumed by Odyssey. Odyssey offered employment to its predecessor's employees, hired two of its predecessor's management personnel, assumed the contracts of independent contractors, agreed to honor the predecessor's customer service contracts, and received the predecessor's business insurance policy. …The fact that Rely did not immediately liquidate is not dispositive. So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made (see Fitzgerald v. Fahnestock & Co., supra at 576, 730 N.Y.S.2d 70;Ladenburg Thalmann & Co. v. Tim's Amusements, 275 A.D.2d 243, 248, 712 N.Y.S.2d 526).

_Id._ at 22 A.D.3d 752-753.

### The Facts Support Compelling Barrack to Arbitrate

Here, the following undisputed facts require a finding that Barrack must be bound by the arbitration provision of the Of Counsel Agreement:

- Upon termination by AAG of the Of Counsel Agreement, Arnold simultaneously joined Barrack.

- Arnold brought with him to Barrack AAG's and Gershon's ongoing caseload consisting of matters in which AAG and/or Arnold acted as counsel through BSBN.

- Barrack extended offers of employment to two former employees of BSBN, an associate attorney and a secretary, both of whom had been specifically and nearly exclusively assigned to staff Gershon's cases.

- Barrack immediately acquired ownership of "all fees generated by" Arnold

during his association with Barrack.

- Barrack was promptly substituted as counsel in place and in stead of BSBN with respect to the Intel Suit and any and all other cases on which Gershon was listed as "of counsel."

- Arnold, upon joining Barrack, immediately abandoned AAG as the entity through which he practiced law, practicing thereafter through Barrack.

Clearly, the end result of Arnold's move was the absorption by Barrack, and continued operation by Barrack, of substantially all of AAG's assets, *i.e.* the AAG/Gershon law practice.    Neither Barrack nor Gershon can avoid the clear intent of the parties to the Of Counsel Agreement that any disputes concerning the distribution of fees between Gershon and BSBN be resolved by Arbitration.  (See,  International Fidelity Insurance Company v. Andsaratoga Springs Public Library, 236 A.D.2d 719 (3rd Dep't 1997).  Barrack has expressly assumed the position of Gershon with respect to those fees.

## POINT II

### JUSTICE LOWE'S JUNE 29, 2007 DECISION[9] DOES NOT BAR TO THE ARBITRATOR FROM RULING THAT THE BARRACK FIRM IS A PARTY TO THIS ARBITRATION

The parties appeared before the Justice Lowe on June 29, 2007 in connection with BSBN's application for an Order,

> pursuant to CPLR §7502(c)....pending the outcome of
> arbitration, restraining and enjoining the Respondents from
> disbursing, diverting or otherwise disposing in any manner of,
> any or all funds which come into the possession, actual or

---

[9] BSBN does not concede the correctness of Justice Lowe's decision or analysis.  Notice of entry was served less than 30 days ago and a motion for reconsideration, or a renewed motion, are still being contemplated by BSBN.

**constructive, of any one of them, in connection with the satisfaction by Intel Corporation of its obligations under the paragraph 12 of the Final Judgment and Order of Dismissal entered in the United States District Court for the District of Delaware in the matter of <u>Seinfeld v. Barrett, Intel Corporation, *et al.*,</u> (Case No. 05-298 (JFF)) (the "Intel Suit")…**

As such, the Arbitrator must assess Justice Lowe's decision purely in the context of the application which was before the Court.

## Standard For Preliminary Injunction in Aid of Arbitration

CPLR § 7502 authorizes New York courts to grant provisional remedies in aid of arbitration:

> **(c) Provisional remedies. The Supreme Court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose) if the application is made before commencement, except that the sole ground for the granting of the remedy shall be as stated above. The form of the application shall be as provided in subdivision (a).**

*See also*, <u>H.I.G. Capital Management Inc. v. Ligator</u> , 233 A.D. 2d 270, 271, 650 N.Y.S. 2d 124 (1st Dep't 1996).

New York has recognized the special needs of litigants, otherwise bound to arbitrate their claims, to maintain the *status quo* pending the outcome of an arbitable controversy. Accordingly, in assessing the traditional 3-pronged showing required for the grant of an injunction, *i.e.* (1) the likelihood of success on the merits; (2) danger of an

irreparable injury; and that (3) on balance, the equities favor the granting of a preliminary

injunction. (s*ee, e.g.* Huff v. C.K. Sanitary Systems, Inc*.*, 246 A.D.2d 795, 796-97, 667

N.Y.S.2d 766 (3[d] Dep't 1998); Ladner v. American Home Assurance Co., 201 A.D.2d

302, 304, 607 N.Y.S.2d 296 (1st Dep't 1994)) the movant needn't demonstrate likelihood

of success on the merits of the arbitable claims.  *See, e.g.*, Delta Properties, Inc. v. Fobare

Enterprises, Inc., 251 A.D.2d 960, 963, 674 N.Y.S.2d 817 (3[d] Dep't 1998); Matter of the

Arbitration Between Guarini and Severini, 223 A.D. 2d 196, 650 N.Y.S. 2d 4 (1 st Dept.

1996).

> **The IAS Court properly refused to consider the merits of petitioner's admittedly arbitrable claims, as it would on a motion for a preliminary injunction under CPLR Article 63, correctly noting that under CPLR 7502(c), the <u>only consideration</u> in deciding whether to grant a preliminary injunction is whether "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.  We also agree with the IAS Court that preservation *status quo…* is necessary to assure [the effectiveness of the relief petitioner seeks in arbitration.] [internal citations ommitted].**

<u>Id.</u> at 223 A.D. 2d 196.

The only "merit" upon which the Court may to pass on a CPLR § 7502 motion is

statutorily defined as whether "the award to which the applicant may be entitled may be

rendered ineffectual without such provisional relief."   Therefore, any determination that

"likelihood of success on the merits" has not been established is necessarily confined to

the threshold question of whether "the award to which the applicant may be entitled may

be rendered ineffectual without such provisional relief."

Justice Lowe's June 29, 2007 decision and ruling stands strictly for the proposition

that Justice Lowe was not convinced by BSBN's showing that "the award to which [BSBN]

may be entitled may be rendered ineffectual without [injunctive] relief." In so opining, Justice Lowe specifically stated that the case was one "for money damages, only" that the argument that Gershon would be unable to satisfy any award was "speculative" and that the ultimate decision turned on factual determinations which were exclusively within the jurisdiction of the arbitrator:

> THE COURT: Let me make this very easy. This dispute is for money damages. And you are seeking injunctive relief when at the end of the day what you are really seeking are money damages. That is the issue that will be decided by the arbitrator. And for you to offer as a reason for this Court to enjoin the disbursement of these fees or to require a bond to be posted, et cetera, you are speculating that somehow Mr. Gershon may be judgment-proof by the time the arbitrator renders a decision. I don't know on what basis you come to that conclusion, but it is speculative at best. And so for that reason your application is denied.
> MS. SCHNEIDERMAN: Judge, if I might, while you are correct that ultimately it is money damages, this is a little bit different from a typical case where money damages is requested.
> THE COURT: And why is that?
> MS. SCHNEIDERMAN: Because there is a specific fund, there is a specific corpus, there is specific property which is' this fund of money that is going to flow from Intel to a bank account of Barrack Rodos & Bacine. It is not a question does Mr. Gershon owe us money or do we owe Mr. Gershon money, it is a question of the division of a specific fund of money which will be dissipated.
> THE COURT: Whether it is specific or not, it's still money damages. And the only basis that you are arguing that the Court interfere here is an assumption or a speculation that in the end Mr. Gershon is not going to be financially capable of paying whatever judgment the arbitrator awards to you, if in fact the arbitrator does award you that judgment. [emphasis added]

Justice Lowe then added:

> THE COURT: …On reflection, I also wanted to add in terms of the basis for the Court's decision, in addition to this being for money damages only, I also agree that I don't believe you've met your burden of establishing a likelihood of success on the merits, and nor do I see any balancing -- the balancing of the equities to me is even. I mean whether you get the money or whether he gets

15

the money, I don't see where anyone is particularly harmed one way or the other. But I really believe that the likelihood of success on the merits is suspect.

Finally, Justice Lowe refused to address the potential impact of BSBN's claimed charging lien upon his determination, stating that the issue was not "before the Court:"

> MS. SCHNEIDERMAN: The funds are also the subject of a charging lien that we have served as we have notified all parties of. In that respect, we have even a greater security interest.
> THE COURT: That's another avenue. That's not what's before the Court. Your application is denied. Thank you.

In contrast, the claims before the Arbitrator very specifically include as BSBN's "Third Claim For Relief," an Order fixing and enforcing BSBN's charging lien with respect to the Intel Fees.

Conclusion

Based upon the foregoing discussion, Barrack must be found to be subject to the Arbitration provision contained in the Of Counsel Agreement and Justice Lowe's decision of June 29, 2007 does not impact arbitability.

Dated: New York, New York
   December 27, 2007

      Respectfully submitted,
      BALLON STOLL BADER AND NADLER, P.C.

      By: _____
        Susan Schneiderman,
      Attorneys for Claimant
      1450 Broadway
      New York, NY 10018
      Tel: (212) 575 7900
      Fax: (212) 764 5060

MS. SCHNEIDERMAN: The funds are also
the subject of a charging lien that we have
served as we have notified all parties of. In
that respect, we have even a greater security
interest.

THE COURT: That's another avenue.
That's not what's before the Court.
Your application is denied. Thank you.
I'm sorry. On reflection, I also wanted
to add in terms of the basis for the Court's
decision, in addition to this being for money
damages only, I also agree that I don't believe
you've met your burden of establishing a
likelihood of success on the merits, and nor do I
see any balancing -- the balancing of the
equities to me is even. I mean whether you get
the money or whether he gets the money, I don't
see where anyone is particularly harmed one way
or the other. But I really believe that the
likelihood of success on the merits is suspect.

```
Filename:       mEMO TO mUCCIA
Directory:      O:\ss files and documents\BSBN v.
   Gershon
Template:       C:\Documents and
   Settings\sschneiderman\Application
   Data\Microsoft\Templates\Normal.dot
Title:          AMERICAN ARBITRATION ASSOCIATION
Subject:
Author:         sschneiderman
Keywords:
Comments:
Creation Date: 12/27/2007 5:02:00 PM
Change Number: 2
Last Saved On: 12/27/2007 5:02:00 PM
Last Saved By: sschneiderman
Total Editing Time: 107 Minutes
Last Printed On:   12/27/2007 7:07:00 PM
As of Last Complete Printing
   Number of Pages: 17
   Number of Words: 4,697 (approx.)
   Number of Characters: 24,661 (approx.)
```

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES
------------------------------------------------------------x
In the Matter of the Arbitration Among

BALLON STOLL BADER & NADLER, P.C.,

                          Claimant.

                                    **AAA Claim No.  13 194 01780 07**

      and

A. ARNOLD GERSHON and
A. ARNOLD GERSHON, P.C.,

                    Respondents,
      and

BARRACK, RODOS & BACINE,

                  Respondent/Stakeholder.
------------------------------------------------------------x

CLAIMANT'S REPLY MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF RETENTION OF
JURISDICTION BY THE ARBITRATOR OVER
BARRACK, RODOS & BACINE

Preliminary Statement

      Claimant, Ballon Stoll Bader & Nadler, P.C. ("BSBN"), respectfully submits this

Memorandum of Points and Authorities in further support of its position that the law firm

Barrack, Rodos & Bacine ("BR&B") may be compelled to arbitrate.  Pursuant to

Arbitrator Muccia's January 24, 2008 directions, this Memorandum addresses the

following questions:

           (1) whether the Arbitrator has authority or jurisdiction to rule on the issue

whether the Barrack firm is a party to this case, including whether, among other

things, the time limits of CPLR 7503 and comparable provisions of Federal law

for seeking a stay of arbitration are relevant and applicable in these circumstances where the Barrack firm is not a signatory to an arbitration agreement, and

(2) whether the nature of the substantive claim alleged by BSBN against the Barrack firm arises directly from the BSBN's agreement with Gershon.

The plain facts disclose that any claim of right by BR&B to fees in the Intel matter are claimed by and through Gershon; Gershon's entitlement to any Intel fees attributable to the work performed during the term of the Of Counsel Agreement, and hence BR&B's entitlement to those fees, necessarily arises directly from the Of Counsel Agreement.

### Facts Relevant to the Questions Posed

### A. Applicable Contractual Provisions:

The Of Counsel Agreement between Gershon and BSBN provides, in relevant part,

> **ELEVENTH: The parties agree that any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association then obtaining.**

> **TWELFTH: …..This Agreement shall be governed by the Laws of the State of New York.**

The Rules of the American Arbitration Association provide, in relevant part:

> **R-4. Initiation under an Arbitration Provision in a Contract**
> \* \* \* \* \*
> **(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA….**

**(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.**

\* \* \* \* \*

**R-7. Jurisdiction**

**(a) <u>The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.</u>**

\* \* \* \* \*

**(c) <u>A party must object to the jurisdiction of the arbitrator</u> or to the arbitrability of a claim or counterclaim <u>no later than the filing of the answering statement</u> to the claim or counterclaim that gives rise to the objection. <u>The arbitrator may rule on such objections as a preliminary matter or as part of the final award</u>. [underscoring supplied].**

## B. BR&B's Familiarity with the Of Counsel Agreement.

BR&B is a sophisticated firm of attorneys with 30 years of experience "litigating large and complex eases with extensive discovery programs that involve millions of pages of documents and many depositions." [Bacine Aff., ¶3]. According to the firm's resume, Mr. Bacine "is a graduate of Temple University (B.S. 1967) and of Villanova University School of Law (J.D. 1971), where he was an Associate Editor of the Law Review and a member of the Order of the Coif" and "has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for 31 years…"

During his discussions with Mr. Bacine in November 2006, Gershon told Bacine "that he would work out an arrangement to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some." [Bacine Aff. ¶10]. In "late April or early May 2007" Mr. Bacine learned that "Ballon Stoll claimed to retain a financial interest in one of the cases he brought with him, specifically Intel." Following receipt of BSBN's May 18, 2007 Lien Notice, "Gershon shared with [Bacine] the

documents showing his agreement with Ballon Stoll to divide the cases that Gershon had

been working on at that firm" which "reflect[ed] a meeting of the minds on the division

of cases and, except for Intel (about which there was no meeting of the minds), on the

fees from those cases…"[Bacine Aff. ¶11]. At that time, Gershon also shared with

Bacine "a copy of the agreement that Gershon signed that contained the arbitration

clause." [Bacine Aff. ¶11]. Intel Fees were neither awarded by the Court nor received by

BR&B at that time.[Bacine Aff., ¶11].

Under Article "Ninth" of the Of Counsel Agreement,

> **(b) All collections for services rendered prior to the
> termination of this Agreement and received by [BSBN] or
> [Gershon], after the termination date of this Agreement, shall
> remain the property of the parties as their interests are
> expressed in this Agreement. [Gershon] and [BSBN] shall
> share in said collections as set forth in Fee Schedule "A"
> hereof.**

As such, BR&B knew that, under the terms of the Of Counsel Agreement, Gershon was

strictly a trustee with respect to that portion of fees received by Gershon post-termination

in which BSBN held an interest. BR&B therefore also knew that their right, title and

interest in those fees by virtue of the assignment to BR&B by Gershon flowed directly

from the Of Counsel Agreement.

In June, 2007, BSBN applied to the Court for an Order preventing the disbursal

BR&B of attorneys fees received in accordance with the Intel settlement, pending

determination of BSBN's interest in those fees. A copy of the Of Counsel Agreement

was annexed to those papers.

**C. BR&B's Actions Vis-à-vis Arbitration.**

On or about August 17, 2007, BSBN commenced this Arbitration under the AAA's Commercial Arbitration Rules. In response, BR&B advised the AAA by letter dated September 6, 2007, that the firm would "not be responding to the demand," citing the absence of an arbitration agreement between BSBN and BR&B. By letter dated September 25, 2007, the AAA Case Administrator, Jennifer Metz, responded to Mr. Bacine with the AAA's position:

> **…The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules. Accordingly, <u>in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules</u>. The parties may wish to raise this issue, upon appointment of the arbitrator.**
>
> **The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration. The AAA should not be named as a party-defendant. The Rules state that the AAA is not a "necessary party". <u>The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.</u> [underscoring added].**

*BR&B ignored the AAA's admonition and did not apply to the Court for relief.* Instead, BR&B persisted in its letter-writing campaign, "reiterating" to the AAA on October 16, 2007 that BR&B "[is] not a party to any arbitration agreement with the Ballon Stoll firm and [does] not intend to respond to the unauthorized and inappropriate arbitration demand." BR&B also requested in that letter that the AAA clarify whether it "intended to proceed in the arbitration with [BR&B] remaining as a party" and, if so, that the AAA "explain the legal basis for AAA's position." Ms. Metz responded on

November 5 by reinforcing the AAA's position noted above, again inviting Mr. Bacine to seek a judicial stay.

Again, **BR&B ignored the AAA's admonition and did not apply to the Court for relief**.  Instead, on November 16, 2007, Mr. Bacine wrote again to Ms. Metz, protesting the "unresponsive" nature of her letters and specifically requesting that Ms. Metz **"forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter."**

In the meantime, on November 12, 2007, the parties, including BR&B, were notified that Mr. Muccia had been appointed as Arbitrator.  Presumably, Mr. Bacine participated in selection process.  The appointment was confirmed on November 21, 2007 and, on December 3, 2007, a "Preliminary Hearing" was held, telephonically, among all parties, Mr. Muccia and Ms. Metz.

Among the agenda items discussed on December 3, 2007 was the question, raised by Mr. Bacine, of whether BR&B could be compelled to arbitrate since they were not a signatory to the agreement containing the arbitration clause.  After some discussion, Mr. Muccia, with the agreement and consent of Mr. Bacine, framed the threshold questions as follows:

> **[Whether] (a) the Barrack firm is properly a party in this arbitration Case, notwithstanding that it has never signed an applicable agreement to arbitrate, and (b) the decision of Justice Lowe in In re Ballon, Stall, Bader & Nadler, P.C., Index No. 602108/07 (Sup. Ct. NY Co) does not constitute a bar to the Arbitrator ruling that the Barrack firm is a party to this arbitration Case.**

BSBN was instructed to brief the foregoing issues.  Mr. Bacine agreed to the stated procedure, whereby the questions, as framed, would be submitted to the Arbitrator for

decision.  BR&B's consent to the procedure was confirmed in the context of the

December 17, 2007 conference.

In its January 22, 2008 responsive submission, BR&B raised, <u>for the very first</u> <u>time</u>, the question of whether "the Court, not the Arbitrator, has sole jurisdiction to determine whether BR&B is required to participate in this arbitration."  BSBN asserts that jurisdiction is vested in the Arbitrator and that BR&B has, in any event, waived any right it may have otherwise had to insist upon a determination by the Court.


**POINT I**
<u>**ARBITRATOR MUCCIA MUST DECIDE**</u>

<u>**A.  The Federal Arbitration Act Controls.**</u>

Whenever a contract "affecting interstate commerce" or "involving interstate commerce" contains an arbitration provision, and notwithstanding the applicability of substantive New York Law to the merits of the underlying dispute, the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, applies to questions of arbitrability. <u>Diamond Waterproofing Sys. v. 55 Liberty Owners Corp.</u>, 4 N.Y.3d 247 (2005).  That the Of Counsel Agreement pertained to litigations which were or would be commenced in a variety of venues within the United States, clearly places the Of Counsel Agreement within FAA coverage.

Under substantive New York Law, the determination as to whether New York laws or the FAA is applicable to a determination of arbitrability turns on the language of the subject arbitration agreement.  Where the agreement provides for the application of New York law to both "the agreement *and its enforcement*" then the law of New York, applies.  <u>*Id.*</u> at 253.  In the absence of a specific provision for application of New York

law to "enforcement," then the FAA applies. *Id.* Here, the Of Counsel Agreement provides only that it "shall be governed by the Laws of the State of New York," therefore invoking the FAA with respect to determination of substantive arbitrability.

## B.  Jurisdiction to Determine the Gateway Issue Lies with the Arbitrator.

The United States Supreme Court has interpreted the phrase "question of arbitrability" to be limited to the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84, 123 S.Ct. 588 (2002). On the other hand, the "presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability' " *Id.* at 537 U.S. 84, *quoting* Moses H. Cone Mem. Hosp. v Mercury Constr. Corp., 460 US 1, 25 (1983). Questions concerning "'whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are [generally] for the arbitrators to decide'" *Id.* at 537 U.S. 85.

Although substantive questions of Arbitrability, such as whether a non-signatory can be bound to arbitrate, are generally for the Court, where the parties have **"clearly and unmistakably"** agreed otherwise, the Arbitrator will decide the question. *Id.* at 537 U.S. 84; AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106

S.Ct. 1415, 89 L.Ed.2d 648 (1986) [emphasis added]; *see also*, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920 (1995).

Here, BR&B was presented with, and passed up, no fewer than *five (5) discrete opportunities* to seek a judicial stay of arbitration or to call into question the jurisdiction of the Arbitrator to decide questions of Arbitrability:

> **1st.** *Upon receipt of the Demand for Arbitration in August 2007.*
>
> **2nd.** *Following receipt of the AAA's September 25, 2007 letter, wherein Mr. Bacine was expressly advised of the* <u>*need*</u> *to obtain a judicial stay in order to prevent further proceedings.*
>
> **3rd.** *Following receipt of the AAA's November 5, 2007 letter, again advising Mr. Bacine that the matter would proceed via the arbitrator absent a judicial stay.*
>
> **4th.** *During and following the December 3, 2007 Conference.*
>
> **5th.** *During and following the December 17, 2007 Conference.*

In each instance, Mr. Bacine *rejected* the suggestion that he seek a stay of the proceedings, opting instead for the alternate avenue suggested by the AAA, *i.e.* "**to raise this issue, upon appointment of the arbitrator."** In fact, Mr. Bacine expressly instructed Ms. Metz to **"forward the exchange of correspondence, including this letter, to the arbitrator appointed to hear the matter,"** an instruction which is antithetical to the position that the Arbitrator is without jurisdiction to decide the issue.

Mr. Bacine confirmed BR&B's intention to submit the question of arbitrability to the Arbitrator when he agreed to submit the Mr. Muccia the question of "**whether the**

Barrack firm is properly a party in this arbitration Case, notwithstanding that it has never signed an applicable agreement to arbitrate."

There can be no doubt that BR&B "**clearly and unmistakably" agreed to submit the question to Arbitrability to Arbitrator Muccia.** Howsam v. Dean Witter Reynolds, Inc., *supra.* Clearly, BR&B, expressly and implicitly, requested that the Arbitrator decide. Mr. Bacine's express request that the Arbitrator decide the issue of Arbitrability and his neglect over the course of five (5) months to exercise any right to move the Court for a Stay on the ground that BR&B was not bound to arbitrate, must be construed as (1) an agreement to "arbitrate arbitrability" and (2) waiver of BR&B's right to object.

**POINT II**
**THE SUBSTANTIVE CLAIM ALLEGED BY BSBN**
**AGAINST BR&B ARISES DIRECTLY FROM**
**BSBN'S AGREEMENT WITH GERSHON**

"Under the estoppel theory, a company knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement.'" MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58 (2nd Cir. 2001) Application of an estoppel theory is dependant upon whether the non-signatory received a "direct benefit" from the agreement containing the arbitration clause. American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 (2nd Cir. 1999). Direct benefits have been found to include use a trade name granted by an agreement (Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060 (2nd Cir. 1993)) significantly lower insurance rates and the ability to sail under the French flag

by reason a contract between a shipbuilder and an accrediting agency. <u>American Bureau of Shipping v. Tencara Shipyard S.P.A.</u>, *supra* at 353.

In contrast benefits are indirect when "the agreement was not the direct source of the benefit... [flowing instead] from the non-signatory's exploitation of the contractual relation created through the agreement..." <u>MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC</u>, *supra* at 61-62.

> **Under the estoppel theory, a company "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." [*Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995)*]. Guided by "ordinary principles of contract and agency," we have concluded that where a company "knowingly accepted the benefits" of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause. *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993)* (internal quotation marks and citation omitted). The benefits must be direct -- which is to say, flowing directly from the agreement. *Thomson, 64 F.3d at 779.* Deloitte, for example, concerned an agreement containing an arbitration clause which governed the terms of use of a trade name. A nonsignatory who had received a copy of the agreement, raised no objections to it and made use of that trade name pursuant to the agreement was estopped from arguing it was not bound by the arbitration clause in the agreement. *Deloitte, 9 F.3d at 1064.***

Here, BSBN's claims against BR&B arise directly from the Of Counsel Agreement, requiring a finding that BR&B is bound.

The Of Counsel Agreement provided the contractual basis pursuant to which A. Arnold Gershon, P.C. {"AAG") became entitled to receive a portion of the fees generated by certain stockholder derivative actions and class actions which Gershon introduced to BSBN. Initially, those fees were characterized as "the sole property of [BSBN]." In June 2006, several months before terminating the Of Counsel Agreement, Gershon secured a

modification to the language of the Of Counsel Agreement by which BSBN and AAG each retained a proprietary interest in the fees, "as their interest are expressed in" the Of Counsel Agreement.  The Of Counsel Agreement clearly provided for post termination survival of the fee provisions with respect to any fees received on account of services provided during the term of the agreement.[1]  Under Article "Ninth" of the Of Counsel Agreement,

> **(b) All collections for services rendered prior to the termination of this Agreement and received by [BSBN] or [Gershon], after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement. [Gershon] and [BSBN] shall share in said collections as set forth in Fee Schedule "A" hereof.**

As such, Gershon became a contractual trustee with respect to any fees received by Gershon post-termination in which BSBN held an interest.  Since BR&B's rights with respect to those fees flow from the assignment by Gershon, BR&B's rights are co-extensive with Gershon's interest under the Of Counsel Agreement.

Mr. Bacine acknowledges that, as of November 2006, he knew that it was necessary, in connection with Gershon's departure from BSBN, for Gershon to "work out an arrangement to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some." [Bacine Aff. ¶10].  Mr. Bacine clearly should have known at that time that Gershon was operating under an agreement with BSBN.  Upon joining BR&B, Arnold entered into an agreement whereby "all fees generated by you [Mr. Gershon] on behalf of [Arnold's] clients and [Barrack's] clients during your association with [Barrack] are the property of Barrack Rodos & Bacine."

---

[1] The amendment did not alter the practical application of the Agreement.  Instead of 100% ownership of the fees by BSBN, with the obligation to compensate Gershon, the parties each owned a proportionate share of the fees.

Even were BR&B justified in ignoring the obvious and neglecting to review Gershon's agreements with BSBN, it is undisputed that, no later than "late April or early May 2007" Mr. Bacine learned that "Ballon Stoll claimed to retain a financial interest in one of the cases [Arnold] brought with him, specifically Intel." By mid-May, 2007, Mr. Bacine had become privy to "documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm" and received "a copy of the agreement that Gershon signed that contained the arbitration clause." [Bacine Aff. ¶11]. As acknowledged in his Affidavit, Mr. Bacine knew by the middle of May 2007 "there was no meeting of the minds" between Gershon and BSBN regarding the disposition of the Intel Fees. [Bacine Aff., ¶11]. At that time, the Intel Fees had been neither awarded by the Court nor received by BR&B. [Bacine Aff., ¶11].

In summary, by April, 2007, BR&B knew that BSBN claimed a contractual interest in the Intel Fees. By mid-May, 2007, BR&B was aware of the precise language and terms of the Of Counsel Agreement, including BSBN's ownership of a percentage in fees generated during the term, and was fully aware of the nature of the dispute between BSBN and Gershon regarding the disposition of fees received in the Intel matter post-termination.

Finally, BR&B, a firm of sophisticated attorneys, knew by May 2007 at the very latest that any fees received by virtue of the assignment of Intel fees from Arnold flowed to Arnold and, hence, to BR&B, as a direct consequence of the Of Counsel Agreement, to which BR&B has never lodged objection. **Moreover, and of critical importance, BR&B knew, by virtue of the language of the Of Counsel Agreements and the documented dispute between Gershon and BSBN, that BR&B's entitlement, if any,**

13

**to retain that portion of the Intel fees that contractually belonged to BSBN, flowed solely and directly from Gershon's factual and legal position regarding the interpretation and implementation of the Of Counsel Agreement.**

### Conclusion

BR&B failed and refused to seek a judicial stay and requested that the Arbitrator determine Arbitrability.  BR&B knowingly retained the benefits of Gershon's Of Counsel Agreement with BSBN.  For all of the reasons stated herein, the Arbitrator should retain jurisdiction to decide the issues of Arbitrability and must find that BR&B is bound by the arbitration agreement.

Dated: New York, New York
      February 4, 2008

          Respectfully submitted,
          BALLON STOLL BADER AND NADLER, P.C.

          By: _____
              Susan Schneiderman,
          Attorneys for Claimant
          1450 Broadway
          New York, NY 10018
          Tel: (212) 575 7900
          Fax: (212) 764 5060

Filename:            Reply Memo to Muccia
Directory:           O:\ss files and documents\BSBN v. Gershon
Template:            C:\Documents and Settings\sschneiderman\Application
          Data\Microsoft\Templates\Normal.dot
Title:               AMERICAN ARBITRATION ASSOCIATION
Subject:
Author:              sschneiderman
Keywords:
Comments:
Creation Date:       2/4/2008 9:30:00 PM
Change Number:       2
Last Saved On:       2/4/2008 9:30:00 PM
Last Saved By:       sschneiderman
Total Editing Time:  0 Minutes
Last Printed On:     2/4/2008 9:30:00 PM
As of Last Complete Printing
     Number of Pages: 14
     Number of Words:        3,451  (approx.)
     Number of Characters:   19,676  (approx.)