IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BARRACK RODOS & BACINE, | : | Civil Action No. 08 CV 02152 (PKL) |
| Plaintiff, | : |  |
| v. | : |  |
| BALLON STOLL BADER AND NADLER, P.C., | : | **ELECTRONICALLY FILED** |
| Defendant. | : |  |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

 Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

   A.   BR&B Is Likely to Succeed on the Merits ............................................................1

      1.   Only The Court Has The Authority to Determine
Whether Ballon Stoll's Claims Against BR&B Are Arbitrable ....................1

         a.   BR&B Did Not Agree to Submit the
Issue of Arbitrability to the Arbitrator ................................................2

         b.   BR&B Did Not Waive Its Right to Seek A Preliminary Injunction ......3

      2.   BR&B Is Not Bound by the Arbitration Clause of the Agreement ...............4

         a.   Ballon Stoll's Sole Claim Against BR&B Concedes
That BR&B Is Not Bound By Any Agreement ....................................5

         b.   BR&B Did Not Receive a Direct
Benefit Under the Estoppel Doctrine ....................................................5

         c.   BR&B and Gershon Did Not Enter Into a De Facto Merger ................6

   B.   BR&B Will Suffer Irreparable Harm if Forced to Arbitrate..................................7

   C.   The Balance of Hardships Weighs In Favor of BR&B..........................................8

CONCLUSION.................................................................................................................9

Plaintiff, Barrack Rodos & Bacine ("BR&B"), submits this reply memorandum in further support of its motion for a preliminary injunction to stay as against BR&B an arbitration proceeding before the American Arbitration Association ("AAA") styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* AAA Claims No. 13 194 01780 07, and to enjoin Ballon Stoll Bader and Nadler, P.C. ("Ballon Stoll") from proceeding against BR&B in that arbitration.

## INTRODUCTION

Nothing in Ballon Stoll's memorandum in opposition to BR&B's motion ("Ballon Stoll Br.") provides any reason whatsoever for this Court to deny the motion. To the contrary, the arguments that Ballon Stoll makes only confirm the necessity of a preliminary injunction staying as against BR&B the AAA arbitration. Simply stated, BR&B is entitled to the relief requested because (a) BR&B is likely to succeed on the merits; (b) BR&B will be irreparably harmed if forced to arbitrate Ballon Stoll's claims; and (c) the balance of hardships weighs in favor BR&B.

## ARGUMENT

A. **BR&B Is Likely to Succeed on the Merits**

   1. **Only The Court Has The Authority to Determine Whether Ballon Stoll's Claims Against BR&B Are Arbitrable**

The law is well settled that the court, not the arbitrator, has jurisdiction to determine whether a claim is arbitrable. *See*, *e.g., Larrison v. Scarola Reavis & Parent LLP,* 812 N.Y.S.2d 243, 246-247 (Sup. Ct. 2005) ("Generally, it is for the courts to make the initial determination as to whether the dispute is arbitrable"); *In the Matter of James D. O'Donnell v. Arrow Elec., Inc.,* 742 N.Y.S.2d 579, 579 (App. Div. 2002) (the "threshold issue of whether a valid agreement to arbitrate exists is for the court and not an arbitrator to decide.") Ballon Stoll fails to cite a single case that, under the facts presented here, refutes this argument.

1

### a. BR&B Did Not Agree to Submit the Issue of Arbitrability to the Arbitrator

Ball Stoll argues that BR&B "clearly and unmistakably" agreed to submit the question of arbitrability to the arbitrator. Ballon Stoll Br. at 5. Nothing could be further from the truth.

The issue is one of contract law. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995). Did the parties "clearly and unmistakably provide" that the arbitrator and not the court would determine arbitrability? *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986). Here, of course there is no contract at all between Ballon Stoll and BR&B, let alone one that "clearly and unmistakably provide[s]" for arbitration.[1]

Without any contract to interpret, Ballon Stoll relies upon non-contractual conduct. Ballon Stoll's sole argument is that by asking the AAA to submit its correspondence on the issue to the arbitrator and then by submitting its own memorandum challenging the arbitrator's power to decide his own jurisdiction over BR&B, BR&B "clearly and unmistakably" agreed to the power of the arbitrator to make that decision.

The only time that BR&B addressed the issue of whether the arbitrator or the court has the authority to determine whether Ballon Stoll's claims against BR&B are arbitrable was in a memorandum dated January 22, 2008. BR&B submitted that memorandum in an effort to demonstrate that only the court, not the arbitrator, could determine whether BR&B was a proper party to the AAA proceedings. By filing that memorandum with arbitrator, BR&B did not consent to have the issue of arbitrability determined by him. Rather, BR&B submitted the

---

[1] The cases Ballon Stoll cites, *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), support BR&B's position, not Ballon Stoll's. In both of those cases, the party resisting arbitration had actually signed a contract that contained an arbitration provision. The issue was whether the arbitration provision covered the particular dispute between the parties. It was in that context that the Supreme Court held that a court decides the issue of arbitrability "[u]nless the parties clearly and unmistakenly provide otherwise." *AT&T Tech.*, *supra*, 475 U.S. at 649; *Howsam*, *supra*, 537 U.S. at 83.

2

memorandum as a courtesy to explain why the issue had to be decided by a court. To suggest otherwise is ludicrous.

In sum, there are simply no facts that demonstrate BR&B "clearly and unmistakably" agreed to submit the question of arbitrability to the arbitrator.

### b.    **BR&B Did Not Waive Its Right to Seek A Preliminary Injunction**

Ballon Stoll's argument that BR&B's limited participation in the arbitration proceedings constitutes a waiver of its right to seek a preliminary injunction is also without merit. Here, BR&B's participation in the arbitration proceedings has been limited to stating its position that it is not a proper party to the AAA proceedings, and that the issue of arbitrability must be determined by a court. This level of participation in the AAA proceedings cannot be construed as a waiver of BR&B's right to have this Court determine whether it is a proper party to the arbitration proceedings. The Supreme Court's discussion and reasoning in *First Options*, 514 U.S. 938, is on all fours in this regard.

In *First Options*, the defendants had participated in arbitration proceedings through an award, even while objecting to the arbitrators' jurisdiction. On proceedings to confirm an adverse award, the defendants, who had submitted a written objection to the arbitrators challenging their jurisdiction, renewed that challenge in court. The plaintiff in that case, in seeking to have the award confirmed, made the identical arguments that Ballon Stoll makes here. On appeal, the Supreme Court soundly rejected those arguments. As the Supreme Court stated:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. …[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate

3

>that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point.

*Id*. at 945-946.

Here, BR&B's involvement in the arbitration does not come close to the *First Options* defendants' participation in their arbitration. At most, BR&B has participated in the arbitration to state its position that it is not a proper party to the proceedings. The case law in this Circuit is clear that "to the extent that [a party] participate[s] in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver." *Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.,* No. 07 Civ. 10649(JGK), 2008 WL 463720, at *3 (S.D.N.Y. Feb. 19, 2008). In *Penrod*, which was decided only weeks ago, the Court held that the plaintiff did not waive its objection to arbitrability by filing a motion asking the arbitrator to dismiss the arbitration for lack of jurisdiction and by participating in case management conferences. *Id*. at *3-4. Nor should BR&B's even more limited participation here.

### 2. BR&B Is Not Bound by the Arbitration Clause of the Agreement

As Ballon Stoll concedes in its brief, generally, in the absence of an agreement to arbitrate, a party cannot be forced to do so. *See AT&T Tech.*, 475 U.S. at 648 ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quotations omitted); *Mionis v. Bank Julius Baer & Co., Ltd.*, 749 N.Y.S.2d 497, 501-502 (App. Div. 2002) ("An agreement to arbitrate requires a clear and unequivocal manifestation of an intention to arbitrate because it involves the surrender [of] the right to resort to the courts.") (internal citations and quotations omitted). Attempting to seize onto the few, limited exceptions to this general principle, Ballon Stoll argues that, even though BR&B did not sign an agreement to arbitrate, it is nonetheless bound by the Agreement. Ballon Stoll's arguments have no merit and therefore should be rejected.

4

### a.    Ballon Stoll's Sole Claim Against BR&B Concedes That BR&B Is Not Bound By Any Agreement

Ballon Stoll argues that BR&B is bound by the arbitration claim in the Ballon Stoll-Gershon Agreement. But Ballon Stoll has made no substantive claim against BR&B under that Agreement. Rather, Ballon Stoll's only substantive claim against BR&B is under the doctrine of *quantum meruit*.[2] But *quantum meruit* cannot be asserted where a party has a valid contract. *Aviv Constr., Inc. v. Antiquarium, Ltd.*, 687 N.Y.S. 2d 344, 345 (App. Div. 1999). Rather, his remedy is limited to breach of that contract. *Id*.

Here, by asserting a *quantum meruit* claim, Ballon Stoll concedes that BR&B is not liable under any contract. But the predicate of its claims under both the estoppel doctrine and the merger doctrine is that BR&B is indeed liable under Gershon's agreement with Ballon Stoll. The inconsistency is apparent. For this reason alone, Ballon Stoll's attempt to force BR&B to arbitrate based on its agreement with Gershon should be rejected.

### b.    BR&B Did Not Receive a Direct Benefit Under the Estoppel Doctrine

Ballon Stoll asserts that BR&B is required to participate in the AAA arbitration proceedings pursuant to the doctrine of estoppel, one of the exceptions to the general rule that non-signatories to an arbitration agreement cannot be bound to arbitrate claims. As recently explained in *Republic of Ecuador v. Chevron-Texaco Corp.*, 499 F. Supp. 2d 452 (S.D.N.Y. 2007):

> A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause. *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing *Thomson-CSF*, 64 F.3d at 778-79). Direct benefits are those "flowing directly from the agreement," while "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d

---

[2] BR&B's defenses to Ballon Stoll's *quantum meruit* claim are not relevant here.

5

> Cir. 2001). "To prevail, then, [Defendants] must show that [PetroEcuador] 'knowingly exploited' the … contract and thereby received a direct benefit from the contract." *Id*. at 62 (quoting *Thomson-CSF*, 64 F.3d at 778).

499 F. Supp. 2d at 457-58 (quoting earlier decision in same case, 376 F. Supp. 2d 355, 356 (S.D.N.Y. 2005)).

Here, BR&B did not receive *any* benefit from Ballon Stoll's agreement with Gershon, let alone a direct one.  The fee BR&B received as a result of the settlement of *Seinfeld v. Barrett, et al.*, No. 05-298 (JJF) (D.Del. May 16, 2005) ("*Intel*") was not paid pursuant to Ballon Stoll's agreement with Gershon.[3]  Rather, the fee was paid because BR&B negotiated it with the defendants as part of the *Intel* settlement, and because the Court approved the fee BR&B requested in a petition that it was required to submit.  The negotiated fee and the fee petition did not rely on or have any connection with Ballon Stoll's agreement with Gershon.  But even if it could be said that BR&B received some benefit from Ballon Stoll's agreement with Gershon, that benefit, at most, was indirect.  An indirect benefit, however, is not sufficient to support the doctrine of estoppel.  *See MAG Portfolio*, 268 F.3d at 61 ("the benefit derived from [the] agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself").[4]

        **c.**    **BR&B and Gershon Did Not Enter Into a De Facto Merger**

Alternatively, Ballon Stoll argues that BR&B is bound by the arbitration provisions of the Agreement because BR&B and Gershon entered into a de facto merger.  A transaction may be deemed to be a de facto merger if the following four factors are present: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the predecessor as soon as

---

[3] As set forth in BR&B's opening brief, the *Intel* fee is the subject of Ballon Stoll's claims against BR&B.

[4] Ballon Stoll cites *Deloitte Noraudit A/S v. Deloitte Haskins & Sells,* 9 F.3d 1060 (2d Cir. 1993), and *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999), to support its argument that BR&B received a direct benefit as a result of the Agreement and should, therefore, be bound to arbitrate.  In both cases, unlike here, the benefit indeed flowed directly from the agreements.

possible; (3) assumption by the successor of liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets and general business operation. *See In re New York City Asbestos Litig.*, 789 N.Y.S. 2d 484, 486 (App. Div. 2005) (citations omitted).

Continuity of ownership exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation. *Id.* Stated differently, continuity of ownership describes a situation where the parties to the transaction "become owners together of what formerly belonged to each." *Id.* at 487 (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003)). Here, it is undisputed that Gershon, upon joining BR&B, did not receive an equity interest in BR&B. Bacine Declaration Exhibit 1 at ¶9. And it is undisputed that Gershon does not "own" or have any financial interest in any case he brought to or works on at BR&B. *Id.* Thus, there are simply no facts that would support a finding that the element of continuity of ownership has been met. Where, as here, there are no facts that support continuity of ownership, there can be no finding of a de facto merger. *NYC Asbestos Litig.*, 789 N.Y.S. 2d at 487.[5]

**B.    BR&B Will Suffer Irreparable Harm if Forced to Arbitrate**

Ballon Stoll concedes that irreparable harm flows from being forced to arbitrate in the absence of an agreement to do so. Ballon Stoll Br. at 14. Nonetheless, and without citing to a single case, Ballon Stoll argues that BR&B will suffer no irreparable harm if forced to arbitrate Ballon Stoll's claims because BR&B expressly acquiesced to the submission of the threshold issue of arbitrability to the arbitrator. *Id.* Ballon Stoll is wrong.

---

[5] In addition, Ballon Stoll fails to show that other criteria of a de facto merger are present. Ballon points to no facts showing that BR&B assumed Gershon's liabilities or demonstrating the continuity of management and/or physical location. Ballon Stoll also incorrectly argues that Gershon merged his practice with BR&B. He did not. Some cases he was working on he brought. Some Ballon Stoll retained. Ballon Stoll does not dispute that it agreed to the division of cases, except for its claim for a share of the *Intel* fee.

7

First, as a factual matter, it is simply incorrect to state that BR&B has "expressly acquiesced" to the submission of the issue of arbitrability to the arbitrator. Indeed, as set forth above, on January 22, 2008, BR&B submitted a memorandum to the arbitrator explaining why a court, not the arbitrator, has the authority to determine whether Ballon Stoll's claims against BR&B are arbitrable. Second, as a legal matter, Ballon Stoll fails to rebut BR&B's argument (as well as the well-settled case law) that irreparable harm results from arbitrating a dispute involving a party who is not covered by an arbitration agreement.

C.    **The Balance of Hardships Weighs In Favor of BR&B**

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999). Here, the answer is clearly BR&B. If the preliminary injunction were to be improperly denied, BR&B would be forced to "expend its time and resources to defend itself in an [a]rbitration to which it may ultimately be determined not to have been a proper party, and any award would accordingly be unenforceable." *Tellium, Inc. v. Corning, Inc.*, No. 03 Civ. 8487 (NRB), 2004 WL 307238, at *8 (S.D.N.Y. Feb. 13, 2004). By contrast, if this Court were to improperly grant the preliminary injunction, it would only mean that Ballon Stoll would be delayed in bringing its claims against BR&B.

Ballon Stoll argues that the balance of equities favors denial of relief for three reasons, one more senseless than the next. First, Ballon Stoll argues that if "the injunction is granted, then BR&B will likely be required to post security in the amount of the Intel fees." Ballon Stoll Br. at 14. Ballon Stoll fails to explain (and it is not obvious from the face of this argument) how this fact, even if accurate (which it is not), could possibly be a hardship to Ballon Stoll. Second, Ballon Stoll argues that "[i]f at arbitration, [Ballon Stoll] is found to be the owner of a portion of [the Intel] fees, then so much of the assignment by [Gershon] to BR&B as included [Ballon

8

Stoll's] interest is void." *Id*. at 14-15.  Again, this argument is nonsensical and, in any event, does not demonstrate any possible hardship on the part of Ballon Stoll.  Third, Ballon Stoll argues that "[i]f BR&B intends to defend upon the very claims being raised in arbitration by Gershon, then they must be found to have benefited directly from the Of Counsel Agreement." *Id*. at 15.  Not surprisingly, this argument also shows absolutely no hardship on the part of Ballon Stoll.

## CONCLUSION

Nothing in Ballon Stoll's brief refutes the conclusion that BR&B is entitled to a preliminary injunction staying the arbitration proceedings as against BR&B until the Court has declared the rights of the parties.  Therefore, for the reasons set forth above as well as for those set forth in BR&B's opening brief, BR&B's motion for a preliminary injunction should be granted.

Dated:  March 13, 2008                                    **BARRACK, RODOS & BACINE**

By:     /s/ William J. Ban
William J. Ban (WB0382)
1350 Broadway, Suite 1001
New York, NY 10018
(212) 688–0782

and

Daniel E. Bacine
BARRACK RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

*Attorneys for Plaintiff*

9