UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/08
```

BARRACK, RODOS & BACINE,

                         Plaintiff,

            - against -

BALLON STOLL BADER & NADLER,
P.C.

                         Defendant.

**OPINION AND ORDER**

08 Civ. 02152 (PKL)

**APPEARANCES**

BARRACK, RODOS & BACINE
1350 Broadway, Suite 1001
New York, NY 10018
William J. Ban, Esq.
Daniel E. Bacine, Esq.

Attorneys for Plaintiff

BALLON STOLL BADER AND NADLER, P.C.
1450 Broadway
New York, NY 10018
Susan Schneiderman, Esq.

Attorneys for Defendant

**LEISURE, District Judge:**

Plaintiff Barrack, Rodos & Bacine ("BR&B") seeks a preliminary injunction to stay an arbitration proceeding before the American Arbitration Association ("AAA") and to enjoin defendant Ballon Stoll Bader & Nadler, P.C. ("Ballon") from compelling BR&B to participate in the arbitration proceedings pending declaratory judgment of the parties' rights.

**BACKGROUND**

I. Factual Background

BR&B and Ballon both are law firms. A. Arnold Gershon, Esq. ("Gershon"), a non-party, served as Of Counsel to Ballon until he left to join BR&B on December 1, 2006. Gershon's professional corporation -- A. Arnold Gershon, P.C. ("AAG") -- and Ballon entered into a contract on June 28, 2001, which was amended on June 26, 2006 (the "Agreement"). In the Agreement, Gershon and Ballon agreed on a division of Gershon's cases. Additionally, under the Agreement, Ballon is entitled to fifty percent of all fees derived from stockholder derivative suits initiated by Gershon, an understanding which survived termination of the Agreement. (Schneiderman Decl. ¶ 5.) Gershon and Ballon reached an understanding with respect to future fees in connection with most of the pending matters, however, as

1

discussed below, "there was no meeting of the minds concerning the fees associated with the Intel Suit." (Schneiderman Decl. ¶ 7.) The Agreement also states that "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association." (Bacine Decl. Ex. 8.)

In late 2006, BR&B agreed to hire Gershon, with the understanding "that there would be no agreement about his own compensation, other than that it would be decided by BR&B." (Bacine Decl. Ex. 1, ¶ 9.) BR&B also states that Gershon "has no proprietary interest in BR&B and no financial interest in any cases he brought to or has worked on at BR&B." (Pl.'s Memo. of Law at 3; Bacine Decl. Ex. 1, ¶ 9.) In addition to hiring Gershon, BR&B, at Gershon's suggestion, hired an associate and secretary who previously had worked for Ballon. (Bacine Decl. Ex. 1, ¶ 8.)

II. Intel

This action relates to a dispute over attorneys' fees that were awarded to BR&B by the United States District Court for the District of Delaware in the Intel action as part of a 2007 settlement of that action. Seinfeld v. Barrett, et al., No. 05 Civ. 298 (JJF) (D. Del. May 16,

2

2005)("Intel").  In May 2005, while working at Ballon,
Gershon originated the Intel action. (Schneiderman Decl. ¶
6.)  Gershon continued to work on Intel after switching law
firms in December 2006.  Thereafter, BR&B negotiated a
settlement agreement in Intel, which included attorneys'
fees of approximately $862,500 to be paid to the Intel
plaintiff. (Pl.'s Memo. of Law at 3-4.)  BR&B and Ballon
both now claim that they are entitled to the Intel
attorneys' fees.

A settlement hearing in Intel was scheduled for May
23, 2007.  Ballon states that prior to the May 23 hearing,
in an email exchange between it and Gershon, Gershon agreed
to reimburse Ballon's expenses, but did not agree to pay
Ballon part of the attorneys' fees. (Schneiderman Decl. ¶
9.)  In response to Ballon's inquiry as to whether it
should make a separate fee application in Intel, Gershon
responded that it was "unnecessary and improper."
(Schneiderman Decl. Ex. C.)  In a letter dated May 18,
2007, Ballon notified BR&B that it claimed a charging lien
with respect to money recovered in connection with Intel.
(Schneiderman Decl. Ex. D.)  BR&B asserts that it first
learned of the Agreement between Gershon and Ballon after
receiving this May 18 letter. (Bacine Decl. Ex. 1, ¶ 11.)

On May 23, 2007, the settlement hearing was held in Intel and the Court awarded fees of $862,500. (Bacine Decl. ¶ 5; Schneiderman Decl. Ex. A.)  BR&B asserts that Ballon was aware of the settlement hearing and did not file a petition or appear. (Bacine Decl. Ex. 1, ¶ 16.)  On June 29, 2007, the Intel fee was paid to BR&B. (Bacine Decl. ¶ 5.)

### III.  Litigation and Arbitration Proceedings

In June 2007, Ballon initiated a proceeding in New York Supreme Court seeking to enjoin BR&B from distributing the Intel fee pending resolution of Ballon's interest. Ballon's request was denied. (Bacine Decl. Ex. 1, Ex. F.)

In August 2007, Ballon filed an arbitration demand with AAA against BR&B, Gershon, and AAG, seeking a determination of the amount of attorneys' fees it is owed from Intel and an award of those fees.  In response to the filing, BR&B sent letters to AAA stating that it believed it was not a proper party to the arbitration proceedings because it was not a party to the Agreement, which contained the arbitration clause. (Schneiderman Decl. Ex. E.)  AAA responded to each letter by stating that in the absence of a court order staying the matter, the arbitration would proceed. (Schneiderman Decl. Ex. E.)

A preliminary hearing with the arbitrator was held telephonically on December 3, 2007, during which the question of arbitrability of the claims against BR&B was raised. (Schneiderman Decl. ¶ 20.)  On December 27, 2007, Ballon filed a memorandum in support of AAA's retention of jurisdiction over BR&B. (Schneiderman Decl. Ex. F.)  On January 22, 2008, BR&B, "as a matter of courtesy," responded, again asserting that it should not be bound to arbitrate and also arguing that a court should determine whether the claim against BR&B was arbitrable. (Bacine Decl. Ex. 2.)  Ballon replied on February 4, 2008. (Schneiderman Decl. Ex. G.)  On February 19, 2008, the arbitrator issued a ruling determining that he had authority to determine arbitrability and ruling that BR&B was bound by the Agreement's arbitration clause. (Bacine Decl. Ex. 3.)  The arbitrator found that BR&B was bound by the Agreement and its arbitration clause because there was a de facto merger between Gershon and BR&B. (Bacine Decl. Ex. 3.)  The arbitrator also ordered BR&B to respond to Ballon's claim no later than March 5, 2008. (Pl.'s Memo. of Law at 6.)

BR&B filed this action on March 4, 2008.  BR&B's motion for a preliminary injunction was filed the next day. Ballon responded on March 11, 2008 and BR&B replied on

March 13, 2008.  This Court heard oral argument on the
motion on March 17, 2008 (the "March 17 hearing").
Following the March 17 hearing, Ballon submitted a letter
to the Court (the "Schneiderman 3/17/08 Letter"), to which
BR&B replied the following day (the "Bacine 3/18/08
Letter").

## DISCUSSION

BR&B asserts that because it is not a party to the
Agreement between Gershon and Ballon, it is not required to
arbitrate Ballon's claims.  Further, BR&B claims that,
absent an injunction, it will be irreparably harmed by
being forced to choose between participating in the
arbitration or allowing it to proceed without its
participation. (Pl.'s Memo. of Law at 1.)

In opposition to the motion, Ballon contends that BR&B
"belatedly brings this application, after having expressly
and purposefully submitted all of the issues raised herein
for determination by the [a]rbitrator." (Def.'s Memo. of
Law at 1.)  Ballon argues that the arbitrator has
jurisdiction and properly determined whether BR&B could be
required to participate.  Accordingly, Ballon asks that
BR&B's request be denied.

I. Jurisdiction over Arbitrability

The question of whether two parties have agreed to arbitrate a dispute is for the court to decide, not the arbitrators, unless there is clear and unmistakable evidence that the parties intended otherwise. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)(holding that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"); Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd., No. 07 Civ. 10649, 2008 WL 463720, at *3 (S.D.N.Y. Feb. 19, 2008). Further, the Supreme Court stated that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." First Options, 514 U.S. at 946. Similarly, the Second Circuit has held that "to the extent that [a party] participate[s] in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver." Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 369 (2d Cir. 2003). Therefore, the Court must consider whether the parties have revealed a clear and unmistakable intent to submit the issue of arbitrability to the arbitrator.

The parties dispute whether the Court or the arbitrator should decide if BR&B is required to arbitrate with Ballon.  Ballon contends that BR&B agreed to submit the question to the arbitrator by submitting a responsive memorandum to the arbitrator on the question of whether BR&B was properly a party in the arbitration. (Def.'s Memo. of Law at 4.)  BR&B asserts that it submitted the memorandum "as a courtesy to explain why the issue had to be decided by a court." (Pl.'s Reply Memo. at 3.)  BR&B further states that it "has made clear that it is not willing to submit to arbitration" and has not "agreed to have the arbitrator decide the question of arbitrability." (Pl.'s Memo. of Law at 8.)

Ballon further asserts that BR&B waived any right it may have had to insist upon determination of arbitrability by a court.  Ballon claims that BR&B had five different opportunities to seek a judicial stay or question the arbitrator's jurisdiction to decide arbitrability and failed to do so. (Def.'s Memo. of Law at 4.)  Ballon also cites BR&B's correspondence with the AAA as constituting a waiver because the AAA told BR&B that the arbitration would proceed unless a court order was obtained. (Schneiderman Decl. ¶¶ 16-18.)  BR&B contends that its participation in the arbitration proceedings does not constitute a waiver

8

because it was limited to stating that it was not a proper
party to the arbitration and that a court must determine
arbitrability. (Pl.'s Reply Memo. at 3.)  Further, BR&B
responds that the AAA's directions to obtain a court order
were not binding on BR&B because it was not subject to the
AAA's jurisdiction.

    Based on the parties' submissions and arguments at the
March 17 hearing, there is not "clear and unmistakable
evidence" that BR&B agreed to have the arbitrator determine
arbitrability.  Although Ballon cites numerous times when
BR&B could have sought court intervention earlier, such
delay did not constitute a waiver.  BR&B repeatedly
informed Ballon, AAA, and the arbitrator that it contested
arbitrability.  Indeed, in its memorandum to the
arbitrator, BR&B expressly stated that it did not agree to
submit this question to the arbitrator.  The Second Circuit
has held that participation in arbitration hearings in
order to resolve the question of arbitrability itself does
not constitute waiver. See Opals on Ice Lingerie, 320 F.3d
at 369.  Additionally, courts previously have held that
parties' more extensive participation in arbitration
proceedings, far beyond that of BR&B here, was insufficient
for waiver. See, e.g., First Options, 514 U.S. at 946-47;
Penrod, 2008 WL 463720, at *3-4.  Finally, this is not the

9

type of case where "a party submitted the merits of the claim to the arbitrator and awaited the arbitrator's decision prior to seeking a stay." Penrod, 2008 WL 463720, at *3.  For all of these reasons, the Court, and not the arbitrator, has the authority to determine arbitrability. Therefore, the Court's analysis turns to the preliminary injunction standard.

## II. Preliminary Injunction

It is well established that in order to obtain a preliminary injunction, the movant must show: (a) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See, e.g., Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).  These elements must be established by a preponderance of the evidence. Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 233 (S.D.N.Y. 2002)(quoting Addington v. Texas, 441 U.S. 418, 423 (1979)); see also S.E.C. v. Moran, 922 F. Supp. 867, 889 (S.D.N.Y. 1996).  Whether injunctive relief should issue or not "'rests in the sound discretion of the district court

which, absent abuse of discretion, will not be disturbed on appeal.'" Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (quoting Thornburgh v. Am. Coll. of Obstetricians and Gynecologists, 476 U.S. 747, 755 (1986)).

### A. Irreparable Harm

Irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'" Reuters Ltd., 903 F.2d at 907 (quoting Bell & Howell: Mamiya Co. v. Masel Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983)). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Javaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(citing Jackson Dairy, 596 F.2d at 72). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." Reuters, 903 F.2d at 907 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 (2d Cir. 1989)); see also Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112 (2d Cir. 2005), Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999). The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990)(emphasis in original).

"Likelihood sets, of course, a higher standard than 'possibility.'" Id.

Within the arbitration context, the Second Circuit has held that a party forced to arbitrate a dispute that is beyond the purview of the arbitration agreement suffers irreparable harm. See Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003)(citing Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997)("[T]he time and resources [plaintiff] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the [arbitration agreement] or the Arbitration Act.")). This consideration, therefore, necessarily leads to the second factor of the preliminary injunction standard.

> B. Likelihood of Success on the Merits or
>    Sufficiently Serious Questions Going to the
>    Merits and Balance of Hardships

BR&B claims that it is likely to succeed on the merits regarding whether it must arbitrate Ballon's claims and that the balance of hardships weighs in favor of BR&B. Ballon argues that BR&B has failed to show that it is likely to succeed on the merits and that the balance of hardships does not weigh in BR&B's favor.

i. Exceptions to the General Rule of
Arbitrability

"It is fundamental that arbitration agreements are

creatures of contract law." Scher v. Bear Stearns & Co.,

723 F. Supp. 211, 214 (S.D.N.Y. 1989)(Leisure, J.)(citation

omitted).  Thus, "'a party cannot be required to submit to

arbitration any dispute which he has not agreed to so

submit.'" Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64

F.3d 773, 776 (2d Cir. 1995)(quoting United Steelworkers of

Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582

(1960)).  "Absent an express agreement to arbitrate, [the

Second Circuit] has recognized only 'limited theories upon

which [it] is willing to enforce an arbitration agreement

against a non-signatory.'" Merrill Lynch, 337 F.3d at 129

(quoting Thomson, 64 F.3d at 780).  The five recognized

theories for binding a non-signatory to an arbitration

agreement are: "1) incorporation by reference; 2)

assumption; 3) agency; 4) veil-piercing/alter ego; and 5)

estoppel." Id. at 129 (quoting Thomson, 64 F.3d at 776).

"[A] willing signatory . . . seeking to arbitrate with a

non-signatory that is unwilling . . . must establish at

least one of the five theories . . . ." Id. at 131.

As BR&B is a non-signatory to the Agreement, Ballon

has the burden to establish one of the exceptions to the

13

general rule regarding arbitrability. Id.  Ballon claims
that BR&B is subject to the agreement to arbitrate by
reason of estoppel and the de facto merger doctrine.
(Schneiderman Decl. ¶ 12.)  BR&B argues that it cannot be
forced to arbitrate because none of the exceptions apply
here. (Pl.'s Memo. of Law at 10.)[1]

### ii. Estoppel

Applying ordinary principles of contract and agency,
the Second Circuit has concluded that a non-signatory may
be bound by an agreement containing an arbitration
provision where the non-signatory knowingly exploited the
benefits of the agreement and knowingly accepted benefits
directly flowing from the agreement. See MAG Portfolio
Consult, GMBH v. Merlin Biomed Group LLC, 226 F.3d 58, 61
(2d Cir. 2001)(quoting Thomson, 64 F.3d at 778, and citing
Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9
F.3d 1060, 1064 (2d Cir. 1993)).  Indirect benefits,
however, are insufficient. See id. (stating that benefits
are "indirect where the non[-]signatory exploits the
contractual relation of parties to an agreement, but does
not exploit (and thereby assume) the agreement itself").

---

[1] BR&B also argues that Ballon concedes that BR&B is not liable under
the Agreement by asserting a claim against BR&B for quantum meruit,
which is only available where there is no valid contract. (Pl.'s Reply
at 5.)  At the March 17 hearing, the parties disputed whether there was
a contract claim asserted in the arbitration demand.  In light of the
Court's decision below, it need not consider this issue.

Ballon claims that BR&B is estopped from avoiding arbitration because its receipt of attorneys' fees in Intel constitutes a "direct benefit" under the Agreement between Gershon and Ballon.  Ballon asserts that BR&B has obtained monetary benefits from the Agreement that otherwise would have been solely Gershon's. (Def.'s Mot. at 10.)  In addition, Ballon contends that "[t]he question must be focused directly upon the disposition of that portion of the Intel Fees to which Ballon claims entitlement by virtue of the Of Counsel Agreement." (Schneiderman 3/17/08 Letter, at 1.)  Ballon states that Gershon assigned his own interest and Ballon's interest in the fees to BR&B, even though "he was without legal authority to assign Ballon's interest." (Id. at 2.)  But for the Agreement, Ballon argues, BR&B would not have possession of Ballon's interest in the Intel fees. (Id.)  BR&B claims, however, that it has not received any benefit under the Agreement because the Intel fees were paid, not as a result of the Agreement, but rather, as a result of BR&B's negotiations in the Intel settlement. (Bacine 3/18/08 Letter, at 1.)

Here, BR&B has "exploited the contractual relation of parties to an agreement," MAG Portfolio Consult, GMBH, 226 F.3d at 61, by taking over the role of counsel in the Intel case.  However, BR&B has "not exploit[ed] (and thereby

15

assume[d]) the agreement itself." Id.  Ballon claims an interest, which it argues arises from the Agreement, in the fees paid to BR&B, but that does not necessarily indicate that BR&B directly benefited from the Agreement.  BR&B has, at most, received an indirect benefit from the Agreement, which is insufficient to employ the estoppel exception.  To uphold application of the estoppel exception in this action, a more direct benefit is necessary.  Therefore, Ballon has failed to demonstrate that BR&B is bound to arbitrate by the estoppel exception.

### iii. De Facto Merger

"The de facto merger doctrine creates successor liability when the transaction between the purchasing and selling companies is in substance, if not in form, a merger." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 205 (2d Cir. 2006).  The factors considered in determining whether a "de facto merger" has occurred are: "the continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation." AT & S Transp., LLC v. Odyssey

16

Logistics & Technology Corp., 803 N.Y.S.2d 118, 119, 22
A.D.3d 750, 752 (2d Dep't 2005)(internal quotation
omitted).  Further, the Court should consider the factors
"in a flexible manner that disregards mere questions of
form and asks whether, in substance, it was the intent of
the successor to absorb and continue the operation of the
predecessor." Id.

     Ballon asserts that BR&B absorbed substantially all of
AAG's assets -- namely Gershon's law practice and
prospective legal fees -- and continued its operation.
Ballon also claims -- and BR&B does not deny -- that as a
result, AAG ceased operating.  Additionally, Ballon
contends that BR&B was aware of Ballon's agreement with
Gershon by May 2007 at the latest. (Schneiderman Decl. ¶
15.)  As further evidence that BR&B is bound to the
Agreement, Ballon cites BR&B's payment of fees to local
counsel Fox Rothschild LLP, a firm that was initially
retained by Ballon.  Ballon also argues that BR&B's hiring
of Gershon's former associate and secretary from Ballon is
additional evidence of a de facto merger.

     BR&B contends that there was no de facto merger
because there was no asset purchase or continuity of
ownership. (Pl.'s Memo. of Law at 10-11.)  Rather, BR&B
asserts, this was merely one lawyer switching employers.

Further, BR&B argues that it did not acquire all of
Gershon's practice because part of his caseload was
retained by Ballon.  In support of its assertion that there
is no continuity of ownership, BR&B claims that Gershon did
not receive an equity interest in BR&B or have any
financial interest in the cases that he works on at BR&B.
(Bacine Decl. Ex. 1, ¶ 9.)

Although continuity of ownership, without more, is not
sufficient to warrant finding a de factor merger, courts
have made clear that it is a critical factor in the de
facto merger inquiry. See In re New York City Asbestos
Litigation, 789 N.Y.S.2d 484, 487, 15 A.D.3d 254, 256-57
(1st Dep't 2005); see also Cargo Partner AG v. Albatrans,
Inc., 352 F.3d 41, 46-47 (2d Cir. 2003).  The Second
Circuit stated that "continuity of ownership is the
touchstone of the concept.  As [the First Department]
explained, continuity of ownership is the 'essence of a
merger' and thus a necessary predicate to a finding of a de
facto merger." Nat'l Serv. Indus., 460 F.3d at 212 (quoting
In re New York City Asbestos Litigation, 789 N.Y.S.2d at
487, 15 A.D.3d at 256-57).  Under New York law, continuity
of ownership has been described as "a situation where the
parties to the transaction 'become owners together of what
formerly belonged to each.'" In re New York City Asbestos

Litigation, 789 N.Y.S.2d at 487 (quoting Cargo Partner AG, 352 F.3d at 47).  "The continuity-of-ownership element typically is satisfied where the purchasing corporation pays for the acquired assets with shares of its own stock. The seller therefore continues to own the assets it has sold through its ownership of shares in the purchasing corporation."  Nat'l Serv. Indus., 460 F.3d at 210 n.2 (citing Cargo Partner, 352 F.3d at 46 n.4).

In this action, BR&B has demonstrated that there was no continuity of ownership.  The facts indicate that BR&B and Gershon/AAG have not "become owners together of what formerly belonged to each."  Cargo Partner AG, 352 F.3d at 47.  Even if Gershon bringing his law practice to BR&B can be considered a sale of assets, Gershon does not "continue[] to own the assets [he] has sold through [his] ownership of shares in the purchasing corporation."  Nat'l Serv. Indus., 460 F.3d at 210 n.2.  Although Gershon's title is "partner," BR&B has stated that Gershon has no ownership of shares or equity in the firm or other financial stake in his cases. (Bacine Decl. Ex. 1, ¶ 9.) The consideration that Gershon received for bringing his practice to BR&B appears to have been a salary determined by BR&B and other benefits typically given to employees, such as office space and support staff, but not an

19

ownership interest.  Although Gershon continues to work on
those cases that he brought with him from Ballon to BR&B,
that does not necessarily amount to ownership under the de
facto merger doctrine.

In In re New York City Asbestos Litigation, the First
Department held that there was no continuity of ownership
where the successor paid for the predecessor's assets with
cash, not with its own stock, and neither the predecessor
nor any of its shareholders had become a shareholder in the
successor. 789 N.Y.S.2d at 487, 15 A.D.3d at 256-57.
Similarly, in this action, in return for bringing his law
practice to BR&B, Gershon received a salary determined by
BR&B and did not receive any equity interest in the firm.

Finding no continuity of ownership, there can be no de
facto merger. See Nat'l Serv. Indus., 460 F.3d at 212.  The
Court notes, however, that the fourth factor in the de
facto merger analysis also may weigh against finding a de
facto merger.  Although BR&B hired an associate and
secretary who previously worked at Ballon, the First
Department has held that "[t]he mere hiring of some of the
predecessor's employees is insufficient to raise a triable
issue as to continuity of management." Kretzmer v. Firesafe
Prods. Corp., 805 N.Y.S.2d 340, 340, 24 A.D.3d 158, 159
(1st Dep't 2005).  To that end, regarding the other aspects

considered under the fourth factor, Ballon has not presented evidence of continuity of management, physical location, or general business operation.

Assessing all of the factors "in a flexible manner," AT & S Transp., 803 N.Y.S.2d at 119, 22 A.D.3d at 752, the facts presented here are insufficient to warrant application of the de facto merger exception. This is not a situation in which the transaction "is in substance, if not in form, a merger." Nat'l Serv. Indus., 460 F.3d at 205. Rather, this is a situation in which an attorney merely switched employers, bringing with him some, but not all, of his caseload. Ballon has failed to demonstrate that the estoppel and de facto merger exceptions should apply; therefore, the Court holds that BR&B is likely to succeed on the merits that its dispute with Ballon is not subject to arbitration.

Additionally, the balance of hardships weighs in favor of BR&B. BR&B has demonstrated that it would be irreparably harmed if forced to expend time and resources arbitrating an issue that is not subject to arbitration. Meanwhile, Ballon, who seeks money damages, would not be without a remedy as it may continue to proceed against Gershon and AAG in the arbitration. Therefore, BR&B's motion for a preliminary injunction is hereby GRANTED and

21

Ballon may not continue to pursue arbitration against BR&B
absent further proceedings in this Court.

### C. Bond

Upon issuance of a preliminary injunction order,
Federal Rule of Civil Procedure 65(c) provides for "the
giving of security by the applicant, in such sum as the
court deems proper, for the payment of such costs and
damages as may be incurred or suffered by any party who is
found to have been wrongfully enjoined or restrained." Fed.
R. Civ. P. 65(c).  District courts in the Second Circuit
are vested with wide discretion in determining the amount
of the bond that the moving party must post. See Doctor's
Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996);
Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir. 1961).
Indeed, in cases where the non-movant has not shown a
likelihood of harm, the district court may properly set no
bond. See Doctor's Assocs., 85 F.3d at 985; Ferguson, 228
F.2d at 675.

The parties did not address the bond issue in their
filings, however, the Court requested their views at oral
argument.  Ballon argued that the bond should be set at the
amount of fees that it claims it is entitled to and BR&B is
currently holding.  In response, BR&B argued that because
the preliminary injunction relates to arbitrability and not

the merits, the bond should reflect only the nominal amount
that Ballon would incur as a result of any delay imposed by
the injunction.

As discussed above, Ballon may continue to pursue
arbitration against Gershon and AAG. Thus far, however,
Ballon has not established that it can arbitrate against
BR&B.  If Ballon later demonstrates that BR&B should be
subject to arbitration, then the preliminary injunction may
be vacated and Ballon would be free to pursue its claims
against BR&B.  On the present record, Ballon cannot show a
likelihood of harm, therefore, the Court will not require
BR&B to post a bond.

23

## CONCLUSION

For the reasons stated herein, BR&B's motion for a
preliminary injunction is hereby GRANTED.

**SO ORDERED.**

**New York, New York**

March **20**, 2008

_____

U.S.D.J.

24