IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BARRACK RODOS & BACINE, | : | Civil Action No. 08 CV 02152(PKL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **ELECTRONICALLY FILED** |
| | : | |
| BALLON STOLL BADER AND NADLER, P.C., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ....................................................................................................1

BACKGROUND ......................................................................................................2

ARGUMENT ...........................................................................................................5

I.     THE SECOND, FOURTH, FIFTH AND SIXTH COUNTERCLAIMS
       ARE NOT RIPE FOR ADJUDICATION .............................................5

II.    BALLON'S COUNTERCLAIMS FAIL TO STATE CLAIMS
       UPON WHICH RELIEF MAY BE GRANTED ......................................6

       A.     Standard Under Fed.R.Civ.P. 12(b)(6) .........................................6

       B.     Ballon's Counterclaims for Declaratory Relief
              Should Be Dismissed ....................................................................7

              1.     BR&B Is Not Bound to Arbitrate under the Estoppel Theory.........7

              2.     BR&B and Gershon Did Not Enter into a De Facto Merger ...........9

              3.     The *Intel* Fee Awarded by the United States District Court
                     for the District of Delaware Is Not the Property of Ballon............10

       C.     Ballon Has Not Stated a Claim for Fraudulent Conveyance .....................11

       D.     Ballon Has Not Stated a Claim for Money Had and Received.................13

       E.     Ballon's Unjust Enrichment Claim Should Be Dismissed ........................14

       F.     Ballon is Not Entitled to a Charging Lien ..................................................15

CONCLUSION.........................................................................................................15

Plaintiff, Barrack Rodos & Bacine ("BR&B"), submits this memorandum in support of its motion to dismiss defendant's counterclaims.

## **<u>INTRODUCTION</u>**

This Court recently granted BR&B's motion for preliminary injunction against defendant, Ballon Stoll Bader and Nadler, P.C. ("Ballon"), enjoining Ballon from proceeding against BR&B in an arbitration proceeding before the American Arbitration Association, styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* Claim No. 13 194 01780 07. Ballon had sought arbitration against BR&B even though BR&B had never signed an agreement to arbitrate any dispute with Ballon. Rather, Ballon contended that BR&B was the successor-in-interest to A. Arnold Gershon and A. Arnold Gershon, P.C. (collectively "Gershon"), which did sign such an agreement. Ballon contended that BR&B was bound by Ballon's agreement with Gershon ("Ballon-Gershon Agreement") because BR&B received a direct benefit from that agreement. Alternatively, Ballon contended that, although Gershon has no equity interest in BR&B, Gershon and BR&B should be deemed to have merged under the de facto merger doctrine, thereby binding BR&B to the Ballon-Gershon Agreement, including its arbitration clause. This Court rejected Ballon's contentions and granted the preliminary injunction, finding that the evidence demonstrated that BR&B did not receive a direct benefit under the Ballon-Gershon Agreement and that Gershon joining BR&B was not a de facto merger.[1]

In its answer, Ballon asserts six counterclaims, two of which are for declaratory relief. Ballon's first counterclaim raises the identical arguments that this Court already considered and rejected in its preliminary injunction order, enjoining as against BR&B the arbitration

---

[1] Because there are no genuine issues of fact on these issues, BR&B has separately requested a pre-motion conference for the purpose of submitting a motion for summary judgment to make the preliminary injunction permanent.

proceeding.  In any event, the allegations of Ballon's first counterclaim do not make out the claim for relief.  Four of the remaining counterclaims (the second, fourth, fifth and sixth) are grounded on the same factual premise:  that BR&B is liable to Ballon to the extent Gershon is liable to Ballon under the Ballon-Gershon Agreement.  As will be demonstrated, these claims are not ripe for adjudication.  Moreover, they fail to state any claims upon which relief may be granted.  So, too, does Ballon's third counterclaim, for an alleged fraudulent conveyance by Gershon, fail to state any cognizable claim.  The counterclaims should therefore be dismissed pursuant to Rule 12(b)(6).

## **<u>BACKGROUND</u>**

This matter relates to a dispute over attorneys' fees awarded to BR&B by the United States District Court for the District of Delaware in the matter styled *Seinfeld v. Barrett, et al.,* No. 05-298 (JJF) (D. Del. May 16, 2005) (*"Intel"*), a derivative lawsuit that settled in 2007. Ballon claims to have an interest in those fees, contending that it is entitled to fees that were earned under the Ballon-Gershon Agreement.  The background of this action is set forth in this Court's opinion in *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08 Civ. 02152 (PKL), 2008 WL 759353 (S.D.N.Y. Mar. 20, 2008) ("*BR&B v. Ballon*").  The following is a summary.

Gershon left Ballon and joined BR&B in December 2006.  Complaint ¶ 2.  Upon leaving, Ballon and Gershon divided the cases he had brought to or was working on at Ballon Stoll.  *Id*. ¶ 17.  One of the cases Gershon brought to BR&B was the *Intel* case.  *Id*. ¶ 19.  Upon Gershon's arrival, BR&B assembled a team, including a group of lawyers and a paralegal to review the document production in order to prepare for the intensive deposition schedule.  *Id.*  Shortly after Gershon joined BR&B, defendants in that case commenced settlement discussions with BR&B,

which led to a settlement agreement dated March 7, 2007. *Id.* ¶ 20. The fee was negotiated at arm's length with defense counsel. *Id.* at ¶ 21.

When BR&B filed its motion for approval of the settlement, it sought fees and expenses in the agreed amount of approximately $862,500. Answer ¶ 41. A settlement hearing in the *Intel* case was scheduled for May 23, 2007, of which Ballon was aware. *See* e-mail message of May 9, 2007, annexed as Exhibit C to the Schneiderman Declaration.[2] Despite its knowledge of the settlement hearing and its claim that it had an interest in the proposed fee, Ballon did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition. Complaint ¶ 23. By order dated May 23, 2007, the Court awarded BR&B a fee in the *Intel* case in the amount of $862,500 as per the settlement agreement. The fee was paid to BR&B on June 29, 2007. Answer ¶ 46.

On August 17, 2007, Ballon filed a demand for arbitration with the AAA against Gershon under the Ballon-Gershon Agreement, which contained a provision requiring arbitration of disputes. Ballon also named BR&B as a respondent in the arbitration, thereby attempting to collaterally attack the order of the District Court for the District of Delaware that had awarded BR&B the fee.

After the arbitrator ruled that he (and not a court) had the authority to rule on the issue of the arbitrability of Ballon's claim against BR&B, and that BR&B was bound by the arbitration clause of the Ballon-Gershon Agreement, BR&B filed a complaint in this Court for declaratory relief and moved for preliminary injunction, seeking to enjoin the arbitration. After evidentiary submissions to the Court, full briefing of the issues and oral argument, this Court determined that (1) BR&B did not receive a direct benefit from the Ballon-Gershon Agreement and was therefore

---

[2] This reference is to the Declaration of Susan Schneiderman, Esq. in Opposition to Motion for Preliminary Injunction.

not estopped from denying obligations under that agreement; and (2) Gershon's joining BR&B

without an equity interest in BR&B precluded a finding that the de facto merger doctrine applied.

The Court thereupon granted BR&B's motion for preliminary injunction.

Ballon has now answered the complaint, including in its answer six counterclaims, five of

which are grounded on the Ballon-Gershon Agreement. In its first counterclaim, styled

"Declaratory Relief: Arbitration," Ballon contends that BR&B "succeed to Gershon's interest in

the [Ballon-Gershon] Agreement"; that Gershon's practice "merged into, and was subsumed by,

BR&B"; and that "BR&B is estopped to deny its obligations to submit to arbitration." Answer

¶ 50. These are the same arguments that this Court already addressed in deciding BR&B's

preliminary injunction motion.

Four of the remaining counterclaims assert that BR&B's liability flows from Gershon's

alleged liability under the Ballon-Gershon Agreement, a claim that is the subject of the

arbitration proceeding against Gershon. In Ballon's second counterclaim, styled "Declaratory

Relief: Ownership of *Intel* Fees," Ballon contends that "[b]y reason of the foregoing," *i.e.*,

paragraphs 1 through 50 of its answer, BR&B should be ordered "to pay over and deliver to

[Ballon] so much of the *Intel* [f]ees as is determined as a result of [Ballon's] arbitration with

Gershon to be the property of [Ballon] under the [Ballon-Gershon] Agreement." Answer ¶ 52.

Ballon's fourth and fifth counterclaims, styled, respectively, "Money Had & Received"

and "Unjust Enrichment," are cousins. They each claim that Ballon has an interest in the *Intel*

fee based on the Ballon-Gershon Agreement and that BR&B, to whom the fees were paid, should

pay to Ballon the amount awarded in its arbitration with Gershon. Answer ¶¶ 60-65. Ballon's

sixth counterclaim, styled "Fixing and Enforcement of Charging Lien," which is also based on

the same factual predicate, asks the Court to impose a lien on so much of the *Intel* fee as is awarded to Ballon in the arbitration against Gershon.  Answer ¶¶ 66-68.

Ballon's third counterclaim, styled "Avoidance of Fraudulent Conveyance," is the only one that appears not to be based on the Ballon-Gershon Agreement.[3]  Rather, it is based on Gershon's supposed conveyance to BR&B of Ballon's interest in the *Intel* fee while Gershon was allegedly insolvent.  Answer ¶¶ 53-59.

Ballon's counterclaims are all fatally flawed.  As will be demonstrated, none states a claim upon which relief may be granted.

## ARGUMENT

### I.     THE SECOND, FOURTH, FIFTH AND SIXTH COUNTERCLAIMS ARE NOT RIPE FOR ADJUDICATION

In its second, fourth, fifth and sixth counterclaims, Ballon seeks relief based upon a hypothetical finding in Ballon's favor in the arbitration proceedings between Ballon and Gershon.  These claims should be dismissed for lack of jurisdiction because they are not ripe for adjudication.

"Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies."  *Marchi v. Bd. of Coop. Educ. Serv. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999).  To be considered justiceable pursuant to Article III, a claim must be ripe.  *Id.*  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. U.S.,* 523 U.S. 296, 300 (1998).  "It is settled that the courts will not entertain a declaratory judgment action when any declaration that the court might issue will become effective only upon the occurrence of a future event that may or may not come to pass."  *In re Jamaica Water Supply,* 600 N.Y.S.2d. 924, 925 (N.Y. Sup. 1993) (internal

---

[3]  Because paragraph 53 of Ballon's Answer incorporates by reference all the prior allegations, including paragraph 52, even Ballon's third counterclaim could be read to be based on the Ballon-Gershon Agreement.

quotations omitted); *see also U.S. HealthCare, Inc. v. O'Brien,* 868 F. Supp. 607, 615 (S.D.N.Y. 1994).

Here, the second, fourth, fifth and sixth counterclaims all depend on an award in Ballon's favor in the arbitration proceeding against Gershon.  As the Supreme Court stated, "[u]nder these circumstances, where we have no idea whether or when such" an award will be rendered, "the issue is not fit for adjudication.  *Texas,* 523 U.S. at 300 (internal quotations omitted).  Moreover, ripeness "requires [this Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas,* 523 U.S. at 296, 300-01 (internal quotations omitted).  There is no harm to Ballon Stoll if this Court were to withhold consideration of Ballon's second, fourth, fifth and sixth counterclaims.  If the arbitrator determines that Gershon owes money to Ballon Stoll, Ballon Stoll can, at that time, bring these claims before this Court.  Ballon's unripe counterclaims should therefore be dismissed.

## II.    BALLON'S COUNTERCLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED

### A.    Standard Under Fed.R.Civ.P. 12(b)(6)

"In deciding a motion to dismiss counterclaims…pursuant to Rule 12(b)(6), the allegations in the claimant's pleadings are accepted as true and all reasonable inferences must be drawn in the claimants favor.  The Court should not dismiss the counterclaims if the counter-plaintiff has stated 'enough facts to state a claim to relief that is plausible on its face'." *Katz v. Image Innovations Holdings, Inc.,* No. 06 Civ. 3707 (JGK), 2008 WL 762101, at * 2 (S.D.N.Y. Mar. 24, 2008) (quoting *Twombly v. Bell Atlantic Corp.,* 127 S.Ct. 1955, 1974 (2007) (internal citations omitted).

However, "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss." *Bryerton v. Verizon*

*Commc'n. Inc.* No. 06 Civ. 6672(DC), 2007 WL 1120290, at *3 (S.D.N.Y. Apr. 17, 2007)

(internal citations and quotations omitted).  *See also Gavish v. Revlon, Inc.* No. 00 Civ.

7291(SHS), 2004 WL 2210269, at *10 (S.D.N.Y.  Sept. 30, 2004).

### B.   Ballon's Counterclaims for Declaratory Relief Should Be Dismissed

In its first and second counterclaims, Ballon seeks to have this Court enter an order

declaring that BR&B succeeded to Gershon's interest in the Ballon-Gershon Agreement; that

Gershon's law practice was subsumed by BR&B; that BR&B is estopped from denying an

obligation to submit to arbitration; and that BR&B should be forced to pay Ballon so much of the

*Intel* fee as the arbitrator determines Ballon is entitled to receive from Gershon.  These

counterclaims do not state claims for relief and should therefore be dismissed.

### 1.   BR&B Is Not Bound to Arbitrate under the Estoppel Theory

Ballon's first counterclaim seeks an order from the Court declaring that BR&B is bound

to participate in the arbitration under the doctrine of estoppel, one of the exceptions to the

general rule that nonsignatories cannot be bound to arbitrate claims.  *BR&B v. Ballon*, *supra*, at

*5.  Ballon's allegations lack merit.[4]

While the general rule is that a nonsignatory to a contract cannot be bound to arbitrate, a

nonsignatory can be bound to arbitrate claims where his conduct estops him from arguing that he

has not adopted an agreement containing an arbitration clause.  The elements of this estoppel

theory were set forth in *Republic of Ecuador v. Cherron-Texaco Corp.*, 499 F. Supp. 2d 452

(S.D.N.Y. 2007):

> "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause."  *American*

---

[4]  This Court already addressed this estoppel claim in the context of BR&B's preliminary injunction motion. *BR&B v. Ballon*, *supra*, at *6-7.  This brief will limit its analysis to the pleading standards applicable to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing *Thomson-CSF*, 64 F.3d at 778-79).  Direct benefits are those "flowing directly from the agreement," while "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."  *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001).  "To prevail, then, [Defendants] must show that [PetroEcuador] 'knowingly exploited' the … contract and thereby received a direct benefit from the contract."  *Id*. at 62 (quoting *Thomson-CSF*, 64 F.3d at 778).

499 F. Supp. 2d at 457-58 (quoting earlier decision in same case, 376 F. Supp. 2d at 356); *BR&B v. Ballon*, *supra*, at *6.  Under these principles, for Ballon "[t]o prevail [it] must show that [BR&B] 'knowingly exploited the … contract and thereby received a direct benefit from the contract.'" 376 F. Supp. 2d at 356 (quoting from *MAG Portfolio*, 268 F.3d at 61).

Ballon's sole allegation relevant to the estopped claim is that "BR&B has benefited directly from the Of Counsel Agreement."  Answer ¶ 48.  This allegation cannot withstand a motion to dismiss.  As the Court held in *Bice v. Robb,* No. 07 Civ. 2214(PAC), 2008 WL 552566, at *3 (S.D.N.Y. Feb. 29, 2008), "mere 'formulaic recitation of a cause of action's elements' will not suffice; instead, '[f]actual allegations must be enough to raise a right to relief above a speculative level.'"  Ballon's counterclaim alleges no facts sufficient to meet this standard.  At most, Ballon's allegations can be read to claim an indirect benefit from the Ballon-Gershon Agreement.  The counterclaims concede that the fee was negotiated with the defendants in *Intel* and was awarded to BR&B by the District Court for the District of Delaware.  Answer ¶ 45.  There is no allegation, nor could there be, that the order awarding fees depended on the Ballon-Gershon Agreement.  Indeed, as BR&B demonstrated in connection with the motion for preliminary injunction, and as this Court found:

> BR&B has, at most, received an indirect benefit from the Agreement, which is insufficient to employ the estoppel exception.  To uphold application of the estoppel exception in this action, a more direct benefit is necessary.  Therefore,

> Ballon has failed to demonstrate that BR&B is bound to arbitrate by the estoppel
> exception.

*BR&B v. Ballon*, *supra*, at *6. Thus, the estoppel exception to the general rule that non-signatories are not bound to arbitrate does not apply here.

### 2.    BR&B and Gershon Did Not Enter into a De Facto Merger

Ballon has also not set forth allegations sufficient to show that BR&B and Gershon entered into a de facto merger. The de facto merger doctrine is one created as "an exception to the general principle that an acquiring corporation does not become responsible thereby for the pre-existing liabilities of the acquired corporation." *Micro Bio-Medics, Inc. v. Westchester Med. Ctr.,* 800 N.Y.S.2d 350, at *4 (N.Y. Sup. 2004) (internal quotations and citations omitted).

The factors courts use to consider whether a de facto merger has occurred are "continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, a continuity of management, personnel, physical location, assets and general business operation." *AT&S Trans. LLC v. Odyssey Logistics and Techn. Corp.*, 803 N.Y.S.2d 118, 120 (App. Ct. 2005). Ballon's counterclaims fail to set forth these elements.

This Court has already considered and rejected Ballon's contention that the de facto merger doctrine applies here. *BR&B v. Ballon*, *supra*, at *7-8. The Court found that:

> In this action, BR&B has demonstrated that there was no continuity of ownership.
> The facts indicate that BR&B and Gershon/AAG have not "become owners
> together of what formerly belonged to each." *Cargo Partner AG*, 352 F.3d at 47.
> Even if Gershon bringing his law practice to BR&B can be considered a sale of
> assets, Gershon does not "continue[ ] to own the assets [he] has sold through [his]
> ownership of shares in the purchasing corporation." *Nat'l Serv. Indus.*, 460 F.3d
> at 210 n.2. Although Gershon's title is "partner," BR&B has stated that Gershon
> has no ownership of shares or equity in the firm or other financial stake in his
> cases. (Bacine Decl. Ex. 1, ¶ 9.) The consideration that Gershon received for

> bringing his practice to BR&B appears to have been a salary determined by BR&B and other benefits typically given to employees, such as office space and support staff, but not an ownership interest.  Although Gershon continues to work on those cases that he brought with him from Ballon to BR&B, that does not necessarily amount to [ownership] under the de factor merger doctrine.

*Id*. at *8.  As this Court then stated, "[f]inding no continuity of ownership, there can be no de facto merger."  *Id*.

Ballon makes no allegations that even remotely satisfy its pleading obligations.  Ballon does not allege that Gershon has any ownership interest in BR&B or any financial interest in the cases he works on at BR&B.  In fact, Ballon concedes that Gershon "agreed to join BR&B without any compensation commitment from BR&B."  Answer ¶ 40.

### 3.     The *Intel* Fee Awarded by the United States District Court for the District of Delaware Is Not the Property of Ballon

Ballon's second counterclaim is styled as one seeking a declaration that Ballon is the owner of the *Intel* fee awarded to BR&B, or at least "so much of the *Intel* [f]ee[ ] as is determined as a result of [Ballon's] arbitration with Gershon to be the property of [Ballon] under the [Ballon-Gershon] Agreement."  Answer ¶ 52.  This cryptic allegation appears to be an improper collateral attack on the district court's order in *Intel* that directed that fees awarded to plaintiff's counsel be paid to BR&B.

The *Intel* court, armed with the fee application that set forth the information necessary to render a fair and informed decision, approved the settlement of that action, including the payment to BR&B of attorneys' fees and expenses that the settlement agreement provided.  Ballon was aware of the settlement hearing at which the *Intel* court considered the issue of fees, but chose neither to attend the hearing nor even apply to the *Intel* court for a fee.

Rule 60(b) of the Federal Rules of Civil Procedure:

> governs collateral attack on a final judgment rendered by a federal district court in a civil case; and collateral attack, especially in civil cases, is disfavored because of the social interest in expedition and finality in litigation. A collateral attack on a final judgment is not a permissible substitute for appealing the judgment within the time, standardly 30 days, for appealing the judgment of a federal district court.

*Bell v. Eastman Kodak Co.,* 214 F.3d 798, 800-01 (7th Cir. 2000); *See also Waterman v. Transp. Workers' Union Local 100,* 8 F. Supp. 2d 363, 368 (S.D.N.Y. 1998) (where a party is dissatisfied with a district court's ruling, "[t]he appropriate course of action is to seek a direct review of the judgment rather than to bring a collateral attack."). If Ballon was not satisfied with the settlement agreement's provision concerning fees or with the court's fee award, its remedy was to make its views known to the *Intel* court or to appeal the decision, not collaterally attack the order. Having remained silent then, Ballon cannot be heard now.

Moreover, the theory of this claim -- that Ballon has some property interest in the *Intel* fee -- is devoid of any factual allegations to support it. According to paragraph 52 of the answer, Ballon's claim is derivative of and relies upon its claim that Gershon is liable to Ballon under the Ballon-Gershon Agreement. In other words, Ballon contends that BR&B is liable to Ballon because Gershon is liable to Ballon under that agreement. But for the same reason the court found that BR&B was not bound by the arbitration clause in the Ballon-Gershon Agreement, BR&B is neither bound by nor liable for an alleged breach of other terms of that agreement. Thus, the premise that fees paid to BR&B belong to Ballon because of an agreement to which BR&B is a stranger is a false one. Ballon's second claim for relief therefore fails.

### C.     Ballon Has Not Stated a Claim for Fraudulent Conveyance

In its third counterclaim, Ballon seeks to set aside Gershon's supposed "conveyance" to BR&B of the *Intel* fees, claiming that such "conveyance" was fraudulent pursuant to New York

Debtor and Creditor Law.  Answer ¶¶ 53-59; N.Y. Debtor and Creditor Law §§ 278-79 (1925).

Ballon's only support for this claim rests on the conclusory allegations that "Gershon's

conveyance of the *Intel* Fees to BR&B was without fair consideration[,] … was made while

Gershon was insolvent[,] … was made while Gershon knew that they were about to incur debts

beyond their ability to pay[, and] … was made with actual intent to defraud."  Answer ¶¶ 54-57.

These conclusory allegations fail for several reasons.

First, Gershon did not even purport to "convey" the *Intel* fees to BR&B, and nothing in

the counterclaim contains such an allegation.  Nor could Ballon make such an allegation;

Gershon never possessed the fee and therefore could not have conveyed it.

Doubtless Ballon will point to paragraph 39 of its counterclaim, which provides:

> Pursuant to a Letter Agreement dated November 29, 2006 between [Gershon] and
> BR&B, [Gershon] and BR&B agreed that "all fees generated by [Gershon] on
> behalf of [Gershon's] clients and [BR&B's] clients during [Gershon's]
> association with [BR&B] are the property of Barrack, Rodos & Bacine."

But this paragraph does not purport to convey fees or even mention Ballon.  Absent a

conveyance, there of course can be no fraudulent conveyance.

Moreover, New York Debtor and Creditor Law §§ 278 and 279 allow a creditor to set

aside a "conveyance" only if such conveyance is fraudulent as to that creditor.  Although Ballon

alleges that Gershon conveyed the *Intel* fees to BR&B with "actual intent to defraud," Answer ¶

57, such allegation is insufficient.  Under N.Y. C.P.L.R. (2008) 3016(b) such allegations must

contain "the circumstances constituting the wrong . . . in detail."  *Menaker v. Alstaedter*, 521

N.Y.S.2d 35, 36 (N.Y. App. Div. 1987) (claim dismissed for failure to plead with particularity

insofar as claim alleges "actual intent to defraud" under §276).  Ballon's conclusory assertion

that Gershon's conveyance to BR&B was "made with actual intent to defraud" is therefore

insufficient.

Furthermore, Ballon's conclusory allegations that that the alleged conveyance was made "without fair consideration" at a time when Gershon "was insolvent" are similarly inadequate. Answer ¶¶ 54-55.  Pursuant to New York Debtor and Creditor Law § 271, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Ballon has not made any factual allegations as to Gershon's finances that would meet the requirements of this section.  Nor has Ballon made any factual allegations as to the basis for the contention that the purported conveyance was without "fair consideration," as that term is defined in Debtor and Creditor § 272.

For all these reasons, Ballon's fraudulent conveyance claim should be dismissed.

### D.    Ballon Has Not Stated a Claim for Money Had and Received

In its fourth counterclaim, Ballon purports to state a claim for money had and received. To state a claim for money had and received, Ballon must allege that, "(1) defendant received money belonging to plaintiff; (2) that defendant benefited from the receipt of the money; (3) and under principles of good conscience, defendant should not be allowed to retain the money." *Fesseha v. TD Waterhouse Investor Serv.,* 747 N.Y.S.2d 676, 261 (Sup. Ct. 2002); s*ee also Palestine Monetary Auth. v. Strachman,* 837 N.Y.S.2d 828, 1019-20 (Sup. Ct. 2007).

Ballon's counterclaim does not contain any factual allegations that BR&B received any money *belonging* to Ballon.  As with other counterclaims, the premise of this counterclaim is that BR&B is liable to Ballon if and to the extent that Gershon is found in the arbitration to be liable to Ballon under the Ballon-Gershon Agreement, an agreement to which BR&B is a stranger.  This allegation is not consistent with a claim that BR&B is holding money that belongs to Ballon.  Indeed, the *Intel* fee was received as a part of a settlement reached at arm's length

with the defense counsel in that case, and was awarded by the *Intel* Court. Complaint ¶ 21. The fee never belonged to Ballon. Ballon has thus failed to set forth a claim for money had or received.

### E.     **Ballon's Unjust Enrichment Claim Should Be Dismissed**

Ballon has also failed to state a claim for unjust enrichment. To state a claim for unjust enrichment, Ballon must allege that (1) BR&B received a benefit; (2) its benefit was at the expense of Ballon; and (3) that equity and good conscience require restitution. *Mazzaro de Abreu v. Bank of Am. Corp.,* 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007).

To begin with, Ballon does not set forth a single factual allegation that BR&B benefited at the expense of Ballon. Again, Ballon's claim is solely that BR&B is liable to the extent Gershon is liable. Answer ¶ 65. And "[s]ince [BR&B] did not benefit at the expense of [Ballon Stoll], equity and good conscience cannot require restitution." *Mazzaro,* 525 F. Supp. 2d at 397. Moreover, "[a]pplying the broad discretion contained in the third element, courts have imposed various additional requirements such as: services must have been performed for the defendant, . . . or defendant must have assumed an obligation to pay plaintiff for services it received." *Nat'l Cas. Co. v. Vigilant Ins. Co.,* 466 F. Supp. 2d 533, 543 (S.D.N.Y. 2006) (internal citations omitted). Here, Ballon does not, nor could it, make any claim that services were performed for BR&B. Moreover, Ballon does not, nor could it, allege that BR&B assumed an obligation to pay for any services Ballon contends it performed. Nor did BR&B ever accept any services from Ballon.

Ballon's claim is that because Gershon is contractually bound to pay part of the *Intel* fee to Ballon -- which Gershon has denied in the arbitration -- BR&B, which received the fee, is responsible for Gershon's obligation. This claim presupposes that BR&B is liable under the

Ballon-Gershon Agreement.  But BR&B has already demonstrated that it is not the successor-in-interest to Gershon and that it is not bound by the Ballon-Gershon Agreement.

Ballon's unjust enrichment claim is flawed for another reason.  As noted, it is premised on Gershon's liability under the Ballon-Gershon Agreement for which, according to Ballon, BR&B is liable.  In other words, BR&B's liability is alleged to be based on a contract.  But a claim for unjust enrichment, cannot exist where there is a contract.  *See*, *e.g.*, *Aviv Constr., Inc. v. Antiquarium, Ltd.*, 687 N.Y.S. 2d 344, 345 (App. Div. 1999).  It is therefore paradoxical for Ballon to contend that it has an unjust enrichment claim that is based on the Ballon-Gershon Agreement.

For all these reasons, Ballon's unjust enrichment claim should be dismissed.

### F.     Ballon is Not Entitled to a Charging Lien

Ballon's sixth and final counterclaim is for fixing and enforcing a charging lien.  But according to Judiciary Law 475, this Court does not have jurisdiction to fix a charging lien where, as here, the *Intel* case was litigated exclusively in Delaware and the settlement fund was not distributed in New York.  *See Strauss v. Cunningham*, 403 N.Y.S. 2d 39, 40 (App. Div. 1978) (court does not have jurisdiction over out-of-state proceeds).  Because this Court does not have jurisdiction over the *Intel* proceeds, Ballon's sixth counterclaim should be dismissed.

### CONCLUSION

The basis for Ballon's first counterclaim was rejected by this Court's grant of BR&B's preliminary injunction motion.  The second, fourth, fifth and sixth counterclaims are based on Ballon's hope that it receives an arbitration award in its favor against Gershon.  Its claims are therefore premature and not ripe for adjudication.  The third counterclaim is based upon a

mistaken premise that Gershon violated N.Y. debtor and creditor laws by fraudulently conveying fees to BR&B.  Moreover, all of the counterclaims fail to state claims upon which relief may be granted.  For the reasons explained above, Ballon's counterclaims should be dismissed pursuant to Rule 12(b)(6).

Dated:  April 29, 2008                                    Respectfully submitted,

**BARRACK, RODOS & BACINE**
William J. Ban (WB0382)
1350 Broadway, Suite 1001
New York, NY 10018
(212) 688–0782
                                        and


    /s/ Daniel E. Bacine
Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

*Attorneys for Plaintiff*