THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| BARRACK, RODOS & BACINE, | Civil Action No. 08 CV 02152(PKL) |
| Plaintiff, |   |
| v. | **ELECTRONICALLY FILED** |
| BALLON STOLL BADER & NADLER, P.C., |   |
| Defendant. |   |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON THE
COMPLAINT AND ON DEFENDANT'S FIRST COUNTERCLAIM**

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................................1

FACTS ................................................................................................................................................2

ARGUMENT .....................................................................................................................................5

      A.    Summary Judgment Standard ...................................................................................5

      B.    BR&B is Entitled to Summary Judgment ..................................................................6

            1.    The Court and Not the Arbitrator Has the Authority to Determine Whether Ballon's Claims Against BR&B Are Arbitrable ...............................................................................6

            2.    BR&B Is Not Bound to Arbitrate Pursuant to the Estoppel Doctrine .............................................................................9

            3.    Gershon and BR&B Did Not Enter into a De Facto Merger .........................10

      C.    Summary Judgment Is Appropriate at this Stage......................................................14

CONCLUSION................................................................................................................................15

Plaintiff, Barrack, Rodos & Bacine ("BR&B"), submits this memorandum in support of its motion for summary judgment on its complaint seeking to permanently enjoin defendant, Ballon Stoll Bader & Nadler, P.C. ("Ballon") from proceeding in arbitration against BR&B, and for summary judgment on Ballon's first counterclaim.

## INTRODUCTION

On March 4, 2008, BR&B filed a complaint seeking declaratory and injunctive relief to enjoin proceedings before the American Arbitration Association ("AAA") styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* AAA Claims No. 13 194 01780 07 (the "Arbitration"). In connection with the complaint, BR&B also filed a motion for preliminary injunction seeking to stay the Arbitration as to BR&B. After evidentiary submissions, a full round of briefing and oral argument, this Court granted BR&B's motion for preliminary injunction by Order and Opinion dated March 20, 2008, reported at *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08 Civ. 02152 (PKL), 2008 WL 759353 (S.D.N.Y. Mar. 20, 2008) ("*BR&B v. Ballon*").

Ballon had sought arbitration against BR&B not because BR&B had signed an agreement to arbitrate any dispute with Ballon. Rather, Ballon contended that BR&B was the successor-in-interest to A. Arnold Gershon and A. Arnold Gershon, P.C. (collectively "Gershon"), which did sign such an agreement ("Ballon-Gershon Agreement" or "Agreement"). Ballon contended that BR&B was bound by the Agreement because BR&B received a direct benefit from the Agreement. Alternatively, Ballon contended that, although Gershon has no equity interest in BR&B, the doctrine of de facto merger applies to bind BR&B to the Ballon-Gershon agreement, including its arbitration clause. In granting BR&B's motion for preliminary injunction, this Court rejected Ballon's arguments.

The record evidence demonstrates conclusively that BR&B did not receive a direct benefit from the Ballon-Gershon agreement. And absent Gershon having an equity interest in BR&B, the de facto merger doctrine does not apply. Because these were the only bases for Ballon's contention that BR&B was compelled to arbitrate its claim against BR&B, summary judgment on BR&B's claim for declaratory relief, and for permanently enjoining Ballon from attempting to arbitrate Ballon's claim is appropriate. Summary judgment should also be granted as to Ballon's first counterclaim, which is based on the same theories Ballon advanced in opposition to BR&B's preliminary injunction motion.

## FACTS

The above-captioned matter relates to a dispute over attorneys' fees awarded to BR&B by the United States District Court for the District of Delaware in the matter styled *Seinfeld v. Barrett, et al.,* No. 05-298 (JJF) (D. Del. May 16, 2005) (*"Intel"*), a derivative lawsuit that settled in 2007. Ballon claims to have an interest in those fees, contending that it is entitled to fees that were earned under the Ballon-Gershon Agreement. Gershon left Ballon and joined BR&B on December 1, 2006. The background of this action is set forth in this Court's opinion in *BR&B v. Ballon*. The following is a summary of the facts relevant to this motion.

In November 2006, Gershon contacted BR&B about a possible employment opportunity. Declaration of Daniel E. Bacine ("Bacine Decl.")[1] Exhibit 1 ¶ 4. Gershon had become increasingly unhappy with his employment at Ballon and with Ballon's inability or unwillingness to properly litigate the kinds of complex discovery intensive cases in which he was involved. *Id.* at ¶ 5. Gershon was aware of BR&B's extensive experience and ability to handle complex class and derivative litigation. In his discussions with BR&B, Gershon suggested that, in addition to

---

[1] All references to the "Bacine Decl." are to the Declaration of Daniel E. Bacine previously submitted to the Court in support of BR&B's motion for preliminary injunction.

2

himself, BR&B should also hire the associate he had been working with. *Id.* at 8. And because BR&B had no secretarial support in its New York office (BR&B had one lawyer there part time), Gershon proposed that BR&B also hire a secretary who had left Ballon several weeks earlier. *Id.*

Among the cases Gershon brought to BR&B was the *Intel* case. Upon Gershon's arrival, BR&B assembled a team, including a group of lawyers and a paralegal to review the document production in order to prepare for the intensive deposition schedule. *Id.* at ¶ 12. Shortly after Gershon joined BR&B, defendants in the *Intel* action commenced settlement discussions with BR&B, which led to a settlement agreement dated March 7, 2007. *Id.* at ¶ 13. The fee was negotiated at arm's length with defense counsel. *Id.* at ¶ 14.

When BR&B filed its motion for approval of the settlement, it sought fees and expenses in the agreed amount of approximately $862,500. Bacine Decl. at ¶ 5. A settlement hearing in the *Intel* case was scheduled for May 23, 2007, of which Ballon was aware. *Id.* at Exhibit 1 ¶ 16. Despite its knowledge of the settlement hearing (*see* e-mail message of May 9, 2007 annexed as Exhibit C to the Susan Schneiderman Declaration),[2] and its claim that it had an interest in the proposed fee, Ballon did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition. *Id.* By order dated May 23, 2007, plaintiff's counsel was awarded attorneys' fees and reasonable out-of-pocket disbursements in the amount of $862,500, as per the settlement agreement. In accordance with that order, the fee was paid to BR&B on June 29, 2007. Bacine Decl. at ¶ 5.

On August 17, 2007, Ballon filed a demand for arbitration with the AAA against Gershon under the Ballon-Gershon Agreement, which contained a provision requiring arbitration of disputes. Ballon also named BR&B as a respondent in the arbitration, thereby attempting to

---

[2] This reference is to the Declaration of Susan Schneiderman Esq. submitted in conjunction with Ballon's opposition to its motion for preliminary injunction.

3

collaterally attack the order of the District Court for the District of Delaware that had awarded BR&B the fee. A copy of the Arbitration demand is attached to the Bacine Decl. at Exhibit 7.

From the outset, BR&B has constantly maintained and expressed its position that it is not a party to the Ballon-Gershon Agreement, and is, therefore, not required to arbitrate Ballon's claims. Daniel E. Bacine, a BR&B partner, sent three separate letters to the AAA, each time reiterating BR&B's position that it is not a proper party to the Arbitration. Bacine Decl. Exhibits 4-6. At the request of the arbitrator, on December 27, 2007, Ballon submitted a memorandum in support of his retention of jurisdiction over BR&B, to which BR&B responded as a matter of courtesy. Bacine Decl. at ¶ 4. In its response, BR&B argued, that it was not a proper party to the Ballon-Gershon Agreement and should not be bound to arbitrate, and that only a court, not an arbitrator, has the authority to determine whether Ballon's claims against BR&B are arbitrable. Bacine Decl. Exhibit 2.

On February 19, 2008, the arbitrator issued a ruling that he (and not a court) had the authority to rule on the arbitrability of Ballon's claim against BR&B. *Id.* at Exhibit 3. The arbitrator ruled that BR&B was bound by the arbitration clause of the Agreement and ordered BR&B to serve and file a response to Ballon's claim no later than March 5, 2008. *Id*. Instead, BR&B filed a complaint for declaratory and injunctive relief and a motion for preliminary injunction. After evidentiary submissions to the Court, full briefing of the issues and oral argument, this Court determined that (1) this Court and not the arbitrator has jurisdiction to determine the issue of arbitrability; (2) BR&B was not estopped from refusing to participate in the Arbitration; (3) BR&B did not receive a direct benefit from the Ballon-Gershon Agreement; and (4) Gershon's joining BR&B without an equity interest in BR&B precluded a finding that

4

the de facto merger doctrine applied.  The Court thereupon granted BR&B's motion for preliminary injunction.

Ballon has since served its answer to the complaint ("Ballon Answer"), which included six counterclaims that BR&B has moved to dismiss.  In its first counterclaim, styled "Declaratory Relief:  Arbitration," Ballon contends that BR&B "succeed to Gershon's interest in the [Ballon-Gershon] Agreement"; that Gershon's practice "merged into, and was subsumed by, BR&B"; and that "BR&B is estopped to deny its obligations to submit to arbitration."  Ballon's Answer ¶ 50.

Because the record before this Court demonstrates conclusively that BR&B is not bound to arbitrate Ballon's claims under the Agreement, summary judgment in favor of BR&B should be granted on the claims in its complaint and on Ballon's first counterclaim.

## ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Gonzalez v. Morflo Indus. Inc.,* 931 F. Supp. 159, 163 (E.D.N.Y. 1996) ("To survive the summary judgment motion, the non-moving party must make a showing sufficient to establish the existence of the elements essential to that party's case.").  When the moving party has asserted facts showing that it is entitled to judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial and cannot rest on the mere allegations or denials of his pleading.  Fed. R. Civ. P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir. 1994); *Vann v. New York City Transit Auth.,* 4 F. Supp. 2d 327, 330 (S.D.N.Y. 1998).  Once the moving party has met its burden, the nonmoving party must "provide

evidentiary support for [its] contentions." *Rexnord Holdings*, 21 F.3d at 525. "[T]he mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. The disputed issues of fact must be material to the outcome of the litigation." *Vann,* 4 F. Supp. 2d at 329 (internal citations and quotations omitted); s*ee also Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 484 -85 (S.D.N.Y. 1996).

### B.      BR&B is Entitled to Summary Judgment

BR&B moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) the Court and not the arbitrator has jurisdiction to determine whether Ballon's claims against BR&B are arbitrable; (2) BR&B did not receive a direct benefit from the Ballon-Gershon Agreement and is therefore not estopped from refusing to arbitrate Ballon's claims under the Agreement; and (3) BR&B and Gershon did not enter into a transactions that constitutes a de facto merger. As set forth in detail below, the evidence demonstrates that "there is no genuine issue as to any material fact," and BR&B is entitled to judgment as a matter of law.

The burden to establish that BR&B is bound by the Agreement rests with Ballon. This Court explained that, "[a]s BR&B is a non-signatory to the Agreement, Ballon has the burden to establish one of the exceptions to the general rule regarding arbitrability." *BR&B v. Ballon,* 2008 WL 759353, at \*6. Ballon cannot meet the burden.

#### 1.      The Court and Not the Arbitrator Has the Authority to Determine Whether Ballon's Claims Against BR&B Are Arbitrable

In its Answer, Ballon denies BR&B's claim that this Court and not the arbitrator has jurisdiction to decide the question of arbitrability (Ballon's Answer at ¶ 21), despite the fact that this Court has already determined that the Court and not the arbitrator has the authority to determine whether Ballon's claims against BR&B are arbitrable. *BR&B v. Ballon,* 2008 WL

6

759353, at *4.  The law is well settled in this regard.  *See*, *e.g., Larrison v. Scarola Reavis & Parent LLP,* 812 N.Y.S.2d 243, 246-247 (Sup. Ct. 2005) ("Generally, it is for the courts to make the initial determination as to whether the dispute is arbitrable").  Courts within New York have held time and again that the "threshold issue of whether a valid agreement to arbitrate exists is for the court and not an arbitrator to decide." *In the Matter of James D. O'Donnell v. Arrow Elec., Inc.,* 742 N.Y.S.2d 579, 579 (App. Div. 2002); *Ben-Reuven v. Kidder Peabody & Co., Inc.*, 526 N.Y.S.2d 752, 753 (Sup. Ct. 1988) (same).  In this instance, the arbitrator lacks jurisdiction to determine whether BR&B, a nonsignatory to the agreement containing the arbitration clause, should be compelled to arbitrate Ballon's claims.

From the outset, BR&B made clear that it was not willing to submit to arbitration.  *See e.g.,* Bacine Decl. Exhibits 4-6.   Where, as here, parties do not agree to submit the arbitrability question to arbitration, "then the court should decide that question."  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).  Ballon has been unable to set forth any facts that show that BR&B agreed to have the arbitrator decide the question of arbitrability.  At most, Ballon can point to correspondence BR&B submitted to the AAA and to the arbitrator questioning their jurisdiction over BR&B.  But that correspondence does not demonstrate an agreement to allow the arbitrator to decide his jurisdiction over BR&B.

This Court has already rejected Ballon's arguments that the arbitrator should determine the question of arbitrability.  As the Court held:

> [T]here is not "clear and unmistakable evidence" that BR&B agreed to have the arbitrator determine arbitrability.  Although Ballon cites numerous times when BR&B could have sought court intervention earlier, such delay did not constitute a waiver.  BR&B repeatedly informed Ballon, AAA, and the arbitrator that it contested arbitrability.  Indeed, in its memorandum to the arbitrator, BR&B expressly stated that it did not agree to submit this question to the arbitrator.  The Second Circuit has held that participation in arbitration hearings in order to resolve the question of arbitrability itself does not constitute waiver.  *See Opals*

7

>*on Ice Lingerie,* 320 F.3d at 369. Additionally, courts previously have held that parties' more extensive participation in arbitration proceedings, far beyond that of BR&B here, was insufficient for waiver. *See, e.g., First Options,* 514 U.S. at 946-47; *Penrod,* 2008 WL 463720, at *3-4. Finally, this is not the type of case where "a party submitted the merits of the claim to the arbitrator and awaited the arbitrator's decision prior to seeking a stay." *Penrod,* 2008 WL 463720, at *3. For all of these reasons, the Court, and not the arbitrator, has the authority to determine arbitrability.

*BR&B v. Ballon,* 2008 WL 759353, at *4.

In *First Options, supra*, the defendants actually participated in the arbitration through an award. On proceedings to confirm the award, the defendants, who had submitted a written objection to the arbitrators challenging their jurisdiction, renewed that challenge in court. The plaintiff, in seeking to have the award confirmed, made the identical arguments Ballon made here regarding BR&B's alleged participation in the Arbitration. As the Supreme Court stated:

>[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. …[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectually bound by the arbitrator's decision on that point.

*First Options, supra*, 514 U.S. at 945-946.

Moreover, BR&B's forceful objection to the arbitrator's jurisdiction demonstrates that BR&B did not consent to the arbitrator's authority or jurisdiction. *Id. See also Masefield AG v. Colonial Oil Indus., Inc.*, No. 05 Civ. 2231(PKL), 2005 WL 911770, at * 2 (S.D.N.Y. Apr. 18, 2005) (deciding that the court should determine the arbitrability issue where the party did not enter "into any contract with defendant containing an arbitration" clause and did not demonstrate "any intention to give the [arbitrator] the power to determine" whether the arbitrator should decide the issue of arbitrability). BR&B "did not clearly agree to submit the question of

8

arbitrability to arbitration," *First Options,* 514 U.S. at 947, and Ballon has failed to present any evidence that it did. Thus, BR&B should be granted summary judgment on its claim that this Court and not the arbitrator has jurisdiction to decide the question of arbitrability.

### 2. BR&B Is Not Bound to Arbitrate Pursuant to the Estoppel Doctrine

In Ballon's answer and first counterclaim, Ballon contends that BR&B is bound to participate in the Arbitration under the doctrine of estoppel, an exception to the general rule that nonsignatories cannot be bound to arbitrate claims. *BR&B v. Ballon, supra*, 2008 WL 759353, at *5. As recently explained in *Republic of Ecuador v. Chevron-Texaco Corp.*, 499 F. Supp. 2d 452 (S.D.N.Y. 2007):

> A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause. *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing *Thomson-CSF*, 64 F.3d at 778-79). Direct benefits are those "flowing directly from the agreement," while "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). "To prevail, then, [Defendants] must show that [PetroEcuador] 'knowingly exploited' the … contract and thereby received a direct benefit from the contract." *Id*. at 62 (quoting *Thomson-CSF*, 64 F.3d at 778).

499 F. Supp. 2d at 457-58 (quoting earlier decision in same case, 376 F. Supp. 2d 355, 356 (S.D.N.Y. 2005)).

The record evidence demonstrates conclusively that BR&B did not receive a direct benefit from the Ballon-Gershon Agreement. As this Court found in deciding the preliminary injunction motion:

> Here, BR&B has "exploited the contractual relation of parties to an agreement," *MAG Portfolio Consult, GMBH*, 226 F.3d at 61, by taking over the role of counsel in the Intel case. However, BR&B has "not exploit[ed] (and thereby assume[d]) the agreement itself." *Id*. Ballon claims an interest, which it argues arises from the Agreement, in the fees paid to BR&B, but that does not necessarily indicate

9

>that BR&B directly benefited from the Agreement. BR&B has, at most, received an indirect benefit from the Agreement, which is insufficient to employ the estoppel exception. To uphold application of the estoppel exception in this action, a more direct benefit is necessary. Therefore, Ballon has failed to demonstrate that BR&B is bound to arbitrate by the estoppel exception.

*BR&B v. Ballon, supra*, 2008 WL 759353, at *6.

Here, there is not one shred of evidence that BR&B received *any* benefit from Ballon's agreement with Gershon, let alone a direct one. The fee BR&B received as a result of the settlement agreement in *Intel* was not paid pursuant to Ballon's agreement with Gershon. Rather, the fee was paid because BR&B negotiated it with the defendants as part of the *Intel* settlement, and because the Court approved the fee BR&B requested in a petition that BR&B was required to submit. In fact, the negotiated fee and the fee petition did not rely on or have any connection with Ballon's agreement with Gershon. Bacine Decl. Exhibit D.

At most, Ballon could argue that BR&B received an indirect benefit from the Ballon-Gershon Agreement. But an indirect benefit is not sufficient to support the doctrine of estoppel. *See MAG Portfolio*, 268 F.3d at 61 ("the benefit derived from [the] agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself").

Thus, the estoppel exception to the general rule that non-signatories are not bound to arbitrate does not apply here. Absent evidence of a direct benefit from the Ballon-Gershon Agreement, BR&B is not bound to arbitrate under the estoppel theory. BR&B should, therefore, be granted summary judgment on its complaint and on Ballon's first counterclaim.

### 3. Gershon and BR&B Did Not Enter into a De Facto Merger

Ballon contends, both in its answer and first counterclaim, that BR&B is required to participate in the Arbitration because Gershon's employment at BR&B amounts to a de facto

10

merger. The de facto merger doctrine is one created as "an exception to the general principle that an acquiring corporation does not become responsible thereby for the pre-existing liabilities of the acquired corporation." *Micro Bio-Medics, Inc. v. Westchester Med. Ctr.,* 800 N.Y.S.2d 350, at *4 (N.Y. Sup. 2004) (internal quotations and citations omitted). The evidence in this action demonstrates, however, that there was no merger, de facto or otherwise, between BR&B and Gershon.

Under New York law, where there is a transaction structured as an asset purchase, courts will look to the substance of the transaction to determine whether in substance, it should be treated as "a consolidation or merger of seller and purchaser." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (internal quotation omitted). As the Second Circuit held, "[t]he purpose of the doctrine of de facto merger is to avoid [the] patent injustice which might befall a party simply because a merger has been called something else." *Id.* at 46 (citing *In re Penn Cen. Sec. Litig.*, 367 F. Supp. 1158, 1170 (E. D. Pa. 1973).

To find that a de facto merger exists, New York law requires a finding that there was:

> [1] a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; [3] a dissolution of the selling corporation[;] and [4] the assumption of liabilities by the purchaser.

*Id.* at 46 (internal quotations and citations omitted).

The *sine qua non* of a de facto merger is continuity of ownership. As the court in *AT&S Trans. LLC v. Odyssey Logistics & Tech. Corp.*, 803 N.Y.S.2d 118 (App. Div. 2005), stated:

> The hallmarks of a de facto merger are the "continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinary necessary for the uninterrupted continuation of the business of the acquired corporation; and, a continuity of management, personnel, physical location, assets, and general business operation" (*Fitzgerald v. Fahnestock & Co.*, 286 A.D. 2d 573, 574

11

>[2001]).  These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor (*see Nettis v. Levitt*, 241 F.3d 186 [2001]; *City of New York v. Pfizer & Co.*, 260 A.D. 2d 174 [1999]).

*Id*. at 120.

"[C]ontinuity of ownership describes a situation where the parties to the transaction 'become owners together of what formerly belonged to each.'" *In re New York City Asbestos Litig.,* 789 N.Y.S.2d 484, 487 (App. Div. 2005) (quoting *Cargo Partner* 352 F.3d at 47).  Indeed, while "[c]ontinuity of ownership might not alone establish a de facto merger…it *is* the substance of a merger." *Cargo Partner* 352 F.3d at 47 (emphasis in original) (internal quotations and citation omitted).  Thus, where "there is no continuity of ownership…" there cannot be a "merger called… something else." *Id.*

Here, there is no continuity of ownership.  Gershon does not "own" or have a financial interest in BR&B or in any case he works on.  Bacine Decl. Exhibit 1 at ¶ 9.  The evidence reflects that because of the uncertainty that the arrangement between Gershon and BR&B would be successful and the substantial financial commitment BR&B would be making for salaries and expansion of its sublease to add the needed space, BR&B proposed to Gershon that he could join the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B.  *Id.*  Moreover, Gershon has no proprietary interest in BR&B and no financial interest in any cases he brought to or has worked on at BR&B.  *Id.*  Indeed, Ballon concedes as much in its answer, stating that Gershon "agreed to join BR&B without any compensation commitment from BR&B, his compensation being subject to determination from time to time by BR&B, in its sole discretion, and without any guaranty of remuneration."  Ballon's Answer ¶ 40.

12

This Court has already considered and rejected Ballon's contention that the de facto merger doctrine applies here:

> In this action, BR&B has demonstrated that there was no continuity of ownership. The facts indicate that BR&B and Gershon/AAG have not "become owners together of what formerly belonged to each." *Cargo Partner AG*, 352 F.3d at 47. Even if Gershon bringing his law practice to BR&B can be considered a sale of assets, Gersho[n] does not "continue[ ] to own the assets [he] has sold through [his] ownership of shares in the purchasing corporation." *Nat'l Serv. Indus.*, 460 F.3d at 210 n.2. Although Gershon's title is "partner," BR&B has stated that Gershon has no ownership of shares or equity in the firm or other financial stake in his cases. (Bacine Decl. Ex. 1, ¶ 9.) The consideration that Gershon received for bringing his practice to BR&B appears to have been a salary determined by BR&B and other benefits typically given to employees, such as office space and support staff, but not an ownership interest. Although Gershon continues to work on those cases that he brought with him from Ballon to BR&B, that does not necessarily amount to [ownership] under the de factor merger doctrine.

*BR&B v. Ballon*, 2008 WL 759353, at *8. As the Court stated, "[f]inding no continuity of ownership, there can be no de facto merger." *Id*.

And there is no "evidence of any continuity of management, personnel, physical location, assets and general business operation." *See Kretzmer v. Firesafe Prod. Corp.,* 24 A.D.3d 158, 159 (App. Div. 2005). The fact that BR&B, at Gershon's suggestion, hired an attorney and an administrative assistant who had worked at Ballon, does not mean that Gershon and BR&B entered into a de facto merger. *Id.* ("The mere hiring of some of the predecessor's employees is insufficient to raise a triable issue as to continuity of management."). *See also Subramani v. Bruno Mach. Corp.,* 736 N.Y.S.2d 315, 316 (App. Div. 2001).

In addition, there has been no "cessation of ordinary business and dissolution of the predecessor." That concept simply does not apply where a lawyer leaves one firm and joins another. Finally, BR&B did not assume any of Gershon's liabilities. *See Sands Bros. & Co. Ltd., v. Alba Perez TTEE Catalina Garcia Revocable Trust U/A DTD 9/04/01,* No. 04 Civ. 0005(JFK), 2004 WL 2186574 (S.D.N.Y. Sept. 28, 2004) (non-signatory not bound to arbitrate

13

under the de facto merger theory because, *inter alia,* plaintiff did not acquire the non-signatories liabilities). Moreover, here there was no asset purchase at all. BR&B did not purchase anything from Gershon.

In short, there is simply no evidence showing that Gershon and BR&B entered into a transaction that amounts to a de facto merger. Thus, this Court should find that there was no de facto merger and that therefore summary judgment should be granted to BR&B.

      C.     **Summary Judgment Is Appropriate at this Stage**

Ballon will likely argue that this motion is premature because it has not had an opportunity to take discovery. This argument is without merit. The evidence is clear that the *Intel* fee was paid to BR&B because it was awarded by the District Court for the District of Delaware and not because of the Ballon-Gershon Agreement. No amount of discovery can change that. There are simply no facts that Ballon could uncover in discovery that could convert what was at most an indirect benefit into a direct one. And no amount of discovery can give Gershon an equity interest in BR&B or demonstrate continuity of ownership. Absent an evidentiary basis indicating that discovery may lead to relevant evidence that would change these facts -- which there is not -- summary judgment should be granted. *See, e.g., Hariri v. Amper,* 854 N.Y.S.2d 126, 130 (App. Div. 2008). And "mere speculation and conjecture and is not sufficient." *Trails W., Inc. v. Wolff,* 344 N.Y.S.2d 863, 873 (N.Y. Sup. 1973).

Ballon had every opportunity to seek discovery in connection with the preliminary injunction proceeding, but never sought any. Instead, it relied upon the affidavits and documents submitted to the Court. Regardless, there is no discovery to be had; all of the relevant evidence has already been presented to this Court in both the declarations of Daniel E. Bacine and Susan

14

Schneiderman. Since all relevant evidence is in front of the Court to allow it to make a fair assessment of the evidence, it is not necessary to delay the disposition of this motion.

## CONCLUSION

This Court and not the arbitrator has the authority to decide the arbitrability of Ballon's clams against BR&B. As demonstrated, BR&B is not a signatory to the Ballon-Gershon Agreement and is not bound to arbitrate under either the de facto merger doctrine or the estoppel doctrine. For the forgoing reasons, BR&B is entitled to summary judgment on its claim for declaratory judgment that it is not required to arbitrate Ballon's claims and on Ballon's first counterclaim. Accordingly, an order permanently enjoining the Arbitration as against BR&B should be entered.

Dated: May 15, 2008

Respectfully submitted,

**BARRACK, RODOS & BACINE**
William J. Ban (WB0382)
1350 Broadway, Suite 1001
New York, NY 10018
(212) 688–0782

and

  /s/ Daniel E. Bacine
Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

*Attorneys for Plaintiff*