UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BARRACK, RODOS & BACINE,

                              Plaintiff,

                                                    Case No. 08 CV 02152 (PKL)
                -against-

                                                    COMBINED DECLARATION
                                                    AND RESPONSIVE
BALLON STOLL BADER & NADLER, P.C.,                  RULE 56.1 STATEMENT

                              Defendant.
--------------------------------------------------------x

        Pursuant to the requirements of Local Rule 56.1of this Court the Defendant,

Ballon Stoll Bader & Nadler, P.C. ("BSBN"), in opposition to the motion for summary

judgment served by Plaintiff, Barrack Rodos & Bacine ("BR&B"), respectfully submits

this Statement in response to the BR&B's Rule 56.1 Statement of Material and

Undisputed Facts ("Plaintiff's Moving Statement").


                    **Documents Cited and Relied Upon**

        Susan Schneiderman, a member in good standing of the Bar of this Court and of

the Bar of the State of New York, states under penalty of perjury that the documents

annexed hereto are true copies of documents referred to and relied upon herein by the

Defendant.  The following numbered Exhibits are annexed:

            Exhibit A:  Of Counsel Agreement executed by BSBN, A. Arnold Gershon,

        P.C. ("AAG") and A. Arnold Gershon ("Arnold") (the "Ballon-Gershon Agreement"

        or the "Of Counsel Agreement").

Exhibit B: *Final Judgment and Order of Dismissal* dated May 23, 2007 (the "Intel Judgment") entered in the stockholder's derivative action known as *Seinfeld v. Barrett, et al.*, Case No. 05-298 (JJF)(D. Del., May 16, 2005) (the "Intel Action" or "Intel")

Exhibit C: Lodestar submitted in support of Intel Fee Award

Exhibit D: May 23, 2007 Transcript of Intel Proceedings.

Exhibit E: BR&B's Verified Complaint

Exhibit F: BSBN's Verified Answer to BR&B's Complaint

Exhibit G: May 16, 2005 Letter Agreement retaining Fox Rothschild LLP.

Exhibit H: Gershon's November 30, 2006 Termination Proposal

Exhibit I: January 22, 2008 Affidavit of Daniel Bacine (*sans* exhibits)

Exhibit J: May 4, 8 & 9 2007 e-mails and May 14, 2007 Letter from Arnold.

Exhibit K: May 18, 2007 Notice of Charging Lien

## Responsive Statements

In accordance with the requirements of Local Rule 56.1(b), the responses set forth in each numbered paragraph below corresponds to the similarly numbered paragraph set forth in Defendants' Moving Statement.

1. BSBN does not dispute the facts stated in ¶1 of Plaintiff's Moving Statement. Pursuant to the referenced Agreement (Exhibit A), AAG became "Of Counsel" to BSBN beginning September 1, 2001.

2. BSBN does not dispute the facts stated in ¶2 of Plaintiff's Moving Statement.

3. BSBN disputes the statements contained in ¶3 of Plaintiff's Moving

Statement.  Attorneys' fees were awarded to the Intel Plaintiff and were to be delivered to

BR&B's Philadelphia office.  Paragraph 12 of the Intel Judgment (Exhibit B) provides:

> **12. Subject to all conditions set forth in the Stipulation of Settlement, Intel Corporation shall pay Plaintiffs counsel's attorneys' fees and reasonable out-of-pocket disbursements in the amount of $862,500.00 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine.**

4.    BSBN disputes the statement contained in ¶4 of Plaintiff's Moving

Statement.  The "Lodestar" submitted by Gershon in support of the fee award in the Intel

Action (Exhibit C) included time and charges incurred while Gershon was Of Counsel to

BSBN.  In addition, addressing the Intel Court on May 23, 2007, Gershon expressly

addressed BSBN's claims and agreed, on behalf of BR&B, to indemnify the Intel

Defendants should they be pursued for fees by BSBN (Exhibit D at 6:14-8:10):

> **Page 6    14 [GERSHON (continuing)]There is one other matter that I**
> **15 want to bring to the attention of the Court. As**
> **16 the Court has undoubtedly observed, when we**
> **17 started this case, I was of counsel to a New**
> **18 York firm known as Ballon, Stole, Bader &**
> **19 Nadler. On December 1st, I left that firm and**
> **20 became a partner at Barrack, Rodos & Bacine.**
> **21 There were a number of cases that**
> **22 I was handling at my former firm and we had**
> **23 reached an agreement that the way we would**
> **24 resolve the financial concerns of the**
> **Page 7    1 termination, I would take certain cases and they**
> **2 would take certain cases, and we would proceed**
> **3 on that basis.**
> **4 This case, Seinfeld against**
> **5 Barrett produced some disagreement in which my**
> **6 former firm thought that they should be paid**
> **7 some percentage of the fee in this case. I**
> **B disagreed with them about that. We had some**
> **9 correspondence about it.**
> **10 The last -- the next to the last**
> **11 thing I got was an E-mail from Howard Bader who**

12 said maybe we can work this out in a
13 nonadversarial and a couple of days later we
14 received a letter from Susan Snyderman of that
15 firm saying that they have a charging lien on
16 the fees in this case pursuant to the New York
17 Judiciary Area Law Section 475.
18 We submit that that should not
19 impede this proceeding in any way. My firm will
20 indemnify the defendants in this case as to any
21 attempt by Ballon, Stoll to extract any fees
22 from them.
23 Just as a matter of note with what
24 our position is on the charging lien, it's clear
Page 8 1 that under the New York law in any event the
2 charging lien can only be asserted by the
3 counsel of record and not of counsel and that it
4 only applies to cases pending in New York and
5 not in other courts in other states whether
6 state or federal. And I thought that we were in
7 the process of working it out, but they have
8 written this letter and we thought it should be
9 brought to the attention of the Court.
10 THE COURT: All right. Thank you.

5.    BSBN is without sufficient information to state whether or not the

statement contained in ¶4 of Plaintiff's Moving Statement is disputed.


### Additional Statements

6.    BSBN is a New York Professional Corporation of attorneys engaged in

the practice of law, with its principle offices located at 729 Seventh Avenue, New York,

New York (Exhibit F, ¶1).

7.    BR&B is a professional corporation of Attorneys engaged in the practice

of law with its principal place of business located at 3300 Two Commerce Square, 2001

Market Street, Philadelphia, Pennsylvania 19103. (Exhibit E, ¶9).

8.    A. Arnold Gershon ("Arnold") is an attorney admitted to practice law and

engaged in the practice of law in the State of New York, with offices located at 1350 Broadway, New York, New York.

9.    AAG is a New York professional corporation formed by Arnold in connection with Arnold's practice of law and through which Arnold has, from time to time, provided his legal services (AAG and Arnold are collectively referred to herein as "Gershon").

10.  From on or about September 1, 2001 through on or about November 30, 2006, Arnold, acting through AAG, was engaged in practice as "Of Counsel" to BSBN.

11.  The Of Counsel Agreement (Exhibit A) provides, in Article Fourth, that Gershon was to receive from BSBN during the term of the Of Counsel Agreement:

> **(b) A percent of the fees paid to [BSBN] from clients introduced to [BSBN] by Arnold or AAG, less expenses incurred, to be paid when the fees are actually received, in accordance with Fee Schedule "A" attached hereto.**

12.  The Of Counsel Agreement (Exhibit A) provides, in Article Fifth, provides that

> **(a)…..All of [Gershon's] accounts receivable billed or accrued to their clients, including disbursements, during the term of this Agreement, shall be billed under the name of BSBN and shall also be the property of the parties, as their interest [sic] are expressed in this Agreement;**
> **(b) For the purposes of this Agreement, "Accounts Receivable" shall mean amounts actually billed and amounts accrued but unbilled to [Gershon's] clients prior to and during the effective date of this Agreement which have not been paid.**

13.  The Of Counsel Agreement (Exhibit A) provides, in Article Ninth, that, upon termination thereof,

> **(b) All collections for services rendered prior to the termination of this Agreement and received by the Firm or [Gershon], after the termination date of this Agreement, shall**

> **remain the property of the parties as their interests are expressed in this Agreement. [Gershon] and the Firm shall share in said collections as set forth in Fee Schedule "A" hereof.**

14.   Schedule A to the Of Counsel Agreement (Exhibit A) provides that BSBN and Gershon each held a 50% interest fees derived from "new class action cases and stockholder derivative actions originated by Gershon."

15.   Intel was a new stockholder derivative action originated by Gershon in May 2005 while Gershon was Of Counsel to BSBN under the Of Counsel Agreement.

16.   By letter agreement dated as of May 16, 2005 (Exhibit G), BSBN and AAG jointly, on behalf of the Intel Plaintiff, retained Fox Rothschild LLP to act as local counsel for Plaintiff in the Intel Action.

17.   Gershon terminated the Of Counsel Agreement, effective November 30, 2006.

18.   On November 30, 2006 Intel remained pending.

19.   As of November 30, 2006, the accumulated Intel Lodestar was $291,238.75 and accumulated disbursements were $5,328.52 (Exhibit H).

20.   Arnold joined BR&B as of December 1, 2006 (Exhibit I, ¶12).

21.   Upon joining BR&B, Arnold entered into an agreement with BR&B whereby "all fees generated by [Arnold] on behalf of [Arnold's] clients and [BR&B's] clients during [Arnold's] association with [BR&B] are the property of Barrack Rodos & Bacine."

22.   By "late April or early May" 2007, BR&B learned that BSBN "claimed to retain a financial interest" in Intel (Exhibit I, ¶11).

23.  On May 8, 2007, Arnold stated with respect to BSBN's claim of an interest in the Intel fees that Arnold was "in no position to discuss [Intel] with [BSBN] until one of [Arnold's] partners returns." (Exhibit J).

24.  On May 14, 2007 (Exhibit J), Arnold wrote the following to BSBN on BR&B letterhead:

> **With respect to Intel, a case that I took, we are prepared to reimburse your expenses of $5,328.52 upon our recovery of the same. We are not, however, prepared to pay you any part of the fee, should the court make an award.**
>
> **Concerning your request as to whether you should make a separate fee application, our answer is that it is unnecessary and improper.**

25.  On May 18, 2008, BSBN's Notice of Charging Lien (Exhibit K) was transmitted via Fax and overnight delivery to BR&B, Daniel Bacine, Gershon, Fox Rothschild and various counsels for the Intel defendants.

26.  On or about May 18, 2008, BR&B, through Daniel Bacine, received copies of the Of Counsel Agreement and of the termination agreement between Gershon and BSBN (Exhibit I, ¶11).

Dated: New York, New York
      June 13, 2008

BALLON STOLL BADER & NADLER, P.C.
*Attorneys for Defendant*

By: _____
      Susan Schneiderman (SS9840)
729 Seventh Avenue, 17th Floor
New York, New York  10019
212-575-7900
(fax) 212-764-5060
sschneiderman@ballonstoll.com

**AGREEMENT** made as of this 28th day of June, 2001, by and between BALLON STOLL BADER & NADLER, P.C., a New York Professional Corporation (hereinafter referred to as "BSB&N", or "the Firm"), A. Arnold Gershon, P.C., a New York professional corporation, with offices at 875 Fifth Avenue, New York, New York 10021, (hereinafter referred to as "Arnold"), and Arnold Gershon, individually, residing at 875 Fifth Avenue, New York, New York 10021 (hereinafter referred as "Gershon").

<u>**W I T N E S S E T H**</u>

**WHEREAS**, The Firm wishes to offer to Arnold a Contract as "Of Counsel" to the Firm, and Arnold agrees to become such "Of Counsel" on the following terms.

**NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES OF THE PARTIES HERETO, IT IS COVENANTED AND AGREED AS FOLLOWS:**

**FIRST**: Gershon represents and warrants to the Firm that he is an attorney in good standing and admitted to practice law in the State of New York. Arnold and Gershon each represents that they have not been the subject of any disciplinary action by any Bar Association or the defendants in any malpractice litigation.

**SECOND**: Arnold agrees to become an Of Counsel to the Firm effective the 1st day of September, 2001. Arnold shall be

considered an Of Counsel to the Firm and shall appear as such on all Firm letterhead indexes and listings during the term of this Agreement.    Arnold shall receive from the Firm the use of an office, secretary, and the customary use of BSBN staff including attorneys, to be mutually agreed upon between Arnold and the Firm in furtherance of assisting it in handling its cases.    The Firm also agrees to pay the necessary litigation costs and expenses incurred in connection with the performance of Arnold's duties hereunder, which shall be reimbursed from any recoveries made thereon.

**THIRD**:    Pursuant to The Firm's Agreement between its stockholders, Of Counsel Attorneys have no authority to bind the Firm in any manner whatsoever and receive no compensation nor share in any profits, except as set forth in this Agreement.    It is understood and agreed that Arnold, as long as it is an Of Counsel Attorney, shall have no obligation to make any capital contribution to the Firm, nor shall it be liable for any obligation or debts of the Firm.

**FOURTH**:    During the term of this Agreement, Arnold shall receive compensation from the Firm as follows:

(a) Reimbursement of any reasonable expenses incurred in connection with servicing its cases on an as is and where needed basis.

(b) A percent of the fees paid to the Firm from clients introduced to the Firm by Arnold or Gershon, less expenses incurred, to be paid when the fees are actually received, in

2

accordance with Fee Schedule "A" attached hereto.

(c) All calculations of fees paid to the Firm shall be net of forwarding fees, fees paid to other counsel and disbursements and expenses incurred.

**FIFTH**: (a) As is more specifically set forth in Schedule "B", all of Arnold's and Gershon's uncollected accounts receivable existing as of the effective date of this Agreement shall be the sole property of the Firm.  All of their accounts receivable billed or accrued to their clients, including disbursements, during the term of this Agreement, shall be billed under the name of BSBN and shall also be the sole property of the Firm;

(b) For the purposes of this Agreement, "Accounts Receivable" shall mean amounts actually billed and amounts accrued but unbilled to Arnold's and Gershon's clients prior to and during the effective date of this Agreement which have not been paid.

**SIXTH**:   Arnold and Gershon agree during the term of this Agreement to:

(a) Perform legal services for their clients, as may be reasonably required, with all such clients being considered clients of the Firm during the contract term;

(b) Pay and satisfy their own personal debts;

(c) Inform the Firm and the Bookkeeping Department of all legal services performed by them on behalf of the Firm;

(d) Remit all fees and/or commissions earned by them during the term of this Agreement;

3

(e)   Make no loans on behalf of the Firm, nor obligate the Firm, without the consent of the Firm;

(f) New matters initiated by Arnold or Gershon shall be approved in advance by the Firm;

(g)   Devote their time to the business of the Firm; and shall not, directly or indirectly, engage in any other competitive business or profession, without the consent of the Firm.  Nothing herein contained shall prohibit them from investing or trading in securities, bonds, commodities, real estate, or other forms of investment, for their own benefit.

(h)   Conduct themselves in a lawful, ethical and professional manner.

**SEVENTH**:  Arnold and Gershon hereby indemnify the Firm for any claim brought against the Firm based on a transaction or occurrence arising from Arnold's or Gershon's own acts or their failure to act prior to or during their association with the Firm.

**EIGHTH**:  Arnold at his sole cost agrees to carry sufficient insurance under its professional liability insurance policy in amounts to be reasonably satisfactory and at no cost to the Firm, and such other individual life insurance and medical insurance policies covering him and his family as he shall deem appropriate.

**NINTH**:  Upon the expiration or termination of this Agreement:

4

(a) Arnold shall be entitled to remove all of its personal effects, law books, and equipment from the Firm's premises;

(b) All collections for services rendered prior to the termination of this Agreement and received by the Firm or Arnold or Gershon, after the termination date of this Agreement, shall remain the property of the Firm. Arnold shall continue to receive the amount due it from said collections as set forth in Fee Schedule "A" hereof.

**TENTH**:    This Agreement be for a term of one (1) year and shall continue thereafter until:

(a) a written notice of termination is given by either party to the other effective sixty (60) days from the date of the notice.

**ELEVENTH**:    The parties agree that any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association then obtaining, and that judgement upon the award rendered by such arbitration tribunals shall be binding and entered in the Supreme Court of New York County upon which the parties expressly confer jurisdiction.

**TWELFTH**:    If any provision of this Agreement shall contravene any law or be invalidated under the Laws of the United States or the State of New York, it is agreed that such

5

contravention or invalidity shall not invalidate the entire Agreement, but it shall be construed as if not containing the particular provision or provisions held to be invalid or to contravene. This Agreement shall be governed by the Laws of the State of New York.

**THIRTEENTH**: This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, testamentary beneficiaries, executors, administrators and legal representatives.

**FOURTEENTH**: This Agreement sets forth the entire understanding among the parties. The same may not be altered, modified, canceled or varied, except by a subsequent writing signed by the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have hereunto sent their hands and seals this _28th_ day of June, 2001.

BALLON STOLL BADER & NADLER, P.C.

By: _____

A. ARNOLD GERSHON, P.C.

By: _____
    Arnold Gershon

_____
Arnold Gershon, individually

data\mak\dn\agreemen\Gershon.AGR

6

## SCHEDULE A

### FEES

1. Existing Cases

|     |                      | BSB&N | Gershon |
|-----|----------------------|-------|---------|
| a.  | Datascope            | 40%   | 60%     |
| b.  | Palm                 | 30%   | 70%     |
| c.  | 3Com                 | 30%   | 70%     |
| d.  | Cisco                | 30%   | 70%     |
| e.  | Symbol Technologies  | 40%   | 60%     |
| f.  | Alcoa                | 40%   | 60%     |
| g.  | Amax Gold            | 40%   | 60%     |
| h.  | Mattel               | 20%   | 80%     |
| i.  | Health South         | 0%    | 100%    |

2. New Class Action Cases and stockholder derivative actions originated by Gerson — 50%    50%

3. All Other new Cases originated by Gershon — 75%    25%

4. Old class and stockholder derivative actions — 40%    60%

7

SCHEDULE  B

**AGREEMENT** made as of this 26th day of June 2006, by and between

BALLON STOLL BADER & NADLER, P.C., a New York Professional

Corporation (hereinafter referred to as "BSB&N", or "the Firm"), A. ARNOLD

GERSHON, P.C., a New York professional corporation, with offices at 875 Fifth

Avenue, New York New York 10021 (hereinafter referred to as "Arnold", and

ARNOLD GERSHON, individually, residing at 875 Fifth Avenue, New York,

New York 10021 (hereinafter referred to as "Gershon").


### W I T N E S S E T H

**WHEREAS,** the parties wish to reform their agreement, made June 28,

2001, to state correctly their true meaning and intent on the following terms:


**NOW, THEREFORE, IN CONSIDERATION OF
THE MUTUAL PROMISES OF THE PARTIES
HERETO, IT IS COVENANTED AND AGREED
AS FOLLOWS:**

**FIRST:** In the FOURTH ARTICLE, in the second line, the word "compensation"

is deleted.

**SECOND:** In the FIFTH ARTICLE, part (a), the language "the sole property of

the firm," appearing twice therein, shall be amended to "the property of the

parties, as their interest are expressed in this Agreement."

**THIRD:** In the NINTH ARTICLE, part (b) is deleted in its entirety, and the following language, in lieu thereof, is inserted:

> "(b)    All collections for services rendered prior to the termination of this Agreement and received by the Firm or Arnold or Gershon, after the termination date of this Agreement, shall remain the property of the parties as their interests are expressed in this Agreement. Arnold, Gershon, and the Firm shall share in said collections as set forth in Fee Schedule "A" hereof."

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals this ___ day of June, 2006.


BALLON STOLL BADER & NADLER, P.C.

By: _____
                David Nadler


A. ARNOLD GERSHON, P.C.

By: _____
                A. Arnold Gershon

_____
A. Arnold Gershon, Individually


AAG/BSBNAGREE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FRANK D. SEINFELD,                              )
                                                )
                    Plaintiff,                  )
                                                )
              v.                                )     Case No.: 05-298 (JJF)
                                                )
CRAIG R. BARRETT, CHARLENE                      )
BARSHEFSKY, E. JOHN P. BROWNE,                  )
D. JAMES GUZY, REED E. HUNDT,                   )
PAUL S. OTELLINI, DAVID S. POTTRUCK,            )
JANE E. SHAW, JOHN L. THORNTON,                 )
DAVID B. YOFFIE, ANDREW S. GROVE, and           )
INTEL CORPORATION,                              )
                                                )
                    Defendants.                 )

**FINAL JUDGMENT AND ORDER OF DISMISSAL**

This matter came before the Court for hearing on MAY 23, 2007, on the application of the parties for approval of the settlement set forth in the Stipulation of Settlement dated as of March 7, 2007 (the "Stipulation"). The Court, having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including nominal defendant Intel Corporation ("Intel").

3.      The Court hereby approves the settlement set forth in the Stipulation and finds that said settlement is, in all respects, fair, just, reasonable and adequate to Intel Corporation and its shareholders.

4.      The Court finds that the mailing and distribution of the Notice satisfies the requirements of due process and Rule 23.1 of the Federal Rules of Civil Procedure, and shall constitute due and sufficient notice to all Persons entitled thereto.

5.      The Litigation and all derivative claims contained therein, as well as all of the Released Claims are dismissed with prejudice as to Plaintiff, Defendants and Intel Corporation's shareholders. The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

6.      The Court finds that the Stipulation and settlement contained therein is fair, just, reasonable and adequate as to each of the Settling Parties, and that the Stipulation and settlement contained therein is hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

7.      Upon the Effective Date hereof, Plaintiff, Intel Corporation and Intel Corporation's shareholders shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Released Parties.

8.      Plaintiff, Intel Corporation and Intel Corporation's shareholders are hereby forever barred and enjoined from prosecuting the Released Claims (including Unknown Claims) against the Released Parties.

9.      Upon the Effective Date hereof, Plaintiff shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released the Individual Defendants from any and all direct claims he may have against them relating to their service on the Intel Corporation Board of Directors.

10.      Upon the Effective Date hereof, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged the Plaintiff and his counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims (including Unknown Claims).

11.      Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence

of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants and the Released Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants and the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants and the Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. Notwithstanding the foregoing, nothing herein shall form the basis of a justification for a defense or counterclaim based on principles *of res judicata* as between any of the Defendants.

12.    Subject to all conditions set forth in the Stipulation of Settlement, Intel Corporation shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements in the amount of $ 862,500 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine.

13.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement; and (b) all parties hereto for the purpose of construing, enforcing and administering the Stipulation.

14.    In the event that settlement does not become effective in accordance with the terms of the Stipulation, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in

such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

15.    Except as provided in Paragraph 12 above, each party shall bear its own fees and costs.

Dated: May 23, 2007

_____
BY ORDER OF THE COURT
United States District of Delaware

**Intel Corp. Derivative Litigation**
**Barrack, Rodos & Bacine**

Time Period: Inception through May 2007

| | Total Hours*/ | Hourly Rates | Lodestar |
|---|---|---|---|
| **Partners:** | | | |
| Daniel E. Bacine | 64.75 | $650.00 | $42,087.50 |
| Alexander Arnold Gershon | 533.25 | $650.00 | $346,612.50 |
| M. Richard. Komins | 1.00 | $570.00 | $570.00 |
| Mark R. Rosen | 6.00 | $570.00 | $3,420.00 |
| | | | |
| **Associates:** | | | |
| Gloria Kui | 156.25 | $275.00 | $42,968.75 |
| | | | |
| **Paralegals:** | | | |
| Stephanie A. McConaghy | 52.75 | $175.00 | $9,231.25 |
| | | | |
| **Grand Totals:** | **814.00** | | **$444,890.00** |

*/ In addition, several attorneys spent time working on this case under my direction at my former firm for an aggregate lodestar of $66,724.50.

**Intel Corp. Derivative Litigation**

| Description | Expenses This Report |
|---|---:|
| Computer and Other Research Fee(s) | $6,612.28 |
| Courier & Overnight Delivery Services | $40.80 |
| Expert and Investigative Fee(s) and Services | $17,482.00 |
| Miscellaneous (other disbursements) | $37.44 |
| Postage | $176.84 |
| Reproduction | $965.46 |
| Telephone | $310.45 |
| Transcript | $1,496.48 |
| Travel/Meals/Meetings | $1,918.76 |
| **TOTAL EXPENSES:** | **$29,040.51** |

```
B/ATTY LOC: 01   PHILADELPHIA                    FOX ROTHSCHILD LLP                        Page 15
BILLING ATTORNEY: 0492  JOHN A. ROTHSCHILD       DETAILED BILLING REPORT          (RUN 05/16/07  11:07    )
                                                 PROFORMA #  326453               THRU 05/15/07
```

```
CLIENT  025161    GERSHON, ARNOLD (ESQUIRE)                      LAST DATE BILLED
MATTER  025161.00001  SECURITIES LAW CLAIMS AS LOCAL COUNSEL IN DELAWA  DATE BILLED THRU
                                                                LAST PAYMENT DATE                    FEES and DISBURSEMENTS
```

| | | | | | | |
|---|---|---|---|---|---|---|
| 10947550 | 04/26/07 | RECEIVE AND FORWARD LETTER FROM SHAREHOLDER | .20 0029 | PILEGGI, F G. | 80.00 | 93,710.00 |
| 10947568 | 04/27/07 | RECEIVE AND REPLY TO E-MAILS AND TELEPHONE CONFERENCE WITH ARNOLD ON OPEN ISSUES | .40 0029 | PILEGGI, F G. | 160.00 | 93,870.00 |
| 10955276 | 04/30/07 | RECEIVE AND REPLY AND REVIEW MULTIPLE E-MAILS RE: SETTLEMENT ISSUES | .40 0029 | PILEGGI, F G. | 160.00 | 94,030.00 |
| 10969064 | 05/01/07 | FOLLOW-UP ON STATUS OF SETTLEMENT | .20 0029 | PILEGGI, F G. | 80.00 | 94,110.00 |
| 10982239 | 05/07/07 | RECEIVE AND FORWARD LETTERS AND CALL FROM INTEL SHAREHOLDER | .40 0029 | PILEGGI, F G. | 160.00 | 94,270.00 |
| 10990291 | 05/09/07 | DISCUSS PENDING ISSUES WITH ATTORNEY GERSHON | .40 0029 | PILEGGI, F G. | 160.00 | 94,430.00 |
| 10990352 | 05/11/07 | TELEPHONE CONFERENCE WITH ATTORNEY GERSHON RE: SETTLEMENT ISSUES AND E-MAILS | .60 0029 | PILEGGI, F G. | 240.00 | 94,670.00 |

```
                                      251.70   *TIME VALUE TOTAL*      94,670.00
```

```
--------------------------TIMEKEEPER SUMMARY--------------------------
TKPR    TITLE     TIMEKEEPER            BILLED RATE   BILLED HOURS   BILLED VALUE   LAST ENTRY DATE
0029    PARTNER   PILEGGI, F G.             391.11        209.90       82,094.00       05/11/07
1161    PARTNER   RENNIE, S K.              300.86         41.80       12,576.00       04/24/07
```

```
---------DISBURSEMENT SUMMARY---------
CODE    DESCRIPTION                         AMOUNT
101     WESTLAW, RESEARCH                    31.14
20      COURT FILINGS                       275.00
27      DEPOSITION/TRANSCRIPT                  .00
76      COPIES                               14.08
77      MESSENGER SERVICE/DELIVERY            3.00
82      MESSENGER SERVICE/FEDERAL EXPRESS    41.72
84      PHOTOCOPYING                        186.40
85      TELEPHONE CHARGES                   218.98
98      TELECOPYING COSTS                    25.00
                                           --------
        TOTAL DISBURSEMENTS                 795.32
```

```
FEES VALUE          94,670.00      **   TOTAL FEES & DISBURSEMENTS                 95,465.32
```

1

```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE

SEINFELD,                    )
                             )
           Plaintiff,        )
                             ) Civil Action No. 05-298-JJF
v.                           )
                             )
BARRETT, et al.,             )
                             )
           Defendants.       )



                    Wednesday, May 23, 2007
                    12:26 p.m.
                    Courtroom 4B


                    844 King Street
                    Wilmington, Delaware



BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge



APPEARANCES:


          FOX ROTHCHILD
          BY:  LESLIE SPOLTORE, ESQ.


                 Counsel for Plaintiffs


          POTTER, ANDERSON
          BY:  STEVE NORMAN, ESQ.

                 Counsel for Defendant
```

```
 1                    THE COURT:  I'm going to next have
 2       the folks who are here for Seinfeld, 05-298.
 3                    All right.  Sorry to keep you
 4       waiting.  As you probably heard, you're now
 5       occupying the space of the floor of the United
 6       States Senate.  You have heard the complete
 7       policy argument for immigration and reform.  But
 8       I'm sure you're much more interested this
 9       afternoon in getting the settlement approved.
10                    MS. SPOLTORE:  Good afternoon,
11       Your Honor.  Leslie Spoltore from Fox Rothchild
12       on behalf of the plaintiffs.  At this time I
13       would like to introduce to the Court Alex
14       Gershon.  He is admitted pro hac vice.  And I
15       will defer to Mr. Gershon.
16                    THE COURT:  Thank you very much.
17                    Mr. Gershon.
18                    MR. GERSHON:  Thank you.
19                    May it please the Court, my name
20       is Arnold Gershon and I and my firm are of
21       counsel in this case for the plaintiff.
22                    Today we ask the Court to approve
23       a settlement in the stockholder derivative
24       action.
```

```
 1                   As a preliminary matter, notice
 2       was mailed and posted on line as reflected in
 3       the declaration of Doug Stewart to approximately
 4       2.3 million stockholders of Intel Corporation.
 5                   The complaint alleges that the
 6       2005 proxy statement of Intel sought the
 7       stockholders' approval of a cash bonus plan that
 8       was supposed to qualify as deductible bonuses
 9       under Section 162(m) of the Internal Revenue
10       Code, but that there were material
11       misrepresentations and omissions concerning the
12       tax deductibility of bonuses and also as to the
13       way those bonuses would be computed.  The relief
14       sought in this case included cancellation of
15       that plan.
16                   After motion practice and
17       discovery, there were settlement discussions in
18       which the agreement was reached that the plan
19       was terminated and we have a declaration by Carl
20       Meyer, a very highly regarded compensation
21       consultant that the present value of terminating
22       that plan is $47 million.
23                   And in addition, the termination
24       of the plan eliminates all the disclosure issues
```

1    that surrounded that plan and provided an

2    additional benefit to the company and its

3    stockholders.

4              We received out of the 2.3 million

5    stockholders what might be considered objections

6    from four stockholders.  There is a letter dated

7    May 8, 2007 from Essence Chattergy who took the

8    position that since serious allegations were

9    made and series defenses were raised, we really

10   ought to have a trial to decide who was right.

11             The whole point of settlement is

12   to avoid a trial and, therefore, we respectfully

13   request that his objection be overruled.

14             We received a letter from

15   Alexander Petrick from San Francisco, California

16   who claimed that she didn't get notice in time,

17   though the notice was sent fifty-three days

18   before today.  And the way to judge the

19   effectiveness of the notice is how much time was

20   given.  Fifty-three days we submit is more than

21   ample time.  And what she wants is a new notice.

22   She doesn't seek discovery, she doesn't seek an

23   adjournment of the hearing, all she wants is a

24   new notice to go out to 2.3 million stockholders

5

| | |
|---|---|
| 1 | to explain the basis off our requests for |
| 2 | attorney fees, but the procedure followed in |
| 3 | this settlement is similar to the procedure |
| 4 | that's always followed in which the amount of |
| 5 | the fee is disclosed and the support for it is |
| 6 | filed later. |
| 7 | We have a letter from a Mr. Biondi |
| 8 | who doesn't provide proof of ownership of any |
| 9 | shares.  He seems to think that the defendants |
| 10 | are the plaintiffs and in general objects to the |
| 11 | fee, but provides no basis for it. |
| 12 | Finally, we received a late letter |
| 13 | from Dan Goldwaser, a New York partner of the |
| 14 | law firm Fetter Price.  In addition to it being |
| 15 | late, he supplies no evidence of stock |
| 16 | ownership.  He claims that there is no benefit |
| 17 | to the plaintiff class, but this isn't a class |
| 18 | action.  And he objects to the fee, but without |
| 19 | any basis for that objection, and suggest that |
| 20 | the Court should carefully examine the benefits |
| 21 | of this settlement which we think does not |
| 22 | require a letter from Dan Goldwaser to instruct |
| 23 | the Court. |
| 24 | So our view of the settlement is |

1    that we have achieved substantially the benefit

2    that we sought and that the disclosure issues

3    are resolved, and that the settlement should be

4    approved on its merits.

5             As to the fee, we are seeking a

6    fee, including expenses, of $862,500 of which

7    there are expenses of around $30,000, and a

8    loadstar of approximately $600,000, that the

9    financial benefits of the settlement would

10   certainly support the fee, and the fee if

11   awarded would provide a multiple of about 1.37

12   to the loadstar, and we submit that that would

13   be a fair fee.

14             There is one other matter that I

15   want to bring to the attention of the Court.  As

16   the Court has undoubtedly observed, when we

17   started this case, I was of counsel to a New

18   York firm known as Ballon, Stole, Bader &

19   Nadler.  On December 1st, I left that firm and

20   became a partner at Barrack, Rodos & Bacine.

21             There were a number of cases that

22   I was handling at my former firm and we had

23   reached an agreement that the way we would

24   resolve the financial concerns of the

| | |
|---|---|
| 1 | termination, I would take certain cases and they |
| 2 | would take certain cases, and we would proceed |
| 3 | on that basis. |
| 4 | This case, Seinfeld against |
| 5 | Barrett produced some disagreement in which my |
| 6 | former firm thought that they should be paid |
| 7 | some percentage of the fee in this case.  I |
| 8 | disagreed with them about that.  We had some |
| 9 | correspondence about it. |
| 10 | The last -- the next to the last |
| 11 | thing I got was an E-mail from Howard Bader who |
| 12 | said maybe we can work this out in a |
| 13 | nonadversarial and a couple of days later we |
| 14 | received a letter from Susan Snyderman of that |
| 15 | firm saying that they have a charging lien on |
| 16 | the fees in this case pursuant to the New York |
| 17 | Judiciary Area Law Section 475. |
| 18 | We submit that that should not |
| 19 | impede this proceeding in any way.  My firm will |
| 20 | indemnify the defendants in this case as to any |
| 21 | attempt by Ballon, Stoll to extract any fees |
| 22 | from them. |
| 23 | Just as a matter of note with what |
| 24 | our position is on the charging lien, it's clear |

8

1    that under the New York law in any event the

2    charging lien can only be asserted by the

3    counsel of record and not of counsel and that it

4    only applies to cases pending in New York and

5    not in other courts in other states whether

6    state or federal.  And I thought that we were in

7    the process of working it out, but they have

8    written this letter and we thought it should be

9    brought to the attention of the Court.

10              THE COURT:  All right.  Thank you.

11              MR. SHAW:  Good afternoon, Your

12    Honor.  John Shaw for Intel.  And to any extent

13    Your Honor has any questions, Joe Mace from

14    Perkins Crew & Vane is here for Intel as well.

15              MR. MACE:  Good morning, Your

16    Honor.  I on behalf of Intel Corporation, we

17    support the requested settlement and proposed

18    form of judgment and unless Your Honor has any

19    questions of me, I'm happy to return to my seat.

20              THE COURT:  All right.  You have

21    no problem with this fee issue?

22              MR. MACE:  Yes, Your Honor, we do

23    not have a problem with the fee issue given

24    counsel's representation that Intel will be

```
 1    indemnified and held harmless in the event that
 2    his former law firm attempts to drag Intel into
 3    that dispute.
 4                THE COURT:  All right.  Thank you.
 5                MR. NORMAN:  Good afternoon, Your
 6    Honor.  Steve Norman, Potter, Anderson.  With me
 7    today is Mike Torpey from the New York.  We
 8    represent the director defendants in connection
 9    with this litigation.  Unless Your Honor has any
10    questions, we don't have anything to add.  We do
11    support the settlement.
12                THE COURT:  Just the same question
13    so the record reflects it since it's been
14    brought up, are you satisfied as Intel is
15    satisfied with regard to this fee issue between
16    the attorneys on plaintiff's side?
17                MR. TORPEY:  We are, Your Honor,
18    again conditioned upon plaintiff's
19    representation that they will fully indemnify
20    all the defendants in case anything arises and
21    they're unable to resolve it.
22                THE COURT:  All right.  Thank you.
23                Okay.  Anyone here have an
24    objection, has appeared for an objection?  The
```

1    record should reflected that nobody has

2    responded to the request concerning appearance

3    on behalf of an objector.

4              I'm going to overrule the

5    objections.  With regard to the proposed

6    settlement, I find that it is fair, reasonable

7    and adequate so that -- and in that regard I

8    rely on the plaintiff's expert for the effect of

9    the settlement.

10             I have also considered the nine

11   factors that are applicable to stockholder

12   derivative action settlements in this circuit

13   and just touching on them briefly, I note the

14   complexity of this case as described in papers,

15   and the fact that discovery did occur.  And it

16   indicates to me that this litigation would have

17   a length beyond the time it took to settle it.

18             I find that the limited number of

19   objections and the nature of those objections

20   count toward approving the settlement.

21             I also have considered the

22   detailed analysis provided as to how a trial may

23   go and the competing evidence that would be

24   presented and the difficulty both sides would

1  face before a jury.

2              And I have also considered the

3  reasonableness of the settlement, and find

4  specifically that given the allegations of the

5  complaint, this is a satisfactory conclusion to

6  those allegations.

7              I also find that the attorneys'

8  fees are reasonable.  And I understand that they

9  include the expenses of litigation.  The

10 percentage application taken what the circuit

11 court here has indicated is a range of

12 appropriate percentages, again, counts toward

13 the reasonableness when these fees are applied

14 to a percentage analysis, but beyond the

15 percentages because I think they are difficult

16 to assess in a case like this with the type of

17 settlement, I find that the work and the hourly

18 fee and the loadstar application in my

19 experience with these kind of cases is more than

20 reasonable and, therefore, the award will be in

21 the amount requested by plaintiffs.

22             Is there anything that plaintiff

23 -- I keep saying plaintiffs because I'm seeing

24 two attorneys, I know it's plaintiff.

1              Is there anything plaintiff wants

2       to add?

3                 MR. GERSHON:  No, Your Honor.

4                 THE COURT:  Either defendant?

5                 MR. NORMAN:  Your Honor, I have a

6       form of order that we submitted with the papers.

7       If it will help Your Honor expedite this, I'll

8       be glad to hand up a copy.

9                 THE COURT:  Sure.  Mr. Norman is

10      anxious to get this case over immediately.  And

11      I'm happy to do that for you.  If you pass it

12      up, I'll sign it right here.

13                MR. NORMAN:  Thank you, Your

14      Honor.

15                THE COURT:  And then you'll be

16      able to get copies of it.  I'm going to assume

17      this is proofed by at least Potter Anderson and

18      Young, Conaway and my signature here won't be

19      subject to ridicule.

20                MR. NORMAN:  That's correct, Your

21      Honor.  This is the form of order that we

22      attached to the papers.  I just took the word

23      "proposed" off it.  I just think the need to put

24      in the date and the amount of attorneys' fees.

1            THE COURT:  I'm going to ask you

2    to fill in this attorneys' fees for me.  It's a

3    small space, just write it in, and then I'll

4    sign it.  I filled in the date, I'm good at

5    dates, I'm not good at attorneys' fees.

6            MR. NORMAN:  Thank you, Your

7    Honor.

8            THE COURT:  All right.  The order

9    has been signed and filed with the clerk in open

10   court.

11           MR. NORMAN:  Thank you, Your

12   Honor.

13           THE COURT:  Thank you.  We'll be

14   in recess.

15           (Court recessed at 12:45 p.m.)

16

17

18

19

20

21

22

23

24

14

```
 1     State of Delaware      )
                              )
 2     New Castle County      )

 3

 4                    CERTIFICATE OF REPORTER
 5

 6          I, Dale C. Hawkins, Registered Merit
       Reporter and Notary Public, do hereby certify that
 7     the foregoing record is a true and accurate
       transcript of my stenographic notes taken on May 23,
 8     2007, in the above-captioned matter.

 9          IN WITNESS WHEREOF, I have hereunto set my
       hand and seal this 23rd day of May, 2007, at
10     Wilmington.

11

12                         _____
                                Dale C. Hawkins, RMR
13

14

15

16

17

18

19

20

21

22

23

24
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
BARRACK RODOS & BACINE,                  :
                                         :
                   Plaintiff,            :   Civil Action No. 08 CV 02152 (PKL)
                                         :
                                         :   ECF CASE
              v.                         :
                                         :
                                         :
BALLON STOLL BADER AND NADLER, P.C.,     :   VERIFIED COMPLAINT
                                         :   FOR DECLARATORY
                   Defendant.            :   AND INJUNCTIVE RELIEF
                                         :
-------------------------------------------------------------x
```

Plaintiff, Barrack Rodos and Bacine ("BR&B"), brings this action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C.A. § 2201, and for injunctive relief.

## INTRODUCTION

1.    BR&B, which is not a party to any agreement to arbitrate any disputes with defendant Ballon Stoll Bader and Nadler, P.C. ("Ballon Stoll"), brings this action to obtain a judgment declaring that it is not required to arbitrate claims that Ballon Stoll has asserted in a proceeding styled *In the Matter of the Arbitration among Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, et al.,* AAA Claims No. 13 194 01780 07, and enjoining as against BR&B that arbitration proceeding.

2.    This action relates to a dispute over attorneys' fees awarded to BR&B by the Court in the matter styled *Seinfeld v. Barrett, et al.*, No. 05-298 (JJF) (D. Del., May 16, 2005) (the "*Intel*" case). Ballon Stoll claims to have an interest in those fees,

59621-2

claiming that the fees were earned under an agreement with A. Arnold Gershon, Esquire ("Gershon"), who left Ballon Stoll and joined BR&B on December 1, 2006.

3.    Ballon Stoll filed a demand for arbitration against, *inter alia*, BR&B pursuant to the arbitration clause in an "of counsel" agreement (the "Agreement") that Ballon Stoll and Gershon (and Gershon's professional corporation) had executed at the commencement of their relationship in 2001.  The Agreement states that any controversy or claim arising out of "this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association."

4.    BR&B is not a party to that Agreement and from the beginning of the arbitration proceeding has opposed and continues to oppose the arbitrator's jurisdiction over it in the arbitration.

5.    Nonetheless, on February 19, 2008, the arbitrator improperly determined that he had jurisdiction over BR&B and that BR&B is, in fact, bound by the Agreement and is required to arbitrate Ballon Stoll's claims.  BR&B seeks relief from this Court in the form of a declaration that the arbitrator does not have jurisdiction over BR&B and that arbitration is not the proper forum for Ballon Stoll to pursue its claims against BR&B.

6.    BR&B has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can BR&B be fully protected from the irreparable injury that Ballon Stoll's actions threaten to inflict.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. In the instant action, there is complete diversity of citizenship between the plaintiff and the defendant and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  Ballon Stoll maintains its principal offices in this district, a substantial portion of the acts and transactions constituting the violations of plaintiff's rights occurred in this district and the defendant has received benefits in this district by doing business here and engaging in numerous activities that have an effect in this district.

## THE PARTIES

9.    BR&B, a law firm, is a professional corporation with its principal place of business located at 3300 Two Commerce Square, 2001 Market Street, Philadelphia, Pennsylvania 19103.  BR&B is a citizen of the Commonwealth of Pennsylvania.

10.    Ballon Stoll, also a law firm, is a professional corporation with its principal place of business located at 1450 Broadway, 14th Floor, New York, New York 10018.  Ballon Stoll is a citizen of the State of New York.

## FACTS

**A.    Gershon's Employment By BR&B**

11.    In November 2006, Gershon contacted BR&B to inquire about his joining the firm.  Gershon explained that he had become increasingly unhappy with his employment at Ballon Stoll because of Ballon Stoll's inability or unwillingness to

provide the support and resources Gershon needed to properly litigate the kinds of complex and discovery intensive cases in which he was involved.

12.    Gershon was aware of BR&B's extensive experience and ability to handle complex class and derivative litigation.  For over thirty years, BR&B has concentrated its practice on litigation, particularly class action litigation under the federal securities laws, shareholder derivative litigation and class action litigation under the antitrust laws and has substantial experience in litigating large and complex cases with extensive discovery programs that involve millions of pages of documents and many depositions.

13.    Gershon's particular area of expertise is in shareholder derivative actions, an area in which BR&B thought it advantageous to add an experienced lawyer.  In that regard, Gershon suggested that, in addition to himself, BR&B should also hire the associate he had been working with, who he said was also unhappy at Ballon Stoll. Because BR&B had no secretarial support in its New York office (BR&B had one lawyer there half time), Gershon proposed that BR&B hire a secretary who had left Ballon Stoll several weeks earlier.

14.    Because of the uncertainty that the arrangement between Gershon & BR&B would be successful and the substantial financial commitment BR&B would be making for salaries and expansion of its sublease to add the needed space, BR&B proposed to Gershon that he could join the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B.

15.    BR&B and Gershon agreed that Gershon's employment would begin on December 1, 2006.  Gershon has no proprietary interest in BR&B and no financial interest in any cases he brought to or has worked on at BR&B.

16.     On November 20, 2006, Gershon notified Ballon Stoll that he was terminating the Agreement as of December 1, 2006.

17.     In his conversation with BR&B leading to his employment, Gershon said that he would work out an arrangement with Ballon Stoll to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and bringing some.   Gershon did not, however, share with BR&B the particulars of his arrangement with Ballon Stoll.

18.     BR&B was not aware of the existence of the Agreement that forms the basis for Ballon Stoll's claims.

**B.     Gershon Brings *Intel* to BR&B**

19.     Among the cases Gershon brought to BR&B was the *Intel* case.  BR&B promptly assembled a group of lawyers and a paralegal to begin the task of organizing and reviewing the documents produced in preparation for the extensive deposition program anticipated.

20.     BR&B was well-acquainted with the defense firm in the *Intel* case from a number of cases over the years, and they were well-acquainted with BR&B.  Shortly after Gershon joined BR&B, the parties in the *Intel* case commenced settlement discussions. These discussions ultimately led to a settlement agreement dated March 7, 2007.

21.     The last term of the settlement negotiated was the counsel fee that defendants in that case agreed to pay plaintiff, subject to the court's approval.  The fee was negotiated at arm's length with defense counsel.  When BR&B filed its motion for approval of the settlement, it sought fees and expenses in the agreed amount of approximately $862,500.

22.    On May 18, 2007, BR&B received a letter from Ballon Stoll purporting to assert a charging lien against the *Intel* fee (which at that time had not yet been awarded, let alone paid).  It was at that time that Gershon shared with BR&B a copy of the Agreement with Ballon Stoll, as well as the documents showing his agreement with Ballon Stoll following his departure to divide the cases that Gershon had been working on at that firm.   In those documents, Ballon Stoll agreed to the division of cases, but claimed a continuing financial interest in the *Intel* case and any fee that might be awarded.

23.    A settlement hearing in the *Intel* case was scheduled for May 23, 2007, of which Ballon Stoll was aware.  Despite claiming an interest in the proposed fee, Ballon Stoll did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition.

24.    By order dated May 23, 2007, the Court awarded BR&B a fee in the *Intel* case in the amount of $862,500 as per the settlement agreement.  The fee was paid to BR&B on June 29, 2007.

**C.    Ballon Stoll Initiates Judicial and Arbitration Proceedings against BR&B**

25.    In June 2007, Ballon Stoll initiated a proceeding in the New York Supreme Court styled *In the Matter of the Application of Ballon Stoll Bader & Nadler, P.C., against A. Arnold Gershon, P.C., et al.*, Index No. 602108/07.  In its application, Ballon Stoll sought to enjoin BR&B from distributing the *Intel* fee pending resolution of Ballon Stoll's entitlement to fees from the case.

26.    On June 29, 2007, Justice Lowe heard and denied Ballon Stoll's application.

27.     On August 17, 2007, Ballon Stoll filed with the American Arbitration Association ("AAA") a demand for arbitration against Gershon, A. Arnold Gershon, P.C., and BR&B.  The demand set forth a claim against BR&B for quantum merit. (Ballon Stoll also asserted non-substantive claims against BR&B for a charging lien, to require BR&B to retain funds in escrow, and for fees and expenses relating to the arbitration.)

28.     From the outset and continuing to the present, BR&B has consistently maintained and expressed its position that it is not a party to the Agreement and is, therefore, not required to arbitrate Ballon Stoll's claims.

29.     On November 12, 2007, Joseph W. Muccia was appointed as the arbitrator and the appointment was confirmed on November 21, 2007.   BR&B did not participate in the process of appointment of the arbitrator.

30.     During a telephonic conference on December 3, 2007, among the AAA administrator, the arbitrator, a representative of Ballon Stoll and Gershon, in which BR&B participated as a matter of courtesy, BR&B again raised the issue that BR&B, as a non-signatory, was not bound by the arbitration clause in the Agreement.  In response, and at the request of the mediator, on December 27, 2007, Ballon Stoll submitted to the arbitrator a memorandum in support of his retention of jurisdiction over BR&B.

31.     On January 22, 2008, BR&B, again as a matter of courtesy, submitted a memorandum in response, explaining that it was not a party to the Agreement and should not be bound to arbitrate Ballon Stoll's claims.  BR&B also asserted that only a Court, not the arbitrator, has the authority to determine whether Ballon Stoll's claim against BR&B is arbitrable.

32.    On February 19, 2008, the arbitrator issued a ruling, incorrectly determining that he (and not the Court) had the authority to rule on the arbitrability of Ballon Stoll's claim against BR&B.  He also ruled that BR&B was bound by the arbitration clause of the Agreement.

33.    The arbitrator also ordered BR&B to serve and file a response to Ballon Stoll's claim no later than March 5, 2008.

### CLAIM FOR DECLARATORY RELIEF (28 U.S.C. § 2201)

34.    This action presents an actual controversy between the parties.  Absent the declaratory relief sought herein, BR&B will be improperly compelled to choose between participating in arbitration proceedings with Ballon Stoll or declining to participate and risk an adverse award that it would then challenge on confirmation proceedings.  A declaration from the Court regarding BR&B's rights is necessary so that BR&B, which has not agreed to arbitrate Ballon Stoll's claims, can avoid that choice.

35.    There is no dispute that BR&B was neither a party to nor a signatory of the Agreement.  BR&B is entitled to a declaratory judgment that it is not a party to the Agreement.

36.    As a non-signatory to the Agreement, BR&B is entitled to a declaratory judgment that it is not bound by the arbitration clause of the Agreement.

37.    The arbitrator improperly determined that BR&B, as a non-signatory to the Agreement, is bound to arbitrate Ballon Stoll's claims.  BR&B is entitled to a declaratory judgment that it is not bound to arbitrate Ballon Stoll's claims.

38.    The arbitrator usurped the role of the Court when it determined that it had jurisdiction over BR&B.  BR&B is entitled to a declaratory judgment that the AAA does

not have jurisdiction over, or the authority to determine, whether BR&B is bound by the Agreement.

39.    Because the Court, and not the arbitrator, has the authority to determine whether BR&B is a proper party to the arbitration, BR&B is entitled to a declaratory judgment that the AAA cannot issue an enforceable award against BR&B.

## PRAYER FOR RELIEF

WHEREFORE, BR&B requests entry of judgment as follows:

A.    Entering judgment declaring that BR&B is not a party to the Agreement.

B.    Entering judgment declaring that BR&B is not bound by the arbitration clause of the Agreement;

C.    Entering judgment declaring that BR&B is not compelled to arbitrate Ballon Stoll's claims;

D.    Entering judgment declaring that the AAA does not have jurisdiction over BR&B;

E.    Entering judgment declaring that the AAA cannot issue an enforceable award against BR&B;

F.    Entering judgment declaring that this Court, not an arbitrator, has jurisdiction to determine the arbitrability of Ballon Stoll's claims against BR&B;

G.    Granting preliminary and permanent injunctive relief staying the arbitration against BR&B; and

H.    Such other relief as the Court deems just and proper.

Dated: February 28, 2008

**BARRACK, RODOS & BACINE**

By

William J. Ban
Bar No. WB0382
1350 Broadway
Suite 1001
New York, NY 10018
(212) 688–0782

and

Daniel E. Bacine
BARRACK RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
(215) 963-0600

**Attorneys for Plaintiff**

## <u>VERIFICATION</u>

I, Daniel E. Bacine, hereby verify that I am a partner of Barrack, Rodos & Bacine ("BR&B") and am authorized to make this verification on its behalf; and that the facts set forth in the foregoing complaint are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  February 28, 2008

Daniel E. Bacine

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BARRACK, RODOS & BACINE,

                Plaintiff,

                                Case No. 08 CV 02152 (PKL)

       -against-


BALLON STOLL BADER & NADLER, P.C.,    **VERIFIED ANSWER**
                                 **TO COMPLAINT**
                Defendant.
--------------------------------------------------------x

      Defendant, Ballon Stoll Bader & Nadler, P.C. ("BSBN"), by its undersigned attorneys, Answering the Verified Complaint for Declaratory and Injunctive Relief ("Complaint") of Barrack Rodos & Bacine ("BR&B"), respectfully shows the Court and alleges as follows:

**ANSWERING BR&B'S "INTRODUCTION"**

      1.      BSBN acknowledges that the BR&B brings this Action upon the grounds stated in paragraph 1 of the Complaint.  BSBN denies so much of the allegations contained in paragraph 1 of the Complaint as states that BR&B "is not a party to any agreement to arbitrate any disputes" with BSBN.

      2.      BSBN denies each and every allegation, express or implied, contained in paragraph 2 of the Complaint, except admits and affirmatively asserts that BSBN claims to have and does have an interest in fees awarded in the matter styled *Seinfeld v. Barrett, et al.*, Case No. 05-298 (JJF)(D. Del., May 16, 2005)(the "Intel Action" or the "Intel Fees").

      3.      BSBN denies each and every allegation contained in paragraph 4 of the Complaint.

4.      BSBN denies so much of the allegations contained in paragraph 5 of the Complaint as state or imply that the Arbitrator Joseph W. Muccia's February 19, 2008 "Ruling and Partial Final Award Regarding Arbitrability of Claims Alleged Against Respondent Barrack, Rodos & Bacine" (the "Award") is improper or incorrect.

5.      BSBN denies each and every allegation, express or implied, contained in paragraph 6 of the Complaint.

## ANSWERING BR&B'S ALLEGATIONS OF "JURISDICTION AND VENUE"

6.      BSBN admits the allegations contained in paragraph 7 of the Complaint.

7.      In Answer to the allegations contained in paragraph 8 of the Complaint, BSBN admits that venue in this district is proper.  BSBN denies so much of the allegations contained in paragraph 8 of the Complaint as, expressly or impliedly, impute wrongdoing and violations of BR&B's rights to BSBN.

## ANSWERING BR&B'S ALLEGATIONS OF "THE PARTIES"

8.      BSBN lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

9.      BSBN admits the allegations contained in paragraph 10 of the Complaint.

## ANSWERING BR&B'S ALLEGATIONS OF "FACTS"

10.      BSBN lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint, except that BSBN specifically denies so much of the allegations contained in paragraph 11 of the Complaint as, expressly or impliedly, alleges any wrongdoing or culpable conduct on the part of BSBN.

11.     BSBN lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 12 and 13 of the Complaint, except that BSBN specifically denies so much of the allegations contained in paragraphs 12 and 13 of the Complaint as, expressly or impliedly, allege any wrongdoing or culpable conduct on the part of BSBN.

12.     BSBN lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 14 and 15 of the Complaint.

13.     BSBN denies each and every allegation, express or implied, contained in paragraph 16 of the Complaint.

14.     BSBN lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 17, 18, 19, 20 and 21 of the Complaint.

15.     BSBN denies each and every allegation, express or implied, contained in paragraphs 22, 23 and 24 of the Complaint.

16.     BSBN admits the allegations contained in paragraphs 25 and 26 of the Complaint.

17.     BSBN denies so much of paragraph 27 of the Compliant as alleges, expressly or by implication, that the only "substantive" claim asserted against BR&B sounds in *quantum meruit* and as characterizes certain claims as "substantive" and "non-substantive."

18.     BSBN denies each and every allegation, express or implied, contained in paragraph 28 of the Complaint.

19.     BSBN admits the allegations contained in paragraph 29 of the Complaint, except that BSBN lacks knowledge or information sufficient to form a belief as to whether BR&B participated in the selection of the Arbitrator.

20.     BSBN denies each and every allegation, express or implied, contained in paragraphs 30, 31, 32 and 33 of the Complaint, except admits that briefs were submitted and a decision rendered by the Arbitrator.  BSBN respectfully refers the Court to the content of those documents for an assessment of the content thereof.

## ANSWERING BR&B'S "CLAIM FOR DECLARATORY RELIEF"

21.     BSBN denies each and every allegation, express or implied, contained in paragraphs 34, 35, 36, 37, 38 and 39 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

22.     BR&B is bound, as a successor in interest, by the Arbitration Agreement between BSBN and Gershon.

## SECOND AFFIRMATIVE DEFENSE

23.     BR&B is bound by the Arbitration Agreement between BSBN and Gershon pursuant to the "Merger Doctrine."

## THIRD AFFIRMATIVE DEFENSE

24.     BR&B is bound by the Arbitration Agreement between BSBN and Gershon by virtue of the doctrine of Estoppel.

## FOURTH AFFIRMATIVE DEFENSE

25.     BR&B comes to this Court with unclean hands and is therefore not entitled to any relief herein.

## FIFTH AFFIRMATIVE DEFENSE

26.    To the extent that BR&B may have had grounds to request the subject relief, all rights to do so have been waived.

## BSBN'S COUNTERCLAIMS

## Generally as to the Counterclaims

27.    BSBN repeats and reiterates each and every allegation set forth in paragraphs 1 through 26, inclusive, of this Answer as if fully set forth herein at length.

28.    BSBN is a New York Professional Corporation of attorneys engaged in the practice of law, with its principle offices located at 729 Seventh Avenue, New York, New York.

29.    A. Arnold Gershon ("Arnold") is, upon information and belief, an attorney admitted to practice law and engaged in the practice of law in the State of New York, with offices located at 1350 Broadway, New York, New York.

30.    A. Arnold Gershon, P.C. ("AAG") is, upon information and belief, a New York professional corporation formed by Arnold in connection with Arnold's practice of law and through which Arnold has, from time to time, provided his legal services.

31.    In or about June 2001, AAG and Arnold (collectively, "Gershon") entered into a written Agreement with BSBN dated as of June 28, 2001, pursuant to which AAG became "Of Counsel" to BSBN beginning September 1, 2001.

32.    From on or about September 1, 2001 until on or about December 1, 2006, pursuant to the June 28, 2001 Agreement, as amended by Agreements dated March 25, 2003 and June 26, 2006 (collectively, the "Of Counsel Agreement"), AAG was engaged in practice as "Of Counsel" to BSBN.

33.    The Of Counsel Agreement includes the following provisions relating to

fees earned on account of clients and matters brought by Gershon to BSBN:

> **FOURTH:** During the term of this Agreement, [AAG]
> shall receive from [BSBN] as follows:
> (a) Reimbursement of any reasonable expenses incurred in
> connection with servicing its cases on an as is and where needed
> basis.
> (b) A percent of the fees paid to [BSBN] from clients
> introduced to [BSBN] by Arnold or AAG, less expenses incurred,
> to be paid when the fees are actually received, in accordance with
> Fee Schedule "A" attached hereto.
> (c) All calculations of fees paid to [BSBN] shall be net of
> forwarding fees, fees paid to other counsel and disbursements and
> expenses incurred.
>
> **FIFTH:** (a) As is more specifically set forth in Schedule
> "B", all of Arnold's and [AAG]'s uncollected accounts receivable
> existing as of the effective date of this Agreement shall be the
> property of the parties as, as their interest [sic] are expressed in this
> Agreement. All of their accounts receivable billed or accrued to
> their clients, including disbursements, during the term of this
> Agreement, shall be billed under the name of BSBN and shall also
> be the property of the parties as, as their interest [sic] are expressed
> in this Agreement;
> (b) For the purposes of this Agreement, "Accounts
> Receivable" shall mean amounts actually billed and amounts
> accrued but unbilled to [Gershon's] clients prior to and during the
> effective date of this Agreement which have not been paid.
>
> **SIXTH:** [Gershon agrees] during the term of this
> Agreement to:
>                    * * * * * * *
> (d) Remit [to BSBN] all fees and/or commissions earned by
> them during the term of this Agreement
>
>                    * * * * * * *
> **NINTH:** Upon the expiration or termination of this
> Agreement:
> (a) [AAG] shall be entitled to remove all of its personal
> effects, law books, and equipment from the Firm's premises;
> **(b) All collections for services rendered prior to the
> termination of this Agreement and received by the Firm or
> [Gershon], after the termination date of this Agreement, shall
> remain the property of the parties as their interests are**

**expressed in this Agreement. [Gershon] and the Firm shall share in said collections as set forth in Fee Schedule "A" hereof. [emphasis supplied]**

> **TENTH:** This Agreement [*sic*] be for a term of one (1) year and shall continue thereafter until: (a) a written notice of termination is given by either party to the other effective sixty (60) days from the date of the notice.

> **ELEVENTH:** The parties agree that any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association then obtaining, and that judgement [*sic*]upon the award rendered by such arbitration tribunals shall be binding and entered in the Supreme Court of New York County upon which the parties expressly confer jurisdiction.
> * * * * * *
> **THIRTEENTH**: This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, testamentary beneficiaries, executors, administrators and legal representatives.

> **FOURTEENTH:** This Agreement sets forth the entire understanding among the parties. The same may not be altered, modified, canceled or varied, except by a subsequent writing signed by the parties hereto.

34.     Schedule "A" to the Of Counsel Agreement provides that fees with respect to any Stockholder Derivative Actions originated by Gershon during the term of the Of Counsel Agreement are owned in equal shares by BSBN and Gershon, so that Gershon and BSBN each retained an undivided 50% ownership interest in such fees.

35.     In or around May 2005, during the term of the Of Counsel Agreement, Gershon originated the Intel Action.  Accordingly, by virtue of BSBN and Gershon each acquired an undivided 50% interest in the Intel Fees.

36.     BSBN did not receive any written Notice of Termination from Gershon.

37.     Gershon claims that, on November 20, 2006, written Notice of

Termination of the Of Counsel Agreement was provided to BSBN. The Of Counsel Agreement therefore terminated no earlier than January 19, 2007.

38.    Upon information and belief, in or around November, 2006, Arnold agreed with BR&B that he would join BR&B as a partner in its New York office, effective December 1, 2006.

39.    Pursuant to a Letter Agreement dated November 29, 2006 between Arnold and BR&B, Arnold and BR&B agreed that "all fees generated by [Arnold] on behalf of [Arnold's] clients and [BR&B's] clients during [Arnold's] association with [BR&B] are the property of Barrack Rodos & Bacine."

40.    Upon information and belief, in exchange for BR&B's financial commitments to (a) employ, for Arnold's use and benefit, the secretary and associate who were assigned to Arnold at BSBN; and (b) to expand the physical size of BR&B's New York office space, Arnold agreed to join BR&B without any compensation commitment from BR&B, his compensation being subject to determination from time to time by BR&B, in its sole discretion, and without any guaranty of remuneration.

41.    A Stipulation of Settlement in the Intel Suit was entered into on or about March 7, 2007. On or about March 16, 2007, Gershon submitted to the District Judge in the Intel Suit a fee application pursuant to which fees and expenses were sought on behalf of the Intel Plaintiff in the amount of $862,500.00. Included amongst those fees and expenses were the fees and expenses accrued while Gershon was "Of Counsel" to BSBN.

42.    Upon information and belief, between on or about April 15, 2007 and on or about May 15, 2007, BR&B learned from Gershon that BSBN claimed to retain a

financial interest in the Intel Fees.

43.     By letter dated May 18, 2007, BSBN notified Gershon, BR&B and all other counsel in the Intel Suit that it claimed and reserved a charging lien with respect to any sums recovered in connection with the Intel Settlement and fee application.

44.     On or about May 18, 2007, BR&B received copies of the Of Counsel Agreement and of documents reflecting the substantive post-termination negotiations between Gershon and BSBN.  Upon information and belief, BR&B concluded that there was "no meeting of the minds" between BSBN and Gershon which would have altered the requirements of the Of Counsel Agreement with respect to the Intel Fees.

45.     On May 23, 2007, a Judgment of Dismissal in the Intel Suit was entered which provides, in relevant part, for payment of the Intel Plaintiff's attorneys' fees and expenses in the amount of $862,500.00 (the "Fee Award"):

> **12. Subject to all conditions set forth in the Stipulation of Settlement, Intel Corporation shall pay Plaintiff's counsel's attorneys' fees and reasonable out-of-pocket disbursements in the amount of $862,500.00 within fourteen (14) business days of the Effective Date of the settlement. Payment shall be made to the Philadelphia, Pennsylvania offices of Barrack, Rodos & Bacine.**

46.     The Intel Fees were received by BR&B on or about June 29, 2007.

47.     BR&B has asserted a proprietary interest in 100% of the Intel Fees, net of expenses, forwarding fees and local counsel's fees.

48.     BR&B has benefited directly from the Of Counsel Agreement.

## FIRST COUNTERCLAIM
### (Declaratory Relief: Arbitration)

49.     BSBN repeats and reiterates each and every allegation set forth in paragraphs 1 through 47, inclusive, of this Answer as if fully set forth herein at length.

50.     By reason of the foregoing, BSBN is entitled to an Order,

    a.     Declaring that BR&B succeeded to Gershon's interest in the Of Counsel

Agreement;

    b.     Declaring that the Business of AAG merged into, and was subsumed by,

BR&B; and

    c.     Declaring that BR&B is estopped to deny it obligation to submit to

arbitration.

### SECOND COUNTERCLAIM
### (Declaratory Relief: Ownership of the Intel Fees)

51.     BSBN repeats and reiterates each and every allegation set forth in

paragraphs 1 through 50, inclusive, of this Answer as if fully set forth herein at length

52.     By reason of the foregoing, BSBN is entitled to an Order, directing BR&B

to pay over and deliver to BSBN so much of the Intel Fees as is determined as a result of

BSBN's arbitration with Gershon to be the property of BSBN under the Of Counsel

Agreement.

### THIRD COUNTERCLAIM
### (Avoidance of Fraudulent Conveyance:
### NY Debtor and Creditor Law §§ 278 & 279 )

53.     BSBN repeats and reiterates each and every allegation set forth in

paragraphs 1 through 52, inclusive, of this Answer as if fully set forth herein at length

54.     Gershon's conveyance of the Intel Fees to BR&B was without fair

consideration, within the meaning of NY Debtor and Creditor Law § 272.

55.     Gershon's conveyance of the Intel Fees to BR&B was made while

Gershon was insolvent, within the meaning of NY Debtor and Creditor Law § 271.

56.     Gershon's conveyance of the Intel Fees to BR&B was made while

Gershon knew that they were about to incur debts beyond their ability to pay.

57.    Gershon's conveyance of the Intel Fees to BR&B was made with actual intent to defraud BSBN.

58.    By virtue of the foregoing, BSBN is entitled to an Order, pursuant to NY Debtor and Creditor Law §§278 & 279

    a.   Setting aside Gershon's conveyance to BR&B or the Intel Fees to the extent necessary to satisfy BSBN's claim;

    b.   Restraining and enjoining BR&B from disposing of the Intel Fees; and

    c.   Appointing a receiver to take charge of the Intel Fees.

59.    BSBN is entitled to an Order, pursuant to NY Debtor and Creditor Law §276-a, awarding BSBN its attorneys fees incurred herein and fixing the amount of those fees.

### FOURTH COUNTERCLAIM
#### (Money Had & Received)

60.    BSBN repeats and reiterates each and every allegation set forth in paragraphs 1 through 59, inclusive, of this Answer as if fully set forth herein at length

61.    The amount representing BSBN's interest in the Intel Fees was received by BR&B for the account of, or in trust for, BSBN.

62.    BSBN is entitled to an Order directing BR&B to pay over and deliver to BSBN so much of the Intel Fees as is determined as a result of BSBN's arbitration with Gershon to be the property of BSBN under the Of Counsel Agreement.

### FIFTH COUNTERCLAIM
#### (Unjust Enrichment)

63.    BSBN repeats and reiterates each and every allegation set forth in

paragraphs 1 through 62, inclusive, of this Answer as if fully set forth herein at length.

64.    BR&B has been unjustly enriched in the amount of BSBN's proprietary interest in the Intel Fees.

65.    BSBN is entitled to an Order directing BR&B to pay over and deliver to BSBN so much of the Intel Fees as is determined as a result of BSBN's arbitration with Gershon to be the property of BSBN under the Of Counsel Agreement

### SIXTH COUNTERCLAIM
#### (Fixing and Enforcement of Charging Lien)

66.    BSBN repeats and reiterates each and every allegation set forth in paragraphs 1 through 65, inclusive, of this Answer as if fully set forth herein at length.

67.    BR&B was duly notified, on or about May 18, 2007, that BSBN asserted a charging lien against the Intel Fee Award.

68.    BSBN is entitled to an Order fixing the amount of its lien in such amount as is determined in the Arbitration to be the contractual fee due BSBN and directing BR&B to pay over and remit such amount to BSBN.

WHEREFORE, BSBN demands judgment dismissing the Complaint, in its entirety and awarding judgment in its favor on the Counterclaims:

I. On the First Counterclaim:

   a.    Declaring that BR&B succeeded to Gershon's interest in the Of Counsel Agreement;

   b.    Declaring that the Business of AAG merged into, and was subsumed by, BR&B; and

   c.    Declaring that BR&B is estopped to deny it obligation to submit to

{ANSWER;1}                                        12

arbitration.

II. On the Second, Fourth and Fifth Counterclaims, directing BR&B to pay over and deliver to BSBN so much of the Intel Fees as is determined as a result of BSBN's arbitration with Gershon to be the property of BSBN under the Of Counsel Agreement.

III. On the Third Counterclaim, an Order pursuant to NY Debtor and Creditor Law §§278, 279 & 276-a:

    a.  Setting aside Gershon's conveyance to BR&B or the Intel Fees to the extent necessary to satisfy BSBN's claim;

    b.  Restraining and enjoining BR&B from disposing of the Intel Fees;

    c.  Appointing a receiver to take charge of the Intel Fees; and

    d.  Awarding BSBN its attorneys fees incurred herein.

IV. On the Sixth Counterclaim, an Order fixing the amount of BSBN's charging lien in such amount as is determined in the Arbitration to be the contractual fee due BSBN and directing BR&B to pay over and remit such amount to BSBN; and.

V. Awarding to BSBN such other and further relief as to the Court may appear just, proper and equitable.

Dated: New York, New York
      April 9, 2008

                BALLON STOLL BADER & NADLER, P.C.
                *Attorneys for Defendant*

                By:  _____
                     Susan Schneiderman (SS9840)
                729 Seventh Avenue, 17th Floor
                New York, New York  10019
                212-575-7900
                (fax) 212-764-5060
                sschneiderman@ballonstoll.com

<u>Verification</u>

        Susan Schneiderman, a member in good standing of the Bar of this Court

and of the Bar of the State of New York, declares under penalty of perjury as follows:

        I am officer of Ballon Stoll Bader & Nadler, P.C.  I have read the

foregoing Answer and I know the contents thereof.  Same are true to my own knowledge,

except as to matters therein stated upon information and belief and, as to those matters, I

believe them to be true.


Dated: New York, New York
      April 9, 2008

                             Susan Schneiderman

# FOX ◆ ROTHSCHILD LLP

### ATTORNEYS AT LAW

CITIZENS BANK CENTER ◆ SUITE 1300 ◆ 919 NORTH MARKET STREET ◆ P.O. BOX 2323 ◆ WILMINGTON, DE 19899-2323
302.654.7444 ◆ FAX 302.656.8920 ◆ www.foxrothschild.com

Francis G.X. Pileggi
Direct Dial: (302) 655-3667
Internet Address: fpileggi@foxrothschild.com

May 16, 2005

**CONFIDENTIAL**

**VIA FACSIMILE AND FIRST CLASS MAIL**

Arnold Gershon, Esquire
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway
New York, NY 10018-2268

Re:  Fee Agreement

Dear Arnold:

Please sign and return this letter before we file the Complaint on your behalf as local Delaware counsel to memorialize our contingency fee agreement as 10% of total gross fees received, plus costs. As you know, the Third Circuit recognizes both the lodestar and other factors in determining the amount of the award, and to the extent that the court needs to approve any fees awarded in this matter, we will also take those matters into consideration. See, e.g., Public Interest Research Group of New Jersey, Inc. v. Windall (Third Circuit 1995) at footnote 8.

Please let me know if you have any additional questions. I look forward to hearing from you.

Sincerely,

*Francis G.X. Pileggi/nmar*

Francis G.X. Pileggi

FGXP:nmar

WE APPROVE THE ABOVE TERMS.

Ballon Stoll Bader & Nadler, P.C.
(A. Arnold Gershon, P.C.

By: _____
A. Arnold Gershon, Esquire

PENNSYLVANIA ◆ NEW JERSEY ◆ DELAWARE

WM1A 56372v1 05/16/05

# Arnold Gershon

**From:** Arnold Gershon
**Sent:** Thursday, November 30, 2006 12:57 PM
**To:** Arnold Gershon
**Subject:** counselship

*[handwritten: Disb = 65987.23]*

As of December 1, 2006, AAG shall be moved out; BSBN shall take the cases on the A List; AAG shall take the cases on the B List; BSBN shall have no interest in fees in the B List cases, and AAG shall have no interest in fees in the A List cases. The exception is Chiron, 15194-002, where we are waiting for fees to be paid, and where the fee will go half to BSBN, one third to AAG, and one sixth to IB.

| A List (BSBN) | | Lodestar | Expenses |
|---|---|---|---|
| WorldCom | 14782-002 | $679,986.75 | $33,029.67 |
| Tyco | 15194-001 | 67,875.00 | 1,608.45 |
| Apple | 16583-001 | 625,005.00 | 20,657.05 |
| Hewlett Packard | 16946-001 | 44,362.50 | 882.45 |

| B List (AAG) | | | |
|---|---|---|---|
| Honeywell | 16091-001 | 482,268.75 | 16,576.41 |
| Fannie Mae | 16126-002 | 233,428.75 | 9,404.18 |
| Intel | 16582-001 | 291,238.75 | 5,328.52 |
| Morgan Stanley | 16631-001 | 21,320.00 | *421,64* |
| Lehman | 16890-001 | 151,170.00 | 6,347.46 |
| Microsoft | 16904-001 | 12,500.00 | 267.11 |

*[handwritten notations]*

Dated: November 30, 2006

*[handwritten: Boeing wsp]*

# EXHIBIT 1

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION RULES

In the Matter of the Arbitration Among : 
BALLON STOLL BADER & NADLER, P.C., :     AAA Claim No. 13 194 01780 07
                                      :
            Claimant,                 :
                                      :
      and                             :
                                      :
A. ARNOLD GERSHON and                 :     **AFFIDAVIT OF DANIEL E.**
A. ARNOLD GERSHON, P.C.,              :     **BACINE IN OPPOSITION TO THE**
                                      :     **RETENTION OF JURISDICTION**
            Respondents,              :     **OVER BARRACK, RODOS &**
                                      :     **BACINE BY THE ARBITRATOR**
      and                             :
                                      :
BARRACK, RODOS & BACINE,              :
                                      :
            Respondent/Stakeholder.   :

I, Daniel E. Bacine, being duly sworn according to law, depose and say as follows:

1.      I am a partner of Barrack, Rodos & Bacine ("BR&B") and am authorized to make this affidavit on its behalf, without waiving BR&B's position that it is not required to participate in this proceeding.

2.      I have personal knowledge of the matters referred to herein except as noted.

3.      For the past 30 years, BR&B has concentrated its practice on litigation, particularly class action litigation under the federal securities laws, shareholder derivative litigation and class action litigation under the antitrust laws. Over the years, we have achieved notable results, most recently a settlement of over $6 billion in the *WorldCom* case; over $3 billion in the *Cendant* case; and over $1 billion in the *McKesson* case (settlement pending). We have substantial experience in litigating large and complex cases with extensive discovery

programs that involve millions of pages of documents and many depositions. Almost all of our cases require the retention of experts in various fields. Attached as Exhibit A is a copy of the firm's resume.

4.    A. Arnold Gershon ("Gershon"), who practices in our field, approached our firm in approximately November 2006 to inquire whether we had an interest in his joining us in our New York satellite office. Some lawyers in our firm who either knew or knew of Gershon thought favorably of him.

5.    I met with Gershon to discuss the possibility of his joining our firm. He explained that he had been unhappy with his then-current firm, Ballon Stoll Bader & Nadler, P.C. ("Ballon Stoll"), because of Ballon Stoll's inability or unwillingness to provide the support and resources he needed to properly litigate the kinds of complex and discovery intensive cases in which he was involved.

6.    He mentioned that one such case, among several, was *Seinfeld v. Barrett, et al.*, Case No. 05-298 (JJF) ("*Intel*"), which was pending in the District of Delaware. In that derivative litigation involving Intel Corp., Gershon explained to me that the Court, on May 31, 2006, had entered a scheduling order under Rule 16 of the Federal Rules of Civil Procedure that provided, among other things, that the plaintiff could take up to 80 depositions, most of which would involve west coast travel, commencing not earlier than October 1, 2006, and that the discovery deadline was less than a year away. Attached as Exhibit B is a copy of that order. He informed me that the defendants had recently produced 25,000 pages of electronically generated and stored documents, and that Ballon Stoll was both unable to commit appropriate personnel and unwilling to commit the financial resources necessary to review and analyze the documents

2

and then prepare for and execute the extensive discovery program in the *Intel* matter. Gershon said that there were other cases that were suffering for lack of Ballon Stoll's support.

7.    Our firm was well-acquainted with the defense counsel in the *Intel* case. We have been adverse to that firm in a number of cases over the years and have litigated (and continue to litigate) cases against the lawyers in that firm who were defending the case.

8.    Gershon's particular area of expertise is in shareholder derivative actions, an area in which we thought adding an experienced lawyer would be beneficial to our firm. In that regard, Gershon asked us to hire as well the associate he had been working with, who he said was also unhappy at Ballon Stoll. And because we had no secretarial support in our New York office (we had one lawyer there half time), Gershon proposed that we hire a secretary who had left Ballon Stoll several weeks earlier.

9.    Because of the uncertainty that the arrangement would be successful and the substantial financial commitment we would be making for salaries and expansion of our sublease to add the needed space, we proposed to Gershon that he could come with the firm, but that there would be no agreement about his own compensation, other than that it would be decided by BR&B. Gershon agreed, and that is the understanding that remains today. Gershon has no proprietary interest in BR&B and has no financial interest in any cases he brought to or works on at BR&B.

10.    In our conversation, Gershon said that he would work out an arrangement to divide equitably the cases that he had brought to and was working on at Ballon Stoll, leaving some and taking some. He did not at the time share with me the particulars of his arrangement with Ballon Stoll. Nor was I aware of the existence of the agreement that forms the basis for the

claims in this proceeding, pursuant to which Ballon Stoll contends BR&B is obligated to participate in this arbitration.

11.     Sometime in late April or early May 2007, Gershon informed me that while he and Ballon Stoll had agreed to divide the cases, Ballon Stoll claimed to retain a financial interest in one of the cases he brought with him, specifically *Intel*. But it was not until after I received Ballon Stoll's May 18, 2007, letter purporting to assert a charging lien against the *Intel* fee (which at that time had not yet been awarded, let alone paid), that Gershon shared with me the documents showing his agreement with Ballon Stoll to divide the cases that Gershon had been working on at that firm. Attached as Exhibit C is an e-mail exchange that I received from Gershon in May 2007, reflecting a meeting of the minds on the division of cases and, except for *Intel* (about which there was no meeting of the minds), on the fees from those cases: Ballon Stoll and Gershon agreed that each would keep the fees if and when paid in the cases they each took in the division. I also saw for the first time a copy of the agreement that Gershon signed that contained the arbitration clause.

12.     By the time Gershon joined the firm on December 1, 2006, the defendants in *Intel* had produced the 25,000 pages of documents to review. We immediately assembled a group of lawyers and a paralegal to begin the task of organizing and reviewing the documents produced, in preparation for the extensive deposition program anticipated.

13.     Sometime in December 2006, the defendants inquired whether the plaintiff would be willing to entertain settlement discussions. Discussions then began that ultimately led to the settlement agreement filed with the Court on March 7, 2007. The settlement called for Intel to terminate the incentive compensation plan that was the subject of the lawsuit.

4

14.    The last term of the settlement negotiated was the counsel fee that defendants agreed to pay plaintiff, subject to the court's approval. The fee was negotiated at arm's length with defense counsel. The principal issue involved in the negotiations was the value of the settlement to Intel, i.e., how much Intel saved by terminating its incentive compensation plan. We valued the benefit high; defendants valued it low. We then negotiated and reached an agreement as to fees, as set forth in the settlement stipulation.

15.    Our brief in support of plaintiff's request that the Court award the fee as agreed emphasized the benefit of the settlement to Intel. The brief (without the expert's declaration) is attached as Exhibit D. The amount of time devoted to the case is mentioned in just one paragraph on page 23 and is the subject just one paragraph on page 24. In Gershon's declaration that accompanied the brief (attached as Exhibit E), Gershon, as required, presented plaintiff's "lodestar" information.[1] But plaintiff presented no argument that the requested fee had any relation to the lodestar. (Court's sometimes use the lodestar as a "cross-check" to see if the requested fee might result in a windfall to plaintiff's counsel. *See In re Cendant Corp. Derivative Actions*, 232 F. Supp. 2d 327, 340-41 (D.N.J. 2002).)

16.    Although Ballon Stoll was aware of the May 23, 2007, settlement hearing in *Intel* in advance and claimed an interest in the fee that might be awarded, Ballon Stoll did not file with the district court its own fee petition nor appear at the hearing to either assert a claim for fees or object to BR&B's fee petition.

17.    Because the proceeding before Justice Lowe in *In the Matter of the Application of Ballon Stoll Bader & Nadler, P.C. v. A. Arnold Gershon, P.C., et al.*, Index No. 602108/07 (N.Y. Sup. Ct., June 29, 2007), has been raised as an issue, attached as Exhibit F is a copy of the transcript and order.

---

[1]  "Lodestar" is the hours times the hourly rate.

18.    The facts set forth above are true and correct to the best of my knowledge.

Daniel E. Bacine

Sworn to and Subscribed

Before Me this _22nd_ day

of January, 2008.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Marianna Bonaiara, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Apr. 26, 2009
Member, Pennsylvania Association of Notaries

6

**Gershon, A. Arnold**

| | |
|---|---|
| **From:** | Howard Bader [HBader@ballonstoll.com] |
| **Sent:** | Wednesday, May 09, 2007 2:05 PM |
| **To:** | Gershon, A. Arnold; Vano Haroutunian |
| **Cc:** | David Nadler |
| **Subject:** | RE: Intel-AG |

Glad to hear everything is going well for you. Things are great here also. I don't understand why we have to wait for your partner's return before we discuss the situation. The Fee Application is coming up quickly on May 23rd and we have to make provision for same. I believe it has to be filed a week in advance. Please call Vano or David quickly to discuss the situation so we can move forward immediately. Should we make a separate Fee Application to cover all the time and expenses that were expended by BSBN? Please advise. Be well.

---

**From:** Gershon, A. Arnold [mailto:agershon@barrack.com]
**Sent:** Tuesday, May 08, 2007 11:35 AM
**To:** Vano Haroutunian
**Cc:** David Nadler; Howard Bader
**Subject:** RE: Intel

Vano,

  Things are good.  I hope all is well with you.  I am in no position to discuss this with you until one of my partners returns.  It will probably be Monday, May 14, 2007.

                                                                                        Arnold

---

**From:** Vano Haroutunian [mailto:vharoutunian@ballonstoll.com]
**Sent:** Friday, May 04, 2007 7:25 PM
**To:** Gershon, A. Arnold
**Cc:** David Nadler; Howard Bader
**Subject:** Intel

Arnold –

Hope all's been well since we last spoke … I am following up on the two voice messages that I left at your office … please call me when you get the chance so we can discuss the above matter, even if it's over the weekend … you can reach me on my cell at 917 992 6541.

Otherwise, enjoy the weekend.

Regards,

**VANO I HAROUTUNIAN**
**BALLON STOLL BADER & NADLER, P.C.**
1450 Broadway, 14th Floor
New York, NY 10018
+1 (212) 575 7900 x204
vharoutunian@ballonstoll.com

CONFIDENTIALITY NOTICE: This email message and any attachments may be confidential and may be subject to the attorney-client privilege or another privilege. If you are not the intended recipient: do not read, copy or re-send this email message or its attachment; immediately notify the sender by reply email or by collect telephone call to +1 212-575-7900; and permanently delete from your systems and database this email message and any attachments.

1/8/2008

# BR&B

*Barrack, Rodos & Bacine*

A Partnership Including Professional Corporations

**Attorneys At Law**
www.barrack.com

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban'
Jeffrey A. Barrack
Stephen R. Basser*
Regina M. Calcaterra'
Chad A. Carder**
A. Arnold Gershon''
Jeffrey B. Gittleman**
Jeffrey W. Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kui'''
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth A. Targan**
Samuel M. Ward*

Of Counsel:
*Frances Vilella-Vélez''''*

Admitted in PA, except:
*    Admitted in CA
**   Also admitted in NJ
***  Also admitted in CA & NJ
'    Also admitted in NY
''   Admitted in New York
'''  Admitted in New York and New Jersey
'''' Also admitted in Puerto Rico

**Main Office**
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

**California Office**
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

**New Jersey Office**
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

**New York Office**
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

May 14, 2007

Howard D. Bader, Esq.
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway – 14th Floor
New York, New York 10018

**Re:   Intel**

Dear Howard:

In response to your email to me on May 9, 2007, upon my termination of our agreement, you retained some of my cases, and I took some of my cases. Neither of us has claims upon the other's fees. In addition, my new firm will reimburse your expenses, if we recover them.

With respect to Intel, a case that I took, we are prepared to reimburse your expenses of $5,328.52 upon our recovery of the same. We are not, however, prepared to pay you any part of the fee, should the court make an award.

Concerning your request as to whether you should make a separate fee application, our answer is that it is unnecessary and improper.

Finally, Francis Pilleggi forwarded to me Vano's email to him with attached copies of the complaint and my affidavit, sworn to August 9, 2005 (transmitted Friday, May 11, 2007 at 18:45:24). While it is true that Ballon Stoll Bader & Nadler, P.C. and A. Arnold Gershon, P.C., and I were all associated with Fox Rothschild LLP, as required by the local rules, that is of no moment because Ballon Stoll Bader & Nadler, P.C. has not been in this case since November 30, 2006.

Yours sincerely,

Alexander Arnold Gershon

:eb

Intel\BaderLtr